UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVANTAGE HEALTHPLAN, INC. and ELLIOT R. WOLFF, | ) ) ) | |
| Appellants, | ) ) | Civil Action No. 08-0166-CKK (Appeal) |
| v. | ) ) ) | Bankruptcy No. 99-1159 (Chapter 11) |
| PILLSBURY WINTHROP SHAW PITTMAN, LLP et al., | ) ) ) | |
| Appellees. | ) ) ) | |

## APPELLANTS' OBJECTION TO DESIGNATION OF RELATED CIVIL CASES

TO THE HONORABLE COLLEEN KOLLAR-KOTELLY:

COMES NOW Advantage Healthplan Inc. and Elliot R. Wolff as Advantage HealthPlan Inc.'s corporate representative on the Plan Committee ("Appellants"), by and through counsel, Stinson Morrison Hecker LLP, and hereby submit this Objection to Designation of Related Civil Cases filed by Pillsbury Winthrop Shaw Pittman LLP and Patrick J. Potter, in his capacity as former Plan Agent ("Appellees"), as follows:

1.      On January 28, 2008, Appellants initiated the proceeding in this Court by filing a Notice of Appeal from certain orders of the U.S. Bankruptcy Court for the District of Columbia ("Bankruptcy Court") in the case captioned, *In re: The Greater Southeast Community Hospital Foundation, Inc., et al.*, Bankruptcy No. 99-1150.

2.      As explained in Appellants' Statement of Issues on Appeal, the orders appealed from related to a dispute concerning attorneys fees and the imposition of a disputed settlement by the Bankruptcy Court. The Notice of Appeal further explains that the fee dispute at issue arose

after the confirmation of the Chapter 11 Plan, was brought by parties that had no involvement in the bankruptcy prior to confirmation, and related exclusively to post-confirmation activity.

3.    Appellees then filed the Designation of Related Cases, which asserts that this case is related to a case captioned *The Plan Committee et al. v. Price Waterhouse Coopers LLP*, C.A. No. 1:02cv 01487 ("Previous Case").

4.    In the Previous Case, the Plaintiff sought compensatory damages relating to acts and omissions of Price Waterhouse Coopers LLP, ("Price Waterhouse") a firm of certified public accountants retained to provide audit and accounting services to the Bankruptcy Debtor prior to filing of the bankruptcy petition.  A copy of the Complaint in the Previous Case is attached as Exhibit A.

5.    According to the Docket Sheet for the Previous Case, that action has been designated as "Closed" pursuant to a Memorandum and Opinion, dated April 20, 2007, granting the Motion to Dismiss filed by Price Waterhouse.  A copy of the Memorandum and Opinion is attached as Exhibit B.  Plaintiff's Motion to Vacate or Modify Judgment and for Leave to File Second Amended Complaint, dated May 3, 2007, is still pending.  A copy of the Docket Sheet is attached as Exhibit C.

6.    Local Rule 40.5  provides, *inter alia*:

(3)    Civil, including miscellaneous, cases are deemed related when the earliest is still pending on the merits in the District Court and they (i) relate to common property, or (ii) involve common issues of fact, or (iii) grow out of the same event or transaction or (iv) involve the validity or infringement of the same patent….

(4)    Additionally, cases whether criminal or civil, including miscellaneous, shall be deemed related where a case is dismissed, with prejudice or without, and a second case is filed involving the same parties and relating to the same subject matter.

7.      Rule 40.5 is intended to constitute an exception to the normal judicial policy of random assignment of cases.  *Howard v. Gutierrez*, 405 F. Supp. 2d 13, 17 (D.D.C. 2005).

8.      The party who seeks to avoid random reassignment bears the burden of showing that the cases are related under a provision of Rule 40.5.  *Dale v. Executive Office of the President*, 121 F. Supp. 2d 35, 37 (D.D.C. 2000) (citing *Tripp v. Executive Office of the President*, 194 F.R.D. 340, 342 (D.D.C. 2000)).  In this case, Appellees have not, and cannot, meet the burden of showing that the cases are related within the meaning of Rule 40.5.

9.      With regard to Rule 40.5(3), the Previous Case cannot meet the threshold requirement of a case "still pending on the merits" because an Order of Dismissal has been entered and the case has been marked "Closed."

10.      In addition, the two cases do not satisfy any of the other criteria listed in Rule 40.5(3), as follows:  (i) There is no property involved in either case; (ii) The issues of fact in the Previous Case relate only to the quality of the services performed by Price Waterhouse, while the issues of fact in this appeal concern the fees sought by Appellees; (iii) The events or transactions in the two cases are entirely different inasmuch as the Previous Case involves accounting services performed prior to the filing of the bankruptcy and this case is a dispute over legal fees for services performed after confirmation of the Chapter 11 Plan; and (iv) Neither case involves the validity or infringement of a patent.

11.      The cases are not related under Rule 40.5(4) either because the two cases do not involve the same parties or subject matter.  Granted, the Plan Committee is a party to both cases, but this Court "has adopted a strict position that …'the same parties' means identical parties, not parties in interest."  *Dale v. Executive Office of the President*, 121 F. Supp. 2d 35, 37 (D.D.C. 2000) (quoting *Thomas v. National Football League Players Ass'n*, 1992 U.S. Dist. LEXIS 1607,

at *6-7 (D.D.C.)).  Even where two cases have the identical plaintiffs and one identical defendant, the two cases are not related where there are additional non-identical defendants.  *See Judicial Watch, Inc. v. Rossotti*, 2002 U.S. Dist. LEXIS 16574, at * 3 (D.D.C.).  Here, there are additional non-identical Plaintiffs and entirely different Defendants.  Therefore, the cases are not related under Rule 40.5(4) and the Designation of Related Cases was improperly filed by Appellees.

WHEREFORE, Appellants respectfully request that the Court enter an Order:

    A.     Ruling that this case was properly assigned; and

    B.     Granting such other and further relief as is just and proper.

Dated: February 20, 2008                Respectfully submitted,

                                 /s/ Janet M. Nesse
                                 Janet M. Nesse #358514
                                 Lawrence P. Block # 452190
                                 Stinson Morrison Hecker LLP
                                 1150 18th Street, N.W., Suite 800
                                 Washington, D.C. 20036
                                 Tel. (202) 785-9100
                                 *Counsel for Advantage Healthplan Inc. and Elliot R. Wolff as Corporate Representative on the Plan Committee*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the 20<u>th</u> day of February 2008, a copy of the foregoing Objection to Designation of Related Cases was served via ECF or first-class mail, postage prepaid, on the following:

Patrick J. Potter
Pillsbury Winthrop Shaw Pittman LLP
2300 N St., NW
Washington, DC 20037

<u>/s/ Janet M. Nesse</u>
Janet M. Nesse

Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

**JUL 2 6 2002**

~~NANCY MAYER WHITTINGTON, CLERK~~
~~U.S. DISTRICT COURT~~

THE PLAN COMMITTEE
c/o 1100 Connecticut Avenue, N.W.
Suite 800
Washington, D.C. 20036

            Plaintiff,

        v.

PRICEWATERHOUSE COOPERS, LLP,
a Delaware Limited Liability Partnership,
1301 Avenue of the Americas
New York, New York 10019

            Defendant.

CASE NUMBER   1:02CV01487

JUDGE: Richard W. Roberts

DECK TYPE: General Civil

DATE STAMP: 07/26/2002

**JURY DEMAND**

## COMPLAINT
### (For Compensatory Damages)

Plaintiff, the Plan Committee, states the following as its Complaint herein:

### NATURE OF THE CASE

1.    This is a civil action for compensatory damages in relation to certain acts and omissions of the defendant certified public accountants in connection with the audit and accounting services they rendered to the plaintiff.

### JURISDICTION AND VENUE

2.    Substantially all of the events complained of occurred within the District of Columbia.

3.    Pursuant to 28 U.S.C.A. §157, this case is related to the bankruptcy proceedings filed under Chapter 11 of Title 11 of the United States Bankruptcy Court, Case No. 99-01159 (hereinafter

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE., N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

"bankruptcy proceedings"), by The Greater Southeast Community Hospital Foundation, Inc. ("the Foundation"), Greater Southeast Community Hospital Corporation ("Hospital"), Greater Southeast Management Company ("Management"), and Fort Washington Nursing Home, Inc. ("Nursing Home") (collectively, sometimes the "Debtors" or "Greater Southeast Health Care Providers"). The subject bankruptcy proceedings are still pending.

4.        This Court has jurisdiction of this matter pursuant to 28 U.S.C.A. § 1334(b).

5.        Venue is located in this Court pursuant to 28 U.S.C.A. § 1409(a).

## PARTIES

6.        Plaintiff, the Plan Committee, was established in the District of Columbia by the United States Bankruptcy Court for the District of Columbia by Confirmation Order, dated October 23, 2001 ("Confirmation Order"), in the subject bankruptcy proceedings. The Confirmation Order approved the Second Amended Joint Plan, dated July 28, 2001 (the "Plan"), filed by the Debtors.

7.        Prior to the bankruptcy proceedings, the Debtors were engaged in the business of providing health care services principally to residents of the District of Columbia and nearby Prince Georges County, Maryland.

8.        Pursuant to the Confirmation Order and the Plan, the Plan Committee is the successor in interest to all assets and claims under the Plan. The Plan Committee is the sole representative of the Debtors in respect to all litigation which is intended to result in recoveries under the Plan. The Plan Committee has the right to pursue all legal claims, rights or causes of action that the Debtors may have. Accordingly, the Plan Committee has standing to bring this case.

9.        The defendant Pricewaterhouse Coopers, LLP (hereinafter "PWC") is a Delaware limited liability partnership engaged in the business of certified public accounting. Its principal place

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE., N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

of business is located at 1301 Avenue of the Americas, New York, New York 10019.

10.    PWC provided audit and other certified public accounting services to the Greater Southeast Health Care Providers within the District of Columbia. PWC has offices within the District of Columbia. PWC has designated a Registered Agent within the District of Columbia, CT Corporation System, 1025 Vermont Avenue, NW, Washington, DC 20005.

11.    On information and belief, in 1998, PWC was created as the result of a worldwide merger of two leading public accountancy firms, Price Waterhouse, LLP, and Coopers & Lybrand, LLP (sometimes "Coopers"). On information and belief, PWC is responsible for the liabilities of Coopers complained of herein. Coopers has provided audit and accounting services to the Greater Southeast Health Care Providers commencing at some time prior to 1990.

12.    PWC maintained in the 1990's, and maintains today a national health care auditing practice. It did, and does substantial auditing work for health care providers in the Washington, D.C. area.

SUBSTANTIVE ALLEGATIONS

The Greater Southeast Healthcare System

13.    The Greater Southeast Healthcare System (the "System") comprised the Foundation and its not-for-profit and for-profit health care provider subsidiaries. The System was a vertically integrated health care delivery system providing health care services through a network of community hospitals, nursing homes, and home health care and community based programs.

14.    The System primarily served the residents of the southeast quadrant of the District of Columbia and adjacent areas of southern Prince George's County and northern Charles County, Maryland.

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 900
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

3

15. The System delivered its health care services through the Foundation, as parent, and its various subsidiaries. In addition to the Foundation, three not-for-profit subsidiaries filed for bankruptcy. They are the Hospital (which operated a 450-licensed bed acute care community hospital in Southeast Washington, D.C.), the Nursing Home (which operated a 150-licensed bed comprehensive care nursing home facility in Fort Washington, Maryland), and the Management Company (which provided administrative support to the System).

16. The Foundation, as the parent of the System, was governed by its Board of Trustees.

The Relationship between PWC as Independent Auditors and the Greater Southeast System

17. During the decade of the 1990's, the Board of Trustees and the Debtors relied upon PWC to perform their accounting and auditing services consistent with the applicable professional standards, including Generally Accepted Auditing Standards ("GAAS"). Under GAAS the independent auditors are required to determine that the financial statements are presented in accordance with Generally Accepted Accounting Principles ("GAAP"). They also relied upon PWC to fulfill its accounting and auditing responsibilities consistent with its national, regional, and local expertise in the health care auditing field.

18. PWC was in the 1990's, and remains today a leading independent auditor of Washington, DC health care providers. On information and belief, its audit clients include, or included, the Washington Hospital Center, Hospital for Sick Children, Georgetown University Medical Center, Sibley Memorial Hospital, and Howard University Hospital.

PWC Negligently Erred when It Stated that Its Reports of Independent Accountants Regarding the Financial Statements were Prepared in Compliance with Accounting Standards

CADEAUX & TAGLIERI, P. C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE., N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

19. PWC planned and performed annual audits of the financial statements of the

4

Foundation and the Hospital during the 1990's.  Based upon these audits, these certified public

accountants prepared Reports of Independent Auditors ("audit letters") for calendar years 1990

through 1997, inclusive, for the Foundation and the Hospital.

20.     Although PWC performed an audit in 1999 in respect to the calendar year 1998

financial statements of Greater Southeast, it inexplicably failed to issue audit letters for the 1998

financial statements.

21.     In its audit letters for years 1990 through 1997, PWC stated that it had conducted

these audits in accordance with Generally Accepted Auditing Standards (GAAS).  In the audit letters,

PWC acknowledged that GAAS required that these audits be planned, and be performed, in such a

way as to obtain reasonable assurance that the financial statements of management were free of

material misstatements.  PWC further acknowledged that as part of the audit process, it was required

to examine the evidence, assess the accounting principles, review significant estimates, and

otherwise evaluate the overall presentation of the System's financial statements.

22.     In these audit letters, PWC represented that its audits provided a reasonable basis for

its Opinions about the System's financial statements.  In its audit letters, PWC stated its Opinion that

the financial statements of the Foundation and of the Hospital presented fairly, in all material

respects, the financial position of the Foundation (including its subsidiaries) and the Hospital for

these years.

23.     Contrary to PWC's audit letters for years 1995 through 1997, inclusive, the audits of

the Foundation and the Hospital were not conducted in accordance with GAAS.  Moreover, the

financial statements of the Foundation and the Hospitals contained material misstatements and were

therefore not in conformity with GAAP.

CADEAUX & TAGLIERI, P. C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

5

PWC Committed Audit Malpractice by Confirming Materially Overstated Balance Sheets and Income Statements for Calendar Years 1995 through 1997

24.    As PWC knew, the Greater Southeast Healthcare Providers were generally not paid in cash at the time that they provided their services to their patients. Instead, the payments for these services were billed and paid for after the services were rendered. However, net revenue was recorded when the services were provided. In accounting terms, the net revenue was "accrued."

25.    As PWC also knew, these healthcare services were billed mostly to third party payors in the form of "charges." In most cases, these "charges" exceeded the actual amounts which the third parties were obligated to pay for these services. The billing of "charges" in excess of anticipated cash receipts for healthcare services was, and is, an established practice in the healthcare field.

26.    Because the anticipated payments corresponding to these "charges" of the Greater Southeast Healthcare Providers were accrued, it was important that the patient accounts receivable balances accurately reflect how much cash would ultimately be received, or in accounting terms, "realized," in respect to these services. To the extent that these accounts receivable balances were overstated, or, in accounting terms, not presented at "net realizable value," in the financial statements, they gave the Board of Trustees and the Debtors a falsely positive picture of the System's financial position.

27.    PWC negligently breached its professional audit responsibilities in years 1995 through 1997 when auditing accounts receivable balances in the financial statements which were materially misleading. In this connection, PWC failed to apprise Greater Southeast of the fact that these balances were materially misstated. Had PWC done this, these balances would either have had to been adjusted on the audited financial statements, or the independent auditors would have been

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

6

required to note exceptions, or, in accounting terms, "qualifications," to the financial statements.

28.    PWC committed audit malpractice in this regard in its failure to appropriately study and test the System's internal controls with respect to the patient accounts receivable and net patient service revenue. As PWC well knew, accounts receivable balances need to be reported as "net realizable balances." It was, and is well understood within the audit specialty for health care entities that the value of accounts receivable need to be adjusted to reflect their collectability.

29.    Had PWC, an experienced auditor of healthcare entities, performed appropriate audit procedures within the standards of professional care, the net patient accounts receivable balances of the debtors would have been valuated appropriately at the end of calendar years 1995, 1996, and 1997. Such appropriate audit valuations by PWC would have determined that the total amounts which would be realized were significantly less than the net patient accounts receivable balances stated on the balance sheets of the Foundation. This determination would in turn have required that net income for years 1995 through 1997 be correspondingly reduced by increasing the provision for bad debt and reducing net patient service revenues. Instead, PWC negligently performed these audits in these material respects.

30.    During the period covered by the Complaint, it was well accepted within the audit profession that net patient accounts receivable balances are almost always "material." The reason for the "materiality" of these accounts receivable balances was, or should have been, well understood by PWC, an experienced healthcare auditor nationally and in the District of Columbia. While other current account balances such as cash and inventories (e.g. medical supplies) require bookkeeping scrutiny, the potential for materially misleading account balances for such accounts is far less than the potential for misleading material misstatements in the patient accounts receivable balances.

CADEAUX & TAGLIERI, P. C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 500
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

7·

31.    As was, or should have been, well understood by PWC at the time of its 1995-1997 audits, the net patient accounts receivable balances represented preliminary estimated values. Accordingly, if these accounts receivable balances were to be stated in terms of net realizable value, the balances required the highest level of appropriate scrutiny by the certified public accountants. Under established audit practice, the net realizable value of these accounts receivable balances should have been valuated to take into account internal controls,  underlying contractual arrangements, past collection history, and subsequent collection experience. PWC negligently failed to do this.

32.    Instead, PWC negligently permitted overstated accounts receivable balances which were materially misleading to appear in the Foundation's and the Hospital's financial statements for years 1995 through 1997. In turn, these material misstatements of the net patient accounts receivable balances resulted in material overstatements of operating income for those same years as a consequence of PWC's audit malpractice.

There Are Multiple Reasons Why these Material Misstatements Should Have Been Timely Detected by PWC

33.    There are multiple reasons why the PWC auditors should have readily determined at the time of its audits for calendar years 1995 through 1997 that the accounts receivable balances of the Greater Southeast entities were not appropriately valued  according to GAAP.

34.    First, PWC had a long history of auditing the Greater Southeast entities. Accordingly, the PWC auditors knew, or should have known, the business of its audit clients, and, more particularly, the contractual arrangements with, and the payment histories for the multiple third party payors for services rendered by Greater Southeast. PWC was, or should have been, familiar with the

CADEAUX & TAGLIERI, P. C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE., N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5687

history, setting, and changing circumstances in respect to the payments for the services rendered by Washington D.C. area healthcare entities.

35.    Second, PWC was responsible for audit oversight in respect to the Greater Southeast System's 1993 debt financing in the form of $49,885,000 in revenue bonds.  Specifically, PWC was required under the Master Trust Indenture to perform annual reviews under multiple provisions of the master indenture to determine expressly whether the Obligated Group members (namely the Greater Southeast System) had complied with their obligations under the Master Trust Indenture.

36.    PWC negligently failed to provide the timely notice required under the Master Trust Indenture that the Obligated Group Members, on information and belief, had failed the applicable debt service covenant ratios for 1996 and thereafter.  Under the Master Trust Indenture, such breaches would have resulted in the retention of a Management Consultant to conduct a study of the Greater Southeast System and make the recommendations required to return the System to compliance with the various covenant ratios.

37.    Third, the sale of a substantial number of accounts receivable balances to a commercial factor in early 1997 should have underscored the fact that the Debtors' accounts receivable balances were chronically overstated.  In April 27, 1997, DAIWA Healthco-2 LLC ("DAIWA") purchased certain patient accounts receivables from the Hospital.  PWC was consulted by the Debtors in respect to this transaction and reviewed the terms of the transaction.  The net carrying value of the accounts receivables not purchased by DAIWA totaled over $16 million.  On information and belief, almost none of this $16 million remaining balance was ever collected by the Hospital.

CADIEUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 900
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

38.    PWC negligently failed to take into account in its audits of Greater Southeast the due

9

diligence evaluations of the Hospital's accounts receivable balances performed by DAIWA. DAIWA chose to purchase only those accounts receivable it found to be collectible, namely account balances aged 150 days or less. The accounts receivable purchased by DAIWA totaled approximately $14 million.

39.    Based upon DAIWA's decision not to purchase the Hospital's old and long outstanding accounts receivable which DAIWA found to be uncollectible, PWC should have reevaluated the net patient accounts receivable in 1996 and 1997 audited financial statements. PWC negligently failed to do so. The accounts receivable which DAIWA declined to purchase continued to be materially misstated in the Greater Southeast audited financial statements.

### PWC's Chronic Pattern of Audit Malpractice Violated Established Auditing Standards

40.    PWC performed the subject audits in violation of established auditing standards set by the America Institute of Certified Public Accountants (AICPA).

41.    In calendar years 1995, 1996, and 1997, PWC negligently violated the professional standards of care, including the following provisions of GAAS:

a.    The third general standard, which requires due professional care to be exercised in the performance of the audit and preparation of the report. (AICPA Statement on Auditing Standards ("SAS") #1 and #41).

b.    The third standard of field work which requires the auditor to obtain sufficient competent evidential matter through inspection, observation, inquiries and confirmations to afford a reasonable basis for an opinion regarding the financial statements under audit. (SAS #31, #48, and #80).

c.    The first, third and fourth standards of reporting, in that the subject financial

CADEAUX & TAGLIERI, P. C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

10

statements were not presented in accordance with generally accepted accounting principles. (SAS #1, #26, #32, #35, #62, and #72).

d.    SAS #82 which requires an auditor to design the audit to provide reasonable assurance of detecting errors and irregularities in the financial statements.

e.    AICPA Accounting Research Bulletin No. 43, Chapter 3, which requires that accounts receivable not be stated in excess of estimated recovery value.

f.    SAS #34, which requires that one must disclose material uncertainty concerning the recoverability and classification of recorded asset amounts.

PWC's Negligently Failed Either to Identify, or "Qualify," Material Misstatements in the 1995 Through 1997 Audited Financial Statements

42.    In the Foundation's 1995 audited financial statement, patient accounts receivable, net of allowances for uncollectible accounts, was $42,985, 000. In 1996, it totaled $45,932, 000, and in 1997 $30,373,000. The reduction in the accounts receivable balance between 1996 and 1997 was accomplished by the sale of the "good" patient accounts receivable to DAIWA in the amount of $14,327,000.

43.    These patient accounts receivable for years 1995 through 1997, at a minimum, were materially misstated on the Foundation's audited financial statements. PWC negligently failed to determine in its audits that these particular balances were materially misstated. PWC negligently failed either to cause corrections to be made to the audited financial statements, or to qualify in its audits letters for these years in respect to these material misstatements.

44.    The "settlement amounts" due from third party payors (Medicare and Medicaid) also were overstated. In 1995, this account balance totaled $7,707,000, in 1996 $11,506,000, and in 1997

CADEAUX & TAGLIERI, P. C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 500
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

11

$18,436,000.

45.     The settlement amounts for 1996 and 1997, at a minimum, were materially misstated on the audited Financial Statements.  PWC negligently failed to determine in its audits that these particular balances were materially misstated.  PWC negligently failed either to cause corrections to be made to the audited financial statements, or to qualify in its audits letters for these years in respect to these material misstatements.

46.     In 1999, Arthur Anderson and Company asked Greater Southeast management to prepare A Reconciliation of Excess of Expenses over Revenues for the years ended December 31, 1998 and 1999.  This Reconciliation showed that of the $68 million in losses for 1998, $46 million resulted from non-recurring items.

47.     On information and belief, the majority of this $46 million in non-recurring losses related to years earlier than 1998.  Of the $46 million in non-recurring losses, approximately $27 million related to the previously discussed patient accounts receivable and settlement amounts due from Medicare and Medicaid which were materially misstated on the audited financial statements for Greater Southeast through 1997.

48.     On information and belief, had these accounts receivable balances been appropriately valued in the 1995, 1996, and 1997 audited financial statements, net operating income would have been correspondingly reduced for these years.  Instead, because of PWC's continuing audit malpractice, net operating income was materially overstated in the approximate amount of $27 million on the audited Financial Statements for years prior to 1998.

49.     Because of PWC's persistent failures to appropriately audit and valuate net patient accounts receivable and the settlement amounts due from Medicare/Medicaid for years 1995, 1996

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
Fax (202) 775-5697

and 1997, the Foundation did not discover the nature and the severity of its financial situation until early in 1999. On May 27, 1999, the Foundation and the three debtor subsidiaries filed for bankruptcy.

50.    Had PWC complied with its professional standards of care in respect to its audits, the Foundation's Board of Trustees would have had the benefit of timely reports as provided under the Master Trust Indenture by Management Consultants whose assignment would have been to recommend actions which Greater Southeast would have taken to avoid insolvency and bankruptcy.

51.    Had PWC complied with its professional standards of care in respect to its audits, the Board of Trustees would have been timely alerted by appropriately audited financial statements to the fact that the System was performing significantly worse than was presented in the negligently audited financial statements for years prior to 1998. The Board of Trustees would have taken actions to avoid insolvency and bankruptcy.

### COUNT I: PROFESSIONAL NEGLIGENCE/AUDIT MALPRACTICE

52.    Plaintiff hereby incorporates ¶¶ 1-51 with the same force and effect as if fully set out herein.

53.    The Greater Southeast Health Care Providers engaged PWC as their certified public accountants to provide accounting and auditing services for calendar years 1995 through 1999 within the professional standards of care. In performing its audit and accounting services for Greater Southeast, PWC had a duty to exercise appropriate care and competence within the professional standards of care. The professional standards of care for PWC included its national, regional, and local expertise in the health care auditing field.

54.    PWC negligently failed to exercise appropriate care and competence in the planning,

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE. N.W.
SUITE 900
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

performance, and review of its audits of the System in the years 1995 through 1999 and in associated

accounting and audit assignments. Among other things, PWC negligently failed to determine that

the Greater Southeast financial statements contained materially misleading statements for calendar

years 1995 through 1997.

55.    Had PWC performed its audit and other accounting work within the applicable

professional standards, including GAAS, it would have determined that the financial statements were

materially misstated. Such timely determination would have enabled the Board of Trustees to take

timely and appropriate remedial measures to avoid insolvency and bankruptcy.

56.    Instead, as a proximate result of PWC's audit malpractice, the Foundation

experienced insolvency and bankruptcy.

57.    The Greater Southeast Health Care Providers sustained compensatory damages

proximately caused PWC's audit malpractice. These damages are continuing. They total

approximately seventy million dollars ($70,000,000), exclusive of pre-judgment interest, the costs

of suit, and such other and further relief as the Court may determine appropriate.

### COUNT II: BREACH OF CONTRACT

58.    Plaintiff herein incorporates ¶¶ 1-57 with the same force and effect as if fully set out

herein.

59.    The Greater Southeast Health Care Providers engaged PWC as their certified public

accountants to provide accounting and auditing services for calendar years 1995 through 1999 within

the professional standards of care.

60.    In years 1995 through 1998, and on information and belief in 1999, PWC and the

Foundation executed engagement letters which specified scopes of audit work and terms of

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE., N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 778-5697

14

compensation for the certified public accountants. These engagement letters provided that PWC's audit and other accounting work would be performed in compliance with the applicable professional standards of care, including GAAS. PWC was paid by Greater Southeast for this audit work

61.    As set forth more fully above, PWC breached its contractual obligations for each of these years. PWC failed to perform its audit and associated work for the Foundation in compliance with the applicable professional standards, including GAAS. PWC breached its contractual duties in the planning, performance, and review of each of the these audits, rendering audit services which failed to meet the professional standards of care applicable to these professional engagements.

62.    Had PWC performed these audit in compliance with GAAS, it would have determined that the financial statements were materially misstated. Such timely determination would have enabled the Board of Trustees to take timely and appropriate remedial measures to avoid insolvency and bankruptcy.

63.    Instead, as a proximate result of PWC's breaches of contract, the Greater Southeast Health Care Providers experienced insolvency and bankruptcy.

64.    The Greater Southeast Health Care Providers suffered compensatory damages proximately caused by these breaches of contract. Such damages are continuing. They total approximately seventy million dollars ($70,000,000), exclusive of pre-judgment interest, the costs of suit, and such other and further relief as the Court may determine appropriate.

WHEREFORE, Plaintiff, The Plan Committee, hereby demands judgment against the defendant PriceWaterhouse Coopers, LLP as follows:

CADEAUX & TAGLIERI, P. C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE., N.W.
SUITE 600
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

As to Count I:    Compensatory Damages of not less than seventy million dollars ($70,000,000) and pre-judgment interest, costs of suit, and such other and further relief as the Court

15

may deem appropriate;

As to Count II:    Compensatory Damages of not less than seventy million dollars ($70,000,000) and pre-judgment interest, costs of suit, and such other and further relief as the Court may deem appropriate.

Respectfully submitted,

CADEAUX & TAGLIERI, P.C.

Henry M. Lloyd        # 184291
1100 Connecticut Avenue, N.W.
Suite 800
Washington, D.C. 20036
Telephone (202) 785-3373

Attorneys for the Plaintiff

OF COUNSEL:
Berliner, Corcoran & Rowe, L.L.P.
Thomas G. Corcoran, Jr.  #143693
1101 17th Street, N.W.
Suite 1100
Washington, D.C. 20036
Telephone (202) 293-5555

JURY TRIAL DEMAND

The Plaintiff demands a jury trial as to all matters triable by a jury under the Seventh Amendment or otherwise.

Henry M. Lloyd

CADEAUX & TAGLIERI, P.C.
ATTORNEYS AT LAW
1100 CONNECTICUT AVE., N.W.
SUITE 800
WASHINGTON, D.C. 20036
(202) 785-3373
FAX (202) 775-5697

Exhibit B

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE PLAN COMMITTEE, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 02-01487 (TFH) |
| | ) | |
| PRICEWATERHOUSECOOPERS LLP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## ORDER

In accordance with the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's Motion to Dismiss [02-CV-1487 Doc. No. #29] is GRANTED in its entirety. Accordingly, it is further

**ORDERED** that the Plaintiffs' case shall be dismissed without prejudice.

**SO ORDERED.**

April 20, 2007

_____/s/_____
Thomas F. Hogan
Chief Judge

Exhibit C

CLOSED, JURY, TYPE-E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:02-cv-01487-TFH

PLAN COMMITTEE v. PRICEWATERHOUSE
COOPERS, LLP
Assigned to: Chief Judge Thomas F. Hogan
Demand: $70,000,000
Cause: 28:0157(c)(1) Findings, Concl. & Proposed
Judgment

Date Filed: 07/26/2002
Date Terminated: 04/20/2007
Jury Demand: Plaintiff
Nature of Suit: 890 Other Statutory
Actions
Jurisdiction: Federal Question

## Plaintiff

**PLAN COMMITTEE**

represented by **Henry M. Lloyd**
CADEAUX & TAGLIERI, PC
1100 Connecticut Avenue, NW
Suite 800
Washington, DC 20036
(202) 785-3373
Fax: (202) 775-5697
Email: henry@cadotag.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas G. Corcoran, Jr.**
BERLINER,CORCORAN & ROWE
LLP
1101 17th Street, NW
Suite 1100
Washington, DC 20036
(202) 293-5555
Fax: (202) 293-9035
Email: tgc@bcr-dc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Alexander Craig Vincent**
BERLINER, CORCORAN & ROWE,
L.L.P.
1101 17th Street, NW
Suite 1100
Washington, DC 20036-4798
(301) 230-5200
Fax: (301) 230-2891
Email: avincent@srgpe.com

*TERMINATED: 07/21/2006*
*ATTORNEY TO BE NOTICED*

**Laina C. Wilk**
BERLINER, CORCORAN & ROWE,
LLP
1101 17th Street, NW
Suite 1100
Washington, DC 20036
(202) 293-5555
Email: lcw@bcr-dc.com
*ATTORNEY TO BE NOTICED*

## Plaintiff

**ELLIOTT R. WOLFF**
*as Non-Bondholder Representative on*
*the Plan Committee and as Trustee of*
*the Greater Southest Litigation*
*Liquidating Trust*

represented by **Alexander Craig Vincent**
(See above for address)
*TERMINATED: 07/21/2006*
*ATTORNEY TO BE NOTICED*

**Henry M. Lloyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laina C. Wilk**
(See above for address)
*ATTORNEY TO BE NOTICED*

## Plaintiff

**STANLEY ZUPNIK**
*as Non-Bondholder Representative on*
*the Plan Committee and as Trustee of*
*the Greater Southeast Litigation*
*Liquidating Trust*

represented by **Alexander Craig Vincent**
(See above for address)
*TERMINATED: 07/21/2006*
*ATTORNEY TO BE NOTICED*

**Henry M. Lloyd**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Laina C. Wilk**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**PRICEWATERHOUSE COOPERS,**
**LLP**
*a Delaware Limited Liability*
*Partnership*

represented by **David M. Maria**
ARNOLD & PORTER LLP
555 12th Street, NW
Washington, DC 20004
(202) 942-6305

Fax: (202) 942-5999
Email: david.maria@aporter.com
*TERMINATED: 04/20/2007*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth Jay Kelhoffer**
U. S. DEPARTMENT OF JUSTICE
Civil Division
Federal Programs Branch
20 Massachusetts Avenue, NW
Room 7324
Washington, DC 20530
(202) 514-4964
Fax: (202) 616-8460
Email: Elizabeth.Kelhoffer@usdoj.gov
*TERMINATED: 04/05/2004*
*LEAD ATTORNEY*

**Jay Kelly Wright**
ARNOLD & PORTER
555 12th Street, NW
Washington, DC 20004-1206
(202) 942-5742
Fax: (202) 942-5999
Email: jay_kelly_wright@aporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Leslie Wharton**
ARNOLD & PORTER
555 12th Street NW
Washington, DC 20004-1206
(202) 942-5105
Fax: (202) 942-5999
Email: Leslie_Wharton@aporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Richard M. Lucas**
ARNOLD & PORTER LLP
555 Twelfth Street NW
Washington, DC 20004
(202) 942-5554
Fax: (202) 942-5999
Email: richard.lucas@aporter.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robyn Meredith Holtzman**

ARNOLD & PORTER, LLP
555 12th Street, NW
Washington, DC 20004-1206
(202) 942-5000
Fax: (202) 942-5999
Email: robyn.holtzman@aporter.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/15/2007 | 46 | NOTICE *of Praecipe re 41 43 MOTION to Vacate or Modify Judgment and For Leave to File Second Amended Complaint* by PLAN COMMITTEE (Attachments: # 1 Attachment 1 - Proposed Second Amended Complaint# 2 Attachment 2 - Transcript# 3 Attachment 3 - Order)(Wilk, Laina) Modified on 6/18/2007 (lc, ). (Entered: 06/15/2007) |
| 06/12/2007 | 45 | SURREPLY to re 41 MOTION to Vacate *or Modify Judgment and For Leave to File Second Amended Complaint* filed by PRICEWATERHOUSE COOPERS, LLP. (Holtzman, Robyn) (Entered: 06/12/2007) |
| 05/29/2007 | | Set/Reset Deadlines: Defendant's Surreply due by 6/12/2007. (lctfh4) (Entered: 05/29/2007) |
| 05/29/2007 | | MINUTE ORDER directing Defendant PRICEWATERHOUSE COOPERS, LLP to file a surreply to the reply filed by Plaintiffs PLAN COMMITTEE, et al. [dkt. #44]. Defendant's surreply shall be filed on or before June 12, 2007. Signed by Chief Judge Thomas F. Hogan on 5/29/2007. (lctfh4) (Entered: 05/29/2007) |
| 05/24/2007 | 44 | REPLY to opposition to motion re 41 MOTION to Vacate *or Modify Judgment and For Leave to File Second Amended Complaint* filed by PLAN COMMITTEE. (Wilk, Laina) (Entered: 05/24/2007) |
| 05/14/2007 | 42 | Memorandum in opposition to re 41 MOTION to Vacate *or Modify Judgment and 43 For Leave to File Second Amended Complaint* filed by PRICEWATERHOUSE COOPERS, LLP. (Wilson, Joshua) Modified on 5/15/2007 (lc, ). (Entered: 05/14/2007) |
| 05/03/2007 | 43 | MOTION for Leave to File Second Amended Complaint by PLAN COMMITTEE (to view document, please see docket entry 41 ). (lc, ) (Entered: 05/15/2007) |
| 05/03/2007 | 41 | MOTION to Vacate *or Modify Judgment and For Leave to File Second Amended Complaint* by PLAN COMMITTEE (Attachments: # 1 Text of Proposed Order)(Corcoran, Thomas) (Entered: 05/03/2007) |
| 04/20/2007 | 40 | ORDER granting 29 Motion to Dismiss. Signed by Chief Judge Thomas F. Hogan on 04/20/07. (lctfh4) (Entered: 04/20/2007) |
| 04/20/2007 | 39 | MEMORANDUM AND OPINION granting defendant's motion to dismiss the amended complaint. Signed by Chief Judge Thomas F. |

| | | Hogan on 04/20/07. (lctfh4) (Entered: 04/20/2007) |
|---|---|---|
| 11/30/2006 | | Case Reassigned to Chief Judge Thomas F. Hogan. Judge Richard W. Roberts no longer assigned to the case. (jeb, ) (Entered: 11/30/2006) |
| 07/21/2006 | 38 | NOTICE OF WITHDRAWAL OF APPEARANCE as to PLAN COMMITTEE, ELLIOTT R. WOLFF, STANLEY ZUPNIK. Attorney Alexander Craig Vincent terminated. (Vincent, Alexander) (Entered: 07/21/2006) |
| 12/16/2005 | 37 | REPLY to opposition to motion re 29 *Dismissal of the Amended Complaint* filed by PRICEWATERHOUSE COOPERS, LLP. (Lucas, Richard) (Entered: 12/16/2005) |
| 12/09/2005 | 36 | STIPULATION *AND ORDER EXTENDING TIME* by PRICEWATERHOUSE COOPERS, LLP. (Lucas, Richard) (Entered: 12/09/2005) |
| 12/01/2005 | 35 | STIPULATION *AND ORDER EXTENDING TIME* by PRICEWATERHOUSE COOPERS, LLP. (Lucas, Richard) (Entered: 12/01/2005) |
| 11/15/2005 | 34 | Memorandum in opposition to motion re 29 *to Dismiss Amended Complaint* filed by PLAN COMMITTEE, ELLIOTT R. WOLFF, STANLEY ZUPNIK. (Attachments: # 1 Text of Proposed Order Denying Defendant's Motion to Dismiss Amended Complaint# 2 Exhibit 1 to Plaintiffs' Opposition to Defendant's Motion to Dismiss Amended Complaint)(Vincent, Alexander) (Entered: 11/15/2005) |
| 11/15/2005 | | NOTICE OF CORRECTED DOCKET ENTRY: re 33 Memorandum in Opposition, was entered in error and counsel was instructed to refile corrected version. (jf, ) (Entered: 11/15/2005) |
| 11/14/2005 | 33 | ENTERED IN ERROR.....Memorandum in opposition to motion re 29 *to Dismiss Amended Complaint* filed by PLAN COMMITTEE, ELLIOTT R. WOLFF, STANLEY ZUPNIK. (Attachments: # 1 Text of Proposed Order Denying Defendant's Motion to Dismiss Amended Complaint# 2 Exhibit 1 to Plaintiffs' Opposition to Defendant's Motion to Dismiss Amended Complaint)(Vincent, Alexander) Modified on 11/15/2005 (jf, ). (Entered: 11/14/2005) |
| 11/11/2005 | 32 | NOTICE of Appearance by Laina C. Wilk on behalf of all plaintiffs (Wilk, Laina) (Entered: 11/11/2005) |
| 11/11/2005 | 31 | NOTICE of Appearance by Alexander Craig Vincent on behalf of all plaintiffs (Vincent, Alexander) (Entered: 11/11/2005) |
| 10/21/2005 | 30 | STIPULATION *and Order Extending Parties Time to File Opposition and Reply Regarding Motion to Dismiss* by PLAN COMMITTEE. (Lloyd, Henry) (Entered: 10/21/2005) |
| 10/14/2005 | 29 | MOTION to Dismiss *and Memorandum in Support* by PRICEWATERHOUSE COOPERS, LLP. (Attachments: # 1 Text of Proposed Order)(Holtzman, Robyn) (Entered: 10/14/2005) |

| 10/11/2005 | 28 | NOTICE of Appearance by Robyn Meredith Holtzman on behalf of PRICEWATERHOUSE COOPERS, LLP (Holtzman, Robyn) (Entered: 10/11/2005) |
| 09/29/2005 | 27 | AMENDED COMPLAINT against PRICEWATERHOUSE COOPERS, LLPfiled by ELLIOTT R. WOLFF, STANLEY ZUPNIK, PLAN COMMITTEE.(nmw, ) (Entered: 10/03/2005) |
| 08/31/2005 | 26 | MEMORANDUM OPINION AND ORDER denying defendant's motion 12 to dismiss. Signed by Judge Richard W. Roberts on 8/31/2005. (lcrwr3) (Entered: 08/31/2005) |
| 06/01/2005 | 25 | RESPONSE *Plaintiff's Reply to the Defendant PricewaterhouseCoopers' Opposition to 23 Plaintiff's Notice of the Need for an Expedited Ruling on the Pending Motion to Dismiss Pursuant to Rule 1 of the Federal Rules of Civil Procedure* filed by PLAN COMMITTEE. (Lloyd, Henry) Modified on 6/2/2005 (lc, ). (Entered: 06/01/2005) |
| 05/27/2005 | 24 | RESPONSE to 23 *"Plaintiff's Notice of the Need for an Expedited Ruling"* filed by PRICEWATERHOUSE COOPERS, LLP. (Lucas, Richard) (Entered: 05/27/2005) |
| 05/20/2005 | 23 | NOTICE *OF THE NEED FOR AN EXPEDITED RULING ON THE PENDING MOTION TO DISMISS PURSUANT TO RULE 1 OF THE FEDERAL RULES OF CIVIL PROCEDURE* by PLAN COMMITTEE (Lloyd, Henry) (Entered: 05/20/2005) |
| 04/05/2004 | 22 | ORDER granting 21 Motion to Withdraw as Attorney. Attorney Elizabeth J. Kelhoffer terminated . Signed by Judge Richard W. Roberts on 4/2/04. (zlin, ) (Entered: 04/05/2004) |
| 03/30/2004 | 21 | MOTION to Withdraw as Attorney by PRICEWATERHOUSE COOPERS, LLP. (Kelhoffer, Elizabeth) (Entered: 03/30/2004) |
| 02/18/2003 | 20 | REPLY in support of motion re 12 *Motion to Dismiss* filed by PRICEWATERHOUSE COOPERS, LLP. (Attachments: # 1 Appendix A)(Maria, David) (Entered: 02/18/2003) |
| 12/16/2002 | 19 | Memorandum in opposition to motion re 12 filed by PLAN COMMITTEE. (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6)(Corcoran, Thomas) (Entered: 12/16/2002) |
| 11/27/2002 | 18 | STIPULATION *and Order Extending Plaintiff's Time to Respond to Motion to Dismiss* by PLAN COMMITTEE. (Corcoran, Thomas) (Entered: 11/27/2002) |
| 10/24/2002 |  | Minute Entry: Plaintiff's response to defendant's motion to dismiss due by 12/2/2002.(TDR) (Entered: 10/24/2002) |
| 10/16/2002 | 17 | STIPULATION *Amended* by PLAN COMMITTEE. (Corcoran, Thomas) (Entered: 10/16/2002) |
| 10/15/2002 | 16 | ERRATA *Praecipe Substituting Appendix B to Defendant's Motion to Dismiss* by PRICEWATERHOUSE COOPERS, LLP. (Attachments: # 1 |

| | | Appendix B)(Lucas, Richard) (Entered: 10/15/2002) |
|---|---|---|
| 10/15/2002 | 15 | STIPULATION re 12 by PLAN COMMITTEE. (Corcoran, Thomas) (Entered: 10/15/2002) |
| 10/15/2002 | | Minute Entry: Motion Authorizing Substitution of Appendix 14 granted and terminated. Defendant may file by praecipe a substitute Appendix B to its Motion to Dismiss and Attachment # 2 to Docket Entry No. 10 and Attachment # 2 to Docket Entry No. 12 shall be removed from the ECF System by the Clerk. (TDR) (Entered: 10/15/2002) |
| 10/09/2002 | 14 | Consent MOTION Authorizing Substitution of Appendix to Motion to Dismiss re 10 , 12 by PRICEWATERHOUSE COOPERS, LLP. (Lucas, Richard) Modified on 10/10/2002 (nmr, ). (Entered: 10/09/2002) |
| 10/07/2002 | 13 | LCvR 26.1 - CERTIFICATE OF DISCLOSURE of Corporate Affiliations and Financial Interests (Maria, David) (Entered: 10/07/2002) |
| 10/07/2002 | 12 | MOTION to Dismiss *Complaint* by PRICEWATERHOUSE COOPERS, LLP. (Attachments: # 1 Appendix A# Appendix B# 3 Appendix C# 4 Appendix E# 6 Appendix F# 7 Proposed Order)(Maria, David) (Entered: 10/07/2002) |
| 10/05/2002 | 11 | ATTORNEY APPEARANCE. (Wharton, Leslie) (Entered: 10/05/2002) |
| 10/04/2002 | 10 | ENTERED IN ERROR.....MOTION to Dismiss --*Supporting Memorandum of Points and Authorities* by PRICEWATERHOUSE COOPERS, LLP. (Attachments: # 1 Exhibit Appendix A# Exhibit Appendix B# 3 Exhibit Appendix C# 4 Exhibit Appendix D# 5 Exhibit Appendix E# 6 Exhibit Appendix F)(Maria, David) Modified on 10/7/2002 (nmr, ). (Entered: 10/04/2002) |
| 10/04/2002 | 9 | ENTERED IN ERROR.....MOTION to Dismiss *the Complaint* by PRICEWATERHOUSE COOPERS, LLP. (Attachments: # 1 Supplement LCvR 26.1 Certificate# 2 Supplement Proposed Order)(Maria, David) Modified on 10/7/2002 (nmr, ). (Entered: 10/04/2002) |
| 10/02/2002 | | Minute Entry: Parties' stipulation approved. Defendant's response to plaintiff's complaint due by 10/4/2002.(TDR) (Entered: 10/02/2002) |
| 09/27/2002 | 8 | ATTORNEY APPEARANCE. (Lucas, Richard) (Entered: 09/27/2002) |
| 09/26/2002 | 7 | STIPULATION *Extending Defendant's Time Four Additional Days to Move or Answer* by PRICEWATERHOUSE COOPERS, LLP. (Maria, David) (Entered: 09/26/2002) |
| 09/24/2002 | 6 | ATTORNEY APPEARANCE. (Kelhoffer, Elizabeth) (Entered: 09/24/2002) |
| 09/24/2002 | 5 | ATTORNEY APPEARANCE. (Maria, David) (Entered: 09/24/2002) |
| 08/27/2002 | | Minute Entry: Stipulation extending defendant's time to answer approved and terminated. Defendant's response to plaintiff's complaint due by 9/30/2002. (TDR) (Entered: 08/27/2002) |
| | | |

| 08/22/2002 | 4 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. PRICEWATERHOUSE COOPERS, LLP served on 7/30/2002, answer due 8/19/2002 (mpt, ) (Entered: 08/23/2002) |
| 08/13/2002 | 3 | ATTORNEY APPEARANCE. (Corcoran, Thomas) (Entered: 08/13/2002) |
| 08/12/2002 | 2 | STIPULATION re 1 *extending time to answer the complaint until 9/30/02* by PLAN COMMITTEE, PRICEWATERHOUSE COOPERS, LLP. (nmr, ) (Entered: 08/13/2002) |
| 07/26/2002 |   | SUMMONS (1) Issued as to PRICEWATERHOUSE COOPERS, LLP (nmr, ) (Entered: 07/29/2002) |
| 07/26/2002 | 1 | COMPLAINT against PRICEWATERHOUSE COOPERS, LLP ( Filing fee $150 ). Filed by PLAN COMMITTEE. (nmr, ) (Entered: 07/29/2002) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 02/19/2008 10:13:05 | | |
| **PACER Login:** mh0030 | **Client Code:** | |
| **Description:** Docket Report | **Search Criteria:** | 1:02-cv-01487-TFH |
| **Billable Pages:** 5 | **Cost:** | 0.40 |