UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVANTAGE HEALTHPLAN, INC. and ELLIOT R. WOLFF, | ) ) ) | |
| | ) | Civil Action No. 08-0166-CKK |
| Appellants, | ) | (Appeal) |
| | ) | |
| v. | ) | Bankruptcy No. 99-1159 |
| | ) | (Chapter 11) |
| PILLSBURY WINTHROP SHAW PITTMAN, LLP et al., | ) ) | |
| | ) | |
| Appellees. | ) | |

---

**APPELLANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION OF PILLSBURY TO STRIKE ELLIOT WOLFF AS "APPELLANT"**

TO THE HONORABLE COLLEEN KOLLAR-KOTELLY:

COMES NOW Advantage Healthplan Inc. ("Advantage") and Elliot R. Wolff as

Advantage Healthplan Inc.'s corporate representative on the Plan Committee (collectively,

"Appellants"), by and through counsel, Stinson Morrison Hecker LLP, and hereby submit this

Memorandum of Points and Authorities in Opposition to Motion to Strike Elliot Wolff as

"Appellant," as follows:

**BACKGROUND**

1.     The Plan Committee was formed on November 9, 2001, pursuant to the Order of

the Bankruptcy Court confirming the Debtors' Second Amended Joint Plan.  The Order also

approved the membership of Advantage Health Plan, Inc. as one of three original members of the

Plan Committee.

2.      The Restated and Ratified By-Laws of the Plan Committee represents, inter alia, that "Advantage Healthplan Inc. (represented by Elliot Wolff)" is one of the original members of the Plan Committee.   A copy of the By-Laws is attached as Exhibit A.

3.      Since the formation of the Plan Committee, Mr. Wolff, has served as Advantage's corporate representative and has acted to protect the interest of over 1500 unsecured creditors.

4.      This appeal is from two Orders of the Bankruptcy Court.  The first Order approved a settlement agreement, which had been entered into by the Plan Committee, without the consent of Mr. Wolff or Advantage, as required by the Plan Committee's by-laws.  The second Order struck Advantage Health Plan's objection to the Settlement Agreement.

5.      Mr. Wolff appealed those Orders in his capacity as a court-authorized fiduciary.

6.      On February 21, 2008, Pillsbury Winthrop Shaw Pittman LLP and Patrick J. Potter filed the Motion of Pillsbury to Strike Elliot Wolff as "Appellant." ("Motion to Strike").

7.      On February  26, 2008, the Plan Committee filed the Joinder of Appellee, the Plan Committee of the Greater Southeast Community Hospital Foundation, et al., with the Motion of Pillsbury to Strike Elliot Wolff as "Appellant."  ("Joinder")

## <u>MOTION TO STRIKE</u>

8.      The Motion to Strike and Joinder (collectively, the "Motion") provide no authority for the relief sought[1] but assert that "as a matter of law," Mr. Wolff should be removed as a party to this appeal. (Motion to Strike, ¶ 4).

9.      Specifically, the Motion contends that "[b]ecause Mr. Wolff, individually, did not appear or participate in the litigation giving rise to these appeals, and because he is not, individually, a creditor or member of the Plan Committee, and because he has no other direct,

---

[1] Neither the Motion to Strike nor the Joiner are accompanied by a statement of the specific points of law and authority that support the Motion, as required by Local Rule 7.

legally cognizable interest in this appeal," he should be removed "as a matter of law." (Motion to Strike, ¶ 4).

10    The Motion also argues that Mr. Wolff should be removed because he was not a party to the proceedings giving rise to two of the orders appealed from, the order approving the settlement and an order striking Advantage Health Plan's objections. (Motion, ¶ 2).

## ARGUMENT

### A.    Mr. Wolff has Standing to Appeal, as a Person Aggrieved.

Appeals from orders of the bankruptcy court are governed by 28 U.S.C. § 158 and Part VIII of the Federal Rules of Bankruptcy Procedure. Neither the current Bankruptcy Code nor the Rules define which litigants have standing to appeal. However, because earlier versions of the Bankruptcy Code[2] expressly limited appellate review to a "person aggrieved," courts have continued to so limit standing. *See e.g.*, *McGuirl v. White*, 86 F.3d 1232, 1234-1235 (D.C. Cir. 1996). Whether someone is a "person aggrieved is normally a question of fact for the district court." *Travelers Insurance Co. v. Porter*, 45 F.3d 737, 742 (3d Cir. 1995).

To be a person aggrieved, a party must show that it was directly and adversely affected pecuniarily by the order, or that the order diminished its property, increased its burdens or impaired its rights. *See e.g., Southern Pacific Transportation Co. v. Voluntary Purchasing Groups*, 227 B.R. 788 (Bankr. E.D. Tex. 1998) (internal quotations and citations omitted). Additionally, some courts require attendance at the bankruptcy court's hearing on the matter addressed in the order from which an appeal is sought. *Id.*

In this case, there has never been any doubt that Mr. Wolff has a right to object to the Bankruptcy Court's Orders. In fact, that right was specifically acknowledged at a hearing on December 14, 2007, at which neither Mr. Wolff nor any other representative of Advantage

---

[2] 11 U.S.C. §§ 101-1200 (1976) (repealed 1978).

Healthplan was present. After specifically noting Mr. Wolff's absence, the Bankruptcy Court

engaged in the following colloquy with Michael Lichtenstein, Esq., counsel for the Plan

Committee:

> THE COURT: ……Of course, if that's accurate then there's no harm in
> saying go ahead and notice up the settlement and, at least on this evidence, I find
> there was an agreement to file the settlement with the Court and notice it up to
> creditors for any possible objections—

> MR. LICHTENSTEIN:   And if anybody has a problem, let him –
> including Mr. Wolff, I suppose – let him go object.

(Transcript of Hearing, December 14, 2007, p. 19).  The relevant transcript pages are attached as

Exhibit B.  Counsel for Appellees was also present at that hearing but never raised any concerns

about Mr. Wolff's standing.  It is clear from the transcript, that on December 14, 2007, the parties

and the Bankruptcy Court contemplated that Mr. Wolff could properly object.  The Bankruptcy

Court also assumed that proper notice would be given to Mr. Wolff.   Because he was not

notified of the subsequent proceedings, Mr. Wolff was never able to enter the predicted

objection. Because, as the Court and parties agreed, Mr. Wolff had standing to object on

December 14, 2007, he became a "person aggrieved" when he was stripped of the ability to

object, without notice and an opportunity to be heard.

Mr. Wolf is also a "person aggrieved" because the Bankruptcy Court's Orders place him

personally in significant legal peril.  Mr. Wolff never approved the settlement as the

representative of Advantage Healthplan.   Upon learning that the Settlement had been approved,

Mr. Wolff had a fiduciary duty, as the representative to the Plan Committee, to the 1,500

unsecured creditors to follow through and find a forum to assert his objections.  He therefore

retained counsel and has determined that appellate review is the only available forum.  Failure to

proceed could constitute negligence resulting in legal action against Mr. Wolff and pecuniary

loss to him. As an example, if the general release of counsel was approved without proper notice, a creditor could assert a clam directly against Mr. Wolff, which, at the least, he would have to defend. Hence, he is obviously a "person aggrieved" with standing to appeal.

**B.     Mr. Wolff has Standing to Appeal as a Party in Interest.**

Although the Bankruptcy Code does not expressly address the issue of appellate standing, 11 U. S.C. § 1109(b) provides some guidance. *Southern Pacific*, 227 B.R. at 792. That provision, which governs the right to be heard in bankruptcy cases arising under Chapter 11, states:

> A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holder' committee, a creditor, an equity security holder, or any indenture trustee, may raise and appear and be hard on any issue in a case under this chapter [Chapter 11].[3]

Federal courts and leading commentators have taken the position that § 1109(b) is to be interpreted broadly in favor of giving parties in interest an opportunity to appear and be heard in proceedings affecting their interests. *Southern Pacific*, 227 B.R.at 793, n. 6. Furthermore, the plain language of that provision gives a Committee an expansive right of participation in the resolution of issues arising in bankruptcy cases. *Id.* at 792. However, in order to exercise those expansive rights, the Plan Committee must operate through the Plan Members. Without a concurrent right to appeal in the Plan Members, the rights of a committee are meaningless.

In this case, there can be no argument that Mr. Wolff is anything but an interested party. In fact, the record is replete with references to him. Most telling is the Response to the Emergency Renewed Motion of Shulman Rogers, Gandal, Pordy & Ecker, P.A. for Immediate Withdrawal as Counsel to the Plan Committee, or for Further Instructions ("Response"). A copy

---

[3] By use of the word "including" the Code is not limiting authorized parties to those listed. *See* S. Todd Brown, "Non-Pecuniary Interests and the Injudicious Limits of Appellate Standing in Bankruptcy," 59 Baylor L. Rev. 569, 580 (Fall 2007).

of the Response is attached as Exhibit C.   The Response, dated January 16, 2008, specifically

refers to an alleged  conflict between Mr. Wolff and the Plan Committee (Response, p. 2).  Of

greater significance is the admission that "Advantage (Wolff), as a creditor in the case, should be

entitled, subject to applicable law, to take the Appeal, and to do so at its/own expense."

(Response, p. 3).  Finally, the Response also argues that "[i]t would be absurd to conclude that

the Plan Committee and Movants agreed to obtain Bankruptcy Court approval of the Settlement

Agreement and not District Court or Circuit Court approval if necessary." (Response, p. 4).  It

would likewise be absurd to investigate the approval of the Settlement Agreement without

allowing the party who raised the issue to be heard in the District Court.

### C.  The Denial of Standing to Mr. Wolff will Impair the Integrity of the Bankruptcy Process.

Mr. Wolff should be accorded standing to appeal in this case because the Bankruptcy

Court's Order approved an alleged Settlement Agreement that had not been agreed to by one

member of the Plan Committee and, further, did so without proper notice.  The Court thereby

enabled the violation of the Plan Committee's By-Laws and in doing so may have undermined

the confidence of the creditors and the public in the bankruptcy process.  The Third Circuit has

acknowledged the importance of appellate standing "based on procedural due process concerns"

that implicated "the integrity of the bankruptcy court proceeding as a whole."  *Century Indemnity*

*Co. v. Congoleum Corp.*, 426 F.3d 675, 685 (3d Cir.  2005).

## <u>CONCLUSION</u>

The Motions include no authority for their position that Mr. Wolff lacks standing to

prosecute this appeal.  In fact, Mr. Wolff has standing as both a person aggrieved and an

interested party.  Furthermore, denying standing to Mr. Wolff will undermine the integrity of the

bankruptcy process and public confidence in the courts.   In order to preserve that integrity, this

Court should deny the Motion to Strike, which is nothing more than the next step in the ongoing attempt to muzzle the one party trying to protect the rights of all creditors.

WHEREFORE, Appellants respectfully request that the Court enter an Order:

A.    Denying the Motion of Pillsbury to Strike Elliot Wolff as "Appellant" and the Joinder of Appellee, the Plan Committee of the Greater Southeast Community Hospital Foundation, et al., with the Motion of Pillsbury to Strike Elliot Wolff as "Appellant"; and

B.    Granting such other and further relief as is just and proper.

Dated: March 3, 2008                          Respectfully submitted,

_/s/ Janet M. Nesse_____
Janet M. Nesse #358514
Lawrence P. Block # 452190
Stinson Morrison Hecker LLP
1150 18th Street, N.W., Suite 800
Washington, D.C. 20036
Tel. (202) 785-9100
*Counsel for Advantage Healthplan Inc. and*
*Elliot R. Wolff as Corporate Representative*
*on the Plan Committee*

Exhibit A

# RESTATED AND RATIFIED BY-LAWS OF THE PLAN COMMITTEE APPOINTED IN THE GREATER SOUTHEAST COMMUNITY HOSPITAL BANKRUPTCY CASES

## Preliminary Statement

The Plan Committee ("Committee") formed on November 9, 2001. Soon thereafter the Committee reviewed and considered draft by-laws. The Committee, following a reasonable review of its files, has been unable to locate any approved by-laws, and has located only a set of draft by-laws. Regardless, the Committee has conducted and continues to conduct its affairs in accordance with the By-Laws set forth below, which reflect the originally-approved by-laws. These By-Laws shall be (and shall be deemed) the original by-laws of the Committee and shall be (and shall be deemed) effective as of the Committee's formation.

## ARTICLE I
### Name

This Committee shall be known as the Plan Committee appointed in connection with In re Greater Southeast Community Hospital Foundation, Inc., et al., Case No. 99-1159 and is referred to in these By-Laws as the "Committee."

## ARTICLE II
### PURPOSE

The purpose of the Committee is delineated in the Debtors' Second Amended Joint Plan confirmed by the Bankruptcy Court by order entered on October 23, 2001.

## ARTICLE III
### MEMBERSHIP

Members. The original members of the Committee ("Members") are Eaton Vance Management (represented by Craig Brandon), Advantage Healthplan Inc. (represented by Elliot Wolff), and Welcome Homes, Inc. (represented by Stanley Zupnik). Except as provided herein, each Member shall have one vote.

Representatives. Any Member may designate a representative and alternate representatives to attend and participate in Committee meetings, provided such representative and alternate are employees or relatives of, or attorneys or attorneys-in-fact for, the Member and such designation is made to Thomas Catliota, or his successor, (the "Plan Agent") in writing (including by electronic means) prior to the relevant meeting. An alternate shall be deemed a Member's representative for all purposes of the meetings in the absence of the primary representative.

1

Proxies. A Member may, by written (including electronic) proxy, authorize any other Member (other than an ex-officio member) to vote on its behalf and in its absence with respect to any specific issue or all matters.

Resignation. Members of the Committee may resign, with or without cause, from the Committee. A Member resigning from the Committee shall give written (which may include electronic) notice of such resignation to the Plan Agent and the other Members. Resignation is effective as of the receipt of such notice by the Plan Agent and other Members. If a Member resigns or is removed from the Committee, the remaining Committee Members may in their discretion appoint a substitute member for the resigned Member (but no substitute appointment shall be required). During the period after the resignation or removal and prior to any appointment of a substitute, the membership of the Committee shall consist of those Members remaining after the resignation. Notwithstanding anything to the contrary herein or under any otherwise applicable law, there shall be only one Plan Committee and neither the resignation/removal nor the substitution/addition of Members shall result in either the dissolution or the creation of a new/different Plan Committee. Moreover, mere changes to the number and/or composition of the Plan Committee's Members shall in no way affect the assets of the Plan Committee.

Removal. A majority of Members may petition the United States Bankruptcy Court for the District of Columbia to remove any Member for cause. The Bankruptcy Court shall decide the matter (and any necessary related matter) and such decision shall be final.

## ARTICLE IV
## Meetings

Regular Meetings. Regular meetings may be proposed by any Member or the Plan Agent and will be held from time to time on dates and at locations designated by the Plan Agent. Announcements of the date, time, and place, if appropriate, of regular meetings shall be made (i) orally, by the Plan Agent, at the prior meeting, and confirmed in writing by counsel for the Committee or (ii) by mail, overnight mail, telecopy, e-mail or hand delivery by the Plan Agent.

Special Meetings. Special meetings may be called by two Members of the Committee on at least twenty four (24) hours prior notice by telephone, hand delivery, e-mail or facsimile to each Member, provided, however, that in an emergency, the person requesting the meeting may do so on such shorter notice as is reasonable.

Conference Calls. Meetings shall be held by telephone conference call whenever possible or, if necessary, in person at such place as is designated by the Plan Agent.

Agenda. To the extent possible, matters shall be presented to the Committee upon written agenda prepared or approved by the Plan Agent with the assistance of Committee professionals and transmitted to the Members not less than 24 hours prior to Committee meeting. However, any Member at any time may bring any matter before the Committee for its attention.

Adjournment. A majority of the Members present, whether or not a quorum is present, may adjourn any meeting of the Committee or a subcommittee to another time and place. If a meeting is adjourned for less than twenty-four hours, no notice of the next meeting need be given to absent Members. If a meeting is adjourned for more than twenty-four hours, reasonable notice of the time and place of the next meeting shall be given to all Members who were not present at the time of the adjournment.

## ARTICLE VI
## ACTION BY COMMITTEE

Quorum. Unless otherwise provided herein, no meeting shall be held unless all Members of the Committee (or their representatives as provided herein) are present at the beginning of the meeting.

Majority Vote. Except with respect to Litigation Decisions (defined below), every act or decision done or made by a majority of the voting Members of a meeting (including proxies but excluding abstentions) duly held at which a quorum is present shall constitute the act of the Committee. Every act or decision that requires a majority vote of the Committee requires that a majority of the voting Members of a meeting (including proxies but excluding abstentions) duly held at which a quorum is present vote in favor of the act or decision. Upon the request of a Member votes shall be by secret ballot.

Unanimous Consent. Any action that is required to be taken, or that may be taken, at a meeting of Members may be taken without a meeting if consent in writing (including by electronic means), setting forth the action so taken, is provided by all of the Members. Such consent in writing shall have the same force and effect as a unanimous vote of the Committee.

Litigation Decision. With respect to decisions regarding pursuing Litigation (as defined in the First Amended Terms of Agreement by and among The Bank of New York, Eaton Vance Management and Municipal High Income Fund, and the Official Committee of Unsecured Creditors of The Greater Southeast Community Hospital Foundation, Inc.), including commencement, continuation, direction and settlement thereof (a "Litigation Decision"), the vote of Eaton Vance Management shall be equal to the collective votes of the other Members of the Committee. In the event of a tied vote with regard to a Litigation Decision, the provisions of section III.P. of the Bondholder/Nonbondholder Agreement shall apply.

Emergencies. Any action required or permitted to be taken by the Committee or any subcommittee may be taken without meeting if a Member and the Plan Agent determine that an emergency exists justifying such action without a meeting. Whenever possible, such Member or the Plan Agent shall make a good faith effort to hold a meeting on an emergency basis or at least obtain the consent of a majority of Members to the Plan Agent taking action without a meeting.

Minor Matters. Without prior Committee action or consent, any Member, with the advice of the Plan Agent, shall be empowered to consent to or otherwise act on relatively minor matters between meetings. The Committee shall be advised of any Court matters so acted on by the Member not later than the next meeting.

## ARTICLE VII
## CONFLICTS OF INTEREST

If any matter under consideration by the Committee appears to involve a conflict of interest with any Member (a "Conflicted Member") serving on the Committee, the Conflicted Member shall (i) disclose to the Committee the existence of any potential conflict of which he or she has knowledge; (ii) withdraw from the Committee deliberations on the matter as to which the conflict apparently exists; and (iii) abstain from voting on the matter being considered by the Committee. If a Member has an apparent conflict of interest (as determined by majority vote of other Members of the Committee, with any tied vote to be cast by the Plan Agent) but does not acknowledge such conflict pursuant to the foregoing sentence, the other Members shall determine by majority vote (with the Plan Agent to cast the deciding vote in the event of a tie) whether to (i) excuse the Conflicted Member from the Committee or (ii) take other steps to protect the interests of the Committee.

## ARTICLE VIII
## CONFIDENTIALITY OF INFORMATION

All nonpublic information, directions and oral statements made at Committee meetings, as well as all deliberations, positions and votes of the Committee, are deemed confidential and should not be disclosed to any other person.

Notwithstanding the above, all information received by a Member's representative may be disclosed or discussed: (a) with such of the financial officers, consultants or staff personnel of the Member or the Member's counsel, who require such information in order to fulfill the respective responsibilities of the Member of the Committee, and (b) where required by law, rule or regulation or where requested by any regulatory authority. Where a Member wishes to disclose information received by the Committee to persons not included in the above based upon valid business reasons, such Member may disclose the information provided that (i) the Committee, with the advice of the Plan Agent, consents to such disclosure and (ii) the person receiving the information signs an appropriate confidentiality agreement.

All provisions relating to confidentiality shall survive termination of the Committee.

## ARTICLE X
## EXPENSES

Requests for reimbursement of expenses shall be itemized.

4

## ARTICLE XI
## EFFECTIVENESS; AMENDMENT TO BYLAWS

These By-laws are effective as of November 9, 2001. The By-Laws may only be amended by the majority vote of Members of the Committee.

Eaton Vance (Bondholders' Representative)

_____

By Craig Brandon


Advantage Healthplan Inc. (Non-Bondholder Representative)

_____

By Elliot Wolff, President


Welcome Homes Inc. (Non-Bondholder Representative)

_____

By Stanley Zupnik, President

5

## ARTICLE XI
### EFFECTIVENESS; AMENDMENT TO BYLAWS

These By-laws are effective as of November 9, 2001.  The By-Laws may only be amended by the majority vote of Members of the Committee.

Eaton Vance (Bondholders' Representative)

By Craig Brandon

Advantage Healthplan Inc. (Non-Bondholder Representative)

By Elliot Wolff, President

Welcome Homes Inc. (Non-Bondholder Representative)

By Stanley Zupnik, President

5

Case 1:08-cv-00166-CKK    Document 19-2    Filed 03/03/2008    Page 8 of 10

## ARTICLE XI
### EFFECTIVENESS; AMENDMENT TO BYLAWS

These By-laws are effective as of November 9, 2001. The By-Laws may only be amended by the majority vote of Members of the Committee.

\

Eaton Vance (Bondholders' Representative)

_____

By Craig Brandon


Advantage Healthplan Inc. (Non-Bondholder Representative)

_____

By Elliot Wolff, President


Welcome Homes Inc. (Non-Bondholder Representative)

By Stanley Zamudio, President

5

**ARTICLE XI**
**EFFECTIVENESS; AMENDMENT TO BYLAWS**

These By-laws are effective as of November 9, 2001. The By-Laws may only be amended by the majority vote of Members of the Committee.

Eaton Vance (Bondholders' Representative)

By Craig Brandon

Advantage Healthplan Inc. (Non-Bondholder Representative)

By Elliot Wolff, President

Welcome Homes Inc. (Non-Bondholder Representative)

By Stanley Zupnik, President

5

TO: JERRY HALL
SHAW PITTMAN
663-8007
1 PAGE

05/25/2007   14:11   9620449   ADVANTAGE HEALTHPLAN   PAGE 01/01

Exhibit B

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF COLUMBIA

```
- - - - - - - - - - - - - - - - - x
In Re:                            :
                                  :
The GREATER SOUTHEAST COMMUNITY   :
  HOSPITAL FOUNDATION, INC., and  :
  GREATER SOUTHEAST COMMUNITY     :
  HOSPITAL CORPORATION            :
                                  :
        Debtor                    : Case No. 99-01159
                                  :
        (Chapter 11        )      :
                                  : Washington, D.C.
- - - - - - - - - - - - - - - - x December 14, 2007
```

TRANSCRIPT OF EMERGENCY MOTIONS (EXCERPTS
BEFORE THE HONORABLE S. MARTIN TEEL, JR.
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

On behalf of the Plan Committee:

MICHAEL LICHTENSTEIN, ESQ.
JERRY HALL, ESQ.

On behalf of Patrick Potter and
Pillsbury Winthrop Shaw Pittman, LLP:

PATRICK POTTER, ESQ.
STEPHEN METZ, ESQ.

Proceedings recorded by the Court, transcript produced
By Pro-Typists, Inc., 1012-14th Street, N.W., Suite 307,
Washington, D.C. 20005, 202-347-5395, www.pro-typists.com
B2274B-2 Unsealed/bf

1          MR. LICHTENSTEIN:  Your Honor, I think that

2     perhaps we are getting two things confused.  Because I

3     agree with Your Honor, obviously can't approve a settlement

4     agreement today because you haven't seen it, but I thought

5     what Your Honor was saying was, Mr. Potter had made an oral

6     motion to find that in fact there was a settlement

7     agreement that was approved by the committee, as indicated

8     by Mr. Zupnik's testimony.  And if the Court entered the

9     order approving that motion, which hasn't been opposed by

10    Mr. Zupnik, then it would sound to me like that there's an

11    agreement that's been approved by the committee, and as

12    committee counsel we would proceed accordingly along the

13    terms that we had previously discussed.  Which (inaudible)

14    that's the way we were, right?

15         MR. POTTER:  I think so.

16         MR. LICHTENSTEIN:  If the Court were to approve

17    the oral motion, finding that in fact the committee entered

18    into a settlement agreement, which agreement is to be

19    presented to the Court and the creditors, both for

20    objection and to the Court for approval, and then we will

21    still try to do that on an expedited basis to satisfy

22    Mr. Potter's request that it get entered before the end of

23    the year, we'll work together towards that end.

24         THE COURT:  What's going through my mind is that

25    Mr. Wolf is not here.  The Plan Committee, I'm not sure how

1    the Plan Committee is supposed to communicate its views on

2    the matter.   It ordinarily would do it through counsel.

3    Counsel is saying it has to withdraw.   Mr. Zupnik's here,

4    communicating his version of what happened and that it's

5    not that Mr. Wolf says, "This isn't what we agreed to,"

6    it's that Mr. Wolf wants to try to come back and ask for

7    different terms.

8            Of course, if that's accurate then there's no

9    harm in saying go ahead and notice up the settlement and,

10   at least on this evidence, I find there was an agreement

11   to file the settlement with the Court and notice it up to

12   creditors for any possible objections --

13           MR. LICHTENSTEIN:   And if anybody has a problem,

14   let him -- including Mr. Wolf, I suppose -- let him go

15   object.

16           THE COURT:   And I think I could say that the law

17   firm is entitled to proceed based upon the settlement that

18   the Court finds that was arrived at and that it has not had

19   communicated to it by the Plan Committee a decision not to

20   proceed with the settlement.   And therefore the law firm --

21   until the Plan Committee by formal vote decides otherwise,

22   the law firm should continue to represent the Plan

23   Committee in the pursuit of the approval of the settlement.

24           MR. POTTER:   Just indulgence, Your Honor?   Your

25   Honor, can we take a five-minute break, please?

Exhibit C

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| In re:  The Greater Southeast Community Hospital Foundation, Inc., et al. (Members Of the Greater Southeast Healthcare System), | ) ) ) ) ) | Case No. 99-01159 (Chapter 11) |
|  | ) | Jointly Administered |
| Debtors. | ) ) ) | |

**RESPONSE TO THE EMERGENCY RENEWED MOTION OF SHULMAN, ROGERS, GANDAL, PORDY & ECKER, P.A. FOR IMMEDIATE WITHDRAWAL AS COUNSEL TO THE PLAN COMMITTEE, OR FOR FURTHER INSTRUCTIONS**

Movants[1] respectfully submit this Response ("**Response**") to the Emergency Renewed Motion of Shulman Rogers, Gandal, Pordy & Ecker, P.A. ("**Shulman Rogers**") for Immediate Withdrawal as Counsel to the Plan Committee, or for Further Instructions ("**Motion**").  For the reasons set forth below, Movants request that the Court deny the request by Shulman Rogers to withdraw as counsel to the Plan Committee.  Also, Movants request that the Court grant the request by Shulman Rogers for further instructions.  In particular, Movants request that the Court enter an order providing Shulman Rogers with the comfort and authority they need in order to promptly and thoroughly represent the Plan Committee as appellee in connection with the appeal (the "**Appeal**") taken by Elliot Wolf and Advantage Healthplan ("**Advantage**") of (i) the Court's Order striking the objection by Advantage to the Rule 9019 motion jointly filed by the Plan Committee and Movants and (ii) the Court's Order approving the Settlement Agreement between the Plan Committee and Movants.

---

[1]     "**Movants**" are Patrick J. Potter, solely in his capacity as former Plan Agent and Pillsbury Winthrop Shaw Pittman LLP ("**Pillsbury**").

**<u>Arguments</u>**

The Court has approved the Settlement Agreement between the Plan Committee and Movants. <u>See</u> <u>Exhibit 1</u>. The Court's Order was not and is not stayed. Thus, as of this filing, the Plan Committee is bound to the terms of the Settlement Agreement. And, as of this filing, Shulman Rogers, previously retained pursuant to unanimous committee member vote, is counsel to the Committee; Shulman Rogers is counsel to <u>neither</u> of the committee members (<u>i.e.,</u> Welcome Homes (Mr. Zupnik's entity) and Advantage (Mr. Wolff's entity).

The Motion makes clear that, not surprisingly, there is a disagreement between Welcome Homes (Zupnik) and Advantage (Wolff) as to whether to defend the appeal taken by Advantage (Wolff). Obviously, Zupnik has cast his vote in favor of defending the settlement which the Court found the Plan Committee agreed to. In contrast, Wolff cast his vote in favor of challenging, via the Appeal, the settlement which the Court found the Plan Committee agreed to. Thus, Advantage (Wolf) is in direct conflict with the position of Welcome Homes, the other Plan Committee member. More significant, however, is that Advantage (Wolff) is in direct conflict with the position of the Plan Committee itself, as such position was held to exist based upon the record and based upon the holdings of this Court.

These two conflicts ((i) between Wolff and Zupnik and (ii) between Wolff and the Plan Committee) should not serve as a basis for allowing (rather forcing) Shulman Rogers to resign as Plan Committee counsel. The client of Shulman Rogers is the Plan Committee, not Advantage (Wolff) or Welcome Homes (Zupnik). Shulman Rogers has not cited to any ethical rule that prohibits it from continuing to represent the Plan Committee when one of its members (not a client of Shulman) decides to take steps that are directly adverse to the Plan Committee. If this were the law, then the Plan Committee would go unrepresented absent removal of the conflict

2

created by the member choosing to be adverse to the Plan Committee and its other member. That result would be absurd.

Furthermore, allowing Shulman to resign would enable Advantage (Wolff) to use his self-created conflict to hold the Plan Committee, indeed this Court, hostage. That is, despite that the Court has found that the Plan Committee settled and, on an un-stayed basis, ordered compliance with the Settlement Agreement, Advantage (Wolff) will be able to use his conflict as a basis for preventing the Plan Committee from defending the Appeal; on the theories that the Plan Committee has not unanimously approved defending the Appeal and that, in any event, it has no counsel to represent it in the Appeal. Furthermore, this Court, based upon the record before it, exercised its discretion to approve the Settlement Agreement, finding that it was in the best interest of the estate and its creditors. If the Appeal is not defended by the Plan Committee, then there is not insignificant risk that Advantage (Wolff) will have effectively usurped the Court's power to protect the estate and its creditors; on the theory that the District Court will interpret the lack of Plan Committee defense of the Appeal as agreement with the positions of Advantage (Wolff); possibly enhancing the likelihood of reversal.

Certainly, Advantage (Wolff), as a creditor in the case, should be entitled, subject to applicable law, to take the Appeal, and to do so at its/his own personal expense. However, the Court should reject any notion that in exercising any such rights, Advantage/Wolff should, on a de facto basis, control the Plan Committee and its counsel by preventing them from defending the holdings and rulings of this Court. For the reasons set forth herein, the Court should (1) deny the request of Shulman Rogers to resign, finding that there is no conflict between Shulman and its client (i.e., the Plan Committee) and (2) order Shulman Rogers to defend the Appeal.

1.    **The Court Should Deny the Request by Shulman Rogers to Resign.**

There are no conflicts between Shulman and its client, the Plan Committee. The conflicts are between (a) Wolff and Zupnik and (b) Wolff and the Plan Committee. Since neither Zupnik nor Wolff are Shulman clients in this matter, there is no basis for requiring or allowing Shulman to resign. Also, allowing Shulman to resign would not solve the Wolff-Zupnik/Wolf-Committee conflicts and any replacement counsel would be confronted with the very same inter-creditor conflicts.

Furthermore, allowing Shulman to resign at this juncture would leave the Plan Committee in a lurch. The Plan Committee must begin filing record designations and issue statements next week. While it is conceivable that the deadlines could be extended, there is no basis for going through such an exercise if new counsel would be faced with the same "conflict" issues.

In addition, the estate would be put to the burden of additional expenses to get replacement counsel up to speed in order to both address the alleged conflict issues and take steps to protect the Plan Committee's interests in the Settlement Agreement.

For all of these reasons, the Court should deny the request by Shulman to resign as counsel to the Plan Committee.

2.    **The Plan Committee Must Defend The Appeal.**

Failure by the Plan Committee to defend the Appeal constitutes a breach of the settlement reached with Movants. Clearly, the Plan Committee and Movants agreed to seek final court approval of the Settlement Agreement. It would be absurd to conclude that the Plan Committee and Movants agreed to obtain Bankruptcy Court approval of the Settlement Agreement and not District Court or Circuit Court approval if necessary. Indeed, by failing to defend the Appeal,

4

the Plan Committee would be in direct violation of paragraph 14 of the Settlement Agreement, which requires the Plan Committee to "undertake such other actions to cause the consummation of the transactions contemplated by this Agreement." Furthermore, such breach will give rise to the attorneys' fee provision contained in paragraph 15. Based on the foregoing, Movants request that the Court find that the Plan Committee will be in breach of the Settlement Agreement absent its defense of the Appeal; that in such event Movants will be entitled to legal fees under paragraph 15 if Movants prevail on the Appeal; and that to avoid its breaching the Settlement Agreement, the Plan Committee and its counsel are authorized to defend the Appeal despite the Wolff-Zupnik and Wolff-Committee conflicts.

### 3.    The Court Should Break the Plan Committee Deadlock.

Bankruptcy courts possess the power to break committee deadlocks. For example, in <u>In re Fibermark, Inc.</u>, 330 B.R. 480 (Bankr. D. Vt. 2005), the committee's creditors were evenly split on the issue of whether to turn over documents to the examiner. Committee counsel filed an emergency asking the bankruptcy court for guidance on how to respond to the examiner's document request. Rather than the court doing nothing and allowing the deadlock to paralyze the committee such that it could nothing (thus, handing a victory to those members who did not want to turn over the documents), the court did what, presumably, it thought best and ordered the committee to turn over the documents. In other words, the mere existence of the deadlock did not prevent the court from providing the committee with the guidance its counsel sought.

This Court should also not permit the apparent deadlock between committee members to paralyze the Plan Committee. The Court found, based upon the unrebutted testimony of Mr. Zupnik that the Plan Committee and Movants agreed to settle. And, the Court, though its Order, approved the Settlement. As such, the Court should enter an order providing Plan Committee

counsel with guidance; in this instance, guidance that they are authorized to defend the status quo as determined by this Court, and that they may defend the Appeal despite the existence of a deadlock between Welcome Homes (Zupnik) and Advantage (Wolff).

**4.    The Court Should Enforce the By-Laws.**

A copy of the Plan Committee's by-laws is attached as <u>Exhibit 2</u>.  Movants draw the Court's attention to Article VII, entitled Conflicts of Interest.  As demonstrated above, a conflict exists between Advantage (Wolff) and the Plan Committee.   Such conflict cannot be credibly disputed:  Advantage (Wolff) wants the Settlement Agreement undone, and the Plan Committee, as determined by this Court, does not want the Settlement undone.

Article VII provides that where there is a conflict, the so-called "Conflicted Member" is required, among other things, to "abstain from voting on the matter being considered by the Committee."  Given the conflict of Advantage (Wolff), it is required to abstain from voting on whether the Plan Committee should defend the Appeal taken by Advantage (Wolff).  If the vote of Advantage (Wolff) against defending the Appeal is excluded, then there is, by virtue of the affirmative vote of Welcome Homes, unanimous membership approval to defend the Appeal. Thus, in light of the By-Laws, the Court should (1) find that Advantage (Wolff) is a "Conflicted Member"; (2) find that the vote of Advantage (Wolff) on the issue of whether the Plan Committee should defend the Appeal should not be counted; (3) find that the vote of Welcome Homes, the remaining committee member, on whether the defend the Appeal, is sufficient to satisfy the majority-rule requirement under the By-Laws; and (4) authorize the Plan Committee and its counsel to defend the Appeal.

6

**5.    In the Alternative, The Court Should Appoint a Receiver/Trustee for the Plan Committee to Conclusively Resolve This And Other Deadlock Issues.**

The Court has the authority under (i) the plan (XI.B.), (ii) the confirmation order (pp. 20-26), (iii) the Bankruptcy Code (e.g. Section 105); and (iv) D.C. law to appoint a receiver or trustee for the Plan Committee.  With respect to D.C. law, see e.g. Saltz v. Saltz Broz., Inc., (1936) 65 App DC 393, 84 F2d 246, cert denied 299 US 567;  Masters v. Hartmann, 45 App DC 253 (1916).  Furthermore, it seems obvious that if, for example, both current committee members resigned and no creditors were willing to serve on the Plan Committee, the Court would possess the authority to appoint a responsible party to act for the estate.

This is not the first time that Advantage and Welcome Homes have disagreed on the course of action the Plan Committee should take.  For example, the record reflects disputes between the two committee members on which course of action to take with respect to the PwC litigation and, more recently, payment of legal fees incurred by Mr. Henry Lloyd, the Plan Committee's litigation counsel.  If the Court is unwilling to grant any form of relief requested above, then Movants request that the Court, in order to resolve the instant deadlock as well as those that will inevitably occur in the future, appoint a responsible person (whether that person is called a trustee, receiver or something else is of no moment) to replace the members of the Plan Committee and to safeguard the estate and its creditors.

**Conclusion – Prayers for Relief**

WHEREFORE, Movants request that the Court enter an order denying the request of Shulman Rogers to resign.  Furthermore, Movants request that the Court determine that the Plan Committee must defend the Appeal under the terms of the settlement reached with Movants and the Settlement Agreement; and that if the Plan Committee does not so defend the Appeal, Movants will be entitled to recover their legal fees and costs upon defeating the Appeal.  To the

7

extent necessary, Movants request that the Court exercise its authority to break committee

member deadlocks.  Movants request that the Court enter an order that is consistent with the

terms of, and requires compliance with, the Plan Committee's By-Laws.  And, failing all else,

Movants request that the Court replace the current Plan Committee members with a responsible

party (regardless of title) and vest that person with the same rights and responsibilities of the

Plan Committee under the plan.


Dated:  January 16, 2008                    Respectfully submitted,

                                            /s/ Patrick Potter
                                            Patrick Potter (426514)
                                            Jerry Hall (976461)
                                            Pillsbury Winthrop Shaw Pittman LLP
                                            2300 N Street, NW
                                            Washington, DC 20037
                                            (202) 663-8000
                                            Counsel to Movants

8