# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Advantage Healthplan Inc., ) | |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | |
| ) | |
| The Plan Committee, ) | Case No. 08-166 |
| Pillsbury Winthrop Shaw Pittman LLP, ) | |
| and Patrick J. Potter, Solely in His ) | |
| Capacity as Former Plan Agent, ) | |
| ) | |
| Appellees. ) | |
| ) | |

# PILLSBURY'S APPELLEE BRIEF

Patrick Potter
Jerry Hall
Pillsbury Winthrop Shaw Pittman LLP
2300 N Street, NW
Washington, DC 20037
(202) 663-8000
Counsel to Pillsbury

April 17, 2008

## Table Of Contents

**Page**

I.  Basis For Appellate Jurisdiction ..................................................................................1

II. Statement Of Issues Presented And The Applicable  Standards Of
    Appellate Review..........................................................................................................2

    A.  Issues Properly Before The Court And The Applicable Review
        Standards.............................................................................................................2

        1.  The Striking Order. .................................................................................2

        2.  The Settlement Approval Order.............................................................2

    B.  Issues Not Properly Before The Court................................................................4

III. Statement Of The Case ................................................................................................5

    A.  Nature Of The Case, The Course Of Proceedings, And The
        Disposition Below...............................................................................................5

    B.  Facts Relevant To The Issues Presented For Review ...........................................7

        1.  The Parties On Appeal............................................................................7

        2.  The Hospital's Chapter 11 Plan And Confirmation Order .........................7

        3.  The PwC Litigation And Pillsbury Services Giving Rise To
            The Dispute..............................................................................................8

        4.  The Plan Committee-Pillsbury Litigation, Including The
            Jurisdiction And Summary Judgment Disputes.........................................9

        5.  The Plan Committee's And Pillsbury's Settlement ...................................11

        6.  The December 14th Hearing - The Bankruptcy Court Finds
            A Settlement Was Reached By The Plan Committee And
            Pillsbury ................................................................................................11

        7.  The December 14th Notice To Advantage Of The
            December 21st Hearing...........................................................................14

        8.  The December 17th Consent Motion Filed By The Plan
            Committee And Pillsbury .......................................................................15

        9.  Advantage's Objection To Court Approval Of The
            Settlement ..............................................................................................16

i

|    | 10. | The Order Granting Pillsbury's Request To Strike The Advantage Objection ................................................................17 |
|----|-----|---|
|    | 11. | Approval By The Bankruptcy Court Of The Settlement ............................18 |
|    | 12. | Advantage's Retention Of Counsel And December 31st Notice Of Appeal ..................................................................19 |
|    | 13. | The Settlement Is Closed ............................................................19 |

| IV. | Argument ................................................................................19 |
|-----|---|
| A. | The Appeal is Equitably Moot ......................................................19 |
| B. | The Bankruptcy Court Did Not Commit Any Reversible Error With Respect To The Striking Order, Which Should Be Affirmed ..........................................................................21 |
| C. | The Bankruptcy Court Did Not Commit Any Reversible Error In Approving Settlement And The Settlement Order Should Be Affirmed ....................................................................24 |

|    | 1. | Everyone Entitled To Notice Received Notice ...........................................24 |
|----|----|---|
|    | 2. | The Bankruptcy Court Did Not Abuse Its Discretion In Approving Settlement Agreement ............................................................29 |
|    | 3. | The Bankruptcy Court Did Not Err By Allowing The Fee Dispute To Proceed As A Contested Matter Rather Than An Adversary Proceeding – It Did Not Even Rule On The Issue, Raised Late In The Proceeding By The Plan Committee And, Accordingly, There Is Nothing For This Court To Review ................................................................34 |
|    | 4. | The Bankruptcy Court Possessed Jurisdiction To Approve The Settlement ....................................................................36 |

| D. | Advantage's Policy Argument Fails ................................................37 |
|----|---|
| E. | Advantage's Request For Relief In Its Opening Brief Further Demonstrates The Frivolity Of This Appeal ........................................39 |

| V. | Short Conclusion – Precise Relief ....................................................40 |

701052187v1

# TABLE OF AUTHORITIES

## CASES

In re Adelphia Communications Corp., 222 Fed. Appx. 7 (2d Cir. 2006) ........................20

In re American Development Int'l Corp., 188 B.R. 925 (N.D. Tex. 1995).......................25

Anderson v. Bessemer City, 470 U.S. 564 (1985)..................................................................2

In re B.I.B. Co., Inc., 165 B.R. 293 (M.D. Fla. 1994) .........................................................25

Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147 (1984) .........................................23

Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473  (5th Cir. 1991)...................................23

In re Bay Broadcasting, Inc., 182 B.R. 369 (D.P.R. 1995)....................................................3

In re Bult, 108 B.R. 207 (Bankr. E.D. Wis. 1989)................................................................29

Buckeye Retirement Co., LLC, Ltd. v. Crews, 2007 WL 1970861 (M.D. Fla.
    2007) .................................................................................................................................20

In re Capitol Hill Group, 313 B.R. 344 (D.D.C 2004) .........................................................34

In re Charge Trucking, Inc., 236 B.R. 620 (Bankr. E.D. Tex. 1999) .................................22

Center for Reproductive Law and Policy v. Bush, 304 F.3d 183 (2d Cir. 2002) ..............29

Commercial Union Insurance Co. v. Gonzalez Rivera, 358 F.3d 480 (7th Cir.
    2004) ...................................................................................................................................2

Connecticut General Life Insurance Co. v. United Companies Financial Corp., 68
    F.3d 914 (5th Cir. 1995) ....................................................................................................3

Continental Casualty Co. v. General Development Corp., 165 B.R. 685 (S.D.  Fla.
    1995) ........................................................................................................................3, 26, 36

Crump v. United States, 1996 U.S. Dist. LEXIS 5517 (D. Col. 1996)..............................35

Davenport v. Riverview Gardens School Dist., 30 F.3d 940 (8th Cir. 1994)...................30

In re Delta Air Lines, Inc., 374 B.R. 516 (S.D.N.Y 2007) .................................................20

District of Columbia v. Air Florida, Inc., 750 F.2d 1077 (D.C. Cir. 1984)......................34

i

In re Durso Supermarkets, Inc., 1994 WL 17913 (S.D.N.Y. 1994) ...................................20

In re Fay, 155 B.R. 1009 (Bankr. E.D. Mo. 1993) ...............................................................25

In re Fairchild Aircraft Corp., 128 B.R. 976 (Bankr. W.D. Tex. 1991) ............................25

Fisher v. Johnson, 174 F.3d 710 (5th Cir. 1999) ..................................................................23

In re George, 4 Fed Appx. 357 (9th Cir. 2001)......................................................................25

In re Gifford, 688 F.2d 447 (7th Cir. 1982) ..........................................................................23

Gilbert v. Berman, 2005 U.S. Dist. LEXIS 17804 (E.D. La. 2005) ....................................21

In re Glinz, 66 B.R. 88 (D.N.D. 1986)....................................................................................25

Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552 (6th
     Cir. 2000) .....................................................................................................................23

Harmon v. Brucker, 355 U.S. 579 (1958)...............................................................................21

Haitian Refugee Center v. Gracey, 809 F.2d 794  (D.C. Cir. 1987)....................................29

In re Holtkamp, 669 F.2d 505 (7th Cir. 1982).......................................................................25

In re Johnson, 236 B.R. 510 (D. D.C. 1999) ...........................................................................2

Kandamar v. Gonzales, 464 F.3d 65 (1st Cir. 2006) ............................................................3

Klaudt v. United States, 990 F.2d 409 (8th Cir. 1993) ........................................................30

Kowalski v. Tesmer, 543 U.S. 125 (2004) ..............................................................................29

Lee Servicing Co. v. Wolf (In re Wolf), 162 B.R. 98 (Bankr. D.N.J. 1993).....................23

Lepelletier v. F.D.I.C., 164 F.3d 37 (D.C. Cir. 1999).........................................................29

Litepanels, LLC v. Gekko Technology, Ltd, 2007 U.S. Dist. LEXIS 15197 (E.D.
     Tex. 2007)....................................................................................................................21

In re Lloyd Carr and Co., 617 F.2d 882 (1st Cir. 1980) ......................................................27

Mohasco Corp. v. Silver, 447 U.S. 807 (1980)......................................................................23

Mitchel v. General Electric Co., 689 F.2d 877 (9th Cir. 1982) .........................................18

Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950) ..............................27

Myers v. Martin, 91 F.3d 389 (3rd Cir. 1996) ................................................................3, 27

NAACP v. A.A. Arms, Inc., 2003 WL 2003791 (E.D.N.Y. 2003) ....................................22

Nevel v. Village of Schaumburg, 297 F.3d 673 (7th Cir. 2002)........................................29

Northeast Drilling, Inc. v. Inner Space Services, Inc., 243 F.3d 25 (1st Cir. 2001)............2

Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346 (3rd Cir. 1999) ...........27

Nunley v. Department of Justice, 425 F.3d 1132, 1139 (8th Cir. 2005)............................25

In re PC Liquidation Corp., 2008 WL 199457 (E.D.N.Y. 2008).......................................20

Pesmen v. Bannockburn Lake Office Plaza Associates LP, 1999 U.S. Dist. LEXIS 8321 (N.D. Ill. 1999) ..........................................................................18

Peterson v. Akrabawi, 166 B.R. 114 (N.D. Ill. 1999).......................................................18

Point of Wisdom v. United States, 1996 U.S. Dist. LEXIS 1574 (D.D.C. 1996).............21

Powers v. Ohio, 499 U.S. 400 (1991) ..............................................................................29

Richards v. Combined Insurance Co. of America, 55 F.3d 247 (7th Cir. 1995) ...............18

Settenda v. Ashcroft, 377 F.3d 89 (1st Cir. 2004) ..............................................................3

The Plan Committee v. Price Waterhouse Coopers, LLP, 333 B.R. 234 (D.D.C. 2005) ...................................................................................................7, 8

The Plan Committee v. PricewaterhouseCoopers, LLP, U.S. Dist. LEXIS 29240 (D.D.C. 2007) ............................................................................................ passim

In re Timbers of Inwood Forest Associates, Ltd., 793 F.2d 1380 (5th Cir. 1986) ...........23

In re Trans World Airlines, Inc., 185 B.R. 302 (Bankr. E.D. Mo. 1995) .........................22

United States v. Allen, 406 F.3d 940 (8th Cir. 2005) ........................................................21

United States v. Dunkel, 927 F.2d 955 (7th Cir. 1991) .....................................................18

United States v. Aabott Asbestos, Inc., 1993 U.S. Dist. LEXIS 18249 (E.D. Mo. 1993) ..............................................................................................................22

In re Webster, 22 B.R. 11 (Bankr. D. Vt. 1982) ...................................................22

In re West Point Properties, 249 B.R. 273 (Bankr. E.D. Tenn. 2000).........3, 27, 34, 35, 36

Wright v. Union Central Life Insurance Co., 304 U.S. 502 (1938)...................................23

## FEDERAL STATUTES

28 U.S.C. § 158 (2000) .................................................................................1

28 U.S.C.A. § 157(b)(2)(A) West 1993.............................................................4

## FEDERAL BANKRUPTCY RULES

Rule 2002(a)(3) ..........................................................................................28

Rule 9006(c)(1)............................................................................................28

Rule 9019 ............................................................................................. passim

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Advantage Healthplan Inc., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| The Plan Committee, | ) | Case No. 08-166 |
| Pillsbury Winthrop Shaw Pittman LLP, | ) | |
| and Patrick J. Potter, Solely in His | ) | |
| Capacity as Former Plan Agent, | ) | |
| | ) | |
| Appellees. | ) | |
| | ) | |

## PILLSBURY'S APPELLEE BRIEF

Appellees, Pillsbury Winthrop Shaw Pittman LLP and Patrick J. Potter, solely in the capacity as former plan agent (for convenience, collectively "Pillsbury"), respectfully submit this Appellee Brief.

## I. Basis For Appellate Jurisdiction

There are two orders on appeal: (1) the order signed December 20, 2007 and entered December 21, 2007 striking the *pro se* objection of Advantage to the Settlement Approval Motion (the "Striking Order"), and (2) the order signed and entered December 21, 2007, approving the Settlement Approval Motion (the "Settlement Approval Order"). See Appellees' Joint Appendix ("JA") 33. The Court's jurisdiction to review these two order exists pursuant to 28 U.S.C. § 158(a).

## II.  Statement Of Issues Presented And The Applicable Standards Of Appellate Review

### A.    Issues Properly Before The Court And The Applicable Review Standards

The only issues properly before the Court are those challenging the propriety of the Striking Order and the Settlement Approval Order, located at JA 1116 and 1125, respectively. The burden of proof is on Advantage.  See e.g., In re Johnson, 236 B.R. 510, 518 (D.D.C. 1999), citing Anderson v. Bessemer City, 470 U.S. 564, 572-74 (1985).

### 1.    The Striking Order.

By citing to and relying upon cases holding that corporations cannot appear *pro se*, which was the holding below, Advantage acknowledges, implicitly, that there is nothing for this Court to review, on a *de novo* basis, with respect to the Striking Order.

Instead, Advantage argues that the bankruptcy court should have exercised its discretion to postpone the December 21st hearing, thereby affording Advantage even more time to obtain licensed legal counsel.  This form of challenge to the Striking Order is reviewed for abuse of discretion.  See e.g., Northeast Drilling, Inc. v. Inner Space Services, Inc., 243 F.3d 25 (1st Cir. 2001) ("A district court's decision to grant or deny a continuance is analyzed under the abuse-of-discretion standard. . . . Only an 'unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay will abuse [that discretion].'") (citations omitted); Commercial Union Ins. Co. v. Gonzalez Rivera, 358 F.3d 480, 482 (1st Cir. 1966) (a trial court's refusal to grant a continuance will not be disturbed on appeal unless abuse of discretion is shown) (citations omitted).

### 2.    The Settlement Approval Order.

With respect to the Settlement Approval Order, Advantage argues that it and others were denied due process.  Whether a court denies a party due process is an issue subject to *de novo*

701052187v1

review.  See Kandamar v. Gonzales, 464 F.3d 65, 70 (1st Cir. 2006) ("Legal conclusions are

reviewed *de novo*, including alleged errors related to due process claims.") (citing Settenda v.

Ashcroft, 377 F.3d 89, 92-93 (1st Cir. 2004)); In re Bay Broadcasting, Inc., 182 B.R. 369, 372

(D.P.R. 1995) (reviewing on *de novo* standard claim that appellant was denied an opportunity to

be heard in violation of due process).

Also, Advantage argues that the bankruptcy court's decision to approve the settlement

constituted error, subject to abuse-of-discretion review.  See Myers v. Martin, 91 F.3d 389, 391

(3rd Cir. 1996) ("The question for decision is whether the bankruptcy court abused its discretion

by disapproving" the settlement.); Connecticut General Life Ins. Co. v. United Companies

Financial Corp., 68 F.3d 914, 917 (5th Cir. 1995) ("This Court should review the Bankruptcy

Court's approval of the compromise settlement for abuse of discretion.") (citations omitted).  In

this respect, an argument that the lower court applied the wrong law is subject to *de novo* review

and an argument that the lower court was mistaken as to a finding of fact is subject to clearly-

erroneous review.  Id.

Advantage has not challenged the jurisdiction of the bankruptcy court to entertain

motions made under Bankruptcy Rule 9019, and the cases cited by Advantage acknowledge such

jurisdiction.  See e.g., Continental Casualty Co. v. General Development Corp., 165 B.R. 685,

691 (D.S.D. Fla. 1994) ("It is well settled that bankruptcy courts have jurisdiction to approve a

settlement of a claim against the debtor.  See Bankruptcy Rule 9019.") (citations omitted); In re

West Pointe Properties, L.P., 249 B.R. 273 (Bankr. E.D. Tenn. 2000) (request for approval of

settlement "is a core proceeding.  28 U.S.C.A. § 157(b)(2)(A) West 1993").  Significantly,

bankruptcy court jurisdiction to approve an estate's settlement of a lawsuit exists even where

jurisdiction for the underlying lawsuit lies with the state court.  See e.g., Myers, supra

3

(bankruptcy, district and circuit courts each exercised jurisdiction over the settlement dispute with respect to non-core lawsuits that had been remanded to the Pennsylvania Court of Common Pleas).

### B.    Issues Not Properly Before The Court

To avoid any ambiguity, Pillsbury highlights two of several orders entered by the bankruptcy court that are not before the Court on appeal.  First, Advantage has not appealed the bankruptcy court's November 15, 2007 Order Resolving Subject Matter Jurisdiction Objection of Respondent (the "Jurisdiction Order"), located at JA 365.  The Jurisdiction Order supported the Pillsbury Fee Motion, which motion was never ruled upon, but not the Settlement Approval Motion.  As a matter of law, each motion commences a separate "contested matter."  See e.g., Bankruptcy Rule 9014.  And, while Pillsbury contends that the Jurisdiction Order was properly decided, any challenge thereto is moot since the Pillsbury Fee Motion was not granted.  Instead, the separately-filed Settlement Approval Motion was granted, and jurisdiction to grant that motion is the only jurisdiction that is relevant on appeal.

Second, Advantage has not appealed the bankruptcy court's December 18, 2007 Order Regarding (i) Filed Motion to Withdraw; (ii) Filed Motion to Continue; and (iii) Oral Motion to Approve Settlement of Disputes among the Plan Committee, Former Plan Agent and Pillsbury Winthrop Shaw Pittman LLP (the "December 18th Order"), located at JA 1068.  The December 18th Order contains the bankruptcy court's finding that a settlement agreement was reached by the Plan Committee and Pillsbury, based upon the testimony provided by Plan Committee member Welcome Home and the representations of the Plan Committee and Pillsbury counsel at the December 14, 2007 hearing.  See transcripts of hearings held on December 14, 2007 and January 17, 2008, located at JA 991 and 1131, respectively.

4

### III. Statement Of The Case

**A.    Nature Of The Case, The Course Of Proceedings, And The Disposition Below**

The Plan Committee owns and controls various assets, including causes of action and cash proceeds, transferred to it pursuant to the Plan (defined below). See e.g., May 25, 2007 Bankruptcy Court Order Granting Motion for Clarification. The Plan Committee, in its sole discretion, is authorized under the Plan to make distributions to unsecured creditors, which it has done only once since 2001.

In connection with its efforts to resuscitate a lawsuit it filed in 2002 (i.e., the PwC litigation described below), the Plan Committee incurred approximately $137,000 in legal fees with Pillsbury. Pillsbury, among other things, sought and successfully obtained certain relief from the bankruptcy court deemed critical to resurrecting the then-dismissed PwC litigation. However, the Plan Committee did not pay *any* of the subject fees to Pillsbury. These events and those that followed are summarized in the following timeline.

| 5/1/07 | 8/3/07 | 10/24/07 | 11/8/07 | 11/15/07 | 11/29/07 | 12/7/07 | 12/10/07 | 12/14/07 | 12/16/07 | 12/27/07 | 12/18/07 | 12/20/07 | 12/21/07 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Pillsbury begins providing services in Bankruptcy Court to the Committee relative to PWC litigation. By July, Committee refuses to pay fees totaling $137 K. | Pillsbury files Pillsbury Fee Motion with Bankruptcy Court. | Court conducts preliminary hearing on jurisdiction over Pillsbury Fee Motion. | Court conducts second hearing on jurisdiction over Pillsbury Fee Motion and holds that jurisdiction exists. | Court enters orders on jurisdiction over Pillsbury Fee Motion. | Committee members contact Pillsbury to offer $100 K. | Committee files offer of judgment for $120 K. | Committee offers Pillsbury $130 K and Pillsbury accepts. | Court holds agreement reached by Committee and Pillsbury. Pillsbury emails Advantage notice of 12/19 objection deadline and 12/21 hearing. | Committee counsel emails proposed order and notice of 12/21 hearing to Advantage. | Committee files and serves Settlement Approval Motion to Advantage. | Advantage files *pro se* objection. | Pillsbury moves to strike Advantage opposition. | Court strikes Advantage objection and approves settlement. |

See JA 1, 266, 323, 365, 964, 972, 975, 991, 1032, 1035, 1040, 1068, 1072, 1109, 1116-1125.

On August 3, 2007, Pillsbury filed the Pillsbury Fee Motion to obtain payment of $137,000 from the Plan Committee. The Plan Committee first argued that the bankruptcy court lacked jurisdiction to try the Pillsbury Fee Motion, and that Pillsbury must proceed in a non-federal forum in the District of Columbia. After the court ruled against the Plan Committee on

that jurisdictional question, the Plan Committee, at Advantage's insistence, submitted its Offer of Judgment for $120,000. Two days later, a $130,000 settlement was reached by the Plan Committee and Pillsbury.

At a December 14, 2007 hearing, the bankruptcy court found that a settlement had been reached by the parties, and entered an order to this effect on December 18, 2007. The court also set December 21, 2007 as the hearing date to consider whether it would approve the settlement, and December 19, 2007 as the deadline for filing objections to court-approval of the settlement.

On December 14, 2007, Pillsbury sent the first of three notices of the December 21st hearing and the December 19th objection deadline to Advantage (via email) and all creditors entitled to notice (via ECF service). Thus, Advantage and all creditors entitled to notice received 7 calendar days' notice of the hearing, and 5 calendar days' notice of the objection deadline. (Two additional notices were sent by the Plan Committee on December 16th and 17th.)

Advantage filed its objection on December 18, 2007, and served it by e-mail on the Plan Committee and Pillsbury that same evening. However, its objection was not signed by a licensed attorney authorized to appear in federal court and was consequently stricken by the bankruptcy court. Also, Advantage failed to appear at the December 21st hearing. On December 21st, the bankruptcy court, having lived through this 5-month saga, and developing an appreciation for the issues presented, the legal fees incurred, and the additional legal fees to be incurred by the parties in preparation for the trial scheduled to commence on January 8, 2008, approved the agreement to settle the $137,000 dispute for $130,000.

Advantage, a creditor and Plan Committee member, appeals two orders of the bankruptcy court – the order striking Advantage's *pro se* objection and the order approving the settlement.

### B.    Facts Relevant To The Issues Presented For Review

#### 1.    The Parties On Appeal

The parties on appeal are (1) the Plan Committee; (2) Advantage (and purportedly Advantage's president, Elliot Wolff); and (3) Pillsbury. Pillsbury served as counsel to the Plan Committee from 2001 through July of 2007. See e.g., JA 267. Advantage is one of the current members of the Plan Committee (whose corporate representative is Mr. Wolff). See e.g., JA 551, 1044. The other is Welcome Home Inc. (whose corporate representative is Mr. Stanley Zupnik). (Because the Joint Appendix contains certain emails, Pillsbury advises the Court that Mr. Wolff's email address is **erwolff@ahealthplan.com** and Mr. Zupnik's email address is **szup@erols.com.**)

#### 2.    The Hospital's Chapter 11 Plan And Confirmation Order

The Plan Committee was created pursuant to the terms of the chapter 11 plan of Greater Southeast Hospital (the "Plan") confirmed by the bankruptcy court pursuant to an order (the "Confirmation Order") dated October 23, 2001. JA 73-75. The Plan Committee is an unincorporated association under D.C. law. See e.g., The Plan Committee v. Price Waterhouse Coopers, LLP, 333 B.R. 234, 243 (D.D.C. 2005). It was originally comprised of three members - - (i) a bondholder representative (Eaton Vance), who resigned in June of 2007; (ii) Advantage (owed approximately $800,000 as of the hospital's bankruptcy filing); and (iii) Welcome Home (owed approximately $3.4 million as of the hospital's/debtor's bankruptcy filing). JA 551. Total claims are approximately $13 million.

Pursuant to the Plan and Confirmation Order, all of the debtors'/hospital's litigation and settlement rights (together cash, real estate, stock and other assets), were transferred to the Plan Committee. JA 73, 105-107, 551. The Plan and Confirmation Order expressly enjoin creditors

7

from attempting to collect on their claims from the Plan Committee and its assets. JA 80-81, 97-99. Creditors' claims were extinguished. Id. The "property rights," if any, of the creditors are limited exclusively to receiving distributions from the Plan Committee, made at the sole discretion of the Plan Committee. See e.g., JA 54.

Furthermore, the Confirmation Order provides that the unsecured creditors are not entitled to post-confirmation service and notice of pleadings filed and orders entered in this case unless either (i) they are parties to the dispute or (ii) they expressly request in writing service and notice. Specifically, the order provides:

> ORDERED, that except as otherwise hereafter directed by the Court, notice and service of all subsequent pleadings and papers in these cases after the Effective Date shall be limited to (a) Reorganized GSCH Foundation and its counsel, (b) the Office of the United States Trustee, (c) any party affected by the relief sought, (d) the Plan Agent; (e) the members of the Plan Committee and their counsel; (f) counsel to The Bank of New York, as Indenture Trustee, (g) counsel to the Major Bondholders; (h) Akin, Gump, Strauss, Hauer & Feld LLP; and (i) any party requesting notice by delivering a copy of such request to counsel to the Plan Committee.

Confirmation Order pp. 29-30. JA 116-117 Notice of the Confirmation Order was served on all creditors. JA 130-265.[1]

### 3. The PwC Litigation And Pillsbury Services Giving Rise To The Dispute

One of the assets being liquidated by the Plan Committee is a $70 million lawsuit against PricewaterhouseCoopers ("PwC"), pending before the District Court (case number 02-01478).[2] The PwC action has not advanced past the complaint stage. The reasons are set forth in The Plan Committee v. PricewaterhouseCoopers, LLP, 335 B.R. 234 (D.D.C. 2005) and The Plan

---

[1] After confirmation of the Plan, literally millions of dollars in assets have been spent and otherwise disposed of by the Plan Committee without notice to the 1500 unsecured creditors. By way of example, in 2006 alone the Plan Committee sold real estate for millions of dollars. Notice and opportunity to object to the sales were never provided to the unsecured creditors because the Plan does not require it.

[2] Pillsbury does not represent the Plan Committee in the PwC action.

Committee v. PricewaterhouseCoopers, LLP, U.S. Dist LEXIS 29240 (D.D.C. 2007). (Recently, on March 31, 2008, the Court in PwC vacated its 2007 dismissal order and approved of the Plan Committee filing its Second Amended Complaint.)

In May 2007, the Plan Committee requested Pillsbury's assistance in addressing a range of issues designed to remedy the defects identified in the two District Court opinions. See e.g., JA 389. For example, Pillsbury was requested to obtain various relief from the bankruptcy court, which it did successfully. JA 393-95. Advantage repeatedly praised Pillsbury for the services it rendered. See e.g., JA 398. However, it refused to authorize payment of any portion of the $137,000 due Pillsbury. See e.g., JA 400-403, 680-81, 705.

Over the course of June and July 2007, Pillsbury wrote to the Plan Committee several times, requesting comments on Pillsbury's invoices. Id. On August 3, 2007, after the Plan Committee failed to respond to any of Pillsbury's letters, Pillsbury filed the Pillsbury Fee Motion (a) requesting to withdraw as Plan Committee counsel and (b) requesting that the court order the Plan Committee to pay for the services Pillsbury rendered.[3] JA 266.

### 4. The Plan Committee-Pillsbury Litigation, Including The Jurisdiction And Summary Judgment Disputes

From August 3, 2007 through December 10, 2007 (when settlement occurred) Pillsbury and the Plan Committee litigated extensively over the $137,000 in fees at issue. See e.g., JA 16. The Plan Committee argued that the bankruptcy court was without jurisdiction to try the dispute. JA 278. Jurisdiction was the subject of multiple rounds of briefing and two hearings, one on October 24, 2007, and a second on November 8, 2007. JA 276, 289, 298, 306. At the November

---

[3]  The first request was rendered moot when, in early August, the law firm of Shulman Rogers appeared in the proceedings as counsel for the Plan Committee and a new plan agent.

8th hearing, Judge Teel rendered a bench decision holding that subject matter jurisdiction existed to try the Pillsbury Fee Motion. JA 323. The order was entered November 15, 2007. JA 365.

Also, Pillsbury moved for summary judgment on October 15, 2007. JA 368. Both parties presented documentation and affidavits to the bankruptcy court for consideration. JA 383-963. Summary judgment hearings began on November 8, 2007, and were continued to December 4, 2007, and then again to December 19, 2007.

Trial on the fee dispute was scheduled to begin on January 8, 2008. See e.g., JA 1051. During October and November, the parties had engaged in substantial written discovery. JA 1050. Among other things, the parties: (i) produced over four thousand pages of documents; (ii) issued and answered interrogatories; and (iii) scheduled at least a half-dozen depositions to occur between mid-December 2007 and the January 2008 trial. Id. Additionally, Pillsbury issued requests for admissions, responses to which were due from the Plan Committee on December 27, 2007.

The fees incurred by the Plan Committee reduced the assets available for the Plan Committee to make distributions to unsecured creditors. Nevertheless, at no time during the proceeding were any pleadings, papers, notices or orders served on anyone other than the parties and those expressly requesting written notice and service pursuant to the Plan.[4] See e.g. JA 282, 303, 319, 382, 968.

---

[4]  For clarity, prior to settlement the unsecured creditors for whom Advantage is concerned were never served by the parties with anything (e.g., the Plan Committee's $120,000 Offer of Judgment). Furthermore, if the litigation had taken the form of an adversary proceeding, a completely new and separate docket would have been established, and even fewer creditors would have received notice, because only the plaintiff and defendant typically receive notices in an adversary proceeding.

701052187v1

### 5.  The Plan Committee's And Pillsbury's Settlement

Beginning in late November 2007, after losing the hard-fought battle on jurisdiction to try the Pillsbury Fee Motion, the Plan Committee approached Pillsbury for the first time to discuss paying *anything* on its invoices. On November 29, 2007, the Plan Committee offered to pay Pillsbury $100,000. JA 965. According to the Plan Committee's counsel, both Plan Committee members approved the proposal. JA 964.

On December 8, 2007, after Pillsbury rejected the $100,000 offer, counsel for the Plan Committee and Pillsbury met to negotiate. JA 994-95. Later that same day, the Plan Committee, at the insistence of Advantage, submitted its Offer of Judgment to pay Pillsbury $120,000. JA 972.

On December 10, 2007, Plan Committee counsel telephoned Pillsbury and proposed a payment of $130,000. See JA 995. Pillsbury accepted, subject to standard mutual release language. Id. Plan Committee counsel responded, accepting this condition. Id. A settlement agreement was drafted by the Plan Committee and promptly sent to Pillsbury, who returned the same with edits, but no substantive comments. Id.

### 6.  The December 14th Hearing - The Bankruptcy Court Finds A Settlement Was Reached By The Plan Committee And Pillsbury

On December 12th or 13th, Shulman Rogers unexpectedly advised Pillsbury that some issue had subsequently arisen that might require its withdraw as Plan Committee counsel. Shulman requested and received Pillsbury's consent to a hearing on December 14th. Counsel for both parties jointly contacted the courtroom deputy to schedule the hearing for the 14th. Contrary to Advantage's unsubstantiated assertion, nothing else was discussed with the courtroom deputy.

On December 14, 2007, the bankruptcy court heard the matters described in the Emergency Motion of Shulman Rogers for Immediate Withdrawal as Counsel to the Plan

11

Committee. JA 982. Those matters included a then-perceived dispute between the two Plan

Committee members arising after December 10, 2007 relating to the Committee-Pillsbury

settlement. JA 983. The colloquy between the court and Plan Committee counsel reflects that

the court, perhaps tipped by the letter faxed by Advantage to Judge Teel the day before,

immediately understood the nature of the perceived dispute:

> THE COURT:              Let me ask you this. Did you communicate a settlement
>                         offer to Mr. Potter?
>
> MR. LICHTENSTEIN:       Yes, Your Honor.
>
> THE COURT:              And was that settlement offer accepted as to all terms?
>
> MR. LICHTENSTEIN:       We believe it was, Your Honor.
>
> JA 993.

The court thoroughly examined the parties' attorneys as to their respective understandings on

whether a settlement had been reached, both counsel indicating their belief that agreement on all

essential terms had occurred. JA 993-1001.

During the hearing it was communicated by Plan Committee counsel that Welcome

Home (through its president Stanley Zupnik) desired to address the court. JA 1000. Pillsbury

did not object, but requested that his comments be made under oath. Accordingly, the court

swore Mr. Zupnik in as a witness and accepted his testimony under seal. JA 1016-1026. As

evidenced by the court's ruling, Mr. Zupnik's testimony, given without direct or cross

examination, corroborated the statements made by counsel for the Plan Committee and Pillsbury

-- that the proposals exchanged and accepted by the Plan Committee and Pillsbury on December

10, 2007, contained all of the terms and conditions necessary to a settlement. Id. As such, the

court inquired as to whether the Plan Committee voted to discharge Shulman Rogers as counsel,

presumably based on the perceived conflict. JA 1025. Based upon the evidence presented, the

12

bankruptcy court ruled from the bench, finding the existence of a settlement between the Plan

Committee and Pillsbury, and stating, in part, as follows:

> THE COURT: Prepare an order that - - somebody's got to make notes to
> [ensure] that they have an accurate record of what the order should say.
>
> Prepare an order that says that the emergency motion to withdraw as
> attorney to the Plan Committee, filed by the Plan Committee, was heard
> today. The Court heard evidence establishing that a settlement was
> reached between the Plan Committee and Shaw Pittman and Mr. Potter
> that contained all the necessary terms for an enforceable settlement, and
> there is no evidence that the Plan Committee has, by formal vote, reached
> a decision that the settlement ought not be receded or that the papers
> evidencing the settlement do not accurately – or, to take the position that
> the papers evidencing the settlement do not accurately reflect the
> settlement.
>
> The evidence is that the papers do accurately reflect the settlement.
>
> *        *        *
>
> The evidence is, further, that a reasonable time has elapsed for the Plan
> Committee to communicate its views regarding the settlement papers and
> that the laws firm representing the Plan Committee should be free to
> proceed to implement the settlement based on the expiration of that
> reasonable period of time.

JA 1010-1011.

Consistent with the court's instructions, a proposed order was prepared by the Plan Committee's

counsel and electronically filed on Sunday, December 16, 2007. JA 1035-1039. A copy of the

proposed order was sent by the Plan Committee to Advantage, among others, on December 16,

2007. Id. The order, finding and determining that the evidence presented at the December 14th

hearing established the existence of a settlement agreement between the Plan Committee and

Pillsbury, was entered by the court on December 18, 2007. JA 1068. Advantage did not object

to entry of, or appeal, the December 18th Order.

7. **The December 14th Notice To Advantage Of The December 21st Hearing**

During the December 14th hearing, the court set a hearing for December 21, 2007 to determine whether it would approve the Committee-Pillsbury settlement. A review of the transcript from the December 14th hearing reveals that the bankruptcy court did not, as Advantage asserts, instruct that notice of the December 21st hearing be sent out on December 14th. The hearing did not even conclude until approximately 4:30 or 5:00 p.m. More significant, the bankruptcy court never instructed the parties to use a service list other than that which the parties used throughout the five-month fee dispute, which is based upon the notice limitations contained in the Confirmation Order.

In fact, the December 14th record reveals that Pillsbury requested permission from the court to set a December 19th objection deadline, conditioned on Pillsbury sending notice later that evening. JA 1012. The court simply approved Pillsbury's request. JA 1013. And, at approximately 6:40 p.m., Pillsbury electronically filed with the court its Notice of Hearing and Objection Deadline. JA 17, 1032. The notice stated, among other things, that a hearing on court approval of the Committee-Pillsbury settlement would occur on December 21, 2007 at 10:30 a.m., and that objections were due by 5:00 p.m. on December 19, 2007. JA 1033-34. The notice also stated that "Movants will request that the Court disregard and overrule the objections of any objectors who fail to attend the December 21, 2007 hearing with testimony/evidence to support their objection." Id. By virtue of the court's ECF system, the notice was automatically served on the approximately 50 individuals and entities requesting receipt of such notices (the "ECF Recipients"). JA 17. In addition, Pillsbury sent the notice by email to Advantage and all other persons on the service list used by Pillsbury, the Plan Committee and the bankruptcy court throughout the course of the Pillsbury Fee Motion litigation (the "Notice Persons"). JA 1032.

14

8.    **The December 17th Consent Motion Filed By The Plan Committee And Pillsbury**

On Monday, December 17, 2007, the Plan Committee filed a consent motion (i.e., the Settlement Approval Motion) seeking court approval of the Committee-Pillsbury settlement.  JA 17-18, 1040-67.  The joint motion and the Committee's notice of the December 21st hearing were immediately served by the Plan Committee (by ECF) on the ECF Recipients and by email on all Notice Persons, as well as Advantage.  Id.  Thus, on December 14th, 16th and 17th, Advantage received notices of the December 19th objection deadline and the December 21st hearing.  The Settlement Approval Motion described the litigation history, the positions of the respective parties, and the reasons for settlement.  For example, the Preliminary Statement says:

> Since August 2007, PWSP, Potter and the Plan Committee have been vigorously litigating over fees PWSP and Potter claim are owed by the Plan Committee.  The Bankruptcy Court has scheduled a trial on January 8, 2008 and January 11, 2008 to hear and determine the pending dispute.  As set forth more fully herein, PWSP, Potter and the Plan Committee have resolved their disputes and seek Court approval of their settlement, which will fully resolve all disputes among the parties and allow the parties to forego incurring significant additional litigation expenses and risk.

JA 1044.  Also, the Background section details, in approximately 25 numbered paragraphs, the extensive litigation of the parties; it describes the respective positions of the parties; and it identifies substantial discovery conducted and yet to be conducted.  JA 1044-1051.  After describing the terms of the settlement, the Settlement Approval Motion sets forth the legal standards for court approval of a settlement (i.e., fair and reasonable and in the best interests of the estate), and explains why the standards are met.  JA 1051-1055.  For example, in paragraph 34, the Plan Committee states that it considered the following factors in determining to settle:

> (a)    that the Bankruptcy Court might not cut Movants' bills more than what it might cost the Plan Committee to continue to litigate this matter;

15

(b)     that there is a risk that the Bankruptcy Court might enter summary judgment in favor of Movants or make certain factual findings before trial that would be detrimental to the Plan Committee's case;

(c)     that the Plan Committee will incur substantial additional attorney's fees and costs litigating the remaining issues, preparing for and conducting the trial;

(d)     that there is a risk that the Bankruptcy Court might award fees to Movants that were incurred litigating this matter [i.e., pursuant to Rule 11], although the Plan Committee viewed this as an unlikely risk;

(e)     that the Settlement provides mutual releases, thereby allowing the Plan Committee to focus their efforts on generating assets/claims of value for the creditors; and

(f)     that the Plan Committee believes the Settlement will result in the best possible net value for the creditors of the estates and is therefore in the best interest of the creditors of the estates.

JA 1054-55.

In addition, the Plan Committee served a detailed notice (describing the settlement, the December 19th objection deadline and the December 21st hearing) by mail on all creditors in the case. JA 1041-42, 1084-1108. Under the terms of the notice limitation contained in the Confirmation Order, this notice was not required and was given voluntarily by the Plan Committee. JA 116-17. The Plan Committee's notice described the history of the Plan Committee-Pillsbury litigation and the reasons why settlement was warranted. JA 1041-42.

Despite the breadth of notice, unprecedented during the course of this fee dispute, only Advantage objected to court approval of the settlement. JA 17-24. To this day, no creditor has come forward to raise concerns about the Plan Committee's decision to settle with Pillsbury. Id.

### 9.     Advantage's Objection To Court Approval Of The Settlement

Advantage's objections were served at 11:41 p.m. on December 18, 2007 by email, and docketed by the court on December 19, 2007. JA 1072. The objections were succinctly set forth

16

on page 8 of its pleading. JA 1080. Specifically, Advantage objected to court approval of the

settlement, and requested that the bankruptcy court:

> (1)    continue the December 21st hearing to at least January 17, 2008 in order to afford
> other unsecured creditors additional time to respond to the settlement;

> (2)    re-hear and reconsider, upon at least 14 days' notice, the finding that a settlement
> had been reached between the Plan Committee and Pillsbury;

> (3)    reinstate an order approving the withdrawal of Shulman Rogers, the Plan
> Committee's counsel [note: no such order was ever entered]; and

> (4)    establishment of a hearing schedule that accommodates replacement of Shulman
> Rogers by new counsel.

Id. Nowhere in its pleading does Advantage describe its efforts to retain counsel, and no

where in its pleading does it request additional time in order to obtain counsel.

### 10.    The Order Granting Pillsbury's Request To Strike The Advantage Objection

On December 20, 2007, Pillsbury filed its response to Advantage's objection. JA 1110-

14. Pillsbury argued that the objection should be stricken because Advantage is a corporation

and its *pro se* filing violated well-known and established procedures of the court and applicable

law. Id. In addition, Pillsbury argued that Advantage's request, made in its objection, to

postpone the December 21st hearing should be denied. Id. On December 20th, Pillsbury emailed

to Advantage its response and request to strike. JA 1109. While Advantage claims it did not

receive Pillsbury's objection (Opening Brief at 17), the return e-mail receipt received by

Pillsbury from Advantage a few seconds later is evidence to the contrary. JA 1115. Advantage

received Pillsbury's Motion to Strike.

At approximately 8:00 a.m. on December 21, 2007, the court entered an order striking the

Advantage objection in its entirety "because it was not filed by a licensed attorney authorized to

practice before the Court," and denied Advantage's request to postpone the December 21st

hearing. JA 1116.

### 11.    Approval By The Bankruptcy Court Of The Settlement

The hearing on the Settlement Approval Motion occurred on December 21, 2007 at 10:30

a.m. Advantage did not appear. JA 1118-20. Only the Plan Committee and Pillsbury appeared.

Id. Counsel for the Plan Committee advised the court that some creditors had telephoned

inquiring about the settlement.[5] JA 1120. None, however, filed objections. JA 17-24. Plan

Committee counsel also referred to the Settlement Approval Motion and the reasons why the

settlement was reasonable, in the best interests of the creditors and entered into in good faith. JA

1120. In response, Judge Teel, who had presided over the Pillsbury Fee Motion litigation for

five months (and who had reviewed the summary judgment papers, including the affidavits),

stated, "I'll approve the settlement agreement. The evidence at the last hearing satisfies the

Court that this was negotiated in good faith and that it's in the best interests of the creditors to

approve the settlement. The motion is granted." JA 1121. Later that day the bankruptcy court

entered its order approving the settlement stating that it was based upon (i) consideration of the

consent motion (which detailed the contentious and expensive litigation that had occurred and

cited additional expenses to be incurred, as well as risk of loss) (ii) the bankruptcy court's due

---

[5]    While Advantage baldly asserts that creditors were "dissuaded from participating," it provides no citation to the record, and this Court is not required to scour the record looking for evidence to support this or any other contention by Advantage. See Bankruptcy Rule 8010(a)(1)(E). See also Richards v. Combined Ins. Co. of America, 55 F.3d 247, 251 (7th Cir. 1995); United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991); Mitchel v. General Elec. Co., 689 F.2d 877, 897 (9th Cir. 1982); Pesmen v. Bannockburn Lake Office Plaza Assocs. LP, 1999 U.S.Dist. LEXIS 8321 (N.D. Ill. 1999); Peterson v. Akrabawi, 166 B.R. 114 (N.D. Ill. 1994).

In fact, the evidence is that creditors were encouraged to participate. They were invited to contact counsel for the parties with any questions. JA 1041 (those "with questions may contact the undersigned"). And, they were invited to request copies of the Settlement Approval Motion. Id. (creditors "may contact the undersigned to request copies of the Motion, as filed with the Bankruptcy Court"). Creditors were also advised that they could file objections and attend the December 21st hearing. To this day, none of the other creditors have filed anything with the court complaining about the process or the results. JA 17-28.

deliberation, (iii) the bankruptcy court having found that the terms of the settlement "were entered into in good faith, are fair and equitable and are in the best interests of the estates and the creditors," and (iv) the bankruptcy court determining "that there is sufficient cause for the relief sought by the Motion." JA 1125-26.

### 12. Advantage's Retention Of Counsel And December 31st Notice Of Appeal

Between December 21, 2007 and December 31, 2007, and at a time when Mr. Wolff has represented that he was out of the country, Advantage retained the law firm of Stinson Morrison. Advantage's Notice of Appeal was filed by Stinson Morrison on December 31, 2007. JA 1129. The Notice identifies the two orders that are the subject of this appeal. JA 1127.

### 13. The Settlement Is Closed

All aspects of the settlement between the Committee and Pillsbury have closed. The Committee paid Pillsbury $130,000 (which has been spent), and Pillsbury turned over all of the Plan Committee's assets and dozens of boxes of records described in the settlement agreement.

## IV. Argument

### A. The Appeal is Equitably Moot

Advantage filed its Notice of Appeal on December 31, 2007. At no time, however, did Advantage seek to stay implementation of the bankruptcy court-approved settlement. Without any stay, the Plan Committee and Pillsbury have fully consummated the transactions contemplated by the settlement. The Plan Committee has paid Pillsbury $130,000; Pillsbury has spent the $130,000; Pillsbury has delivered to the Plan Committee voluminous documents and millions of dollars in assets; the parties have exchanged mutual releases of claims; and the parties have spent substantial resources (including time and money) effecting (and now defending on appeal) the settlement.

19

Dismissal of an appeal is appropriate when the parties have fully implemented the settlement and the appellant has made no effort to obtain a stay.  See e.g., In re Adelphia Communications Corp., 222 Fed. Appx. 7, 9 (2nd Cir. 2006) (unpublished) ("The relief requested by appellants would be inequitable as a consequence of their failure to seek a stay"); In re PC Liquidation Corp., 2008 WL 199457, *7 (E.D.N.Y. 2008) ("as Cadle admittedly did not seek a stay of execution of the orders approving the Settlements, and it would be in equitable now to reverse the orders appealed from, the doctrine of equitable mootness bars Cadle's instant appeals"); In re Delta Air Lines, Inc., 374  B.R. 516, 525 (S.D.N.Y. 2007) (even after noting that appellants did seek stay relief, "the Court concludes that it would be inequitable to hear this appeal and finds it equitably moot"); Buckeye Retirement Co., LLC, Ltd. v. Crews, 2007 WL 1970861, *3 (M.D. Fla. 2007) (dismissing appeal as moot—"although this is a case in which it might be possible to put the parties back in the legal position they held before the settlement agreement was finalized, this is not a case that warrants such intervention by the Court. . . .  In not seeking a stay of the settlement agreement pending appeal, Buckeye made a calculated but ultimately poor choice"); In re Durso Supermarkets, Inc., 1994 WL 17913, *2 (S.D.N.Y. 1994) (unpublished) ("appellant never applied to the bankruptcy court or to this court for a stay pending the decision of the appeal" and the resulting change in circumstances made it "inequitable to reach the merits of D'Urso's appeal").  Here, the Plan Committee and Pillsbury have fully implemented the settlement and Advantage, the appellant, made no effort to obtain a

20

stay. Accordingly, this Court should dismiss Advantage's appeal as moot.[6]

**B.    The Bankruptcy Court Did Not Commit Any Reversible Error With Respect To The Striking Order, Which Should Be Affirmed[7]**

Advantage confines its criticism of the Striking Order to section "A" of its due process argument. See Opening Brief A.2.c. under the heading "Opportunity to Retain Counsel."[8] However, Advantage makes no due process argument for reversal of the Striking Order; nor does it cite any legal authorities where an order striking a corporation's *pro se* pleading was reversed (for any reason).

Instead, Advantage cites a series of legal authorities, all of which expressly state that *pro se* filings by corporations are legally improper. See pages 16-17 of Opening Brief, citing Point of Wisdom v. United States, 1996 U.S. Dist. LEXIS 1574 (D.D.C. 1996) ("Accordingly, this Court concludes that the only proper representative for the organization is a duly licensed attorney."); Litepanels, LLC v. Gekko Technology, Ltd, 2007 U.S. Dist. LEXIS 15197 (E.D. Tex 2007) ("one cannot represent a corporation, or a partnership, pro se") (citations omitted); Gilbert v. Berman, 2005 U.S. Dist. LEXIS 17804 (E.D. La. 2005) ("A corporation can not proceed

---

[6]    Although Pillsbury does not believe Advantage raises a legitimate constitutional issue, courts should only reach the merits of constitutional questions if it is necessary to resolve the appeal. See e.g., Harmon v. Brucker, 355 U.S. 579, 581 (1981) (court should avoid deciding constitutional questions unless they are essential to the disposition of a case); see also U.S. v. Allen, 406 F.3d 940, 946 (8th Cir. 2005) (when facing several grounds for deciding a case, "any of which would lead to the same result, we choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues"). The Court need not reach the alleged due process issues raised by Advantage if, for example, the Court dismisses the appeal on the basis of equitable mootness.

[7]    Pillsbury incorporates as though fully set forth herein its motion for summary affirmance of the Striking Order [District Court Docket Entry 5], its reply [District Court Docket Entry 10] and its supplement [District Court Docket Entry 25].

[8]    While not relevant to *pro se* filings by corporations, Advantage states that no reason was given for the expedited treatment of the settlement. The record, however, reveals the answer. Trial was set to begin on January 8, 2008. The parties had scheduled several depositions prior to trial. Additional substantial discovery responses and pleadings were due from the Plan Committee prior to the end of the year. The parties needed to know if the matter was going forward as soon as possible in order to complete their discovery prior to commencement of trial on January 8, 2008.

701052187v1

without the representation of a properly licensed attorney.") (citations omitted); U.S. v. Aabott Asbestos, Inc., 1993 U.S. Dist. LEXIS 18249 (E.D. Mo. 1993) ("It is settled law that a corporation 'must always appear by attorney, either to institute or defend a legal proceeding.'") (citations omitted); In re Webster, 22 B.R. 11, 12 (Bankr. D. Vt. 1982) ("a corporation may not appear in such [United States] Court through an officer unless he is licensed to practice law."). None of these legal authorities identify an exception to this rule.

Nevertheless, Advantage relies upon these authorities because in each, the court appears to have exercised its discretion to grant the *pro se* corporate litigant some additional time to obtain counsel. Advantage argues that the Striking Order should be reversed based on those decisions. Advantage is incorrect. The applicable standard of review is set forth at II.A.1. above.

First, Advantage had plenty of opportunity to obtain legal counsel. Its claim is approximately $800,000, large enough to warrant retaining legal counsel years ago. Advantage also could have obtained legal counsel on or prior to December 13th, when it wrote its letter to the bankruptcy court. Even after having filed its *pro se* objection on December 18th, Advantage had two additional days to locate counsel to appear at the December 21st hearing. The December 14th Pillsbury Notice warned recipients of the possible consequences of failing to appear. See e.g., NAACP v. A.A. Arms, Inc., 2003 WL 2003797 at *1 (E.D.N.Y. Apr. 11, 2003) ("Objections made in papers by [objecting party] were overruled for failure to prosecute since counsel for [the objector] was not present to argue them."); In re Charge Trucking, Inc., 236 B.R. 620, 622 (Bankr. E.D. Tex. 1999) ("To the extent [objecting party] maintains an objection, it is overruled for its failure to appear and prosecute."); In re Trans World Airlines, Inc., 185 B.R. 302, 311 (Bankr. E.D. Mo. 1995) (overruling objections to confirmation for failure to appear and

prosecute); Lee Servicing Co. v. Wolf (In re Wolf), 162 B.R. 98, 104 (Bankr. D.N.J. 1993)

(holding objection to confirmation waived because of failure to appear at confirmation hearing).

JA 1034. Moreover, Advantage's assertion that it lacked sufficient time to engage counsel prior

to December 21, 2007, before Mr. Wolff left the country, is undermined by the fact that

Advantage actually retained Stinson Morrison between December 21st and December 31st, while

Mr. Wolff was out of the country. See JA 1129.

Second, nothing in the law permits Advantage to violate the prohibition on *pro se*

corporate filings; to fail to remedy the objection prior to the substantive hearing; to fail to appear

at the December 21st hearing despite warnings; and then to assign error to the trial court.

Advantage's suggestion at page 15 of its Opening Brief that the bankruptcy court was charged

with some obligation to advise Mr. Wolff (himself an unlicensed attorney), about the *pro se*

filing prohibition is meritless and without legal authority. Indeed, the law is to the contrary and

charges persons with knowledge of the existing laws. See e.g., Baldwin County Welcome Ctr. v.

Brown, 466 U.S. 147, 152 (1984) (finding that a pro se plaintiff can forfeit his rights if he sleeps

on them); Mohasco Corp. v. Silver, 447 U.S. 807, 825 (1980) (refusing to excuse lay persons

from compliance with title VII statute of limitations); Graham-Humphreys v. Memphis Brooks

Museum of Art, Inc., 209 F.3d 552, 561 (6th Cir.2000) (even pro se litigants are charged with

knowing and following the law); Fisher v. Johnson, 174 F.3d 710, 714 (1999) ("[I]gnorance of

the law, even for an incarcerated pro se petitioner, generally does not excuse prompt filing.");

Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 478 (5th Cir.1991) (illiteracy and ignorance of

the law cannot justify equitable tolling); see also Wright v. Union Cent. Life Ins. Co., 304 U.S.

502, 516 (1938); In re Timbers of Inwood Forest Associates, Ltd., 793 F.2d 1380, 1414 (7th Cir.

1986); In re Gifford, 688 F.2d 447, 458 (7th Cir. 1982).

701052187v1

Advantage also argues that somehow the bankruptcy court erred, in entering the Striking Order, by failing to "consider that Mr. Wolff wore other hats in connection with the Debtors' bankruptcy case" - - hats other than as the president and representative of Advantage. However, Advantage never explains what other hats Mr. Wolff wore or how they might be relevant.

At bottom, Advantage simply argues that because Advantage served in a fiduciary capacity, Advantage should be permitted to file *pro se* pleadings. However, Advantage cites no legal authorities to support its argument.[9]

In sum, based on the authorities it cites, Advantage acknowledges that the bankruptcy court did not commit legal error in striking the Advantage objection. And, Advantage has provided no case supporting the proposition that the bankruptcy court abused its discretion by refusing to postpone the December 21st hearing in order to ensure prompt settlement or resumption of the pre-trial processes sufficiently in advance of January 8th. Accordingly, the Court should affirm the Striking Order. In doing so, Pillsbury renews its request that the Court determine that the appeal by Advantage and Wolff of the Striking Order is frivolous under Bankruptcy Rule 8020.

**C.    The Bankruptcy Court Did Not Commit Any Reversible Error In Approving The Settlement And The Settlement Order Should Be Affirmed**

**1.    Everyone Entitled To Notice Received Notice**

An entity that exercises its right to file a substantive objection plainly has not been denied an opportunity to file an objection. Similarly, an entity with a weeks' actual notice of a hearing

---

[9]    Furthermore, the cases cited at page 15 do not support the proposition that Advantage had to do "everything possible to represent the creditors' interests." If the law imposed liability on a committee member for not doing "everything possible," then perhaps Advantage should be held liable for not retaining counsel by December 21st, especially since Advantage demonstrated its ability to retain counsel within a matter of days and at a time when Mr. Wolff was out of the country.

24

that decides against both attending and hiring counsel to appear has not been denied an

opportunity to be heard.  In such instances, due process rights (if any) have not been denied.  See

e.g., Nunley v. Department of Justice, 425 F.3d 1132, 1139 (8th Cir. 2005) ("a person cannot

complain about the constitutionality of the method used to provide notice when he or she has

received actual notice (assuming it is timely), for he or she has suffered no harm"); In re

American Development Int'l Corp., 188 B.R. 925 (N.D. Tex. 1995) (due process was satisfied

where third party non-debtor did not receive formal settlement notice, but had actual notice and

was given an opportunity to object); In re B.I.B. Co., Inc., 165 B.R. 293, 295 (M.D. Fla. 1994)

("In bankruptcy, a procedural rule requiring notice is adequately complied with when a party

does receive actual notice and has some available remedy to set aside the judgment, whether or

not the party has received formal notice."); In re Glinz, 66 B.R. 88, 91 (D.N.D. 1986) ("A

bankruptcy procedural rule requiring notice is adequately complied with if a party not receiving

formal notice receives actual notice and has an adequate opportunity to raise his objections.");

see also In re George, 4 Fed Appx. 357 (9th Cir. 2001) (unpublished) (four hours' actual notice of

hearing sufficient); In re Holtkamp, 669 F.2d 505 (7th Cir. 1982) (one days' notice sufficient); In

re Fay, 155 B.R. 1009, 1011 (Bankr.E.D.Mo.1993) (notice given one hour before hearing

sufficient where both parties appeared).[10]

---

[10]    Furthermore, when a party has fully participated in a proceeding, due process should be satisfied,
even where notice is questionable.  See In re Fairchild Aircraft Corp., 128 B.R. 976, 983 (Bankr.
W.D. Tex. 1991) ("[W]e are no longer in constitutional waters unless the notice has failed give the
complaining party an *adequate* opportunity to be heard…. Due process of law…focuses upon the op-
portunity to be heard, notice being the most essential condition of such opportunity.").

This is precisely Advantage's situation, assuming *arguendo* it possessed any due process rights here.[11] It had an opportunity to file an objection and did so, albeit with a legally fatal defect (which Advantage made no effort to correct before the December 21st hearing). Also, Advantage had an opportunity to appear at the December 21st hearing and it decided against doing so. Notably, Advantage never requested additional time to seek counsel for itself. Under the circumstances, it cannot be credibly said that Advantage was denied due process, even assuming it possessed due process rights in the matter below.

The case law cited in section IV.A. of Advantage's opening brief is not to the contrary. In Continental Casualty Co. v. General Development Corp., 165 B.R. 685, 691 (S.D. Fla. 1994), Continental Casualty, a party that was actually entitled to notice, received absolutely no notice of a first hearing, but did receive notice as to subsequent hearings. The court indicated that its due process rights were violated in the instance where it received no notice, but that such rights were not violated with respect to the hearings where notice was received. Assuming *arguendo* that Advantage was entitled to notice, the record reflects that it received notice of the December 21st hearing on December 14th, 16th and 17th.

---

[11] Pillsbury disputes that Advantage possessed any due process rights in this matter, and contends that Advantage has not established any such rights. Advantage does not possess any property rights in the assets that were transferred to and vested in the Plan Committee. Advantage concedes it was not a party (i.e., not a "litigant") in the litigation below. And, Advantage never requested service and notice in accordance with the notice and service limitation provision of the Confirmation Order. JA 1116-17.

With the exception of Mullane, due process was not even the subject of the remaining cases relied upon by Advantage.[12]  In Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306 (1950), the Supreme Court invalidated a New York law that permitted notice by publication to trust owners whose property rights were being altered, whose names and addresses were known, and who therefore were capable of being provided notice by mail.  Unlike the trust owners in Mullane, neither Advantage nor any of the creditors have property interests in the Plan Committee's assets.  Unlike the trust owners in Mullane, a duly entered, final and non-appealable Confirmation Order restricts notice and service to specified persons.  And, unlike the trust owners in Mullane, Advantage and the unsecured creditors actually received the subject pleadings and notices in this case and acted upon them as they saw fit.  Nothing in Mullane or any of the other cases cited in Section A of Advantage's argument, warrant *de novo* reversal of the bankruptcy court's December 21st Settlement Approval Order.

In section "A" of its argument Advantage also complains, "the Court never afforded Mr. Wolff the same opportunity to testify that it accorded Mr. Zupnik."  Opening Brief page 14.  This is not correct.  Mr. Wolff was aware of the December 14th hearing and declined to attend. Nothing in the record suggests that the court would have refused Mr. Wolff the opportunity to testify at either the December 14th or December 21st hearings.  Also, Advantage's claim of surprise that the topic of settlement would arise at the December 14th hearing should be rejected

---

[12]  See Northview Motors, Inc. v. Chrysler Motors Corp., 186 F.3d 346 (3d Cir. 1999) (held: chapter 7 trustee's settlement of litigation subject to unsatisfied conditions subsequent is not binding on secured creditors who succeeded to trustee's litigation rights); Myers v. Martin, 91 F.3d 389 (3d Cir. 1996) (held: in the absence of an contractual obligation to use best efforts to consummate settlement, court allowed trustee to withdraw from settlement based on changed circumstances); In re West Point Properties, 249 B.R. 273 (Bankr. E.D. Tenn. 2000) (held: could refuse to allow trustee to settle bona fide litigation for nuisance value where law firm agreed to prosecute same on a contingency fee basis); In re Lloyd Carr and Co., 617 F.2d 882 (1st Cir. 1980) (held: court refused to reward debtor, by using estate assets to post bond in connection with criminal prosecution, for complying with his legal obligation to turn over estate assets to the trustee).

because, as Advantage knew, issues relating to the Plan Committee-Pillsbury settlement were precisely the reason Shulman Rogers initially requested to withdraw from representing the Plan Committee.

Furthermore, the bankruptcy court's order shortening notice for conducting the December 21st hearing was proper. <u>See</u> Bankruptcy Rule 9006(c)(1) ("Except as provided in paragraph (2) of this subdivision [inapplicable], when an act is required or allowed to be done at or within a specified time by these rules or by a notice given thereunder or by order of court, the court for cause shown may in its discretion with or without motion or notice order the period reduced."). As Advantage concedes (Opening Brief page 13), Bankruptcy Rule 2002(a)(3) also provides that the bankruptcy court can reduce or dispense with notice.

Finally, as demonstrated above, creditors have no property or rights in the assets that vested in the Plan Committee and the Confirmation Order eliminated the requirement of notice to or service upon creditors other than specified persons and creditors requesting notice and service in writing. JA 116-17. So, while the creditors in the case actually received notice of the December 21st hearing, they were not entitled to it. And, had they failed to receive notice, their due process rights would not have been implicated. Furthermore, none ever have objected to approval of the settlement. Besides, as a matter of law, Advantage cannot assert, as a basis for

relief, the alleged violation of due process rights of other creditors.[13]

In sum, Advantage received adequate notice and opportunity to object and to be heard at the December 21st hearing. Nothing in the law cited by Advantage suggests that any due process rights were implicated. While other creditors were not entitled to notice, they received notice of the December 21st hearing. They were expressly invited to participate in the process and, save perhaps a few telephone inquiries to Committee Counsel, all declined to do so. Advantage's arguments for reversal of the Settlement Approval Order based on alleged violations of due process should be rejected by the Court. Moreover, because its due process argument was factually baseless and legally untenable, the Court should find it frivolous.

### 2. The Bankruptcy Court Did Not Abuse Its Discretion In Approving Settlement Agreement

At IV.A.3. of its Opening Brief Advantage argues that the Settlement Approval Order should be reversed because the bankruptcy court allegedly (1) erroneously found the existence of a settlement between the Plan Committee and Pillsbury and (2) erroneously approved the

---

[13]  So-called "third-party standing," requires an additional showing beyond Article III's requirements. Kowalski v. Tesmer, 543 U.S. 125, 129 (2004). A litigant attempting to assert the rights of a third party must show (1) an injury in fact; (2) a close relationship with the third party possessing the right; and (3) some hindrance to the third party's ability to protect that right. Id. at 130; Powers v. Ohio, 499 U.S. 400, 411 (1991); Lepelletier v. F.D.I.C., 164 F.3d 37, 43 (D.C. Cir. 1999). Here, there is neither a close relationship with other creditors, nor any hindrance to those creditors' ability to assert their own rights. See Haitian Refugee Center v. Gracey, 809 F.2d 794, 809 (D.C. Cir., 1987) ("A litigant therefore could never have standing to challenge a statute solely on the ground that it failed to provide due process to third parties not before the court."); Nevel v. Village of Schaumburg, 297 F.3d 673, 679 (7th Cir. 2002) (holding that home owners could not assert the due process rights of a previous home owner in challenging the designation of the home as a historic landmark); Center for Reproductive Law and Policy v. Bush, 304 F.3d 183 (2d Cir. 2002) (dismissing plaintiffs' due process claim, holding that "[a]s plaintiffs do not assert a harm to their own interest in receiving due process of law, this is precisely the sort of claim that the prudential standing doctrine is designed to foreclose"); In re Bult, 108 B.R. 207, 209-10 (Bankr. E.D. Wis. 1989) (holding that debtor in possession does not have standing to assert the due process claims of secured creditors).

settlement. The first argument is governed by the clearly-erroneous review standard and the second is governed by the abuse-of-discretion review standard. See II.A.2. above.

The bankruptcy court's finding that a settlement was reached is contained in the December 18th Order. Advantage did not timely or otherwise appeal the December 18th Order, which is a jurisdictional bar to appellate review. See e.g., Davenport v. Riverview Gardens School Dist., 30 F.3d 940, 946 (8th Cir. 1994) (failure to reference an order is more than a technical deficiency, it is a jurisdictional bar); Klaudt v. U.S., 990 F.2d 409, 411 (8th Cir. 1993) (failure to refer to earlier order of court in notice of appeal is jurisdictional bar to appeal of issues arising from earlier order). The December 18th Order is not before this Court on appeal and not subject to appellate review.

However, even if the settlement finding was before the Court on appeal, Advantage does not cite to anything in the record establishing any error, much less clear error in the lower court's finding that the Plan Committee and Pillsbury reached a settlement. Instead, Advantage argues that the court erred because its finding (made during the December 14th hearing) was not based upon a written settlement describing all the terms. However: (i) oral agreements are enforceable and need not be in writing; (ii) counsel for the parties represented to the court that at the time of acceptance by the parties, all necessary terms had been agreed upon; and (iii) the witness testified that all necessary terms had been agreed upon. JA 991-1031. No contrary evidence was presented, and Advantage's assertions in its opening brief do not constitute evidence.

Advantage also argues that the finding (made December 14th) was clearly erroneous because of Advantage's objection. However, Advantage's objection was not filed until late on December 18th, actually docketed December 19th, and the court could not have considered it on December 14th. Regardless, the record of the December 14th hearing actually reveals a

701052187v1

disagreement between the two committee members; which the bankruptcy court reconciled based on the testimony. It found that both Committee members agreed to a settlement containing all necessary terms; that they communicated it to Pillsbury; that each party had agreed to accept the necessary terms; and that subsequently, after the discovery pressure was lifted by Pillsbury, Advantage attempted to withdraw from the agreement by introducing new conditions and refusing to review the documentation. JA 1010-11. No contrary evidence was presented and accordingly, the lower court's finding (made December 14th and embodied in the December 18th Order), that the Plan Committee and Pillsbury reached agreement on December 10th should not be set aside as clearly erroneous.

The balance of Advantage's argument for reversing the Settlement Order in this section of its opening brief is devoted to establishing that the lower court abused its discretion by giving "no consideration" to the four factors sometimes considered by courts when approving a settlement. Opening Brief pp. 19-21. Advantage states that the four factors are (1) probability of success in litigation; (2) collection difficulties; (3) complexity, expense and inconvenience of the litigation; and (4) the interest of creditors, and then states that "it is clear in this case that the Bankruptcy Court gave no consideration at all to" these factors. Advantage's assertion, made in a complete vacuum, is conclusory and should be rejected.

First, prior to approving the settlement on December 21, 2007, the bankruptcy court was intimately familiar with the litigation. The court was aware of the underlying services that had been rendered by Pillsbury to the Plan Committee. Much of the services were rendered obtaining relief from the bankruptcy court in May 2007. All of Pillsbury's invoices and detailed descriptions of the circumstances giving rise to Pillsbury's fees were presented to the court in Pillsbury's affidavits. JA 654-678, 751-56. And, the bankruptcy court had already conducted an

31

initial summary judgment hearing on November 8, 2007. At both the October 24, 2007 hearing and the November 8, 2007 hearing, the Committee's counsel indicated that Pillsbury was entitled to be paid undisputed portions of its fees. And at the November 8, 2007 hearing the court asked why those fees had not been paid. See e.g., JA 340. The bankruptcy court was prepared to conduct a final summary judgment hearing on December 4, 2007, but adjourned to December 19, 2007 at the request of committee counsel. The court's decision to approve the settlement was also informed by the extended description of the respective litigation positions contained in the Settlement Approval Motion. Advantage's argument that at this late stage in the litigation the bankruptcy court had not considered the likelihood that Pillsbury would substantially or completely succeed in recovering its fees is defied by the record and lacks merit. Certainly Advantage had considered the likely outcomes when it authorized the Plan Committee to settle for $100,000 on November 29, 2007, and insisted that the Plan Committee increase its number to $120,000 as set forth in the December 8, 2007 Offer of Judgment. JA 964-66, 972.

Second, collection difficulties are irrelevant, as both Pillsbury and the Plan Committee were aware that the Plan Committee had several millions of dollars in the bank. Besides, the theoretical lack of Plan Committee resources to pay Pillsbury would not have been a factor in approving the settlement, since it was Pillsbury, not the bankruptcy estate, who bore the risk of non-payment, whether the dispute was litigated or settled.

The third and fourth factors are intertwined with the first factor and one another. Because the bankruptcy court was aware of both the litigation giving rise to Pillsbury's bills (i.e., Pillsbury's efforts to save the PwC litigation from final dismissal) and the disputes between Pillsbury and the Plan Committee over those bills, it was aware of the complexity (or lack thereof) of the fee dispute. And, such complexity was described in the Settlement Approval

32

Motion. JA 1043-55. Furthermore, the court was generally aware that the legal fees for both the Plan Committee and Pillsbury were spiraling out of control. The Plan Committee itself had complained about this during the fee litigation. In addition to the fees incurred during the 5-month case, there was substantial additional work to be done prior to trial.

Furthermore, the bankruptcy court understood that stopping this proverbial hemorrhaging was, indirectly, in the best interest of the creditors: the less money spent by the Plan Committee on this matter, the more money the Plan Committee would retain to distribute to creditors. Also, as alluded to in the Settlement Approval Motion, Pillsbury had tendered its Rule 11 motion to Plan Committee counsel on October 1, 2007, and there was risk that the Plan Committee would be sanctioned and required to pay Pillsbury's costs of litigating the Pillsbury Fee Motion.

That the bankruptcy court took these factors into consideration in approving the settlement is evident in its order, which states that it is was based upon (i) consideration of the Settlement Approval Motion, which was detailed, (ii) the court's due deliberation, (iii) the court having found that the terms of the settlement "were entered into in good faith, are fair and equitable and are in the best interests of the estates and the creditors," and (iv) the court determining "that there is sufficient cause for the relief sought by the Motion." JA 1125-26.

On this record Advantage has failed to establish that "it is clear in this case that the Bankruptcy Court gave no consideration at all to" the four referenced settlement-approval factors, or that the lower court abused its discretion in granting the Settlement Approval Motion. Accordingly, the Settlement Approval Order should be affirmed.

701052187v1

3. **The Bankruptcy Court Did Not Err By Allowing The Fee Dispute To Proceed As A Contested Matter Rather Than An Adversary Proceeding – It Did Not Even Rule On The Issue, Raised Late In The Proceeding By The Plan Committee And, Accordingly, There Is Nothing For This Court To Review**

As a basis for this Court reversing either the Striking Order or the Settlement Approval Order, the argument by Advantage that the Pillsbury Fee Motion should have been commenced as an adversary proceeding is frivolous.

First, Advantage is making this argument for the first time on appeal, which is prohibited as a matter of law. See e.g., District of Columbia v. Air Florida, Inc., 750 F.2d 1077, 1084 (D.C. Cir. 1984); In re Capitol Hill Group, 313 B.R. 344, 350 (D.D.C. 2004) ("Therefore, to the extent that CHG did not raise this breach of fiduciary claim in the bankruptcy court, it is waived and will not be heard for the first time on appeal.").

Second, while the Plan Committee raised this issue for the first time on December 6, 2007, after having litigated the fee dispute as a contested matter for more than four months, the matter was never fully briefed, and the bankruptcy court never ruled on the issue. In the absence of a ruling by the bankruptcy court, it cannot be reasonably said that the bankruptcy court "erred." In any event, there is no decision, written or oral, for this Court to review for error.

Third, whether or not the fee dispute itself should have been commenced as an adversary proceeding, there can be no dispute that the parties' Settlement Approval Motion - - which is the subject of this appeal - - was not required to be filed as an adversary proceeding. A Bankruptcy Rule 9019 motion, which is the precise type of motion that gave rise to this appeal, is not identified in the Bankruptcy Rule 7001 list of matters that are prosecuted as adversary proceedings. And, Rule 9019 motions are not filed within an adversary proceeding. In other words, even if the fee litigation had proceeded as an adversary proceeding, approval of a

34

settlement would still have occurred under Rule 9019 pursuant to a motion filed in the "main" proceeding, which was in fact done in this case. See e.g. West Point Properties, supra (9019 settlement motion adjudicated in the main bankruptcy case, not either of the two adversary proceedings that the 9019 motion was designed to settle).

Fourth, while the bankruptcy court never ruled on the merits of the Plan Committee's request to treat the Pillsbury Fee Motion as an adversary proceeding, it would have been legally appropriate for the court to deny the Plan Committee's request made, for the first time, on the eve of trial. Even Crump, cited by Advantage, acknowledges that at some point during a contested matter, the right of a party to convert to an adversary proceeding is waived. See Crump v. U.S., 1996 U.S. Dist. LEXIS 5517 (D. Col. 1996) ("Some courts, including this court, have validated non-adversary-proceeding suits involving issues enumerated in rule 7001. . . . In these cases, however, the parties had already litigated the issues, and the courts emphasized the fact that the nonmoving party had not objected to the non-adversary-proceeding form . . . as well as the lack of prejudice to the nonmoving party and the improvidence of stressing form over substance."). Thus, the bankruptcy court might have relied upon these and other authorities to hold that the Plan Committee waived its conversion right and that no prejudice would be suffered by proceeding to trial as a contested matter.

For these reasons, this Court should reject the adversary-proceeding argument made by Advantage as a basis for reversing either of the two orders on appeal, and determine that such argument, as a basis for reversal, is wholly frivolous.

701052187v1

### 4.    The Bankruptcy Court Possessed Jurisdiction To Approve The Settlement

Like the prior argument, as a basis for this Court reversing either the Striking Order or

the Settlement Approval Order, the argument by Advantage that the bankruptcy court committed

error by exercising jurisdiction over the Pillsbury Fee Motion is meritless and frivolous.

Pillsbury recognizes that unlike the adversary-proceeding argument, which cannot be

raised for the first time on appeal, the jurisdictional basis for entering the Settlement Approval

Order likely may be challenged at any time on appeal.  However, Advantage does not challenge

the bankruptcy court's jurisdiction for entertaining and ruling upon the Settlement Approval

Motion.[14]  And, it is clear, as a matter of law, that the bankruptcy court possesses such

jurisdiction.  See e.g., Continental Casualty, supra at 691 (bankruptcy courts have jurisdiction to

approve 9019 settlements); West Pointe, supra at 273 (same).  This is the case whether or not the

subject matter of the settlement is within or outside of the bankruptcy court's jurisdiction.

Myers, supra.  As such, nothing more need be said about the bankruptcy court's jurisdiction to

approval settlements pursuant to Rule 9019, and lack of jurisdiction should be rejected as a basis

---

[14]    Instead, Advantage purports to challenge the court's jurisdiction to try the Pillsbury Fee Motion.

701052187v1

for reversing the Settlement Approval Order.[15]

For these reasons, the Court should reject the jurisdiction argument made by Advantage as a basis for reversing either of the two orders on appeal, and determine that such argument, as a basis for reversal, is wholly frivolous.

### D.    Advantage's Policy Argument Fails

Advantage's policy argument hinges on two assertions:

1.    That the bankruptcy court allowed "Potter and Pillsbury, to mislead the creditor body and the courts."

2.    The settlement between the Plan Committee and Pillsbury was "tainted," "against the public interest," and entered into "simply because an attorney is seeking quick and inexpensive resolution in his favor."

Like many of the assertions contained in Advantage's opening brief, these are not supported by any citations to the record. Nowhere does Advantage cite facts justifying the statement that Potter and Pillsbury mislead the creditor body and the courts. Advantage makes no effort whatsoever to explain what Potter and Pillsbury did to mislead the creditor body and

---

[15]    Even if the proper jurisdictional question on appeal involved this Court analyzing the bankruptcy court's jurisdiction to enter judgment on the Pillsbury Fee Motion, Advantage uses deception to make its argument. Advantage states that the Plan expressly removed compensation of professionals from the realm of the bankruptcy court. As support, Advantage purports to quote the relevant language, but omits an entire sentence from its quote - - the one that states "Any professional retained pursuant to the Plan shall be entitled to reasonable compensation for services rendered . . . as approved by the Bankruptcy Court." JA at 75. (emphasis supplied). Thus, professionals retained under the Plan, such as Pillsbury, are expressly entitled to bankruptcy court approval of reasonable compensation.

Furthermore, Advantage asserts that there is no provision whatsoever reserving bankruptcy court jurisdiction to determine post-confirmation fee disputes. However, Advantage omits literally pages of language describing the bankruptcy court's retained jurisdiction. JA 75-78, 107-113

In addition, Advantage relies upon two decisions by Judge Teel on jurisdiction, but completely fails to advise this Court about Judge Teel's November 8th bench decision finding jurisdiction to resolve the Pillsbury Fee Motion in this case. Judge Teel was aware of his prior decisions, as they were the subject of briefing and oral argument at one or both the hearings where jurisdiction was argued. Because jurisdiction over the Pillsbury Fee Motion is not even before this Court, Pillsbury will not summarize, but instead draw the Court's attention to the ruling below and rely upon the same as the basis for distinguishing the earlier decisions of Judge Teel now cited by Advantage.

701052187v1

the courts. The Court should ignore these assertions for purposes of appellate review, but it should impose sanctions, under Rule 8020, because these statements are frivolous – made without merit, basis or investigation.

Finally, the Court should reject, as both incorrect and irrelevant Advantage's second assertion. Pillsbury absolutely wanted to bring the litigation to a conclusion sooner rather than later; as did the Plan Committee, as evidenced by their offers of $100,000, increased to $120,000, and then $130,000, in the span of approximately two weeks. By the end of December 2007, the parties collectively spent more than the underlying fees at issue.

Still, the record does not support Advantage's contention. In fact, the record repeatedly reflects that Pillsbury was reluctant to proceed with settlement, even after the agreement with the Plan Committee had been reached. See e.g., JA 996-1000. Trial would occur in less than a month, Pillsbury indicated its willingness (if not preference) to proceed to trial, and Pillsbury was preparing to go to trial. Pillsbury believed it would recover all of its fees, plus the costs to litigate the matter under Rule 11, in part because the Plan Committee never had any legitimate basis for refusing to pay Pillsbury. Pillsbury did not intend to lose the January 8th trial date, postpone indefinitely completion of discovery and, at the same time, *not* reach a court-approved definitive settlement.

That, however, is precisely what Pillsbury believes Advantage attempted to orchestrate by reaching an agreement, obtaining some relief from the discovery schedule, and then immediately renege on the deal by attempting to add new conditions. The bankruptcy court agreed, stating that Advantage reached an agreement and then decided to walk away from it. JA 1135, lines 5-6. Advantage distorts and omits the facts in an attempt to make its arguments, and is obviously frustrated that neither its co-Committee member, Plan Committee counsel, the

38

701052187v1

bankruptcy court, nor Pillsbury would permit Advantage to implement its strategy. In fact, the

bankruptcy process would have been adversely impacted if they had allowed Advantage to do so.

E.    **Advantage's Request For Relief In Its Opening Brief Further Demonstrates The Frivolity Of This Appeal**

Advantage requests that this Court reverse findings and an order (i.e., the

November 8th findings and November 15th Order) that Advantage has completely failed

to identify and describe in its opening brief, let alone appeal.[16]

> "Specifically, the Bankruptcy Court erred when it determined that it had subject matter jurisdiction over this fee dispute so that orders should be reversed and the matter remanded . . ."

The frivolity of this request is further demonstrated by the remainder of the sentence,

where Advantage requests that this Court issue:

> instructions to dismiss the Motions for Order Authorizing Payment of Unpaid Fees and Expenses, with leave to file the fee dispute as an Adversary Proceeding.

In fact, there is nothing to dismiss because the "Motions for Order Authorizing Payment

of Unpaid Fees and Expenses" (i.e., the Pillsbury Fee Motion) are no longer pending.

Much more troubling, however, is the proposed instruction that the bankruptcy court

exercise subject matter jurisdiction (through the vehicle of an adversary proceeding) over

the very fee dispute that Advantage asserts jurisdiction is lacking. Arguing that

jurisdiction below was lacking and then requesting this Court to remand with instructions

for the lower court to further exercise jurisdiction is frivolous.

Advantage's "alternative" possesses no more merit.

---

[16]    As demonstrated above, at best the only subject matter jurisdiction issue before this Court is the jurisdiction of the bankruptcy court to entertain and dispose of settlement motions made under Bankruptcy Rule 9019. The lower court never granted (nor denied) the Pillsbury Fee Motion, and therefore it never ultimately exercised the jurisdiction that Advantage would have this Court overrule.

701052187v1

Alternatively, because the Settlement Agreement was approved without notice to creditors or any opportunity to be heard, the Order entered on December 21, 2007 should be reversed and the matter should be remanded with instructions requiring Appellees to file a written Motion for Approval of Compromise of Controversy Pursuant to Rule 9019, containing the complete factual background leading up to the dispute along with the analysis performed in deciding that this was a good faith and fair settlement, and to serve full and complete notices upon all parties, after consultation with the members of the Plan Committee.

Advantage provides no explanation whatsoever as to the additional "factual background" and "analysis" that it believes should be added to the approximately 25 paragraphs of detailed background that was contained in the Settlement Approval Motion. Similarly, Advantage does not identify, beyond the phrase "full and complete," what it believes to be missing from the "notices" that were in fact sent to creditors. There is no legal or factual basis for requiring the Plan Committee and Pillsbury to re-trace these steps, and Advantage's unexplained request that this Court issue instructions to do so is meritless and frivolous.

## V.  **Short Conclusion – Precise Relief**

Wherefore, for the reasons previously stated in the pleadings filed by Pillsbury in this appeal, for the reasons set forth above, and for such other reasons as the Court deems appropriate, Pillsbury requests that the Court affirm the Striking Order and the Settlement Approval Order. Pillsbury also requests a determination that these appeals taken by Advantage and Mr. Wolff are frivolous under Bankruptcy Rule 8020.

Dated: April 17, 2008                      Respectfully submitted,

                                           /s/ Patrick Potter
                                           Patrick Potter (426514)
                                           Jerry Hall (976461)
                                           Pillsbury Winthrop Shaw Pittman LLP
                                           2300 N Street, NW
                                           Washington, DC 20037
                                           (202) 663-8000
                                           Counsel to Pillsbury