## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **ADVANTAGE HEALTHPLAN, INC.** and **ELLIOT R. WOLFF,** | ) ) ) ) | |
| **Appellants,** | ) ) | **Civil Action No. 08-0166-CKK** **(Appeal)** |
| **v.** | ) ) | **Bankruptcy No. 99-01159** |
| **PILLSBURY WINTHROP SHAW PITTMAN, LLP, ET AL.** | ) ) ) | **(Chapter 11)** |
| **Appellees.** | ) ) ) | |

## BRIEF OF APPELLEE THE PLAN COMMITTEE

Stephen E. Leach (Bar No. 925735)
D. Marc Sarata (Bar No. 489488)
LEACH TRAVELL BRITT  pc
8270 Greensboro Drive, Suite 1050
McLean, Virginia 22102
Telephone:      (703) 584-8902
Telecopier:      (703) 584-8901
E-mail:      sleach@ltblaw.com
E-mail:      msarata@ltblaw.com

*Counsel for Appellee, The Plan Committee*

Dated: April 17, 2008

## I.    TABLE OF CONTENTS

I.    TABLE OF CONTENTS .......................................................................... ii

II.   TABLE OF AUTHORITIES ................................................................... iv

III.  BASIS OF APPELLATE JURISDICTION .............................................. 1

IV.   ISSUES PRESENTED AND STANDARD OF REVIEW ........................... 1

    A.    ISSUES PRESENTED ................................................................ 1

    B.    STANDARD OF REVIEW .......................................................... 1

V.    STATEMENT OF THE CASE AND STATEMENT OF FACTS .............. 2

    A.    Nature of the Case, Course of Proceedings, and Disposition Below. .............. 2

    B.    Facts Relevant To The Issues Presented For Review. ....................... 5

        1.    The Parties on Appeal ..................................................... 5

        2.    The Plan and the Confirmation Order ................................. 6

        3.    The PwC Complaint and Pillsbury Services Giving Rise to the Fee Dispute .................................................................. 6

        4.    The Fee Dispute Litigation ............................................... 8

        5.    Settlement of the Fee Dispute ........................................... 8

        6.    Committee Counsel's Emergency Motions ............................. 8

        7.    The December 14 Notice to Advantage of the December 21 Hearing 11

        8.    The December 17 Motion for Court Approval of the Settlement ....... 12

        9.    Advantage's Timely Objection to Court Approval of the Settlement 13

        10.   Pillsbury's Motion to Strike the Advantage Objection ...................... 14

        11.   Bankruptcy Court Approval of the Settlement ................................... 14

        12.   Advantage's Retention of Counsel and Notice of Appeal .................. 15

        13.   Consummation of the Settlement ......................................... 15

VI.   ARGUMENT ...................................................................................... 15

**A.** **Appellants Lack Standing to Assert the Due Process Rights of Other Creditors.** ................................................................................. 15

**B.** **Appellants Received Sufficient Notice of the Settlement to Satisfy their Due Process Rights.** ................................................................ 18

**C.** **The Bankruptcy Court Had Discretion to Reduce the Notice Period.** ........... 21

**D.** **The Bankruptcy Court Acted Within Its Discretion in Approving the Settlement** ....................................................................................... 23

**E.** **The Bankruptcy Court had subject matter jurisdiction over the Motions.** .. 25

    **1.** **The Scope of Post-Confirmation Bankruptcy Jurisdiction.** ................. 25

    **2.** **The Bankruptcy Court Had "Arising In" Jurisdiction Over the Fee Dispute.** ........................................................................... 28

    **3.** **The Bankruptcy Court Had "Related To" Jurisdiction Over the Fee Dispute.** ........................................................................... 29

    **4.** **The Plan Provided for Retention of Bankruptcy Court Jurisdiction Over the Dispute.** ............................................................... 32

**F.** **The Fee Dispute Properly Proceeded As a Contested Matter Rather Than As an Adversary Proceeding.** ................................................... 34

    **1.** **Appellants Lack Standing to Assert That the Fee Dispute Should have Proceeded as an Adversary Proceeding.** ......................... 34

    **2.** **Even if Appellants have Standing, Appellants Waived Issue by Failing to Object Below.** ........................................................ 35

    **3.** **Permitting the Fee Dispute to Proceed as a Contested Matter was Harmless Error.** ........................................................... 36

**G.** **The Bankruptcy Court Properly Struck the Advantage Objection.** ............. 38

    1. **A Corporation May Not Represent Itself In Federal Court.** ............. 38

    **2.** **The Bankruptcy Court Had No Duty to Grant a *Sua Sponte* Continuance.** .................................................................... 39

**H.** **Elliott Wolff Lacks Standing to be an Appellant.** .......................... 40

**VII.** **CONCLUSION** ........................................................................ 41

# II.    TABLE OF AUTHORITIES

## CASES:

*Aboudaram v. DeGroote,*
 2006 WL 1194276 (D.D.C. 2006)……………………………………………………...1

*Acme Poultry Corp. v. United States,*
 146 F.2d 738, 740 (4th Cir. 1944) *cert. denied*, 371 U.S. 950,
 (1963), *rehearing denied*, 373 U.S. 919 (1963) ………………………………………...38

*The Air Cargo Litig. Trust v. i2 Technologies (In re Air Cargo, Inc.),*
 Adv. No. 06-2011, 2008 WL 352619 (Bankr. D.Md. Feb. 7, 2008) …………..………...26

*American Airways Charters, Inc. v. Regan,*
 746 F.2d 865 (D.C. Cir. 1984) ……………………………………………………...............38

*Atkinson v. Kestell,*
 954 F.Supp. 14 (D.D.C. 1997)…………………………………………………………......25

*Avery v. State of Alabama,*
 308 U.S. 444 (1940) …………………………………………….....................................39

*Azbill v. Kendrick Trustee (In re Azbill),*
 No. 06-8074, 2008 WL 647407 (B.A.P. 6th Cir. Mar. 11, 2008) …………………...21, 23

*Back v. LTV Corp. (In re Chateaugay Corp.),* 213 B.R. 633 (S.D.N.Y.1997) ............................28

*Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.),*
 86 F.3d 364 (4th Cir. 1996)……………………………………..…………………25, 26, 29-31

*Bristol Petroleum Corp. v. Harris,*
 901 F.2d 165 (D.C. Cir. 1990) ……………………...............……………………………....38

*Binder v. Price Waterhouse & Co., LLP (In re Resorts International, Inc.),*
 372 F.3d 154 (3d Cir. 2004) …………………………………….…………….26-29, 31

*Commercial and R.R. Bank of Vicksburg v. Slocomb, Richards & Co.,*
 39 U.S. 60 (1840) …………………………………………………….......................38

*Flora Constr. Co. v. Fireman's Fund Ins. Co.,*
 307 F.2d 413 (10th Cir. 1962) …………………………………………...........……38

*Gordon v. Gouline,*
 1995 WL 860683 (D.D.C. 1995) ……………………………………………………1

*Guttman v. Martin, (In re Railworks Corp.),*
    325 B.R. 709 (Bankr. D.Md. 2005) …………………..……….........…………….29

*Haitian Refugee Ctr. v. Gracey,*
    809 F.2 794 (1987) ……………………………………………………….....16-17, 34

*Heiskell v. Mozie,*
    65 82 F.2d 861 (D.C. Cir. 1936) ………………………………………………......38

*In re Banks,*
    94 B.R. 772 (Bankr. M.D.Fla. 1989) ………………………………………………...35

*In re Beta Intern, Inc.,*
    210 B.R. 279 (E.D. Mich. 1996) …………………………………………………36-37

*In re Cannonsburg Environmental Associates, Ltd.,*
    72 F.3d 1260 (6th Cir. 1996) …………………………………………….......37

*In re Command Services Corp.,*
    102 B.R. 905 (Bankr. N.D.N.Y.1989) …………………………………….…..........36

*In re Dean,*
    359 B.R. 218 (Bankr. C.D.Ill. 2006) …………………………………………….........37

*In re Fas Mart Convenience Stores, Inc.,*
    318 B.R. 370 (Bankr. E.D.Va. 2004) …………………………………………….....36

*In re Glinz,*
    66 B.R. 88 (N.D. 1986) …………………………………………………………..21, 23

*In re Highley,*
    459 F.2d 554 (9th Cir. 1972) …………………….......……………………………38
*In re Iridium Operating LLC v. Official Comm. of Unsecured Creditors,*
    478 F.3d 452 (2d Cir. 2007) …………………………………………………...…23-24

*In re Johns-Manville Corp.,*
    97 B.R. 174 (Bankr.S.D.N.Y.1989)..................................................................28

*In re Johns-Manville Corp.,*
    340 B.R. 49, 69-70 (S.D.N.Y. 2006) ………………………….…………….......….2, 23

*In re Las Colinas Development Corp.,*
    585 F.2d 7 (1st Cir. 1978) …………………………………………….........38

*In re Metro Transp. Co.,*
    117 B.R. 143 (Bankr. E.D.Pa. 1990) …………………………………………….....37

*In re Munoz,*
    287 B.R. 546 (B.A.P. 9th.Cir.2002) ……………………………………………….....36

*In re Neshaminy Office Bldg. Assocs.,*
    62 B.R. 798 (E.D.Pa. 1986) ……………...……………………….......…………23

*In re Orfa Corp. of Philadelphia,*
    170 B.R. 257 (E.D. Pa. 1994) …………………………………………….......37

*In re Patel,*
    43 B.R. 500 (N.D. Ill. 1984)………………………………………..............………21

*In re Stern,*
    70 B.R. 472 (Bankr. E.D.Pa. 1987) ……………………………….............……..35

*In re Szostek,*
    93 B.R. 399, (Bankr. E.D.Pa. 1988), *rev'd on other grounds* 1989 WL
    30648 (E.D.Pa. Mar 30, 1989), *rev'd and bankruptcy court order reaffirmed*
    886 F.2d 1405, 1414 (3rd Cir. 1989) ………………………………………………….35

*In re Treiling,*
    21 B.R. 940 (Bankr. E.D.N.Y. 1982) ………………………………….......34-35

*In re Zumbrun,*
    88 B.R. 250 (B.A.P. 9th Cir. 1988) ……………………………………….....36-37

*Kontrick v. Ryan,*
    540 U.S. 443 (2004) ……………………………………...............................34

*Korngold v. Loyd (In re Southern Medical Arts Companies, Inc.),*
    343 B.R. 250 (B.A.P. 10th Cir. 2006) ……………………………………………..24

*Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),*
    304 F.3d 223 (2d Cir. 2002) ............................................................28

*Mullane v. Cent. Hanover Bank & Trust,*
    339 U.S. 306, 314 (1950) ……………………………………..……………23

*Olson v. Anderson (In re Anderson),*
    377 B.R. 865 (B.A.P. 6th Cir. 2007) ……………………………………….......24

*Owens-Ill., Inc. v. Rapid Am. Corp. (In re Celotex Corp.),*
    124 F.3d 619, (4th Cir.1997) …………………………………………………….....26

*Pacor, Inc. v. Higgins,*
    743 F.2d 984 (3d Cir. 1984)……………………………………………………...…..25

*Palazzo v. Gulf Oil Corp.,*
    764 F.2d 1381 (11th Cir. 1985) ………………………………………………………38

*Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),*
    335 B.R. 66 (Bankr. S.D.N.Y.2005) …………………………………………...……..26

*Powers v. Ohio,*
    499 U.S. 400 (1991) ……………………………………………………...…..15-17, 34

*Premium of Am., LLC v. Sanchez (In re Premium Escrow Services, Inc.),*
    342 B.R. 390 (Bankr. D.D.C. 2006)………………………………………...…26-28, 31

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
    390 U.S. 414 (1968) …………………………………………………………...……23-24

*Reese Bros., Inc. v. U.S. Postal Serv.,*
    531 F.Supp.2d 64 (D.D.C. 2008)…………………………………………………...17

*Reiss v. Hagmann,*
    881 F.2d 890 (10th Cir. 1989) …………………………………………….........1-2

*Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council,*
    506 U.S. 194  (1993) ………………………………………........................................38

*Sec'y of State of Md. v. Joseph H. Munson Co., Inc.,*
    467 U.S. 947 (1984) ……………………………………………………………15-17

*Shapiro, Bernstein & Co. v. Cont'l Record Co.,*
    386 F.2d 426 (2d Cir. 1967) ……………………………………………………......38

*Simbraw, Inc. v. United States,*
    367 F.2d 373 (3d Cir. 1966) …………………………………………………......38

*Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook County,*
    543 F.2d 32 (7th Cir. 1976) …………………………………………………………38

*The Plan Committee v. PricewaterhouseCoopers, LLP,*
    335 B.R. 234 (D.D.C. 2005) …………………........................................................7

*The Plan Committee v. PricewaterhouseCoopers, LLP,*
    2007 WL 1191917 (D.D.C. April 20, 2007) …..............................……........…………7

*Triple E Transp., Inc. v. Caterpillar Inc. (In re Triple E Transp., Inc.),*
    169 B.R. 368 (E.D. La. 1994)……………………….....……………………........21-22

*Turner v. Am. Bar Ass'n,*
    407 F.Supp. 451 (S.D.Tex. 1975) …………………………………………….......39

*United States v. Hall,*
    448 F.2d 114 (2nd Cir. 1971) ……………………………………………………39

*Valley Historic Ltd. P'ship v. Bank of N.Y.,*
    486 F.3d 831 (4th Cir. 2007)…………………………………..…………25, 27, 28, 33

*Walker v. Stanley,*
    231 B.R. 343 (N.D.Cal. 1999) ………………………………………….....………39

*Zerand-Bernal Group, Inc. v. Cox,*
    23 F.3d 159, (7th Cir. 1994)…………………………………………………….......33

## RULES:

### Federal Rules of Civil Procedure:

Fed.R.Civ.P. 12(h)(2)……………………………………………………….....34
Fed.R.Civ.P. 12(h)(3)………………………………………………………… 34
Fed.R.Civ.P. 59 ………….……………………………………………………14, 20
Fed.R.Civ.P. 59(e) ……………………………………………………………....23
Fed.R.Civ.P. 60 ………….…………………………………………….…………14, 20

### Federal Rules of Bankruptcy Procedure:

Rule 2002(a)(3) …………….…………………………………………...17, 19, 21
Rule 3020(d) …………………………………………………………………….26
Rule 7001.................................................................................................34-35
Rule 7004 …………………………………………………………………….36
Rule 8013 ………………………………………………………………………1
Rule 9006(c)(1) ………….…………………………………………………….21
Rule 9010 ……………………………………………………………………....37
Rule 9010(a) ………….…………………………………………………….......37
Rule 9014 ………………………………………………………………7, 34, 36
Rule 9019 ……………………………………………………………….4, 9, 23
Rule 9023 ………………….……………………………………….....5, 14, 20, 23
Rule 9024 …...………….……………………………………………..………5, 14, 20, 23

### Local Rules for the United States District Court for the District of Columbia

DCt.LBR 5011-1............................................................................................25

**STATUTES:**

11 U.S.C. § 101 …………………………………………………………………………2
11 U.S.C. § 105(a) …………………………………………………………30, 32
11 U.S.C. § 1123(b)(3)(B) ……………………………………………………...32
11 U.S.C. § 1142 ………………………………………………………………32
11 U.S.C. § 1142(b) …………………………………………………………...26
28 U.S.C. § 157 ………………………………………………………………...25
28 U.S.C. § 1334 ……………………………………………………………25, 33
28 U.S.C. § 1334(a) ..…………………………………………………………25
28 U.S.C. § 1334(b) ……………………………………………………...24-25
28 U.S.C. § 1654 …………………………………………………………………38

**OTHER MATERIALS**

Rule 9010 Advisory Committee Notes (1983) .............................................37-38

## III.    BASIS OF APPELLATE JURISDICTION

A federal district court has appellate jurisdiction over final orders of the bankruptcy court.  28 U.S.C. § 158(a)(1).  *Aboudaram v. DeGroote*, 2006 WL 1194276 at *3 (D.D.C. 2006).

## IV.    ISSUES PRESENTED AND STANDARD OF REVIEW

### A.    ISSUES PRESENTED

The Committee submits the following issues in addition to those presented by Appellants:

1.    Do Appellants have standing to assert the due process rights of third parties?

2.    Does Appellant Elliot Wolff have standing to be an appellant in this proceeding?

3.    Did the bankruptcy court's approval of the fee dispute settlement constitute a clear abuse of discretion?

### B.    STANDARD OF REVIEW

On appeal, federal district courts review *de novo* questions of law determined by the bankruptcy court.  *Aboudaram v. DeGroote,* 2006 WL 1194276 at *4 (D.D.C. 2006); *Gordon v. Gouline,* 1995 WL 860683 at *3 (D.D.C. 1995).

The bankruptcy court's findings of fact are to be reviewed under the clearly erroneous standard. *Id.*; Bankruptcy Rule 8013.

"Whether to approve or disapprove the parties' compromise or settlement rests within the 'sound discretion' of the Bankruptcy Court. In exercising this discretion, the Bankruptcy Court is guided by several criteria: 1) the probability of success in litigation; 2) the difficulties, if any, to be encountered in collection; 3) the complexity of the litigation involved and the expense, inconvenience and delay of such litigation; and 4) the paramount interest of the creditors and proper deference to their reasonable views." *Gordon v. Gouline*, 1995 WL 860683 at *3 (citations omitted).  "A bankruptcy court's approval of a compromise may be disturbed only when it achieves an unjust result amounting to a clear abuse of discretion." *Reiss v. Hagmann*,

881 F.2d 890, 891-92 (10th Cir. 1989).  "In reviewing the Bankruptcy Court's decision to approve a settlement, this Court's review 'is restricted to determining whether there was a clear abuse of discretion.'"  *In re Johns-Manville Corp.,* 340 B.R. 49, 69 (S.D.N.Y. 2006).

## V.     STATEMENT OF THE CASE AND STATEMENT OF FACTS

A.     <u>**Nature of the Case, Course of Proceedings, and Disposition Below.**</u>

This appeal arises from the jointly administered bankruptcy case (the "Bankruptcy Case") of the Greater Southeast Community Hospital Foundation, Inc. ("GSCHF") and three GSCHF affiliates (collectively, the "Debtors").  The Debtors filed petitions for relief under chapter 11 of the United States Bankruptcy Code[1] in the United States Bankruptcy Court for the District of Columbia (the "bankruptcy court") in 1999.  On October 23, 2001 the bankruptcy court entered an order (the "Confirmation Order"), confirming the Debtors' Second Amended Joint Plan (the "Plan").  The Plan created a Plan Committee (the "Committee")[2] and a Plan Agent to take control of the assets of the Debtors' bankruptcy estates (collectively, the "Estates"), including, but not limited to, the Debtors' causes of action against third parties.

In May 2007, the Committee asked the law firm of Pillsbury Winthrop Shaw Pittman LLP ("Pillsbury") for assistance in addressing certain issues concerning a lawsuit the Committee had filed in 2002 against PricewaterhouseCoopers, LLP ("PwC") in this court, Civil Action No. 02-01478.

A dispute (the "fee dispute") subsequently arose between the Committee and Pillsbury over Pillsbury's legal fees incurred in providing services for the Committee.  The dispute also

---

[1]  All references to the "Code" are to sections of the United States Bankruptcy Code, 11 U.S.C.§ 101, *et seq*. All references to a Rule or Rules are to the Federal Rules of Bankruptcy Procedure unless otherwise indicated.

[2]  The Plan Committee (referred to herein as the "Committee") should not be confused with the Official Committee of Unsecured Creditors of GSCHF appointed shortly after commencement of the Bankruptcy Case.  Upon its effective date, the Plan dissolved the Official Committee of Unsecured Creditors Committee of GSCHF.  JA 79.

concerned the fees of the Plan Agent, who was then Patrick Potter, a Pillsbury partner.[3] Pillsbury and Potter sought payment of $137,000 in fees from the Committee.

On August 3, 2007, Pillsbury and Potter filed separate motions with the bankruptcy court, seeking payment of their fees and authority for Pillsbury to resign as Committee counsel and for Potter to resign as Plan Agent. On August 10, 2007, the Committee terminated the services of Pillsbury and Potter, leaving the payment of Pillsbury's fees as the only issue.

Between August and early December 2007, Pillsbury and the Committee conducted extensive discovery and filed a variety of motions in connection with the fee dispute. On or about December 10, 2007, the Committee offered to pay Pillsbury $130,000 to settle the fee dispute and Pillsbury accepted.

On December 13, 2007, before the parties signed a written settlement agreement, Committee counsel filed emergency motions (the "Emergency Motions") with the bankruptcy court seeking authority to withdraw its appearance as counsel and requesting a continuance of all litigation deadlines concerning the fee dispute.

The bankruptcy court conducted a hearing on the Emergency Motions on December 14, 2007. During the hearing, counsel for the Committee, Potter, and Mr. Stanley Zupnik of Welcome Homes, Inc., one of the two members of the Committee, advised the bankruptcy court that a settlement of the fee dispute had been reached but that Advantage Healthplan, Inc. ("Advantage"), the other member of the Committee, might dispute that the Committee had in fact authorized the settlement.

At the December 14 hearing, the bankruptcy court scheduled a hearing on court approval of the settlement for December 21, 2007 and fixed December 19, 2007 as the deadline for objections to approval of the settlement.

---

[3] The Plan Committee refers to Pillsbury and Potter, collectively, as "Pillsbury" unless otherwise indicated.

On December 14, 2007, Pillsbury filed a notice of the December 21 hearing and the December 19 objection deadline with the bankruptcy court via the ECF system. On December 14, Pillsbury served a copy of this notice via e-mail upon Advantage, thereby giving Advantage five days' notice of the objection deadline and seven days' notice of the hearing on approval of the settlement.

On December 17, 2007, Committee counsel filed a motion (the "Settlement Motion") for court approval of the fee dispute settlement pursuant to Bankruptcy Rule 9019, and simultaneously filed a notice of the December 21 hearing and the December 19 deadline for objections to the settlement. Committee counsel sent Advantage a copy of the Settlement Motion and related Notice via e-mail on December 17, 2007.

On December 17, 2007, Committee counsel mailed copies of the notice of the Settlement Motion and the December 21 hearing to approximately 760 creditors of the Debtors. On December 18, 2007, Committee counsel mailed copies of the notice to approximately 778 additional creditors of the Debtors.

On December 18, 2007, the bankruptcy court entered an order, finding that the bankruptcy court had been presented with evidence at the December 14 hearing that the Committee and Pillsbury had reached a settlement of the fee dispute, scheduling the hearing on approval of the settlement for December 21, and fixing the deadline for filing objections to the settlement for December 19. Committee counsel had previously served a copy of the proposed form of this order upon Advantage via e-mail on December 16, 2007.

On December 19, 2007, Advantage filed a timely objection to court approval of the fee dispute settlement. Advantage further requested that the court continue the hearing on approval of the settlement to consider the notice given to creditors and that the court reconsider its

December 18 order.  Mr. Elliot Wolff, the president of Advantage, signed the objection on

Advantage's behalf.  Mr. Wolff was not a licensed attorney authorized to practice before the

bankruptcy court.

On December 20, 2007, Pillsbury filed a response and motion to strike the Advantage

objection on the ground that it had not been signed by a licensed attorney.

On December 21, 2007, the bankruptcy court entered an order, denying Advantage's

requests to reconsider the bankruptcy court's December 18 order and to continue the hearing on

the Settlement Motion, and striking the Advantage objection because it was not signed by a

licensed attorney.  JA 1116-17.

On December 21, 2007, the bankruptcy court conducted the hearing to consider approval

of the fee dispute settlement.  Advantage did not appear and no other objections to the settlement

were raised.  The bankruptcy court entered an order on December 21, approving the settlement

as having been entered into in good faith and as being fair and equitable and in the best interests

of the Estates and the creditors.  JA 1125-26.

Appellants did not seek relief under either Bankruptcy Rule 9023 or 9024.  On December

31, 2007 Appellants, through counsel, filed their notice of appeal of both the order striking

Advantage's objection to the settlement of the fee dispute and the order approving the settlement.

JA 1127-30.

**B.**     **Facts Relevant To The Issues Presented For Review.**

**1.**     **The Parties on Appeal**

The parties to this appeal are (1) the Committee; (2) Advantage (and purportedly

Advantage's president, Mr. Wolff); and (3) Pillsbury, together with Potter solely as former Plan

Agent under the Plan.  Advantage is a creditor of the Estates and is one of the two current

members of the Committee.  Mr. Wolff is the representative of Advantage on the Committee.  JA 958-63.  The other Committee member is Welcome Homes Inc. ("Welcome Homes") which is also a creditor of the Estates.  Mr. Stanley Zupnik is the representative of Welcome Homes on the Committee.[4]  JA 955-57.  None of the Estates' over 1,500 other creditors have filed an appeal of the orders in question or sought to join with Appellants in this appeal. JA 1-28.

### 2.    The Plan and the Confirmation Order

The Committee was created pursuant to the Plan which the bankruptcy court confirmed by entry of the Confirmation Order on October 23, 2001.  JA 73-75.  The Committee was originally comprised of three creditors of the Estates, Advantage, Welcome Homes, and Eaton Vance Management ("Eaton Vance").  Eaton Vance resigned from the Committee in June, 2007, leaving Advantage and Welcome Homes as the sole Committee members.

Pursuant to the Plan, the Committee was directed to retain and enforce all of the Debtors' causes of action against third parties.  JA 75.

The Confirmation Order provided that following the Effective Date of the Plan, service of pleadings and other papers in the case could be limited to a specified list of recipients, together with any party expressly requesting continued receipt of notices.  JA 116-17.

### 3.    The PwC Complaint and Pillsbury Services Giving Rise to the Fee Dispute

In 2002, pursuant to its powers and duties under the Plan, the Committee filed suit against PricewaterhouseCoopers, LLP ("PwC") in this court (Civil Action No. 02-01487), seeking damages of $70 million on behalf of the Estates based upon PwC's alleged pre-bankruptcy petition accounting malpractice (the "PwC Complaint").

---

[4]  Because certain of the documents in the Joint Appendix are emails, the Court should be aware that Mr. Wolff's email address is erwolff@ahealthplan.com.

This court twice dismissed the PwC Complaint for the reasons set forth in *The Plan Committee v. PricewaterhouseCoopers, LLP*, 335 B.R. 234 (D.D.C.2005), and No. 02-01487, 2007 WL 1191917 (D.D.C. April 20, 2007).

In May 2007, the Committee asked Pillsbury, which did not represent the Committee in connection with the PwC Complaint, for assistance in addressing certain issues related to the Plan identified in the district court opinions dismissing the PwC Complaint.  Pursuant to the Committee's request for assistance, Pillsbury, among other things, sought and obtained an order of the bankruptcy court (the "Plan Clarification Order") clarifying the authority of the Committee to pursue the PwC Complaint.[5]

The fee dispute subsequently arose between the Committee and Pillsbury over its legal fees and costs incurred in obtaining the Plan Clarification Order and performing other services for the Committee.  Pillsbury and Potter together sought payment of $137,000 in fees from the Committee.  JA 266-75.

On August 3, 2007, Pillsbury and Potter commenced a contested matter under Bankruptcy Rule 9014 by filing motions with the bankruptcy court, seeking Committee payment of their fees and authority for Pillsbury to resign as Committee counsel and for Potter to resign as Plan Agent.  JA 266-75.  On August 10, 2007, the Committee terminated the services of Pillsbury and Potter, leaving the unpaid fees as the sole issue.  The Committee engaged the law firm of Shulman, Rogers, Gandal, Pordy & Ecker, P.A. ("Shulman Rogers") as its new counsel. JA 276-88.

---

[5]  By order entered March 31, 2008, the district court vacated its 2007 dismissal order and approved the filing of the Committee's Second Amended Complaint against PwC., *The Plan Committee v. Pricewaterhouse Coopers, LLP*, U.S. District Court for the District of Columbia, Case # 02-01487, Dkt. No. 47.

4.    **The Fee Dispute Litigation**

From August into December 2007, Pillsbury and the Committee conducted extensive discovery and filed a series of motions in connection with the fee dispute, including motions seeking dismissal on the grounds that (a) the bankruptcy court lacked jurisdiction, and (b) that the fee dispute should have been brought as an adversary proceeding rather than by motion.  Id. After extensive briefing and argument, the bankruptcy court determined that it had jurisdiction over the fee dispute and had not yet ruled on the fee dispute at the time the parties settled.  JA 365-67.

5.    **Settlement of the Fee Dispute**

On December 10, 2007, the Committee, through counsel, offered to pay Pillsbury $130,000 to settle the fee dispute.  Pillsbury accepted, subject to standard release language. Committee counsel promptly prepared a draft settlement agreement to which Pillsbury made non-substantive edits.  JA 991-1031.

6.    **Committee Counsel's Emergency Motions**

On December 13, 2007, after Pillsbury had reviewed the settlement agreement, but before it was signed and filed with the bankruptcy court, Committee counsel filed emergency motions (the "Emergency Motions") with the bankruptcy court, seeking (a) authority to withdraw as counsel because an unspecified conflict had arisen between it and the Committee, and (b) a continuance of all litigation deadlines concerning the fee dispute.  Counsel recited in the motion to withdraw, among other things, that the Committee and Pillsbury had reached a settlement of the fee dispute subject to documentation, that Committee counsel and Potter had informally alerted a member of the bankruptcy court staff that a settlement had been reached, and that the

Committee and Pillsbury had, as a result of the foregoing, agreed to forbear as to certain scheduled depositions. JA 975-88. The bankruptcy court scheduled a hearing for December 14, 2007 to consider the Emergency Motions.

Mr. Wolff, as president of Advantage, wrote a letter to the bankruptcy court on December 13, stating that Advantage supported both Emergency Motions. Mr. Wolff did not challenge the statements of Committee counsel in the motion to withdraw that the Committee and Pillsbury had agreed to settle the fee dispute. JA 989-90.

At the start of the December 14 hearing (at which Advantage did not appear), the court asked Committee counsel if he had communicated a settlement offer to Potter:

> COURT: Let me ask you this. Did you communicate a settlement offer to Mr. Potter?
>
> COUNSEL: Yes, Your Honor.
>
> COURT: And was that settlement offer accepted as to all terms?
>
> COUNSEL: We believe it was, Your Honor.

JA 993:12-17.

With this exchange, the focus of the December 14 hearing became the existence, and procedure for approval, of the settlement. While both Committee counsel and Potter told the bankruptcy court that the parties had reached a settlement, and Mr. Zupnik testified under oath to the same effect, Committee counsel nevertheless stressed to the bankruptcy court that Advantage might refuse to sign the written settlement agreement and might challenge whether the Plan Committee had authorized the settlement at all. The bankruptcy court dealt with Committee counsel's cautions about Advantage's possible challenge to the settlement as follows:

COURT:      ...I'm not approving the settlement today, because somebody might object to it.  Somebody might -- there was going to be [Rule] 9019 notice.

\* \* \* \*

COUNSEL:    ...I'm not sure that the other committee member [Mr. Wolff]   will sign it [the settlement agreement], but I suppose everything can get filed and then the Court can rule – approve the settlement and it's an enforceable settlement or not.  Whether or not Mr. Wolf[f] signs it.

\* \* \* \*

COUNSEL:    ...If the Court were to approve the oral motion, finding that in fact the committee entered into a settlement agreement, which agreement is to be presented to the Court and creditors, both for objection and to the Court for approval, and  then we will still try to do that on an expedited basis to satisfy Mr. Potter's request that it get entered before the end of the year, we'll work together towards that end.

COURT:      What's going through my mind is that Mr. Wolf[f] is not here.  The Plan Committee, I'm not sure how the Plan Committee is supposed to communicate its views on the matter.  It ordinarily would do it through counsel.  Counsel is saying it has to withdraw.  Mr. Zupnik's here, communicating his version of what happened and that it's not that Mr. Wolf says, "This isn't what we agreed to," it's that Mr. Wolf[f] wants to try to come back and ask for different terms.

                Of course, if that's accurate then there's no harm in saying go ahead and notice up the settlement and, at least on this evidence, I find there was an agreement to file the settlement with the Court and notice it up to creditors for any possible objections --...

JA 1005:17-1009:8.

Following this colloquy, the bankruptcy court agreed to schedule a hearing on court approval of the settlement for December 21, 2007 and fixed December 19, 2007 at 5:00 p.m. as the deadline for filing objections, provided notice was sent out "today," i.e., December 14. JA 1012:23-1013:1. While directing that notice be sent, the bankruptcy court did not specify who was to receive such notice.

At the December 14 hearing, the bankruptcy court also directed that a draft order be prepared concerning the question of whether the Committee and Pillsbury had, between themselves, reached a settlement of the fee dispute that would then be subject to court approval at the December 21, 2007 hearing. JA 1010.

Consistent with these instructions, Committee counsel prepared a proposed order which it submitted to the bankruptcy court electronically on December 16, 2007. JA 1035-39. Committee counsel sent a copy of the proposed order to Advantage, via e-mail, on December 16, 2007. JA 1035. On December 18, 2007, the bankruptcy court entered the order, finding that the evidence presented at the December 14 hearing established that the Committee and Pillsbury had agreed to a settlement of the fee dispute, and that the bankruptcy court would conduct a hearing on December 21 to consider approval of the settlement. JA 1068-71.

### 7.        The December 14 Notice to Advantage of the December 21 Hearing

Following adjournment of the December 14 hearing, Pillsbury later that day electronically filed with the bankruptcy court a Notice of Hearing and Objection Deadline for the December 21 hearing. JA 17,1033-34. The notice stated, among other things, that a hearing on court approval of the fee dispute settlement would occur on December 21, 2007 and that objections were due by 5:00 p.m. on December 19, 2007. JA 1033-34.

On December 14, Pillsbury sent Advantage, via e-mail, a copy of the Notice of Hearing and Objection Deadline. JA 1032.  Advantage thus had five days' notice of the deadline for filing an objection to approval of the settlement and seven days' notice of the hearing.

### 8.    The December 17 Motion for Court Approval of the Settlement

On December 17, 2007, the Committee filed a consent motion (the "Settlement Motion") requesting approval of the fee dispute settlement, and a notice of the December 21 hearing on, and December 19 deadline for objection to, the Settlement Motion.  JA 1041-1067.  The Settlement Motion and the notice of hearing were immediately served through the court's ECF on those parties that had entered an appearance in the Bankruptcy Case.  Committee Counsel also served a copy of the Settlement Motion and accompanying notice on, among others, Advantage.  JA 1040.

Notwithstanding the Confirmation Order's limitation on the parties entitled to post Plan Effective Date service of papers, on December 17, Committee counsel served a copy of the notice by mail on approximately 760 creditors of the Debtors, and on December 18, served copies of the notice by mail on approximately 778 additional creditors of the Debtors.  JA 1084-1108Q.

The Settlement Motion described in considerable detail the litigation history, the positions of the parties, and the reasons for settlement.  JA 1044-66.  After describing the terms of the settlement, the Settlement Motion set forth the legal standards for court approval of a settlement (i.e., fair and reasonable and in the best interests of the estate), and explained why the parties believed the standards were met.  *Id.*  Like the Settlement Motion, the Committee's notice of hearing contained a detailed history of the fee dispute litigation and offered reasons why settlement was warranted.

No creditor except Advantage filed an objection, timely or otherwise, to approval of the settlement.

### 9.     Advantage's Timely Objection to Court Approval of the Settlement

On December 19, 2007, Advantage filed a timely, eight-page objection to bankruptcy court approval of the settlement, laying out a detailed history of the fee dispute and asserting, in the alternative, that (a) Advantage never agreed to the settlement such that no one had been authorized to submit the settlement offer to Pillsbury, or, (b) if the Committee had approved the settlement, the notice of the agreement did not make "full and fair disclosure" to creditors. JA 1073-1083.  The Advantage objection asked the bankruptcy court, among other things, to continue the December 21 hearing and to reconsider the court's December 18 order finding that, between themselves, the Committee and Pillsbury had reached a settlement of the fee dispute. *Id.*

Mr. Wolff, who is not a licensed attorney authorized to practice before the bankruptcy court, signed the objection on behalf of Advantage.  JA 1080.

On December 19, Mr. Wolff transmitted the Advantage objection to Potter and Committee counsel via e-mail.  JA 1072.  In his e-mail transmittal, Mr. Wolff recognized that the objection was prepared without counsel and asked that "any and all procedural defects" be excused.  JA 1072.  Mr. Wolff thus understood that the Advantage objection required the signature of counsel.  Nonetheless, the Advantage objection was silent as to Advantage's efforts, if any, to obtain counsel to represent it in connection with the fee dispute and the filing of an objection to the settlement.  Likewise, Advantage did not ask the bankruptcy court for additional time to retain counsel. JA 1080.

### 10.     Pillsbury's Motion to Strike the Advantage Objection

On December 20, Pillsbury filed a response and motion to strike the Advantage objection. JA 1110-14. Pillsbury opposed any delay in consideration of approval of the settlement, noting that a condition to Pillsbury's entry into the settlement was that it be approved by the bankruptcy court and the settlement amount be paid prior to the end of 2007. Pillsbury then argued that the Advantage objection should be struck because, as a corporation, Advantage could appear only through counsel, and that the objection had not been signed by an attorney. JA 1110-14.

By order entered December 21, the bankruptcy court denied Advantage's request for a continuance of the December 21 hearing on approval of the settlement and for reconsideration of the court's December 18 order, and struck the Advantage objection because an attorney did not sign it. JA 1116-17.

### 11.     Bankruptcy Court Approval of the Settlement

The bankruptcy conducted the hearing on the Settlement Motion on December 21, 2007. JA 1118-24. Advantage did not appear. *Id.* Counsel for the Committee advised the court that creditors had telephoned inquiring about the settlement. JA 1121. None, however, filed an objection to the settlement. Committee counsel also referred to the Settlement Motion and the reasons why the settlement was reasonable, in the best interests of the creditors, and entered into in good faith. In response, the bankruptcy court, who had presided over the fee dispute litigation for over four months, stated, "I'll approve the settlement agreement. The evidence at the last hearing satisfies the Court that this was negotiated in good faith and that it's in the best interests of the creditors to approve the settlement. The motion is granted." JA 1120:25-1121:4.

Later on December 21, the bankruptcy court entered an order approving the settlement. The order recited that it was based upon (i) consideration of the consent motion (which detailed the contentious and expensive litigation that had occurred and cited additional expenses to be incurred, as well as risk of loss), (ii) the court's due deliberation, (iii) the court having found that the terms of the settlement "were entered into in good faith, are fair and equitable and are in the best interests of the estates and the creditors," and (iv) the court having determined "that there is sufficient cause for the relief sought by the Motion." JA 1125-26.

Following entry of the order approving the settlement, Appellants chose not file a motion to alter or amend the Settlement Order under Bankruptcy Rule 9023 (incorporating Fed.R.Civ.P. 59) or a motion for relief from the Settlement Order under Bankruptcy Rule 9024 (incorporating Fed.R.Civ.P. 60).

### 12. Advantage's Retention of Counsel and Notice of Appeal

On December 31, 2007, Advantage filed its Notice of Appeal through counsel, the law firm of Stinson Morrison & Hecker L.L.P. JA 1127-30.

### 13. Consummation of the Settlement

All aspects of the settlement between the Committee and Pillsbury have been consummated. The Committee has paid Pillsbury $130,000, and Pillsbury has turned over to the Committee all of the assets and records described in the settlement agreement. JA 1139.

## VI. ARGUMENT

### A. Appellants Lack Standing to Assert the Due Process Rights of Other Creditors.[6]

Appellants attempt to assert not only their own alleged due process rights, but the due process rights of all other creditors in this case. *See* Appellants' Brief, p. 2 (Issue Presented No.

---

[6] The Plan Committee does not concede that Wolff has standing to be an appellant or that he is a creditor or party in interest in this case. *See* Section H of this brief.

1: "Did the Bankruptcy Court deprive Advantage and the creditor body represented by the Plan Committee of their Due Process Rights under the Fifth Amendment?");  Appellants Brief, pp. 11-12 ("As a consequence, Advantage, the rest of the creditor body, and Elliott Wolff, were deprived of their right to due process of law").  Appellants are free to allege that their personal due process rights were infringed in the proceedings before the bankruptcy court, but the decisions of the Supreme Court and the courts of this circuit, make abundantly clear that Appellants have no standing to assert the due process rights of persons other than themselves.

"In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 955 (1984).  The Supreme Court has recognized that only in certain limited circumstances may litigants assert the rights of third parties:

> We have recognized the right of litigants to bring actions on behalf of third parties, provided three important criteria are satisfied:  The litigant must have suffered an 'injury in fact,' thus give him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute…; the litigant must have a close relationship to the third party…; and there must exist some hindrance to the third party's ability to protect his or her interests.

*Powers*, 499 U.S. at 410 (1991)(citations omitted).

Appellants do not satisfy the second or the third of these criteria (all of which must be shown).  First, Advantage's status of being one of over 1,500 creditors in this case does not create a "close relationship" between Advantage and the "creditor body," nor does creditor status result in anything but the loosest of relationships among creditors themselves (who are competitors for distributions from the Estates).  The Committee may have a relationship with the creditors whose interests it represents, but Advantage as a mere member of the Committee has not such relationship.  Second, no hindrance whatsoever existed to the other 1,500-plus creditors

in this case having joined Appellants in this appeal if they had wished to do so.  Indeed, it is

striking, given Appellants' agitated concern over the due process rights of the creditor body that

none of the 1,500-plus members of that body joined Appellants in this appeal or filed their own

appeal.

In *Haitian Refugee Ctr. v. Gracey*, 809 F.2 794 (D.C. Cir. 1987), the Court of Appeals for

this Circuit found that the limitation on a litigant's standing to assert the rights of third parties is

particularly applicable to the alleged infringement of due process:

> Third party standing therefore is appropriate only when the third
> party's rights protect that party's relationship with the litigant.  Thus a litigant
> may not be given third party standing to assert constitutional rights of third
> parties that do not protect a relationship, such as procedural due process rights.
> *A litigant therefore could never have standing to challenge a statute solely
> on the ground that it failed to provide due process to third parties not before
> the court.* (Emphasis added).

*Haitian Refugee Ctr.*, 809 F.2 794 at 809.

While Appellants do not challenge a statute, the Circuit Court's point is still directly

applicable.  The due process rights of the 1,500-plus creditors in this case belong uniquely to

each of them and have no bearing whatsoever on any relationship with Appellants.  It was, and

is, up to the other creditors to assert their own right to due process – Appellants have no standing

to deputize themselves as constitutional policemen for the "creditor body."

Judge Ricardo Urbina of this court earlier this year restated the limits on third party

standing in *Reese Bros., Inc. v. U.S. Postal Serv.,* 531 F.Supp.2d 64, 67 (D.D.C. 2008).  Quoting

both *Powers* and *Sec'y of Md. v. Joseph H. Munson,* the court reiterated the three criteria for

standing to assert third party rights:  actual injury to the litigant; a close relationship between the

litigant and the third party; and the existence of a hindrance to the third party's ability to protect

his or her own interests.  *Reese Bros.*, 531 F.Supp.2d at 67.  Whether or not the first criterion is

present in this case, the second and third are patently not.  Accordingly, this appeal must be limited to consideration of whether Appellants personally received due process in the bankruptcy court.

**B.**     **Appellants Received Sufficient Notice of the Settlement to Satisfy their Due Process Rights.**

Appellants assert that they received insufficient advance notice of the December 14 and December 21, 2007, hearings concerning the fee dispute settlement, and thus were deprived of their due process under the Fifth Amendment to the Constitution.  In particular, Appellants complain that they received less than the routine 20-days' notice of a hearing on approval of a compromise specified by Rule 2002(a)(3).  This contention is undermined, however, by the simple fact that Advantage filed a timely objection to court approval of the settlement and the bankruptcy court considered that objection.

As an initial matter, Appellants essentially conflate the December 14 and the December 21 hearings, but nothing happened at the December 14 hearing that impaired Appellants' due process rights to object to court approval of the settlement.  It was the December 21 hearing – at which the bankruptcy court approved the settlement – that was the key event for due process purposes.

The December 14 hearing was scheduled initially to consider the Emergency Motions of Committee counsel to withdraw their appearance.  Counsel, however, recited in the motion to withdraw that the Committee and Pillsbury had reached a settlement of the fee dispute.  In his December 13 letter to the bankruptcy court, Mr. Wolff said that Advantage supported the Emergency Motions.  He did not challenge Committee counsel's contention that a settlement had been reached.  It should, therefore, have come as no surprise to Advantage that settlement of the fee dispute became a topic at the December 14 hearing.  It is also clear that the Committee,

which was a party to the fee dispute while Advantage was not, was represented by counsel at the December 14 hearing.

While the question of existence of the settlement largely displaced the original subject of the December 14 hearing, it is abundantly clear from the transcript of the hearing that the bankruptcy court recognized that Advantage (and others) were entitled to an opportunity to challenge the settlement, and thus that nothing dispositive as to the settlement could occur at the December 14 hearing – and nothing did.  The bankruptcy court merely scheduled a hearing for consideration of approval of the settlement for December 21, and fixed the deadline for filing objections to the settlement for December 19 (a deadline that Advantage then met).

The record reflects that on December 14, after adjournment of the hearing that day, Pillsbury sent Advantage notice via e-mail of the December 21 hearing and the December 19 deadline for filing objections to the settlement.  Likewise, on December 16, Committee counsel filed and provided Advantage with a copy of a proposed order (subsequently entered by the bankruptcy court on December 18), which among other things set the December 21 hearing date and the December 19 objection deadline.  In light of Pillsbury's e-mail notice of December 14, Appellants had five-days' notice of the objection deadline and seven days' notice of the hearing on approval of the settlement.

While the notice Appellants received of the December 21 hearing and the December 19 objection deadline was substantially less than the routine 20-day period specified in Rule 2002(a)(3), the critical point is that notice was sufficient because on December 19, 2007, Advantage filed a timely and thorough, eight-page objection to the settlement, laying out a detailed history of the fee dispute, and asserting, in the alternative, that (a) Advantage never agreed to the settlement such that no one had been authorized to submit the settlement offer to

Pillsbury, or, (b) if the Committee had approved the settlement, the notice of the agreement did not make "full and fair disclosure" to creditors. JA 1073-83. Advantage then asked, among other things, that the December 21 hearing be continued and that the court reconsider its December 18 order finding that the Committee and Pillsbury had reached a settlement.

Mr. Wolff conceded in his e-mail transmittal of the Advantage objection to Pillsbury and Committee counsel that the objection was procedurally defective because it was not signed by counsel. Nevertheless, Advantage did not ask the bankruptcy court for additional time to engage counsel, so how the court might have responded to such a request is unknowable. Advantage's failure to ask for more time to engage counsel was effectively a waiver of any right to cure the procedural defect.

Notwithstanding the *pro se* nature of the Advantage objection, it is clear that the bankruptcy court reviewed and considered it, because in its December 21 order striking the objection, the bankruptcy court also explicitly denied Advantage's requests for a continuance of the hearing on approval of the settlement and for reconsideration of the court's December 18 order. JA 1116-17. Thus, Advantage's objection to the court's treatment of its objection is not so much that it was deprived of a due process opportunity to file an objection, but that the bankruptcy court denied the relief Advantage requested.

At the December 21 hearing on the settlement, Appellants chose not to appear, further waiving any right they might have to object to the settlement. The Committee disputes Mr. Wolff's standing to be an appellant in this proceeding. Nonetheless, if Mr. Wolff's contentions as to his personal standing are correct, then had he appeared at the December 21 hearing, he would have had standing to assert his *pro se* objections to the settlement. His and Advantage's

failure to appear at the December 21 hearing again undercuts their contention that they were denied due process with respect to approval of the settlement.

Following entry of the order approving the settlement, Appellants chose not to file a motion to alter or amend the Settlement Order under Bankruptcy Rule 9023 (incorporating Fed.R.Civ.P. 59) or a motion for relief from the Settlement Order under Bankruptcy Rule 9024 (incorporating Fed.R.Civ.P. 60).  Had they needed more time to make additional arguments or to present evidence not set forth in the Advantage objection, they could have sought to do so through Bankruptcy Rules 9023 and 9024.  Their failure to do so, undercuts yet again their claim that their due process rights were infringed.

## C.    The Bankruptcy Court Had Discretion to Reduce the Notice Period.

The text of Bankruptcy Rule 2002(a)(3) provides that "for cause shown," a bankruptcy court may dispense with notice of a hearing on approval of a settlement altogether.  Likewise, Bankruptcy Rule 9006(c)(1) provides that with respect to a period within which an act is required or allowed under the Bankruptcy Rules, "the bankruptcy court for cause shown may in its discretion with or without motion or notice order the period reduced."  Thus, there can be no reasonable dispute that the bankruptcy court had discretion to reduce the Rule 2002(a)(3) notice period to less than 20 days.  *See Triple E Transp., Inc. v. Caterpillar Inc. (In re Triple E Transp., Inc.),* 169 B.R. 368, 373 (E.D. La. 1994) (Rule 2002 notice is not mandatory); *In re Patel,* 43 B.R. 500, 503 (N.D. Ill. 1984) (Bankruptcy judge may waive Rule 2002(a)(3) notice for "good cause shown");  *In re Glinz,* 66 B.R. 88, 91 (N.D. 1986) ("With respect to a hearing on approval of a settlement, the court for cause shown may direct that notice not be sent."); *see also Azbill v. Kendrick (In re Azbill),* No. 06-8074, 2008 WL 647407 at *6 (B.A.P. 6th Cir. Mar. 11, 2008)("In bankruptcy, a procedural rule requiring notice is adequately complied with when a party does

receive actual notice and has some available remedy to set aside the judgment, whether or not the party has received formal notice").

Further, a district court may find that the bankruptcy court had good cause to reduce the Rule 2002(a)(3) notice period whether or not the bankruptcy court expressly spelled out that cause. *In re Triple E Transp.,* 169 B.R. at 373; *In re Patel,* 43 B.R. at 503.

In the present case, cause existed to reduce the routine notice period because (a) the Committee and Pillsbury advised the court that a condition to the settlement was that it be approved, and the settlement amount paid, before the end of 2007; (b) notwithstanding the intensity with which the fee dispute was litigated, the settlement represented a simple resolution to a simple dispute; and (c) Advantage, as the party who was thought most likely to object to the settlement, had been intimately involved in the litigation and settlement of the fee dispute as a Committee member, and thus could be expected to respond more quickly than might a stranger to the process.

Given Advantage's ability to assemble a detailed, eight-page objection to the settlement by the deadline set, the court's implicit recognition that Advantage could quickly assert its views proved accurate. It was also reasonable for the bankruptcy court to accommodate the condition that the settlement be approved and the fees paid within 2007, given the obvious expense of continued, intense litigation. While $137,000 in fees is hardly an insignificant sum, it was clear from the litigation record, both that Pillsbury would be entitled to some portion of that amount if the matter proceeded to trial, and that the cost of continued litigation might easily exceed the amount genuinely in controversy (even if that amount were the entire $137,000). Further, there was nothing complicated about the nature of the settlement – anyone aggrieved by the proposed

resolution, or even just unsure about it, could easily have filed some sort of response and thus been heard.

The Supreme Court has defined notice satisfying due process as "notice reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust,* 339 U.S. 306, 314 (1950). Under this "totality of the circumstances" test, Advantage, as an interested party was apprised of the hearing on the settlement and the deadline for objection, and was afforded a sufficient opportunity to assert its objections, and did so.

There is also nothing in the record to suggest that Advantage was unable fully to assert its objections and that additional time would have changed the bankruptcy court's ruling. *See, e.g., In re Glinz,* 66 B.R. at 91 ("There is no showing that the attorney could have made any arguments with 20 days notice by mail that he could not have made with the actual notice he received at the hearing"). Further, even after the bankruptcy court entered its order approving the settlement, Appellants were free to seek post-ruling relief under Bankruptcy Rules 9023 and 9024, but chose not to do so. *See In re Azbill,* 2008 WL 647407 at*4 (motion to set aside order approving a compromise treated as a motion under Fed.R.Civ.P. 59(e) and Bankruptcy Rule 9023).

**D.**     **The Bankruptcy Court Acted Within Its Discretion in Approving the Settlement**

While neither the Bankruptcy Code nor Bankruptcy Rule 9019 offers guidance as to the criteria to be applied in evaluating whether a settlement should be approved, the overwhelming majority of court have looked to the Supreme Court's decision in *Protective Comm. For Indep. Stockholders of  TMT Trailer Ferry*, *Inc. v. Anderson,* 390 U.S. 414 (1968), which establishes a "fair and equitable" standard for approval of a settlement. *Id.* at 424. *See, e.g., In re Iridium Operating LLC v. Official Comm. of Unsecured Creditors,* 478 F.3d 452, 462 (2d Cir. 2007); *see*

*also Olson v. Anderson (In re Anderson),* 377 B.R. 865, 871-72 (B.A.P. 6th Cir. 2007)

(assembling decisions of the courts of appeal adopting *TMT Trailer Ferry's* "fair and equitable"

criteria for evaluating settlements).

     The bankruptcy court was not required to conduct a full evidentiary hearing on the

Settlement Motion. *Olson,* 377 B.R. at 871; *In re Johns-Manville Corp.,* 340 B.R. 49, 70

(S.D.N.Y. 2006) (Bankruptcy judge "need only canvass the settlement to determine whether it is

within the acceptable range of reasonableness."); *see also In re Neshaminy Office Bldg. Assocs.,*

62 B.R. 798, 802 (E.D.Pa. 1986) (Bankruptcy court permitted to take judicial notice of the record

in prior related proceedings and draw reasonable inferences therefrom)(citation omitted).

     Following the principles of *TMT Trailer Ferry,* a court should consider four factors in

evaluating a settlement: (1) probability of success in the litigation; (2) difficulties, if any, with

collection; (3) the complexity of the litigation, including the expense, inconvenience and delay

attendant to the litigation; and (4) the interests of creditors. *Korngold v. Loyd (In re Southern*

*Medical Arts Companies, Inc.),* 343 B.R. 250, 256 (B.A.P. 10th Cir. 2006); *In re Iridium,* 478

F.3d at 462 (including additional factors applied in the Second Circuit).

     The bankruptcy court's approval of the settlement easily satisfied the *TMT Trailer Ferry*

criteria. First, the settlement involved a reduction in Pillsbury's fees (albeit a modest one).

Nonetheless, a portion of Pillsbury's work giving rise to the disputed fees was performed before

the bankruptcy court (including Pillsbury's successful effort to obtain the Plan Clarification

Order required for the Committee's continued pursuit of the $70 million PwC Complaint). Thus,

the bankruptcy court was in a position to evaluate just how much of a discount of Pillsbury's fees

the Committee might be achieve if the matter proceeded to trial. Second, the bankruptcy court

was aware of how intensively the fee dispute had been litigated and how much that litigation

must have been costing the Estates (thus reducing the distribution to the creditors represented by the Committee).  The bankruptcy court was well positioned to evaluate whether further furious litigation over disputed fees (and the additional fees created by that dispute) was in the best interests of creditors and the Estates.  Given the straightforward nature of the dispute (a simple complaint over legal fees), the amount in controversy, and the extraordinary effort and fees being expended on both sides to "win" the dispute, the bankruptcy court acted well within its discretion in approving an agreement that brought contentious litigation to an end.

**E.    The Bankruptcy Court had subject matter jurisdiction over the Motions.**

Appellants challenge the bankruptcy court's subject matter jurisdiction over the fee dispute.  Appellants' Brief, pp. 2, 22-24.  For the reasons set forth below, the bankruptcy court had both "arising in" and "related to" jurisdiction under 11 U.S.C. § 1334(b) over the dispute.

**1.    The Scope of Post-Confirmation Bankruptcy Jurisdiction.**

The federal district and bankruptcy courts derive jurisdiction over bankruptcy cases and civil proceedings within a bankruptcy case through 28 U.S.C. § 1334.  Section 1334(a) confers original and exclusive jurisdiction on the district courts over all cases under title 11, while § 1334(b) grants the district courts "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11."[7]

This court has previously found that "arising in" jurisdiction under 28 U.S.C. § 1334(b) is limited to administrative matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceeding.  *Atkinson v. Kestell,* 954 F.Supp 14, 16 (D.D.C. 1997).  In *Valley Historic Ltd. P'ship v. Bank of N.Y.*, 486 F.3d 831, 836 (4th Cir. 2007), the Fourth Circuit approved virtually the same standard:

---

[7] As the district court has done under DCt.LBR 5011-1, district courts may automatically refer bankruptcy cases to the bankruptcy court under 28 U.S.C. § 157

> A proceeding or claim 'arising in' Title 11 is one that is "'not based on any right expressly created by Title 11, but nevertheless, would have no existence outside of the bankruptcy." ...Therefore, a "'controversy arises in Title 11' when 'it would have no practical existence *but for* the bankruptcy.'"

*Valley Historic*, 486 F.3d at 836 (quoting *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.,* 86 F.3d 364, 372 (4th Cir. 1996)).

"Related to" jurisdiction under 28 U.S.C. § 1334(b) is restricted to those civil proceedings in which "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Valley Historic*, 486 F.3d at 836. "This Court, like the majority of the other circuits, has adopted the test articulated by the Third Circuit in *Pacor, Inc. v. Higgins* [citation omitted] for determining 'related to' jurisdiction." *Valley Historic*, 486 F.3d at 836 (citing *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir. 1984)). "[A]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) and [it] in any way impacts upon the handling and administration of the bankruptcy estate." *Owens-Ill., Inc. v. Rapid American Corp. (In re Celotex Corp.),* 124 F.3d 619, 625-26 (4th Cir. 1997).

Once a chapter 11 plan has been confirmed (as here), the "expansive reach" of bankruptcy court jurisdiction narrows. *See The Air Cargo Litig. Trust v. i2 Technologies (In re Air Cargo, Inc.),*Adv. No. 06-2011, 2008 WL 352619 at *3 (Bankr. D.Md. Feb. 7, 2008); *Premium of Am., LLC v. Sanchez (In re Premium Escrow Services, Inc.),* 342 B.R. 390, 396 (Bankr. D.D.C. 2006) ("[O]nce confirmation occurs, the bankruptcy court's jurisdiction shrinks," quoting *Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),* 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005)). As the Third Circuit noted in *Binder v. Price Waterhouse & Co., LLP (In re Resorts International, Inc.)* 372 F.3d 154, 165 (3d Cir. 2004):

> [T]hough the scope of bankruptcy court jurisdiction diminishes with plan

> confirmation, bankruptcy court jurisdiction does not disappear entirely …
> post-confirmation jurisdiction is assumed by statute and rule: 11 U.S.C.
> § 1142(b) authorizes the bankruptcy court to 'direct the debtor and any
> other necessary party … to perform any other act … that is necessary for
> the consummation of the plan' … and Fed R. Bankr. P. 3020(d) provides
> that '[n]otwithstanding the entry of the order of confirmation, the court
> may issue any other order necessary to administer the estate.'

*In re Resorts International*, 372 F.3d at 165. *See also Bergstrom,* 86 F.3d at 372-73 (district

court had bankruptcy jurisdiction over a professional fees dispute between a post-confirmation

claimants' trust and attorneys representing the claimants).

In *Resorts International*, the Third Circuit found that for "related to" jurisdiction "to exist

at the post-confirmation stage, the claim must affect an integral aspect of the bankruptcy process

– there must be a close nexus to the bankruptcy plan or proceeding."  *In re Resorts International*,

372 F.3d at 167.  The Court noted that under this still-expansive standard, "[m]atters that affect

the interpretation, implementation, consummation, execution, or administration of the confirmed

plan will typically have the requisite close nexus." *Id.*

*Valley Historic* followed the analysis of the scope of post-confirmation "related to"

jurisdiction in *Resorts International*:

> We find the Third Circuit's "close nexus" requirement to be a
> logical corollary of "related to" jurisdiction.  Analytically, it insures that
> the proceeding serves a bankruptcy administration purpose on the date the
> bankruptcy court exercises that jurisdiction.  Without such a purpose, "related
> to" jurisdiction would expand beyond the limited jurisdiction conferred upon
> bankruptcy courts in the post-confirmation context.

*Valley Historic*, 486 F.3d at 836.

The Fourth Circuit joined the Third Circuit in concluding that matters that affect the

interpretation, implementation, consummation, execution, or administration of the confirmed

plan will typically have the requisite "close nexus" required for post-confirmation, "related to"

jurisdiction. *Id.* at 837.  *See also Premium Escrow Services, Inc.,* 342 B.R. at 397 (adopting the "close nexus" standard).

> ### 2.    <u>The Bankruptcy Court Had "Arising In" Jurisdiction Over the Fee Dispute</u>.

The dispute between the Committee (a creation of the Plan) and Committee counsel (whose employment by the Committee was authorized by the Plan) over fees incurred as a result of the Committee's pursuit of a cause of action constituting one of the Estates' assets presented a controversy that had "no practical existence *but for* the bankruptcy" and thus fell comfortably within the scope of "arising in" jurisdiction.

The fee dispute arose from, and was inextricably interwoven with, the Bankruptcy Case. The Plan itself, and the Committee created thereunder to implement the Plan, would not have existed, "but for" the Bankruptcy Case.  Likewise, the Committee's authority to engage Pillsbury as counsel and the Committee's authority to pursue the PwC Complaint were both derived explicitly and entirely from the Plan.  Further, the fees in dispute were largely arose from the Committee's need to obtain an order clarifying the Plan, so as to enhance the Committee's ability to fulfill its duty under the Plan to pursue the Estates' pre-petition claim against PwC.  Thus, the work giving rise to the fees in question and the resulting fee dispute would not have arisen "but for" the Plan and the  Committee's duty to implement it.  Further still, the Plan provision authorizing the Committee to engage counsel, expressly limited counsel to "reasonable compensation for services rendered at the prevailing rates in the community for similar services…."  Plan § VIII(G).  Implicit in this standard is the need for its interpretation as a Plan provision.  Having confirmed the Plan, the bankruptcy court was entitled to interpret this Plan provision should a dispute arise as to its meaning and application.  "A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." *Luan Investment S.E. v. Franklin 145 Corp. (In*

*re Petrie Retail, Inc.),* 304 F.3d 223, 230 (2d Cir. 2002); s*ee Back v. LTV Corp.* (*In re Chateaugay Corp.*), 213 B.R. 633, 640 (S.D.N.Y.1997); *In re Johns-Manville Corp.,* 97 B.R. 174, 179-80 (Bkrtcy.S.D.N.Y.1989).

Given the foregoing, the fee dispute was precisely the sort of administrative matter that "but for" the Bankruptcy Case, would not and could not have existed, and as such, it fell squarely within the broad scope of "arising in" jurisdiction.

### 3.     The Bankruptcy Court Had "Related To" Jurisdiction Over the Fee Dispute.

The fee dispute directly or indirectly involved not just one, but virtually each, of the factors that *Valley Historic, Resorts International,* and *Premium Escrow Services* found give rise to the close nexus with a plan or bankruptcy case necessary for post-confirmation "related to" jurisdiction.

First, and most directly, every dollar claimed by, and paid to, Committee counsel would necessarily diminish the amount available for ultimate distribution to the Estates' creditors under the Plan. Thus the question of how much Committee counsel was entitled to be paid directly affected the consummation and administration of the Plan. A fundamental goal of every bankruptcy case is to maximize the distributions to creditors, so that a controversy directly affecting the amount creditors will thereafter receive goes to the heart of plan implementation, execution, and administration.

Second, the Plan provided that Committee counsel would be entitled only to reasonable compensation at rates prevailing in the community for similar services. The application and enforcement of this compensation standard necessarily involved the interpretation and implementation of the Plan.

The linkage between the fees in dispute and the implementation and execution of the Plan was accentuated by the fact that the fees largely arose from the need of the Committee to obtain

the Plan Clarification Order, thereby facilitating the Committee's pursuit of the PwC Complaint, which if meritorious might represent, a $70 million asset of the Estates. The Plan Committee could obtain the Plan Clarification Order only through the work of counsel, who were then entitled to reasonable compensation from the Estates' remaining assets. Thus, issues regarding the legal fees required to obtain the Plan Clarification Order necessarily and directly involved the Plan Committee's implementation, execution, and administration of the Plan.

While the Plan in the present case did not establish a formal liquidating trust, plans in other bankruptcy cases have provided for the assignment of estate claims and causes of action to a liquidation trust. *See e.g. Resorts International,* 372 F.3d at 157-58; *Bergstrom,* 86 F.3d at 367; *Guttman v. Martin (In re Railworks Corp.)* 325 B.R. 709, 712-13 (Bankr. D.Md. 2005). Even where an estate's causes of action and other property have been assigned to a discrete liquidation trust, arguably extinguishing the bankruptcy estate, courts have continued to find post-confirmation "related to" jurisdiction over disputes involving the liquidation trust.

In *Bergstrom*, which like the present case dealt with a dispute over post-confirmation professional fees, the plan provided for the creation of insurance funded trusts authorized to evaluate and pay tort claims. *Bergstrom,* 86 F.3d at 372-73. Years after the plan was confirmed and the trusts created, the district court, invoking authority under 11 U.S.C. § 105(a), entered an order reducing the contingency fee percentage to be paid counsel to the tort claimants from the trusts. *Id.* The attorneys challenged the district court's order, arguing among other things, that the district court lacked subject matter jurisdiction to modify their contingent fees following plan confirmation. *Id.*

The Fourth Circuit rejected counsel's jurisdictional challenge, finding both "arising in" and "related to" jurisdiction over the dispute. With respect to "arising in" jurisdiction, the court

noted that the dispute would have had no practical existence "but for" the bankruptcy, and that without the bankruptcy there would have been no trusts and no *pro rata* distribution to claimants. The court also found "related to" jurisdiction because the disallowance of "excessive" attorneys' fees was a matter related to the administration of the trust in that it affected the distribution each claimant would receive. Further, the court noted that in the Fourth Circuit it had long been clear that "federal district courts have inherent power and an obligation to limit attorneys' fees to a reasonable amount." *Id.* at 373. The facts in *Bergstrom* are analogous to the facts of the present case. Certainly, if the district court in *Bergstrom* could enter an order reducing "excessive" legal fees to be paid from plan-created trusts, the bankruptcy court in this case had jurisdiction to determine the reasonableness of the fees sought by Committee counsel to be paid from the Estates.

Bankruptcy jurisdiction does not automatically exist as to every dispute involving a post-confirmation liquidation trust or other estate representative. *Resorts International*, for example, addressed whether jurisdiction existed over the post-confirmation malpractice claim of a plan-created liquidation trust against its own accountants. *Bergstrom*, 372 F.3d at 167. In analyzing the scope of post-confirmation jurisdiction, the Third Circuit cited *Bergstrom* with approval as a case where jurisdiction existed because "the dispute implicated an integral aspect of the bankruptcy process." *Id.* Nonetheless, the court found that the liquidation trust's accounting malpractice claim lacked a sufficient bankruptcy nexus for the exercise of related to jurisdiction. *Id.* at 169. The court reached this conclusion because, among other things, (a) the liquidation trust was a separate entity created to free the debtor from bankruptcy court oversight without waiting for resolution of the litigation claims assigned to the trust, (b) creditors had exchanged

-31-

their creditor status for interests in the trust, and (c) the malpractice claim did not require interpretation or construction of the plan or the trust agreement.  *Id.*

Despite the result in *Resorts International,* given the Third Circuit's endorsement of *Bergstrom,* and the far greater similarity of the facts of the present case to those in *Bergstrom* than to those of *Resorts International,* the bankruptcy court correctly found that it had post-confirmation jurisdiction over the fee dispute.

### 4.  <u>The Plan Provided for Retention of Bankruptcy Court Jurisdiction Over the Dispute</u>.

In *Premium Escrow Services*, the bankruptcy court found that a party invoking bankruptcy jurisdiction post-confirmation, must satisfy two requirements:  the matter in issue must have the "close nexus" to the bankruptcy case or proceeding discussed above, and the plan must provide for retention of jurisdiction over the dispute.  *Premium Escrow Services, Inc.,* 342 B.R. at 397.  The bankruptcy court noted that an element of the latter factor is whether a party to the dispute is a representative of the estate under 11 U.S.C. § 1123(b)(3)(B), which provides that a plan may provide for the "retention and enforcement by…a representative of the estate appointed for such purpose, of any claim or interest." 342 B.R. at 400.

The Committee's status as the representative of the Estates is resolved by Plan § IX (A), which specifically invokes 11 U.S.C. § 1123(b)(3)(B) in directing that the Committee "shall retain and may enforce for the sole and exclusive benefit of creditors…any claims, rights and causes of action that the respective Estates … may hold against any Person…."  See also Plan § VIII (E)(b):  "The Plan Committee shall have the following powers and responsibilities: … Commence, prosecute and, if appropriate, settle all caused of action vested on behalf of the creditors … and prosecute all causes of action of the Debtors' Estates…."

Likewise, the retention of jurisdiction provisions in Plan § IX (B) reflect an effort to have the bankruptcy court retain the broadest possible post-confirmation jurisdiction over matters relating to the Plan and the Estates:

> To the maximum extent permitted by the Bankruptcy Code and other applicable law, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Bankruptcy Cases and the Plan pursuant to, and for the purpose of, Sections 105(a) and 1142 of the Bankruptcy Code, including without limitation, jurisdiction to:
>
> 6.      Enter such Orders as may be necessary or appropriate to interpret, implement, enforce or consummate the provision of this Plan and all contracts…and other agreements…created in connection with…this Plan… except as otherwise provided herein;
>
> 7.      Resolve any…disputes that may arise in connection with consummation, interpretation or enforcement of this Plan…or any entity's rights arising under or obligations incurred in connection with this Plan…;
>
> 8.      Enter such Orders as may be necessary or appropriate to …cure any omission…in this Plan…;
>
> 9.      Enter such Orders as may be necessary or appropriate to enforce, implement, interpret or consummate the terms and conditions of this Plan and resolve any objections filed with respect to any actions proposed to be taken in connection with …this Plan;
>
> 11.      Determine all adversary proceedings and contested matters to …enforce rights with respect to property of any of the Estates…:
>
> 16.      Except as otherwise provided in this Plan…determine any other matters that may arise in connection with or relating to this Plan….

Jurisdiction retention provisions in a plan do not create post-confirmation jurisdiction that is otherwise lacking under 28 U.S.C. § 1334. *See Valley Historic*, 486 F.3d at 837 ("Simply put, the Debtor cannot 'write its own jurisdictional ticket'" (quoting *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994)). Nonetheless, the expansive scope of the Plan's retention of jurisdiction provisions satisfy any requirement that the fee dispute fall within the ambit of such provisions. At a minimum, the fee dispute (a) concerned a contract entered into in

connection with the Plan (provision 6); (b) was a dispute that arose in connection with

consummation of the Plan and concerned obligations incurred in connection with the Plan

(provision 7); (c) sought an Order that arose out of implementation of the Plan, and required

interpretation of the Plan's requirement in § VIII (G) that the fees of counsel to the Plan

Committee be "reasonable" (provision 9); (d) constituted a contested matter with respect to

property of the Estates (provision 11); and (e) was a matter that arose in connection with the Plan

(provision 16).

Given all of the foregoing, the bankruptcy court acted well within the scope of its post-

confirmation "arising in" and "related to" jurisdiction when it approved the resolution of the fee

dispute.

**F.    The Fee Dispute Properly Proceeded As a Contested Matter Rather Than As an Adversary Proceeding.**

Appellants assert that the bankruptcy court erred by allowing the fee dispute to proceed

as a contested matter under Bankruptcy Rule 9014 rather than as an adversary proceeding under

Bankruptcy Rule 7001.  This contention fails for several reasons.

**1.    Appellants Lack Standing to Assert That the Fee Dispute Should have Proceeded as an Adversary Proceeding.**

The fee dispute was between Pillsbury and the Committee.  Appellants were not parties

to the fee dispute and did not seek leave to intervene or otherwise participate as parties to the

proceeding.  Just as Appellants seek to assert the due process rights of the "creditor body" (see

Sections A & H of this brief) Appellants are attempting to assert a right that belonged to the

Committee, not to them, and that could only be asserted by the Committee.  *See Powers*, 499

U.S. at 410; *Haitian Refugee Ctr.*, 809 F.2 at 809.  Appellants simply lack standing to assert a

right that has always belonged solely to the Committee

### 2. **Even if Appellants have Standing, Appellants Waived Issue by Failing to Object Below.**

Even if Appellants had standing to assert the adversary proceeding issue, they waived that objection long ago. A procedural defense is waived under the Bankruptcy Rules, just as under the Federal Rules of Civil Procedure, if it is not raised in a motion or response to the initial pleading unless it is preserved by the Federal Rules. *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004).[8] Accordingly, the failure to object to the pursuit of a claim as a contested matter instead of an adversary proceeding is waived if not asserted in a motion or initial response to the contested matter. *In re Treiling*, 21 B.R. 940, 941 n.1 (Bankr.E.D.N.Y.1982) (allowing contested matter to proceed where no objection asserted that an adversary proceeding was required under Rule 7001). *Accord In re Banks*, 94 B.R. 772, 773 (Bankr.M.D.Fla.1989); *In re Szostek*, 93 B.R. 399, 403 n. 6 (Bankr.E.D.Pa.1988), *rev'd on other grounds by* 1989 WL 30648 (E.D.Pa. Mar 30, 1989), *rev'd and bankruptcy court order reaffirmed by* 886 F.2d 1405, 1414 (3rd Cir.1989); *In re Stern*, 70 B.R. 472, 473 n. 1 (Bankr.E.D.Pa.1987). Advantage was served with the Pillsbury fee dispute motion and the concomitant notice of an opportunity to object. JA 266-65. Advantage did not intervene in the contested matter and never asserted that the matter should have been brought as an adversary proceeding instead of a contested motion. Therefore, Advantage waived any right to object to the fee dispute proceeding as a contested matter and cannot assert such an objection for the first time on appeal. *See Juniper Development Group, et al. v. Kahn (In re Hemingway Transport, Inc.)*, 993 F.2d 915, 935 (1st Cir. 1993) ("Juniper's failure to advance the present contention below deprived the bankruptcy court of an opportunity to consider it, thereby waiving the claim.").

---

[8] Rule 12(h)(2) preserves certain defenses, not applicable here, until trial. Fed. R. Civ. P. 12(h)(2). Only the defense of lack of subject matter jurisdiction survives a failure to assert it at or before trial. Fed. R. Civ. P. 12(h)(3).

Appellants also ignore that on December 7, 2007, the Committee on its own behalf filed a motion asserting that the fee dispute should be dismissed because it had been litigated as a contested matter rather than as an adversary proceeding. Nonetheless, three days after filing this motion, the Committee reached its settlement with Pillsbury, effectively waiving the adversary proceeding issue.

Advantage did not raise the adversary proceeding issue in its December 19 objections to the settlement. Had it felt that its rights had been prejudiced by the Committee's decision to settle the fee dispute instead of pursuing the adversary proceeding issue, it could and should have done so in its December 19 objection and its failure was a further waiver of the issue.

### 3.    Permitting the Fee Dispute to Proceed as a Contested Matter was Harmless Error.

Even if the fee dispute should have been brought as an adversary proceeding, it was harmless error to allow it to proceed as a contested matter. Where the rights of the affected parties have been adequately presented, form will not be elevated over substance. *In re Command Services Corp.*, 102 B.R. 905, 908 (Bankr. N.D.N.Y.1989). A matter that arguably should have been brought as an adversary proceeding can continue as a contested matter if no prejudice results. *Id.* Many courts have noted that no due process violations occur when a contested matter proceeds in lieu of an adversary proceeding because both proceedings allow for discovery, presentation of evidence, and presentation of the merits of a case. *In re Fas Mart Convenience Stores, Inc.*, 318 B.R. 370 (Bankr. E.D.Va. 2004) (bringing claims as a contested matter did not warrant dismissal of proceeding). In short, due process is satisfied in either a contested matter or an adversary proceeding:

> Although not expressly set forth, the appellant's argument seems to be that due process requirements are not satisfied if the matter is considered a contested matter (where the relief shall be requested by motion), as compared to an adversary proceeding (where the

> relief is sought through a summons and complaint). The
> appellant's argument has no basis, however, in light of Bankruptcy
> Rule 9014's clear requirements that the fundamental requisites of
> due process must be satisfied in a contested matter in the same
> manner as in an adversary proceeding. Bankruptcy Rule 9014
> requires that "[t]he motion shall be served in the manner provided
> for service of a summons and complaint by Rule 7004...." Thus,
> the same due process requirements are applicable to both
> Bankruptcy Rules 7004 and 9014.

*In re Zumbrun*, 88 B.R. 250, 252 (B.A.P. 9th Cir. 1988).

Many courts have held that failure to file an adversary proceeding in lieu of a contested matter, even if improper, is harmless error. *In re Munoz*, 287 BR 546, 551 (B.A.P. 9th.Cir. 2002) (proceeding as contested matter was harmless error where record would not have been materially different in an adversary proceeding); *In re Beta Intern, Inc.*, 210 B.R. 279, 282 (E.D.Mich.1996); *In re Metro Transp. Co.*, 117 B.R. 143, 146 (Bankr.E.D.Pa.1990) (failure to file adversary proceeding was excused because there was no prejudice to opposing parties, opposing parties failed to object, and litigants allowed the bankruptcy court to decide the underlying issue); *In re Dean*, 359 B.R. 218, 221-4 (Bankr. C.D.Ill. 2006); *In re Orfa Corp. of Philadelphia*, 170 B.R. 257, 275 (E.D.Pa. 1994) (any prejudice arising from bringing contested matter in lieu of adversary proceeding was "illusory"); *In re Cannonsburg Environmental Associates, Ltd.*, 72 F.3d 1260, 1263 (6th Cir.1996).

In this case, discovery and motions' practice proceeded in exactly the same way as would have occurred in an adversary proceeding. Likewise, the record below would not have been materially different from one produced in an adversary proceeding. Accordingly, there was no prejudice to the Committee (or to Appellants) from permitting the fee dispute to proceed as a contested matter, and any error was harmless.

**G.      The Bankruptcy Court Properly Struck the Advantage Objection.**

1.      **A Corporation May Not Represent Itself In Federal Court.**

Bankruptcy Rule 9010 states that certain entities may appear by counsel or on their own

behalf and perform any act on their own behalf that does not constitute the practice of law:

> **Authority to Act Personally or by Attorney.** A debtor, creditor,
> equity security holder, indenture trustee, committee or other party
> may (1) appear in a case under the Code and act either in the entity's
> own behalf or by an attorney authorized to practice in the court, and
> (2) *perform any act not constituting the practice of law*, by an
> authorized agent, attorney in fact, or proxy.

Rule 9010(a)(emphasis added).

The 1983 Advisory Committee Notes to Bankruptcy Rule 9010 specifically states that

Rule 9010 does not allow a corporation to appear in a bankruptcy case *pro se*: "This rule is

substantially the same as former Bankruptcy Rule 910 and does not purport to change prior

holdings prohibiting a corporation from appearing pro se."  Fed. R. Bankr. P. 9010 Advisory

Committee Notes (1983)(citing *In re Las Colinas Development Corp.*, 585 F.2d 7, 12-13 (1st

Cir. 1978) (president and majority shareholder could not represent debtor corporation in

bankruptcy proceeding because he was not a licensed attorney)).

The Court of Appeals for this Circuit has recognized the long-standing rule that a

corporation can only appear in court through an attorney.  *American Airways Charters, Inc. v.

Regan*, 746 F.2d 865, 873 n.14 (D.C. Cir.1984) ("...it is established that a corporation, which is

an artificial entity that can only act through agents, cannot proceed *pro se*."); s*ee also Bristol

Petroleum Corp. v. Harris*, 901 F.2d 165, 166 n.1, (D.C. Cir. 1990) (*citing Commercial and R.R.

Bank of Vicksburg v. Slocomb, Richards & Co.*, 39 U.S. 60 (1840)).  The Supreme Court and the

vast majority of federal courts recognize this basic rule.  *Rowland v. Cal. Men's Colony, Unit II

Men's Advisory Council*, 506 U.S. 194, 201-2 (1993) ("It has been the law for the better part of

two centuries...that a corporation may appear in the federal courts only through licensed counsel.") (holding that only a natural person, not a corporation, could proceed *in forma pauperis*)(citations omitted); *see also Strong Delivery Ministry Ass'n v. Bd. of Appeals of Cook County*, 543 F.2d 32, 33 (7th Cir. 1976) (holding that 28 U.S.C. § 1654, which governs right to appear in federal courts, has never been extended to allow a corporation to appear *pro se*) (*citing Heiskell v. Mozie*, 65 82 F.2d 861, 863 (D.C. Cir. 1936); *In re Highley*, 459 F.2d 554, 555 (9th Cir. 1972)); *Shapiro, Berstein & Co. v. Cont'l Record Co.*, 386 F.2d 426, 427 (2d Cir. 1967); *Simbraw, Inc. v. United States*, 367 F.2d 373, 374 (3d Cir. 1966); *Flora Constr. Co. v. Fireman's Fund Ins. Co.*, 307 F.2d 413, 414 (10th Cir. 1962); *Acme Poultry Corp. v. United States*, 146 F.2d 738, 740 (4th Cir. 1944) *cert. denied*, 371 U.S. 950 (1963), *rehearing denied*, 373 U.S. 919 (1963); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (1985).

For the reasons and pursuant to the legal precedents stated above, Advantage's attempt to file its objection with the bankruptcy court was improper for lack of representation by licensed counsel.[9]  Appellants have failed to establish an abuse of discretion in striking the improper filing.

## 2.    The Bankruptcy Court Had No Duty to Grant a S*ua Sponte* Continuance.

Appellants also asserts that the bankruptcy court erred because it did not, *sua sponte*, grant a continuance to allow Advantage to retain counsel.  (Appellants' Brief at pp. 16-17).  By so arguing, Advantage ignores that, while it asked the bankruptcy court to continue the December 21 hearing, it did not request a continuance to enable it to retain counsel.  Appellants

---

[9]  While not included in the issues presented for appeal, Appellants assert that Mr. Wolff had some sort of "unique status" as the president of a corporate member of the Committee, such that he could file an objection on behalf of Advantage as a "corporate representative."  Appellants' Brief at pp. 14-15.  While the Committee does not addressed this theory due to Appellants' failure to designate it as an issue for appeal, Appellants' rationale was not sufficient basis for the bankruptcy court to ignore 200 years of settled jurisprudence and allow Mr. Wolff, not a licensed attorney, to represent the interests of a corporation in a federal court.  *Turner v. Am. Bar Ass'n*, 407 F.Supp. 451, 476 (S.D.Tex.1975) (holding there is no right to have a lay person, as opposed to a licensed attorney, represent one's interests in a federal court).

do not assign error to the denial of the actual requests for continuance contained in the Advantage objection.

The granting or denial of a continuance is within the sound discretion of the trial court. *Avery v. State of Alabama*, 308 U.S. 444, 446 (1940).  The trial court's decision will not be set aside if it is reasonable.  *United States v. Hall*, 448 F.2d 114 (2d Cir. 1971).  It is not an abuse of discretion to refuse a continuance for time to retain counsel where the requesting party received notice of the hearing and had an opportunity to be heard on the issue before the court.  *Walker v. Stanley*, 231 B.R. 343, 349 (N.D.Cal.1999).

Appellants' contention that the bankruptcy court should have granted Advantage a *sua sponte* continuance to give Advantage time to engage counsel, is further undermined by the fact that, if Mr. Wolff had standing to appear on his own behalf (as Appellants contend he does), then Mr. Wolff could have asserted his objections at the December 21 hearing *pro se*.

## H.     Elliott Wolff Lacks Standing to be an Appellant.

On February 21, 2008, Pillsbury filed a motion to strike Mr. Wolff as an appellant in this proceeding for lack of standing [Dkt. No. 21].  The Committee joined Pillsbury in challenging Mr. Wolff's standing as an appellant (the "Committee Joinder") on February 26, 2008 [Dkt. No. 26].  The Committee set forth its legal and factual arguments with respect to Mr. Wolff's lack of standing in its March 10, 2008, reply (the "Committee Reply") to Appellants' opposition to Pillsbury's motion to strike Mr. Wolff's appearance [Dkt. No. 20].   The Committee reasserts its challenge to Mr. Wolff's standing, but in the interests of brevity, respectfully refers the court to the Committee Joinder and the Committee Reply, which are here incorporated by reference.

## VII.    CONCLUSION

For the reasons set forth above, the Committee respectfully urges the district court to affirm the bankruptcy court's orders, entered December 21, 2007, approving the fee dispute settlement and striking the Advantage objection to the settlement.  The Committee further requests that it be awarded its costs and such other relief as may be just.


Date:  April 17, 2008                    Respectfully submitted,

                                         LEACH TRAVELL BRITT pc

                                         /s/Stephen E. Leach
                                         Stephen E. Leach (Bar No. 925735)

                                         /s/D. Marc Sarata
                                         D. Marc Sarata (Bar No. 489488)
                                         8270 Greensboro Drive, Suite 1050
                                         McLean, Virginia 22102
                                         Telephone:    (703) 584-8902
                                         Telecopier:   (703) 584-8901
                                         E-mail:       sleach@ltblaw.com
                                         E-mail:       msarata@ltblaw.com

                                         *Counsel for Appellee The Plan Committee
                                         of the Greater Southeast Community
                                         Hospital Foundation*