# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADVANTAGE HEALTHPLAN INC. and ELLIOT R. WOLFF, | ) ) ) ) | |
| Appellants, | ) ) | Civil Action No. 08-0166-CKK (Appeal) |
| v. | ) ) | Bankruptcy No. 99-1159 (Chapter 11) |
| PILLSBURY WINTHROP SHAW PITTMAN, LLP et al., | ) ) ) ) | |
| Appellees. | ) ) | |

# REPLY BRIEF OF APPELLANTS
# IN RESPONSE TO PILLSBURY'S APPELLEE BRIEF

Janet M. Nesse, Bar No. 358514
Lawrence P. Block, Bar No. 452190
Stinson Morrison Hecker LLP
1150 18th St., NW, Suite 800
Washington, DC 20036
Telephone: (202) 785-9100
Fax:  (202) 785-9163

*Counsel for Appellants*

# I. TABLE OF CONTENTS

I. TABLE OF CONTENTS ................................................................................................... i

II. TABLE OF AUTHORITIES ............................................................................................ ii

III. ARGUMENT ..................................................................................................................... 1

    A. Introduction. ........................................................................................................... 1

    B. The Subject Matter Jurisdiction of the Bankruptcy Court is Properly
        before this Court. .................................................................................................... 1

    C. Appellants Were Not Required to Appeal the December 18, 2007 Order
        of the Bankruptcy Court. ....................................................................................... 2

    D. This Appeal is not Moot. ....................................................................................... 2

    E. Striking the Opposition of Elliot R. Wolff was Reversible Error. ........................ 5

    F. The Bankruptcy Court Erred when it Approved the Alleged Settlement. ........... 6

    G. The Bankruptcy Court Erred by Allowing this Fee Dispute to Proceed
        as a Contested Matter Rather Than as an Adversary Proceeding. ....................... 8

    H. This Appeal is not Frivolous. ................................................................................ 9

IV. CONCLUSION ................................................................................................................ 10

## II.  TABLE OF AUTHORITIES

**CASES**

*American Homepatient, Inc. v. Official Committee of Unsecured Creditors (In re American Homepatient, Inc.)*,
  420 F.3d 559 (6th Cir. 2005) ..................................................................................8

*Arrington v. U.S.*,
  585 A.2d 1342 (D.C. 1991) .....................................................................................6

*Bruce v. Hawley Fuel Coal, Inc.*,
  792 F.2d 1140 (D.C. Cir. 1986) ........................................................................ 10-11

*Fiala v. Lindemann (In re Lindemann)* ....................................................................12

*In the Matter of UNR Industries, Inc.*,
  20 F.3d 766 (7th Cir. 1994) .....................................................................................7

*Karta Container & Recycling, Inc. v. Karta Corp.*,
  342 B.R. 45 (Bankr. S.D.N.Y. 2006) ......................................................................8

*Knowles Building Co. v. Zinni (In re Zinni)*,
  261 B.R. 196 (B.A.P. 6th Cir. 2001) .....................................................................17

*Lowenschuss v. Selnick (In re Lowenschuss)*,
  171 F.3d 673 (9th Cir. 1999) ...................................................................................9

*Milicevic v. Fletcher Jones Imports*,
  402 F.3d 912 (9th Cir. 2004) .................................................................................10

*Raybestos Products Co. v. Younger*,
  54 F.3d 1234 (7th Cir. 1995) .................................................................................14

*TMT Trailer Ferry Protective Committee v. Anderson*,
  390 U.S. 414 (1968) ..............................................................................................15

*Tungseth v. Mutual of Omaha Insurance Co.*,
  43 F.3d 406 (8th Cir. 1994) ...................................................................................10

*United States v. Arkison (In re Cascade Roads, Inc.)*,
  34 F.3d 756 (9th Cir. 1994) ...................................................................................10

*United States v. Segall*,
  432 F.3d 767 (7th Cir. 2005) ............................................................................. 7-8

*United States v. Timberland Paving & Construction Co.*,
  745 F.2d 595 (9th Cir. 1984) .................................................................................10

*Walker v. Grisby*,
  2006 U.S. Dist. LEXIS 94888 ...........................................................................................7, 9

*Wortman v. Donahoe (In re Donahoe)*,
  180 B.R. 491 (N.D. Ohio 1995) ..............................................................................................14

*Zegeze v. Keshishian (In re Zegeze)*,
  2005 U.S. Dist LEXIS 901 ......................................................................................................17

**OTHER AUTHORITIES**

Fed. R. Bankr. P. 7001 ................................................................................................... 15-16

Fed. R. Bankr. P. 8020 ........................................................................................................17

Fed. R. Bankr. P. 9014(b) ...................................................................................................11

Fed. R. Bankr. P. 9017 ........................................................................................................14

Fed. R. Civ. P. 5(b) ..............................................................................................................11

Fed. R. Civ. P. 5(d) ..............................................................................................................11

Fed. R. Evid. 408 .................................................................................................................14

Rule 11 ............................................................................................................................ 13-14

Rule 9019 .............................................................................................................................15

U.S. Const. amend. VII .......................................................................................................16

U.S. Const. art. III .................................................................................................................9

### III.    ARGUMENT

**A.    Introduction.**

This case arises out of a dispute over fees for services rendered by Pillsbury Winthrop Shaw Pittmann LLP and Patrick J. Potter (collectively "Pillsbury") to the bankruptcy estate of The Greater Southeast Community Hospital Foundation, Inc. ("Debtor").  Advantage Healthplan Inc. ("Advantage") and Elliot R. Wolff (collectively "Appellants") have appealed from two orders of the United States Bankruptcy Court for the District of Columbia ("Bankruptcy Court").  The first order struck Advantage's objection to a proposed settlement of the dispute and the second order approved the settlement.

Appellants will address the issues raised in the Pillsbury Brief, and will demonstrate that (1) this appeal is not moot, (2) the Bankruptcy Court erred when it struck Advantage's objection to the proposed settlement, (3) the Bankruptcy Court erred when it approved the proposed settlement, and (4) this appeal is not frivolous.  Appellants adopt and incorporate, in its entirety, the Reply Brief of Appellants in Response to Brief of Appellee Plan Committee filed contemporaneously herewith.

**B.    The Subject Matter Jurisdiction of the Bankruptcy Court is Properly before this Court.**

As a preliminary matter, Pillsbury argues that the issue of the Bankruptcy Court's subject matter jurisdiction over this fee dispute is not properly before the Court because Appellants did not appeal the Bankruptcy Court's November 15, 2007 Order Resolving Subject Matter Jurisdiction.  (Pillsbury Brief, p. 4).  However, challenges to a court's subject matter jurisdiction cannot be waived.  *See e.g., Arrington v. U.S.*, 585 A.2d 1342, 1344, n. 2 (D.C. 1991).  In addition, the November 15, 2007 Order was entered in the course of a contested matter.  To appeal the objection to subject matter jurisdiction at the time would have required a Motion for

1

Interlocutory Appeal. Had the Bankruptcy Court insisted that Pillsbury file an adversary proceeding, as was appropriate, this issue would be abundantly clear. Therefore, Appellants' challenge to the Bankruptcy Court's subject matter jurisdiction is properly before the Court.

**C.     Appellants Were Not Required to Appeal the December 18, 2007 Order of the Bankruptcy Court.**

The December 18, 2007 order was not a final order as it was entered in the contested matter. The bankruptcy court made very clear that there was not a final decision arising from the December 14, 2007 hearing (the basis for the December 18, 2007 order). Similar to the ability to appeal from partial motions for summary judgment or denials of a motion to dismiss, this order was interlocutory in nature. As discussed above, this matter should have proceeded as an adversary proceeding in which case the appealability of various orders, including the December 18, 2007 order, would have been clear. Pillsbury has not provided any valid basis for concluding that Appellants were required to appeal the December 18, 2007 order.

**D.     This Appeal is not Moot.**

Pillsbury makes the novel argument that this appeal is equitably moot and should, therefore, be dismissed. Pillsbury's argument reveals a total misunderstanding of both constitutional and equitable mootness, neither of which apply to this case.

Mootness and equitable mootness are two independent concepts. A court may dismiss a bankruptcy appeal if it appears that the case has become either constitutionally or equitably moot. *Walker v. Grisby*, 2006 U.S. Dist. LEXIS 94888, at * 5 (D. Md.). Constitutional mootness means that the issue has been resolved so there is no case or controversy. *Walker v. Grisby*, 2006 U.S. Dist. LEXIS 94888, at * 5 (D. Md.). Its equitable corollary[1] means that it is too late to unwind a settlement. *See United States v. Segall*, 432 F.3d 767, 773 (7th Cir. 2005).

2

Pillsbury contends that the doctrine of equitable mootness applies here because "the parties have fully implemented the settlement and the appellant has made no effort to obtain a stay." (Pillsbury Brief, p. 20). The only steps necessary to implement the settlement were the payment of $130,000 to Pillsbury and the transfer of various documents to the Plan Committee. (Pillsbury Brief, p. 19). The Plan Agent and Advantage dispute that the documents were provided to the Plan committee. Nonetheless, neither of those steps had any effect on the Debtor's confirmed plan of reorganization and, therefore, equitable mootness does not apply. Further, the funds could easily be repaid, and the documents belong to the Committee in any event.

The cases cited in the Original Brief all hold that a court should be hesitant to set aside an approved and consummated plan. *See e.g.*, *United States v. Segall*, 432 F.3d 767, 773 (7th Cir. 2005). Equitable mootness is a prudential doctrine that is invoked to avoid disturbing a reorganization plan once implemented. *Karta Container & Recycling, Inc. v. Karta Corp.,* 342 B.R. 45 (Bankr. S.D.N.Y. 2006). In bankruptcy proceedings, equitable mootness occurs where the plan of reorganization is substantially consummated, and where it is no longer "prudent to upset the plan of reorganization." *See American Homepatient, Inc. v. Official Committee of Unsecured Creditors (In re American Homepatient, Inc.*), 420 F.3d 559, 563 (6th Cir. 2005).

Additionally, in *Lowenschuss v. Selnick (In re Lowenschuss)*, 171 F.3d 673, 678 (9th Cir. 1999), the appellee argued that the appellant's failure to obtain a stay of a Confirmation Order pending her appeal of an Exclusion Order mooted her appeal of the Exclusion Order. The Court disagreed because the case did not present transactions that were so complex or difficult to unwind that the doctrine of equitable mootness would apply. *Id.* at 678**.** The Court then explained that if a bankruptcy trustee, acting in reliance on an unstayed bankruptcy order,

---

[1] The Seventh Circuit has actually banished the term "equitable mootness" from the lexicon. *See In the Matter of UNR Industries, Inc.,* 20 F.3d 766, 769 (7th Cir. 1994).

conducted a series of complex transactions involving estate property, the appellate court could dismiss an appeal of the order simply because it would be unfair to those effected to reach its merits. *Id.*  By way of contrast, Pillsbury has not pointed to any transactions, complex or otherwise, that occurred in reliance on the unstayed order in this case.  Here, Pillsbury received the equivalent of a money judgment.

Pillsbury, however, insists that the appeal is moot because the Plan Committee paid Pillsbury $130,000 which Pillsbury has spent.  (Pillsbury Brief, p. 19).  Although arguing equity, Pillsbury is essentially claiming that the appeal is constitutionally, rather than equitably, moot. A finding of constitutional mootness reflects a determination that a case or controversy no longer exists within the meaning of U.S. Const. art. III.  *Walker v. Grisby*, 2006 U.S. Dist. LEXIS 94888,  at * 5 (D. Md.).   No basis for that argument is shown.

The usual rule in federal courts is that satisfaction of judgment does not foreclose appeal. *United States v. Timberland Paving & Construction Co.*, 745 F.2d 595, 598 (9th Cir. 1984).  It is a fundamental principle that a debtor against whom a judgment for money is recovered may pay that judgment and bring a writ of error to reverse it.  In so doing, a defendant has merely submitted to perform the judgment of a court and has not thereby lost his right to seek a reversal of that judgment by appeal.  *United States v. Arkison (In re Cascade Roads, Inc.)*, 34 F.3d 756 (9th Cir. 1994).  Unless there is some contemporaneous agreement not to appeal, and so long as, upon reversal, restitution can be enforced, payment of the judgment does not make the controversy moot.  *Milicevic v. Fletcher Jones Imports*, 402 F.3d 912 (9th Cir. 2004).  Payment of a judgment alone does not moot an appeal, unless the parties intended to abandon their right to appeal.  *Tungseth v. Mutual of Omaha Insurance Co.*, 43 F.3d 406, 409 (8th Cir. 1994).

4

On this point, *Bruce v. Hawley Fuel Coal, Inc.,* 792 F.2d 1140, 1149 (D.C. Cir. 1986) is instructive. In *Bruce,* the Court held that a challenge of fees awarded to a law firm was still capable of resolution and that in the event of an adverse ruling, "one possible remedy would be to order the law firm to make partial or total restitution." In reversing a district court finding of mootness, the Court relied on the fact that all of the parties that could be affected by the claims were before the court, the judgment would not implicate or have an adverse effect on the interests of other, non-party creditors and resolution of the claim would not affect the re-emergence of the debtor as a revitalized corporate entity. *Id.* Similarly in this case, an order requiring Pillsbury to return the settlement funds, would have no adverse impact on either the Debtor or any non-party creditor. Ironically, Pillsbury, with offices throughout the United States as well as London, Shanghai and Tokyo, seems to be arguing that once this $130,000 was spent it will be unable to locate fungible dollars in American currency to replace it.

**E.      Striking the Opposition of Elliot R. Wolff was Reversible Error.**

As noted in Pillsbury's Brief, Advantage filed its objection to the proposed settlement on December 18, 2007, "and served it by e-mail on the Plan Committee and Pillsbury that same evening." (Pillsbury Brief, p. 6). Pillsbury then asserts that on December 20, 2007, it "emailed to Advantage its response and request to strike." (Pillsbury Brief, p. 17). However, the Motion to Strike (BCD 3348) contains no Certificate of Service.

Pursuant to Fed. R. Bankr. P. 9014(b), any paper served after the original motion in a contested matter, "shall be served in the manner provided by Fed. R. Civ. P. 5(b)." Fed. R. Civ. P. 5(d), provides for the filing of a certificate of service with all papers filed after a complaint. In order to determine if a proper mailing was accomplished, courts may consider whether a letter was correctly addressed, whether proper postage was affixed and whether a proper certificate of

5

service was filed. *See Fiala v. Lindemann (In re Lindemann)*, 2007 Bankr. LEXIS 4166, at *19-20 (N.D. Ill.). Although Pillsbury claims that "the return e-mail receipt received by Pillsbury from Advantage is evidence that the Motion to Strike was received by Advantage," (Pillsbury Brief, p. 17), the assertion is conclusively undermined by Pillsbury's own evidence. The "receipt" is actually an auto reply from Elliot Wolff, which states "I am unable to access your email or any voicemail until I return to my office on January 7, 2008." (JA1115). Equally important, is the notation that the email was sent at 5:46 p.m. on December 20, 2007.

According to Pillsbury, the return e-mail was sent only a few seconds after the Motion to Strike was sent to Advantage. Because the Motion to Strike was granted at "approximately 8:00 a.m. on December 21, 2007," (Pillsbury Brief, p. 17), this means that Advantage, had it received the Motion to Strike, would have had only 15 non-business hours to obtain counsel to file a response. Thus Pillsbury's claim that "Advantage had plenty of opportunity to obtain legal counsel," (Pillsbury Brief, p. 22), is ridiculous. Furthermore, because Mr. Wolff was the representative of Advantage on the Plan committee, the Court could easily have determined that his objection was the equivalent of a filing by the representative. Under these circumstances, the striking of Mr. Wolff's opposition was a clear abuse of discretion.

**F.    The Bankruptcy Court Erred when it Approved the Alleged Settlement.**

As demonstrated in the Brief of Appellants, Advantage Healthplan Inc. and Elliot R. Wolff ("Original Brief"), the Bankruptcy Court's approval of the Settlement was clearly erroneous because of its failure to employ the proper standards to evaluate the proposed agreement. (Original Brief, p. 19). In response, Pillsbury essentially claims that the Bankruptcy Court was not required to abide by the usual standards because it was "intimately familiar with

6

the litigation." (Pillsbury Brief, p. 31). In support of its claim of intimacy, Pillsbury makes a number of indefensible claims.

According to Pillsbury, the Bankruptcy Court "was generally aware that the legal fees for both the Plan Committee and Pillsbury were spiraling out of control." (Pillsbury Brief, p. 33) and "understood that stopping this proverbial hemorrhaging was, indirectly, in the best interest of creditors." (Pillsbury Brief, p. 33). However, no discussions were held with the Bankruptcy Court regarding the expansive nature of the release purported to be given to Pillsbury or the lack of cooperation by Pillsbury in obtaining information and documents in its possession. The Bankruptcy Court did not have the discovery responses and had absolutely no idea of the true nature of the dispute.

In addition, Pillsbury relies on the fact that it "had tendered its Rule 11 motion to Plan Committee counsel on October 1, 2007, and there was risk that the Plan Committee would be sanctioned and required to pay Pillsbury's costs of litigating the Pillsbury Fee Motion." (Pillsbury Brief, p. 33). Significantly, the Rule 11 motion was never filed so that it is impossible to conclude that the Bankruptcy Court relied on that motion in approving the Settlement.

Finally, with regard to Appellants' charge that the Bankruptcy Court failed to consider the likelihood of success on the merits, Pillsbury offers the following: "Certainly Advantage had considered the likely outcomes when it authorized the Plan Committee to settle for $100,000 on November 29, 2007 and insisted that the Plan Committee increase its number to $120,000 as set forth in the December 8, 2007 Offer of Judgment." (Pillsbury Brief, p. 32). Like the Rule 11 motion, the Offer of Judgment was never filed so that it is hard to believe that it was relied upon by the Bankruptcy Court. Furthermore, the Offer of Judgment is specifically inadmissible under Fed. R. Evid. 408, which is applicable in bankruptcy proceedings pursuant to Fed. R. Bankr. P.

7

9017. *See Wortman v. Donahoe (In re Donahoe)*, 180 B.R. 491, 494 (N.D. Ohio 1995). Rule 408 "renders inadmissible evidence of statements made in compromise negotiations if offered as an admission of the validity or invalidity of the claim or its amount under negotiation." *Raybestos Products Co. v. Younger*, 54 F.3d 1234, 1241 (7th Cir. 1995). Here, the settlement negotiations erroneously detailed by Pillsbury are clearly inadmissible as they are offered to show the validity of the settlement agreement that is the subject of the instant dispute.

In sum, Pillsbury is asking this Court to rule that the Bankruptcy Court gave due consideration to the proposed settlement based on conjecture, pleadings that were never filed, and inadmissible evidence. When those items are eliminated from consideration, there are no grounds for a finding that the Bankruptcy Court exercised its informed and independent judgment as to whether the proposed compromise was fair and equitable. *See TMT Trailer Ferry Protective Committee v. Anderson*, 390 U.S. 414, 424-25 (1968).

**G.     The Bankruptcy Court Erred by Allowing this Fee Dispute to Proceed as a Contested Matter Rather Than as an Adversary Proceeding.**

In response to Appellants' argument that the fee dispute should have commenced as an adversary proceeding rather than as a contested matter, Pillsbury first contends that "Advantage is making this argument for the first time on appeal." (Pillsbury Brief, p. 34) That claim is undermined in the next sentence wherein Pillsbury states that "the Plan Committee raised this issue for the first time on December 6, 2007...."[2] (Pillsbury Brief, p. 34). Having dispensed with its first argument, Pillsbury next claims that it was proper for the Fed. R. Bank. 9019 motion to proceed as a contested matter. While it may be true that a request for approval of a settlement is properly filed as a motion, it would be absurd to suggest that any matter which culminates in the filing of a Rule 9019 motion, could have been brought as a contested matter rather than as an

---

[2] The Notice of Appeal was filed on December 31, 2007 (BCD 3372).

8

adversary proceeding as required by Fed. R. Bankr. P. 7001.  The 9019 Motion is just another paper filed in the contested matter of disputed legal fees, it is not a separate contested matter.

Pillsbury then argues that through the passage of time (four months), Appellants waived the right to convert the matter to an adversary proceeding.   Pillsbury fails to mention that the Plan Committee filed a Motion to Dismiss on December 7, 2007, specifically stating that the matter should proceed as an adversary proceeding.  (BCD No. 3330).  Pillsbury also asserts that a court would only invalidate non-adversary proceedings involving issues enumerated in Rule 7001 where, *inter alia*, there was a "lack of prejudice to the nonmoving party." (Pillsbury Brief, p. 35, citing *Crump v. U.S.*, 1996 U.S. Dist. LEXIS 5517 (D. Col.)).  In this case,  the prejudice has been significant.

Because Pillsbury filed the fee dispute as a contested matter rather than as an adversary proceeding, the respondents to the motion (including Advantage, as a member of the Plan Committee), were immediately deprived of the right to file an Answer, in which they could have asserted all of their affirmative defenses.  In addition, Advantage and the other respondents were deprived of the right to a trial by jury as guaranteed by U.S. Const. amend. VII.  Although the case never proceeded to the trial stage, the possibility of a jury trial could have had a significant impact on settlement negotiations.   Finally, the contested matter process has complicated and confused issues throughout, such as the appealability of various orders, the ability to pay a federal judgment and the like.

**H.     This Appeal is not Frivolous.**

In its brief, Pillsbury continuously argues that this appeal is frivolous (Pillsbury Brief, pp. 24, 29, 39, 40) and asks the Court for a determination that the appeal is frivolous under Fed. R.

Bank. R. 8020. (Pillsbury Brief, p. 40). Pillsbury's request, however, is not properly before the Court and Pillsbury fails to meet the standard for establishing "frivolity."

Fed. R. Bankr. P. 8020 provides, in pertinent part: "If a district court…determines that an appeal …is frivolous, it may, after a separately filed motion or notice …and reasonable opportunity to respond, award just damages …." *See Zegeze v. Keshishian (In re Zegeze)*, 2005 U.S. Dist LEXIS 901 at * 21 (D.Md.). A request under Rule 8020, is not properly before the Court, where an appellee has not filed a separate motion. *Id*. at *22. Therefore, the request in Pillsbury's Brief must be denied.

In addition, Pillsbury has failed to demonstrate that this appeal is frivolous. An appeal is frivolous "if it is obviously without merit and is prosecuted for delay, harassment, or other improper purposes." *Knowles Building Co. v. Zinni (In re Zinni)*, 261 B.R. 196, 204 (B.A.P. 6th Cir. 2001) (appeal that raised "substantive procedural issue" was not frivolous). The substantive legal issues raised by this case include questions going to the heart of constitutional due process, notice and the opportunity to be heard. In addition, there can be no serious argument that the appeal was brought for delay or any other improper purpose inasmuch as Pillsbury admits that Appellants have complied with the terms of the disputed settlement by paying Pillsbury the entire amount designated in the agreement.

### IV.    CONCLUSION

Pillsbury does not address the procedural deficiencies raised in Appellant's brief. Pillsbury does not explain how the procedural deficiencies did not adversely impact Appellants due process rights or prejudice the creditor body. Accordingly, Appellants request that the appealed orders be reversed and the matter remanded to the bankruptcy court for further proceedings with a Special Master to assist with factual findings and for such other procedures as are appropriate on remand.

Dated:  May 8,  2008                              Respectfully submitted


                                                  /s/ Janet M. Nesse
                                                  Janet M. Nesse, Bar No. 358514
                                                  Lawrence P. Block, Bar No. 452190
                                                  Stinson Morrison Hecker LLP
                                                  1150 18th St., NW, Suite 800
                                                  Washington, DC 20036
                                                  Telephone: (202) 785-9100
                                                  Fax:  (202) 785-9163
                                                  *Counsel for Appellants, Advantage Healthplan Inc.
                                                  and Elliot Wolff*