# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ADVANTAGE HEALTHPLAN INC. and ELLIOT R. WOLFF, | ) ) ) ) | |
| Appellants, | ) ) | Civil Action No. 08-0166-CKK (Appeal) |
| v. | ) ) | Bankruptcy No. 99-1159 |
| PILLSBURY WINTHROP SHAW PITTMAN, LLP et al., | ) ) ) | (Chapter 11) |
| Appellees. | ) | |

## REPLY BRIEF OF APPELLANTS
## IN RESPONSE TO BRIEF OF APPELLEE THE PLAN COMMITTEE

Janet M. Nesse, Bar No. 358514
Lawrence P. Block, Bar No. 452190
Stinson Morrison Hecker LLP
1150 18th St., NW, Suite 800
Washington, DC 20036
Telephone: (202) 785-9100
Fax:  (202) 785-9163

*Counsel for Appellants*

I.  ARGUMENT .......................................................................................................................1
    A.  Introduction...........................................................................................................1
    B.  The Issues on Appeal are Subject to De Novo Review. ......................................3
    C.  Facts That are Correct in the Plan Committee Brief............................................4
    D.  Misstated Facts in the Plan Committee Brief. ....................................................5
    E.  Advantage and Mr. Wolff have Standing to Assert the Due Process Rights of the
        Creditors they Represent.......................................................................................8
    F.  Throughout this Proceeding Appellants and the Other Creditors Were Deprived of Their
        Due Process Right to Notice. ...............................................................................9
        2.  Deficient Notice of the Motion to Strike. ..................................................11
        3.  Deficient Notice of December 21, 2007 Hearing. .....................................13
        4.  The Bankruptcy Court Erred Each Time it Reduced (or Eliminated) the Notice
            Periods........................................................................................................13
    G.  The Bankruptcy Court Erred when it Approved the Proposed Settlement........................14
    H.  The Plan Committee is Estopped from Arguing that the Bankruptcy Court had Subject
        Matter Jurisdiction over the Fee Dispute. .........................................................16
    I.  The Bankruptcy Court Erred by Allowing this Matter to Proceed as a Contested Matter
        Rather than as an Adversary Proceeding. ..........................................................18
II. CONCLUSION...................................................................................................................20

# TABLE OF AUTHORITIES

CASES

*Doran v. Treiling (In re Treiling)*,
    21 B.R. 940 (Bankr. E.D. N.Y. 1982) ...................................................................................19

*Fiala v. Lindemann (In re Lindemann)*,
    2007 Bankr.LEXIS 4166, at * 19-20 N.D.Ill.) .........................................................................12

*Gordon v. Gouline (In re Gordon)*,
    1995 U.S. Dist. LEXIS 20852 (D.D.C.) ...............................................................................4, 15

*In re Banks*,
    94 B.R. 772 (Bankr. M.D. Fla. 1989) ...................................................................................19

*In re the Greater Southeast Community Hospital Foundation, Inc., et al*,
    Case No. 00-1159 .........................................................................................................10

*In re Stern*,
    70 B.R. 472 (Bankr. E.D. Pa. 1987) ...................................................................................19

*In re Szostek*,
    93 B.R. 399 (Bankr. E.D. Pa. 1998) ...................................................................................19

*Kontrick v. Ryan*,
    540 U.S. 443 (2004) .......................................................................................................19

*New Hampshire v. Maine*,
    532 U.S. 742 (2001) .......................................................................................................17

*Reese Brothers, Inc. v. U.S. Postal Service*,
    531 F.Supp. 2d 64 (D.D.C. 2008) ....................................................................................8-9

*Reiss v. Hagman (In re Reiss)*,
    881 F.2d 890 (10th Cir. 1989) ...........................................................................................4

*TMT Trailer Ferry Protective Committee v. Anderson*,
    390 U.S. 414 (1968) .......................................................................................................16


OTHER AUTHORITIES

Bankr. Rule 7001(4) ...........................................................................................................19

Fed. R. Bankr. P. 9014(b) ...................................................................................................12

Fed. R. Civ. P. 5(b) ...........................................................................................................12

Fed. R. Civ. P. 5(d) ...........................................................................................................12

Rule 12 ...............................................................................................................................19

Rule 2002(a)(3) ............................................................................................................ 13-14

Rule 9019 ..................................................................................................................... 10-11

U.S. Const. amend. VII ......................................................................................................20

# I.    ARGUMENT

## A.    Introduction.

This case arises out of a dispute over fees for services rendered by Pillsbury Winthrop Shaw Pittman LLP and Patrick J. Potter (collectively "Pillsbury") to the bankruptcy estate of The Greater Southeast Community Hospital Foundation, Inc. ("Debtor").   Advantage Healthplan Inc. ("Advantage") and Elliot R. Wolff (collectively "Appellants") have appealed from two orders of the United States Bankruptcy Court for the District of Columbia ("Bankruptcy Court").  The first order struck Advantage's objection to a purported settlement of the dispute and the second order approved the settlement without an evidentiary hearing.

In Chapter 11 cases, an unpaid committee of volunteer creditors – usually led by the creditors with the largest claims, is appointed to marshal all available assets and redistribute them among the creditors.  After confirmation, the creditors' committee is often assisted by a Plan Agent who operates, liquidates and/or transfers debtor assets according to the Bankruptcy Code.  The Plan Agent also maintains all of the records of bankruptcy and the proceedings.  When a bankruptcy plan is confirmed and post-confirmation activities are necessary, as is the case in the Greater Southeast Hospital bankruptcy case, a Plan Committee operates as the representative of the creditor body.  Importantly, during the relevant time of this dispute, there were two creditors who comprised the Plan Committee – Advantage and Welcome Homes, Inc.  Mr. Wolff has acted as Advantage's representative on the Plan Committee.  Pursuant to the guidelines established for the Plan Committee, resolutions signed by both members of the Plan Committee are necessary to take certain actions including the settlement of any litigation.

As a direct result of Pillsbury's legal work, the Plan Committee had great difficulty pursuing its largest remaining asset -- litigation against Price Waterhouse Cooper ("PWC").  Pillsbury was asked by the Plan Committee to clean up the ambiguities that had resulted in two

dismissals of complaints against PWC. The vast majority of the fees incurred by Pillsbury result from Pillsbury taking corrective action to allow the PWC litigation to move forward. Many other actions by Pillsbury are sources of concern. For example, the Committee has now learned that three truckloads of documents important to the PWC litigation disappeared while Potter was the Plan Agent.

Importantly, this appeal does not seek anything more than to allow Advantage and Wolff to fulfill their fiduciary duties to the creditors of the estate by allowing for a proper notice to be provided to creditors, to allow Advantage and Wolff to express their disapproval of the settlement with Pillsbury, and to require the bankruptcy court to comply with the Bankruptcy Code and Rules in rendering its decision. Advantage and Wolff will demonstrate that the procedural methodology undertaken by Pillsbury, and Shulman Rogers, as replacement counsel for the Plan Committee, to obtain bankruptcy court approval of a purported settlement denied Advantage and every other creditor their procedural due process rights, failed to comply with the Bankruptcy Court's own orders, and resulted in a broad release of Pillsbury that was never contemplated by Advantage and that prejudices the creditors of the estate.

This appeal is not just about money. This appeal is about the additional terms and conditions that were imposed on a settlement that were not approved by Advantage as a representative of the creditor body. There is no dispute that Advantage agreed to the payment of $130,000 to resolve the fee dispute. The issue is that that agreement came with certain required terms and conditions that were not agreed to by Pillsbury or the other member of the Committee so there was no meeting of the minds. All of the terms and conditions of the settlement were not agreed to despite the representation of Plan Committee counsel to the bankruptcy court that all terms of a settlement were agreed to. Those terms all involved making sure that the creditors

were aware of what they were giving up and making sure there was full and fair disclosure to the creditor body.

In this matter, nuances of the bankruptcy law and Bankruptcy Court procedures have been manipulated to prevent full presentation of the Committee's defenses against Appellees, Pillsbury and Potter, and to prevent Advantage from disclosing to the Bankruptcy Court its view that the purported settlement was not in the best interest of creditors.

This Reply Brief is addressed to the Brief of Appellee the Plan Committee ("Plan Committee Brief").  Appellants are concurrently filing a Reply Brief in Response to Pillsbury's Appellee Brief.  Appellants adopt and incorporate, in its entirety, the Reply Brief of Appellants in Response to Pillsbury's Appellee Brief.

**B.      The Issues on Appeal are Subject to _De Novo_ Review.**

The Plan Committee correctly notes that questions of law determined by a bankruptcy court are subject to _de novo_ review by federal district courts and that a bankruptcy court's findings of fact are to be reviewed under the clearly erroneous standard.  (Plan Committee Brief, p. 1).   The Plan Committee is erroneous, however, when it  concludes that the Bankruptcy Court's  approval of the proposed settlement in this case should be reviewed for an abuse of discretion.  (Plan Committee Brief, pp.1-2).

In this case, the Bankruptcy Court issued only one factual finding, which was that the parties had reached a settlement.  Appellants challenge that finding because they were not provided with notice that an evidentiary hearing would take place on December 14 and were thereby prevented from presenting contradictory evidence.  In an analogous situation, the appellants challenged the Bankruptcy Court's approval of a compromise and argued that there was no compromise to approve.  On appeal, this Court found that the challenge to the approval

order was a purely legal question and invoked the *de novo* standard of review.  *Gordon v.*

*Gouline (In re Gordon)*, 1995 U.S. Dist. LEXIS 20852, at *9-10 (D.D.C.).

      Although *de novo* review is clearly proper in this case, as it was in *Gordon*, even under

an abuse of discretion standard, the Bankruptcy Court's Order approving the proposed settlement

must be reversed.  In a case cited by the Plan Committee, *Reiss v. Hagman (In re Reiss)*, 881

F.2d 890 (10th Cir. 1989), the Court applied the abuse of discretion standard in reversing the

bankruptcy court's approval of a compromise and held:

> The bankruptcy court's decision to approve the settlement, however, must be an
> informed one based upon an objective evaluation of developed facts….[A]n
> approval of a compromise absent a sufficient factual foundation, inherently
> constitutes an abuse of discretion.  There is no indication in the record that the
> trustee or the courts did any legal research or made any attempt to properly
> separate the issues and evaluate the facts.

*Id.*, at 892.   Here, the bankruptcy court failed to develop the facts and failed to consider the

objection filed by one of the two parties entrusted by the creditor body to represent their

interests.

**C.**      **Facts That are Correct in the Plan Committee Brief.**

      Appellant agrees with the following facts contained in The Plan Committee's Brief:

      1.      "On December 13, 2007, before the parties signed a written settlement agreement,

Committee counsel filed emergency motions with the bankruptcy court seeking authority to

withdraw its appearance as counsel and requesting a continuance of all litigation deadlines

concerning the fee dispute."  (Plan Committee Brief, p. 3.)

      2.      "On December 17, 2007, Committee counsel mailed copies of the notice of

Settlement Motion and the December 21 hearing to approximately 760 creditors of the Debtors.

On December 18, 2007, Committee counsel mailed copies of the notice to approximately 778

additional creditors of the Debtors."  (Plan Committee Brief, p. 4.)

3.      "The bankruptcy court agreed to schedule a hearing on court approval of the settlement for December 21, 2007 and fixed December 19, 2007 at 5:00 P.M. as the deadline for filing objections, provided notice was sent out "today," *i.e.* December 14." (Plan Committee Brief, p.11.)

**D.      Misstated Facts in the Plan Committee Brief.**

1.      "On December 14, 2007, Pillsbury filed a Notice of the December 21, 2007 hearing and the December 19 objection deadline with the bankruptcy court via the ECF system. On December 14, 2007, Pillsbury served a copy of the notice via e-mail upon Advantage, thereby giving Advantage five days' notice of the objection deadline and seven days' notice of the hearing on approval of the settlement." (Plan Committee Brief, pp. 4, 12).   What the Plan Committee does not share with the Court is that the December 14, 2007 notice was deficient *because it contained no terms and conditions of the purported settlement.*   In reality, the first document that contained any of the terms and conditions of the purported settlement was in the notice that was *mailed* on December 17 to some creditors and on December 18 to other creditors, such as Advantage.   In reality, the maximum amount of time afforded to creditors was two days if they received the notice on the same day it was placed in the mail, an unrealistic expectation given that this occurred in the middle of the holiday season.   Additionally, the Plan Committee fails to mention that on December 13, 2007, Advantage submitted a letter to the Court supporting the emergency motions filed on December 13, 2007 and informing the court that Wolff would be out of the country from December 19 until January 5, 2008.  (JA 989).

2.      "The Confirmation Order provided that following the effective Date of the Plan, service of pleadings and other papers in the case could be limited to a specified list of recipients, together with any party expressly requesting continued receipt of notices." (Plan Committee Brief,  p. 6).

The Confirmation Order, contained at JA 116-117, specifically provides that "notice shall be limited to . . . (c) any party affected by the relief sought." For a 9019 Motion including a broad release of the Plan Agent and former Plan Committee Counsel, this relief affects every single creditor and therefore there was no limitation of notice as implied by the Plan Committee. Accordingly, the Plan Committee's statement that "Notwithstanding the Confirmation Order's limitation on the parties entitled to post Plan Effective Date service of papers ......", (Plan Committee Brief, p. 12), also is misleading as there was no limitation of service in this circumstance.

       3.    "Mr. Wolff did not challenge the statements of Committee counsel in the motion to withdraw that the Committee and Pillsbury had agreed to settle the fee dispute." (Plan Committee Brief, pp. 9, 18). Such a statement is blatantly misleading. First, the very basis of the motion to withdraw was Advantage's disagreement with counsel that a settlement had been reached. Wolff agreed with the relief sought – the withdrawal of Shulman Rogers as counsel because of the disagreement. Second, nowhere in the motion to withdraw was there a discussion of proceeding with the settlement, in fact, the exact opposite was supposed to occur. Based on what Mr. Wolff understood at the time, he was not aware of the secret effort to have the Court approve the purported settlement.

       4.    "The Settlement Motion described in considerable detail the litigation history, the positions of the parties, and the reasons for settlement." (Plan Committee Brief, p. 12). This is false. Nowhere in the settlement motion does it describe for creditors that the total release afforded to Pillsbury was much broader than the fee dispute litigation, that one of the two Plan Committee members disagreed with the settlement, the required terms of the settlement per

Wolff, or any discussion whatsoever of the dispute between Advantage and Plan committee counsel.

5.     "Mr. Wolff understood that the Advantage objection required the signature of counsel." (Plan Committee Brief, p. 13). This is a false statement. Advantage, as a representative of the creditor body, had not filed an objection previously with the court and this issue had not arisen previously. Furthermore, the objection specifically requests an opportunity for an extension of time to replace Plan Committee counsel. Advantage intended for the new Plan Committee counsel to work in the best interests of the creditor body and to address Advantage's legitimate concerns with the purported settlement.

6.     "The Committee has paid Pillsbury $130,000 and Pillsbury has turned over to the Committee all of the assets and records described in the settlement agreement." (Plan Committee Brief, p. 15). This is a false statement and highlights exactly why Advantage was concerned about the settlement and broad release of Pillsbury and Potter. The fact remains that Pillsbury and Potter have not turned over the assets and records and have refused to cooperate with the current Plan Agent for the recovery of those records. In fact, there are trailers of missing documents that inexplicably disappeared under Potter's watch. To allow Pillsbury and Potter to hide behind the release and fail to fulfill the terms of the settlement is exactly the type of problem that Advantage is trying to alleviate through this appeal. "Mr. Wolff conceded in his e-mail transmittal of the Advantage objection to Pillsbury and Committee counsel that the objection was procedurally defective because it was not signed by counsel." (Plan Committee Brief, p. 20). This is false. The actual text of the e-mail transmission states: "Having prepared this filing myself without the assistance of counsel, I hope that any and all procedural defects will be excused and that all the substantive material, objections and requested action will be

considered fully and fairly by the Bankruptcy Court." (JA 1072). It is undisputed that Wolff

prepared Advantage's objection without counsel. What is also undisputed is that no recipient of

that e-mail informed Advantage of the need to have counsel sign the objection or even have the

courtesy of informing him that they were going to, or had, filed a Motion to Strike the pleading

accordingly. Mr. Wolff was stating that his arguments might not be in correct form, but he

wanted his overall objection heard and disclosed to the court. There simply was no admission.

**E.      Advantage and Mr. Wolff have Standing to Assert the Due Process Rights of the
         Creditors they Represent.**

The Plan Committee contends that Appellants lack standing to assert the due process

rights of other creditors. (Plan Committee Brief, p. 15). In support of its position, the Plan

Committee cites a recent opinion in which Judge Urbina held that if a plaintiff meets three

conditions, "the court may conclude that the plaintiff asserting another's rights has *jus tertii* or

'third party standing.'" *Reese Brothers, Inc. v. U.S. Postal Service*, 531 F.Supp. 2d 64, 67

(D.D.C. 2008).

The Plan Committee apparently concedes that the first condition, actual injury to the

litigant, is met, (Plan Committee Brief, p. 16), but asserts, without explanation, that neither the

second or third conditions are satisfied. It is, however, clear that Advantage and Mr. Wolff

satisfy both the second and third conditions. The second condition is that a plaintiff must have a

close relationship with the party whose rights he or she is asserting "thus giving him or her a

'sufficiently concrete interest' in the outcome of the issue in dispute" to ensure that the plaintiff

will be an effective advocate. *Reese Brothers, Inc. v. U.S. Postal Service*, 531 F.Supp. at 67. As

their representative on the Plan Committee, Advantage certainly has a close relationship with the

Debtor's creditors. It is equally certain that Advantage and Mr. Wolff have been fierce advocates

for the creditors both prior to and throughout the instant dispute.  In fact, Mr. Wolff has retained

counsel at his own expense to insure that Advantage and the other creditors are protected.

The third factor enunciated by Judge Urbina is that "there must exist some hindrance to

the third party's ability to protect his or her own interests."  *Id.*  Here, the hindrance is obvious in

that the creditors either received no notice, inadequate notice or untimely notice of the proposed

settlement.  In addition, it would have imposed an undue burden on the creditors and the

Bankruptcy Court if each creditor was required to retain counsel.  With hundreds of creditors,

individual appearances in the bankruptcy court would have created an unwieldy and untenable

situation.  Hence, Appellants have met each of the conditions required to exercise standing on

behalf of the creditors.

**F.    Throughout this Proceeding Appellants and the Other Creditors Were Deprived of Their Due Process Right to Notice.**

At the heart of this Appeal is the fact that at every stage of the settlement consideration

process, Appellants were deprived of the notice contemplated by the Bankruptcy Rules and,

consequently, were not afforded the opportunity to object to the approval of the proposed

settlement or to dispute the uncontroverted testimony of the other member of the Plan Committee

held in a sealed hearing.  Although this lack of notice was discussed in Appellant's Original

Brief, factual misstatements in the Plan Committee Brief, along with new information contained

in the Pillsbury Brief, necessitate the reexamination of the notice issue.

1.    Deficient Notice of the December 14, 2007 Hearing.  The Plan Committee

acknowledges that "the December 14 hearing was scheduled initially to consider the Emergency

Motions of Committee counsel to withdraw their appearance" (Plan Committee Brief, p. 18).

And, in fact, the Notice of Hearing ("Notice of December 14 Hearing") (BCD[1] 3337) stated that the Plan Committee had filed an Emergency Motion of Shulman, Rogers, Gandal, Porty & Ecker, P.A. for Immediate Withdrawal as Counsel to the Plan Committee (BCD 3333) and an Emergency Motion to Continue Trial Scheduled for January 8, 2008 and January 11, 2008 and to Extend all other Pretrial Deadlines (BCD 3335) (collectively, the "Emergency Motions").   The Notice of December 14 Hearing only recited that a hearing had been set on the Emergency Motions and warned recipients that if they did not attend the hearing, the Bankruptcy Court could deem any opposition waived and issue an order granting the requested relief.  (BCD 3337).

Despite the clear language of the Notice of December 14 Hearing, the Plan Committee proclaims that it should have come "as no surprise to Advantage that settlement of the fee dispute became a topic of the December 14 hearing" because the Emergency Motion to withdraw recited "that the Committee and Pillsbury had reached a settlement of the fee dispute."  (Plan Committee Brief, p. 18).  That assertion is horribly misleading.  Specifically, only two paragraphs of either Emergency Motion mention settlement.  Those paragraphs of the Motion to Withdraw, provide, in their entirety:

> 4.      On December 10, 2007, after a lengthy in-person meeting with Elliot R. Wolff and Stanley R. Zupnik (the members of the Plan Committee), Michael Lichtenstein contacted Potter and discussed settlement of all disputes pending before the Court among the parties.  SRGPE[2] agreed to prepare a draft settlement agreement and a motion to be filed pursuant to Federal Bankruptcy Rule 9019.  On December 11, 2007, Stephen Metz and Potter spoke to Ms. Sally Myers, Courtroom Deputy, and informed her that the parties had reached a settlement of all disputes, subject to documentation of such settlement, and that the parties anticipated filing a notice of such settlement and a motion pursuant to Federal Bankruptcy Rule 9019 to approve such settlement.

> 5.      As a result of the foregoing, the parties agreed that certain depositions scheduled for December 12-14, 2007 would not proceed as scheduled.

---

[1] Throughout this Brief, BCD refers to the Bankruptcy Court Docket for *In re the Greater Southeast Community Hospital Foundation, Inc., et al,* Case No. 00-1159.
[2] SRGPE refers to the law firm Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

On December 11, 2007, SRGPE sent a draft settlement agreement and motion to Potter.

It is immediately apparent, that every reference to settlement is equivocal. Mr. Lichtenstein contacted Potter "and *discussed* settlement." SRGPE agreed to "prepare a *draft* settlement agreement" Mr. Potter informed Ms. Myers that the parties had reached a settlement, "*subject to documentation*" and "*anticipated* filing a notice of such settlement." SRGPE sent a "*draft* settlement agreement and motion to Potter." (Settlement Agreement, p. 2, emphasis added). It can hardly be concluded that these paragraphs constitute a recitation that "the committee and Pillsbury had reached a settlement of the fee dispute" (Plan Committee Brief, p. 18). Furthermore, the request for relief asks only that the Bankruptcy Court "enter an order approving the immediate withdrawal of SRGPE." It would be entirely unreasonable to conclude that Advantage could have intuited that the hearing on the Emergency Motions would devolve into a hearing on the proposed settlement.

Finally, Mr. Potter's oral motion at the December 14, 2008 hearing was improper in light of the fact that approval of the settlement was not an emergency and there was more than enough time to prepare a written pleading. If, on December 11, 2007, Mr. Metz and Mr. Potter notified Ms. Myers that a settlement had been reached and that they anticipated filing a Rule 9019 notice and motion, there was ample time between that conversation and December 14, 2007 for them to prepare and file the documents. Of course, Appellees were well aware that Advantage and Mr. Wolff would object to the proposed settlement, (Transcript of December 14, 2007 Hearing, pp. 16, 19, BCD 3404 ), but by failing to file, serve and notice a Rule 9019 motion, Appellees insured that Appellants would have no opportunity to register their legitimate objections.

2.    <u>Deficient Notice of the Motion to Strike.</u>

The Plan Committee contends that the Bankruptcy Court properly struck Advantage's Objection. (Plan Committee Brief, p. 38). The Plan Committee ignores the fact that Advantage had no notice of the Motion to Strike. As detailed in the Pillsbury Brief, Advantage filed its objection to the proposed settlement (BCD 3346) on December 18, 2007, "and served it by e-mail on the Plan Committee and Pillsbury that same evening." (Pillsbury Brief, p. 6). Pillsbury then asserts that on December 20, 2007, it "emailed to Advantage its response and request to strike." (Pillsbury Brief, p. 17). However, the Motion to Strike (BCD 3348) contains no Certificate of Service.

Pursuant to Fed. R. Bankr. P. 9014(b), any paper served after the original motion in a contested matter, "shall be served in the manner provided by Fed. R. Civ. P. 5(b)." Fed. R. Civ. P. 5(d), provides for the filing of a certificate of service together with all papers filed after a complaint. In order to determine if a proper mailing was accomplished, courts may consider whether a letter was correctly addressed, whether proper postage was affixed and whether a proper certificate of service was filed. *See Fiala v. Lindemann (In re Lindemann)*, 2007 Bankr. LEXIS 4166, at *19-20 (N.D. Ill.). Although Pillsbury claims that the return e-mail receipt received from Advantage is evidence that the Motion to Strike was received by Advantage, the assertion is conclusively undermined by the evidence. The "receipt" is actually an auto reply from Elliot Wolff, which states "I am unable to access your email or any voicemail until I return to my office on January 7, 2008." (JA1115). Equally important, is the notation that the email was sent at 5:46 p.m. on December 20, 2007.

According to Pillsbury, the return e-mail was sent only a few seconds after the Motion to Strike was sent to Advantage. Because the Motion to Strike was granted at "approximately 8:00 a.m. on December 21, 2007," (Pillsbury Brief, p. 17), this means that Advantage, had it received

the Motion to Strike, would have had only 15, non-business, hours to obtain counsel and

respond.   Thus Pillsbury's claim that "Advantage had plenty of opportunity to obtain legal

counsel," (Pillsbury Brief, p. 22), is ridiculous.   Under these circumstances, the striking of

Advantage's opposition was a clear abuse of discretion.

      3.     <u>Deficient Notice of December 21, 2007 Hearing.</u>

      The Plan Committee concedes that the notice of the December 21, 2007 hearing was

"substantially less than the routine 20-day period specified in Rule 2002(a)(3)."  (Plan

Committee Brief, p. 19).   However, the Plan Committee opines that notice was sufficient because

"on December 19, 2007, Advantage filed a timely and thorough eight-page objection to the

settlement."   (Plan Committee Brief, p. 19).   This argument is without merit.   First, the Court did

not consider the Objection as it was stricken without any opportunity for Advantage to obtain

counsel.   Second, everyone involved (*i.e.*, the Court, counsel for the Plan Committee, and

Pillsbury) were aware that Wolff was out of the country on December 21, 2007 and could not

possibly attend the hearing.   Third, because the notice was so short, Advantage and Wolff should

not be penalized for rushing off on his own to attempt to put critical matters relevant to the

purported settlement before the Court.   Fourth, no other creditor had the time to file an objection

as demonstrated by the phone calls received instead.   Fifth, the actual notice of the agreement did

not make full and fair disclosure to the creditors. The only reason that Wolff had the ability to

file an objection rested with his personal knowledge, not on the actual notice that was mailed out

to creditors on December 17 or December 18 respectively.

      4.     <u>The Bankruptcy Court Erred Each Time it Reduced (or Eliminated) the Notice Periods.</u>

      While it is certainly true that pursuant to Fed. R. Bankr. P. 2002(a)(3), the Bankruptcy

Court may, for cause shown, reduce the notice period and while doing so may be discretionary,

such a reduction can only be for "cause shown." *Id.* Although the Plan Committee asserts that the cause need not be "expressly spelled out," there can be no argument that there must be a valid reason for reducing the notice period.

In this case only one reason has ever given for handling the proposed settlement on an expedited basis, which necessitated reducing all notice periods.[3] That reason was the imperative of executing the settlement (i.e., paying Pillsbury) by the end of the year. Certainly, the Plan Committee could not have been in a rush to pay Pillsbury $130,000. The requirement that payment take place by the end of the year is never explained in the pleadings or in open court and thus is either an entirely artificial deadline or nothing more than the desire of counsel for payment. There are no grounds for concluding that either of those scenarios constitute adequate cause for depriving Appellants and the other creditors of their right to notice and due process. Noticeably, this condition is not contained in the Settlement Agreement filed with the Bankruptcy Court on December 27, 2007 (BCD No. 3371).

It is also clear that Pillsbury wanted to foreclose any arguments by Mr. Wolff and Advantage. At the hearing on December 14, 2007, Mr. Potter told the Bankruptcy Court: "… I'm not going to spend a lot of time, effort and money arguing with Mr. Wolff about a settlement. That's what I don't want to do, Your Honor." (Transcript of December 14, 2007 Hearing, p. 17, BCD 3404). Mr. Potter's desire not to argue with Mr. Wolff hardly constitutes cause for reducing the notice period.

## G.    The Bankruptcy Court Erred when it Approved the Proposed Settlement

---

[3] The Plan Committee now says that there were three causes. The first was the settlement condition that the settlement amount should be paid by the end of the year. The second cause, that the settlement is "a simple resolution to a simple dispute," and the third "cause" that Advantage "had been intimately involved in the litigation and settlement," are after-the-fact rationalizations rather than causes. (Plan Committee Brief, p. 22).

As demonstrated in the Original Brief, the Bankruptcy Court erred when it approved the Settlement because it failed to employ the proper standards to evaluate the proposed agreement. (Original Brief, p. 19). In response, the Plan Committee, citing to the Tenth Circuit, acknowledges that a court should consider four factors in evaluating a settlement. A case in this district supplies the relevant factors: (1) The probability of success in litigation; (2) the difficulties, if any, to be encountered in collection; (3) the complexity of the litigation involved and the expense, inconvenience and delay of such litigation; and 4) the paramount interest of the creditors and proper deference to their reasonable views. *Gourdon v. Gouline,* 1995 U.S. Dist. LEXIS 20852, at * 8-9.

After listing similar factors, the Plan Committee undertakes a flawed analysis. Rather than addressing each factor, the Plan Committee simply concludes that the standard was met. First, the Plan Committee asserts that because the settlement involved a modest reduction in Pillsbury's fees and a portion of Pillsbury's work giving rise to the disputed fees was performed before the bankruptcy court, "the bankruptcy court was in a position to evaluate just how much of a discount of Pillsbury's fees the Committee might be achieve (sic) if the matter proceeded to trial." (Plan Committee Brief, p. 24). The Plan Committee fails, however, to acknowledge that a significant portion of the disputed fees were incurred in proceedings before Judge Mannes of the United States Bankruptcy Court for the District of Maryland rather than before Judge Teel, who approved the settlement.

Second, the Plan Committee claims that "the bankruptcy court was aware of how intensively the fee dispute had been litigated and how much that litigation must have been costing the Estates" and "was well positioned to evaluate whether further furious litigation over disputed fees was in the best interest of creditors and the estates." (Plan Committee Brief, pp 24-

25). This is irrelevant and false because the bankruptcy court did not evaluate whether continued litigation was in the best interests of creditors.

In sum, the Plan Committee is asking this Court to rule that the Bankruptcy Court must have given due consideration to the appropriate factors because it was "in a position to evaluate" the settlement amount, was "aware" of the intensity of the litigation and was "well positioned" to evaluate whether further litigation was in the best interest of creditors.  Simply put, the Plan Committee is stating that the Bankruptcy Court could have properly evaluated the Settlement, which is a far cry from demonstrating that it did so.  Of course the Bankruptcy Court did *not* properly evaluate the settlement because the essential facts were not before the court.  Those facts could only have been revealed through the testimony of Mr. Wolff, which was prevented and through Mr. Wolff's objection, which was stricken.  Appellants' attempts to educate the Bankruptcy Court were forestalled at every turn.  Therefore, the Bankruptcy Court could not have exercised its informed and independent judgment as to whether the proposed compromise was fair and equitable.  *See TMT Trailer Ferry Protective Committee v. Anderson*, 390 U.S. 414, 424-25 (1968).

**H.    The Plan Committee is Estopped from Arguing that the Bankruptcy Court had Subject Matter Jurisdiction over the Fee Dispute.**

Pillsbury instigated this dispute on August 3, 2007, when it filed a Motion to Approve Counsel's Resignation and Payment of Fees (BCD 3252) along with a Motion to Approve Plan Agent's Resignation and Payment of Fees (BCD 3251).   On September 5, 2007, the Plan Committee filed an Opposition (BCD 3265) in which it argued that the Bankruptcy Court lacked subject matter jurisdiction over this fee dispute.  The Plan Committee reiterated that position in a Memorandum dated October 15, 2007 (BCD 3288) and at a hearing on November 8, 2007.

(Transcript of November 8, 2007 Hearing, BCD 3395). The Bankruptcy Court rejected the Plan Committee's jurisdictional argument in an Order dated December 18, 2007 (BCD 3344).

In this appeal, the Plan Committee, for the first time, adopts the contrary position and argues that the Bankruptcy Court did in fact have subject matter jurisdiction over this fee dispute. (Plan Committee Brief, pp. 25-34). This change of heart, however, flies in the face of the doctrine of judicial estoppel, which is intended to "protect the integrity of the judicial process" by "prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-759 (2001) (internal citations omitted). According to the Supreme Court, the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle. *Id.* However, "several factors typically inform the decision whether to apply the doctrine to a particular case." *Id.*, at 750. Although the Court did not establish "inflexible prerequisites" for determining the applicability of judicial estoppel, it mentioned the following factors: (1) A party's later position must be clearly inconsistent with its earlier position; (2) Whether the party succeeded in persuading a court to accept that party's earlier position; (3) Whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.*, at 750-751.

In this case the first and third factors strongly suggest that judicial estoppel should be applied. It is beyond dispute that the Plan Committee's current position on subject matter jurisdiction is diametrically opposed to the previous position it forcefully advocated in the Bankruptcy Court. With regard to the third factor, it is clear that the Plan Committee, which is now an opponent of Advantage and Mr. Wolff, rather than a co-party, would obtain a distinct advantage by prevailing on the issue of subject matter jurisdiction. This is especially true

because the Pillsbury Brief only raises the question of subject matter jurisdiction as it applies to approval of the Settlement Agreement.

Although the second factor seems to suggest that judicial estoppel does not apply in this situation because the Plan Committee's argument did not prevail in the Bankruptcy Court, the unique circumstances of this case suggest otherwise. The Plan Committee argued that the Bankruptcy Court did not have subject matter jurisdiction, when the Plan Committee was representing both members of the Plan Committee. Now, however, the Plan Committee has become an adversary of Advantage and has changed its position on subject matter jurisdiction solely to gain a tactical advantage over Mr. Wolff and Advantage. It is precisely this type of advantage that the doctrine of judicial estoppel aims to prevent.

I.    **The Bankruptcy Court Erred by Allowing this Matter to Proceed as a Contested Matter Rather than as an Adversary Proceeding.**

In support of its Argument that the fee dispute properly proceeded as a contested matter rather than as an adversary proceeding, the Plan Committee asserts that (1) Appellants lack standing to assert that the fee dispute should have proceeded as an adversary proceeding; (2) Appellants waived the issue by failing to object below; and (3) permitting the fee dispute to proceed as a contested matter was harmless error. (Plan Committee Brief, pp 34-37). However, each of those arguments fails in light of the unique circumstances of this case.

First, Appellants have standing to make this argument. While it is technically true that the fee dispute was between the Plan Committee and Pillsbury, the fact is that Advantage constituted one-half of the Plan Committee. As long as the Plan Committee and its counsel were properly advocating on behalf of the entire Plan Committee, there was no conceivable reason for Appellants to seek leave to intervene or otherwise participate as parties to the proceeding. There

are no grounds for the suggestion that Appellants should (or could) have intervened in an action in which they were already parties.

The Plan Committee's second argument must also be rejected.  According to the  Plan Committee, Appellants waived any objection when they failed to raise the objection in the Bankruptcy Court.  As support, the Plan Committee relies on *Kontrick v. Ryan*, 540 U.S. 443, 459 (2004) for the proposition that "[a] procedural defense is waived under the Bankruptcy Rules, just as under the Federal Rules of Civil Procedure, if it is not raised in a motion or response to the initial pleading…" (Plan Committee Brief, p. 35).  However,  *Kontrick* actually provides: "Ordinarily, under the Bankruptcy Rules as under the Civil Rules, a defense is lost if it is not included in the answer or amended answer." *Id*.  Ironically, the actual holding of *Kontrick* does not apply here because Pillsbury filed the fee dispute as a contested matter rather than as an adversary proceeding so that no Complaint was filed and no Answer was required.   Rule 12 does not apply in contested matters.

The other cases cited by the Plan Committee are no more helpful to its cause.  The Court in *Doran v. Treiling (In re Treiling)*, 21 B.R. 940 (Bankr. E.D. N.Y. 1982) "overlooked the movant's failure to raise the issue by complaint, rather than by motion, as required by Bankr. Rule 7001(4)," where the debtor had not objected to the procedural defect.  *Accord, In re Szostek*, 93 B.R. 399, 403 (Bankr. E.D. Pa. 1998);  *In re Stern*, 70 B.R. 472, 473 (Bankr. E.D. Pa. 1987).  On the other hand, *In re Banks,* 94 B.R. 772 (Bankr. M.D. Fla. 1989), does not address the contested matter/adversary proceeding issue at all.

The Plan Committee's  argument, that contentions not raised in the bankruptcy court cannot be raised for the first time on appeal, is also inapplicable here because this issue was not raised for the first time on appeal.  On December 7, 2007, the Plan Committee itself filed a

Motion to Dismiss in which it argued that the fee dispute should be dismissed because it had been litigated as a contested matter rather than as an adversary matter. (BCD 3330). Therefore, the issue was presented to the Bankruptcy Court.

The Plan Committee's third and final argument on this point is that allowing the fee dispute to proceed as a contested matter was harmless error. This is also inaccurate. Because Pillsbury filed the fee dispute as a contested matter rather than as an adversary proceeding, the respondents to the motion (including Advantage, as a member of the Plan Committee), were immediately deprived of the right to file an Answer, in which they could have asserted all of their affirmative defenses. In addition, Advantage and the other respondents were deprived of the right to a trial by jury as guaranteed by U.S. Const. amend. VII. Although the case never proceeded to the trial stage, the possibility of a jury trial could have had a significant impact on settlement negotiations.

## II.     CONCLUSION

In addition to the relief requested in their Original Brief, Appellants request that the Court, as part of the Order on Remand, instruct the Bankruptcy Court to appoint a special master to determine the facts of the case. Appellants did not request this relief in their Original Brief because they were unaware that there was such disagreement over the pertinent facts.

Dated:  May 8,  2008                    Respectfully submitted,


                                        /s/ Janet M. Nesse
                                        Janet M. Nesse, Bar No. 358514
                                        Lawrence P. Block, Bar No. 452190
                                        Stinson Morrison Hecker LLP
                                        1150 18th St., NW, Suite 800
                                        Washington, DC 20036
                                        Telephone: (202) 785-9100
                                        Fax:  (202) 785-9163
                                        *Counsel for Appellants, Advantage Healthplan Inc.*
                                        *and Elliot Wolff*