UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADVANTAGE HEALTHPLAN, INC.,

    Appellant,

    v.

PATRICK J. POTTER, *et al.*,

    Appellees.

Civil Action No. 08–166 (CKK)
**REDACTED VERSION**

**MEMORANDUM OPINION**
(July 14, 2008)

    The bankruptcy case underlying the above-captioned appeal involves a Plan of

Reorganization (the "Plan") approved by the United States Bankruptcy Court for the District of

Columbia ("Bankruptcy Court") in *In re The Greater Southeast Community Hospital*

*Foundation, Inc., et al.*, Case No. 99-01159.  Appellant Advantage Healthplan, Inc.

("Advantage") is one of the two current members of the Plan Committee established by the Plan.

This appeal is also purportedly brought by Elliot R. Wolff, President of Advantage and

Advantage's corporate representative on the Plan Committee.  However, appellees contest Mr.

Wolff's standing on appeal.  Appellees in this action are the Plan Committee itself, the Plan

Committee's former counsel, Pillsbury Winthrop Shaw Pittman LLP, and Patrick J. Potter, a

partner at the Pillsbury law firm who formerly served as Plan Agent pursuant to the Plan

(collectively, with the Pillsbury law firm, "Pillsbury").  During the course of the underlying

bankruptcy proceeding, a fee dispute arose between the Plan Committee and Pillsbury.  On

December 21, 2007, the Bankruptcy Court entered an Order approving a settlement of the fee

dispute (hereinafter "Settlement Approval Order").  Advantage appeals both the Settlement

Approval Order and a previous Order, signed by the Bankruptcy Court on December 20, 2007 and entered on the Bankruptcy Court docket on December 21, 2007, which struck an Objection to the proposed settlement filed by Mr. Wolff on behalf of Advantage (hereinafter "Striking Order").

Currently pending before this Court are a number of initial motions, filed before the parties filed their appellate briefs, as well as the actual appeal. The initial motions include: (1) Pillsbury's [5] Motion for Summary Affirmance of the Striking Order, which is joined by the Plan Committee, *see* Docket No. [17]; (2) Pillsbury's [13] Motion to Strike Elliot Wolff As Appellant, also joined by the Plan Committee, *see* Docket No. [16]; (3) and Pillsbury's [22] Motion to Suspend Briefing on Advantage's appeal pending resolution of the initial motions. The Court has conducted a searching review of the parties' various filings, the voluminous record of the Bankruptcy Court proceedings before the Court on appeal, and the relevant statutes and case law. Based upon the foregoing, the Court shall GRANT [5/17] Appellees' Motions for Summary Affirmance of the Striking Order and shall AFFIRM the Striking Order. In addition, the Court shall GRANT [6/16] Appellees' Motions to Strike Elliot Wolff as Appellant, finding that Mr. Wolff lacks standing to appeal the Bankruptcy Court's Orders. As the parties have already completed briefing on Advantage's appeal, the Court shall DENY AS MOOT Pillsbury's [22] Motion to Suspend Briefing, and shall DENY [33] Advantage's Motion for Oral Argument, concluding that the issues presented in this appeal may be resolved on the extensive briefing filed by all parties. Finally, the Court shall AFFIRM the Settlement Approval Order, and shall DISMISS this appeal in its entirety.

## I. BACKGROUND

The following facts are relevant to all of the initial motions the Court resolves in this

Memorandum Opinion, as well as to Advantage's appeal.

    A.      *Nature of the Bankruptcy Case, Plan, and Confirmation Order*

As noted above, this appeal arises from the jointly administered bankruptcy case of the

Greater Southeast Community Hospital Foundation, Inc. ("GSCHF") and three GSCHF affiliates

(collectively, "Debtors").  Brief of Appellee The Plan Committee (hereinafter "Plan Comm. App.

Br.") at 2.  The Debtors filed petitions for relief under Chapter 11 of the United States

Bankruptcy Code in the Bankruptcy Court in 1999.  *Id.*; Brief of Appellants (hereinafter

"Appellant's Br.") at 5.  On October 23, 2001, the Bankruptcy Court entered an order (the

"Confirmation Order") confirming the Debtors' Second Amended Joint Plan (the "Plan").  Joint

Appendix ("JA") at 29-87, 88-129.[1]

The Plan created the Plan Committee, as well as a Plan Agent, to take control of the

assets of the Debtors' bankruptcy estates, including the Debtors' causes of action against third

parties.  *Id.*; Plan Comm. App. Br. at 2, 6.[2]  The Plan Committee was originally comprised of

three members: a bondholder representative (Eaton Vance), Advantage (with Mr. Wolff serving

---

[1] Citations to the Joint Appendix ("JA") are to the four-volume joint appendix that Appellees filed in connection with their appellate briefs.

[2] Appellees both note that the Confirmation Order provided that following the Effective Date of the Plan, notice and service of all subsequent pleadings and papers in the bankruptcy case would be limited to specific parties, including "any party requesting notice by delivering a copy of such request to counsel to the Plan Committee."  Pillsbury App. Br. at 8 (citing Conf. Order, JA 116-17); Plan Comm. App. Br. at 6.  In addition, as Pillsbury acknowledges, the Confirmation Order provided that notice and service of pleadings would be provided to "any party affected by the relief sought.  Pillsbury App. Br. at 8 (citing Conf. Order, JA 116-17).

as corporate representative), and Welcome Home Inc. (with Stanley Zupnik serving as corporate

representative).  Pillsbury's Appellee Brief at 7 (citing JA 551, 1044); Appellant's Br. at 5-6.

Eaton Vance resigned from the Plan Committee in June of 2007, leaving Advantage and

Welcome Home as the members of the Plan Committee.  Plan Comm. App. Br. at 6, Pillsbury

App. Br. at 7; Appellant's Br. at 6.  The Plan also provided for the appointment of a Plan Agent.

Appellant's Br. at 6.  Patrick J. Potter assumed the role of Plan Agent on March 31, 2006, and

following Potter's appointment as Plan Agent, the Pillsbury law firm served as counsel to the

Plan Agent and the Plan Committee.  *Id.*

>    B.    *The PricewaterhouseCoopers Litigation*

In 2002, pursuant to its powers and duties under the Plan, the Plan Committee filed suit

against PricewaterhouseCoopers, LLP ("PwC") in the United States District Court for the District

of Columbia, seeking damages based upon PwC's alleged pre-bankruptcy petition accounting

malpractice.  Plan Comm. App. Br. at 6; Pillsbury App. Br. at 8.  That case is still pending and

has not advanced past the pleading stage.  *See The Plan Committee v. PricewaterhouseCoopers,*

*LLP*, 365 B.R. 234 (D.D.C. 2005) and *The Plan Committee v. PricewaterhouseCoopers, LLP*,

Civil Action No. 02-1487, 2007 WL 1191917 (D.D.C. Apr. 20, 2007).[3]  In May 2007, the Plan

Committee asked Pillsbury, which did not represent the Plan Committee in connection with the

---

[3] On January 30, 2008, Pillsbury filed a Notice of Designation of Related Case in this appeal, advising the Court that it was related to *The Plan Committee v. PricewaterhouseCoopers, LLP*, Civil Action No. 02-1487.  *See* Docket No. [2].  Advantage responded by filing an Objection to Designation of Related Civil Cases on February 20, 2008, in which it argued that the two cases are not "related" for purposes of Local Civil Rule 40.5.  *See* Docket No. [9].  The Court's review of the two cases suggests that they are not, in fact, related under the Local Rule, but any relation between the two cases is ultimately irrelevant because Pillsbury's Response to Advantage's Objection "provides . . . an unequivocal statement that Pillsbury is not asking for the case to be reassigned."  Docket No. [12] at 1.

PwC litigation, for assistance in remedying certain defects identified in the Plan Committee's complaints in that litigation. Plan Comm. App. Br. at 7; Pillsbury App. Br. at 9. In particular, Pillsbury sought and obtained a Bankruptcy Court Order clarifying the authority of the Plan Committee to pursue the PwC complaint. Plan Comm. App. Br. at 7; Pillsbury App. Br. at 9; JA 551-53.

       C.      *The Fee Dispute Litigation and Settlement*

A fee dispute subsequently arose between the Plan Committee and Pillsbury over Pillsbury's requested payment of $137,000 in legal fees and costs. Plan Comm. App. Br. at 7; Pillsbury App. Br. at 9; JA 267-75. On August 3, 2007, Pillsbury commenced a contested matter with the Bankruptcy Court by filing motions within the bankruptcy case seeking Plan Committee payment of the requested fees, as well as authority for Pillsbury and Potter to resign as Plan Committee counsel and Plan Agent, respectively. Plan Comm. App. Br. at 7; Pillsbury App. Br. at 9; Appellant's Br. at 6; JA 267-75. Thereafter, the Plan Committee terminated the services of Pillsbury and Potter, leaving the fee dispute as the sole issue. Plan Comm. App. Br. at 7; Appellant's Br. at 6. Between August and December 2007, the Plan Committee and Pillsbury conducted extensive litigation over the fee dispute before the Bankruptcy Court. Plan Comm. App. Br. at 8; Pillsbury App. Br. at 9. That litigation included significant discovery and multiple rounds of briefing and hearings on whether the Bankruptcy Court had jurisdiction to try the fee dispute. Pillsbury App. Br. at 9-10; Plan Comm. App. Br at 8. On November 15, 2007, Bankruptcy Judge S. Martin Teel, Jr. issued an Order setting forth his decision (made during a November 8, 2007 hearing) that the Bankruptcy Court had subject matter jurisdiction to try the fee dispute. JA 323-64, 365. The fee dispute litigation before the Bankruptcy Court also

included a motion for summary judgment by Pillsbury and an initial hearing on that motion. Pillsbury App. Br. at 10.  The fee dispute was scheduled for trial before Bankruptcy Judge Teel on January 8, 2008.  *Id.*; JA 1051.

The evidence proffered by Pillsbury demonstrates that in late November 2007, the Plan Committee approached Pillsbury regarding settling the fee dispute and, on November 29, 2007, Mr. Zupnik–acting on behalf of the Plan Committee–offered to pay Pillsbury $100,000 in settlement of the fee dispute.  JA 964-65 (11/30/07 e-mail from P. Potter to counsel for Plan Committee confirming Mr. Zupnik's authority; 11/30/07 e-mail from Plan Committee counsel, copied to Mr. Wolff, Mr. Zupnik and Mr. Potter, confirming Mr. Zupnik's "authoriz[ation] by the Plan Committee to discuss a resolution of the fee dispute between the Plan Committee and [Pillsbury]"; 12/2/07 e-mail from Plan Committee counsel, copied to Mr. Wolff, Mr. Zupnik and Mr. Potter, advising that Mr. Zupnik had "specific authority from the Plan Committee to resolve the dispute.  If the proposal is beyond that authority, he will need to obtain further authority from the Committee").  Pillsbury declined that offer, and according to both Pillsbury and the Plan Committee, on December 10, 2007, Plan Committee counsel telephoned Pillsbury and proposed a payment of $130,000.  Pillsbury App. Br. at 11; Plan Comm. App. Br. at 8; JA 995 (Tr. of 12/14/07 Hrg. at 5).  Pillsbury and the Plan Committee maintain that Pillsbury accepted, subject to standard mutual release language, and that Plan Committee counsel responded by accepting Pillsbury's condition.  Pillsbury App. Br. at 11; Plan Comm. App. Br. at 8; JA 995.  Plan Committee counsel subsequently prepared a draft settlement agreement, to which Pillsbury made non-substantive edits.  Pillsbury App. Br. at 11; Plan Comm. App. Br. at 8; JA 995-97 (12/14/07 Hrg. Tr. at 5-7).

For its part, Advantage asserts that counsel for the Plan Committee spoke with Pillsbury about a potential settlement during the first week of December 2007, but that "Advantage never consented to settlement on the terms set forth" in the Settlement Agreement ultimately approved by the Bankruptcy Court. Appellant's Br. at 6-7. On December 13, 2007, Plan Committee counsel filed two emergency motions to withdraw as counsel for the Plan Committee, and to continue the January 8, 2008 trial on the fee dispute as a result. JA 975-88. Plan Committee counsel's motion stated that:

> 4.     On December 10, 2007, after a lengthy in-person meeting with Elliot R. Wolff and Stanley R. Zupnik, [Plan Committee counsel] contacted [Mr.] Potter and discussed settlement of all disputes pending before the [Bankruptcy] Court among the parties. [Plan Committee counsel] agreed to prepare a draft settlement agreement and a motion to be filed pursuant to Federal Bankruptcy Rule 9019. On December 11, 2007, [Plan Committee counsel and Mr.] Potter spoke with [the Bankruptcy Court Courtroom Deputy] and informed her that the parties had reached a settlement of all disputes, subject to documentation of such settlement, and that the parties anticipated filing a notice of such settlement and a motion pursuant to Federal Bankruptcy Rule 9019 to approve such settlement.
>
> 5.     As a result of the foregoing, the parties agreed that certain depositions scheduled for December 12-14, 2007 would not proceed as scheduled. On December 11, 2007, [Plan Committee counsel] sent a draft settlement agreement and motion to [Mr.] Potter.
>
> 6.     Subsequent to the December 11th call with [the Courtroom Deputy] and the sending of drafts to [Mr.] Potter on December 11, 2007, a conflict arose between [Plan Committee counsel] and the Plan Committee.

JA 983. Plan Committee counsel's motion, "[c]onsistent with its duty of confidentiality and the attorney-client privilege," did not disclose the nature of the conflict, but stated that the purported conflict had "irreparably damaged" the attorney-client relationship. *Id.* 983-84. A hearing on Plan Committee counsel's emergency motions was scheduled for December 14, 2007.

On December 13, 2007, Mr. Wolff sent a letter to the Bankruptcy Court, which he copied

to Mr. Zupnik, informing the Bankruptcy Court that he would be unable to attend the December

14, 2007 hearing "because of an essential commitment made four months ago," and further

advising that Advantage supported "both motions of former Plan Committee legal counsel . . . as

well as [the Plan Committee's Motion to Dismiss Pillsbury's fee request motions]."  JA 989.

Mr. Wolff's letter also informed the Bankruptcy Court that

> If the [Pillsbury] litigation is not dismissed, Advantage hopes that your final
> scheduling order will recognize the factors and corresponding time necessary to
> select a successor legal counsel by the Plan Committee, as well as the Holiday
> vacation plans of both representatives of the Plan Committee.  My family will be
> on vacation outside the United States from December 19 through January 5.

*Id.*

###### D.     *The December 14, 2007 Bankruptcy Court Hearing*

On Friday, December 14, 2007, the Bankruptcy Court held its scheduled hearing on Plan

Committee counsel's emergency motions.  JA 991-1030.  The participants in the hearing were

Plan Committee Counsel, Mr. Potter, and Mr. Zupnik.  *Id.*  At the outset of the hearing,

Bankruptcy Judge Teel quickly identified that addressing Plan Committee counsel's motion to

withdraw necessitated a discussion of the purported conflict that gave rise to the motion.

Pillsbury App. Br. at 11-12; Plan Comm. App. Br. at 9; JA at 993.  Bankruptcy Judge Teel then

continued, on the public record, to examine Plan Committee counsel and Mr. Potter as to

whether a settlement had been reached, with both indicating their belief that a settlement had

been agreed to on all essential terms.  JA at 993-1001.  During that discussion, Plan Committee

counsel communicated to Bankruptcy Judge Teel that Mr. Zupnik (president of Plan Committee

member Welcome Home) wished to address the Bankruptcy Court.  *Id.* at 1000.  In light of

concerns regarding the attorney-client privilege applicable to nature the purported conflict

between Plan Committee counsel and the Plan Committee, as well as concerns regarding the

potential use of the fee dispute settlement discussions in the PwC litigation, Bankruptcy Judge

Teel swore Mr. Zupnik in as a witness and accepted his testimony under seal.  Pillsbury App. Br.

at 12.   This Court has thoroughly reviewed the transcript of the sealed portion of the December

14, 2007 hearing.  JA 1016-30. [4]

_____

[4] **REDACTED DISCUSSION OF SEALED PORTION OF DECEMBER 14, 2007 BANKRUPTCY COURT HEARING**

After receiving Mr. Zupnik's testimony, the Bankruptcy Court hearing returned to the

public record, and Plan Committee counsel–with the approval of Mr. Zupnik–made an oral

motion to enforce the settlement agreement.  JA 1004:14-17.  Bankruptcy Judge Teel made clear

that he was *not* approving the actual settlement during the December 14, 2007 hearing "because

somebody might object to it," but instructed Plan Committee counsel and Mr. Potter to prepare

and file a notice of the settlement and a motion for its approval pursuant to Federal Rule of

Bankruptcy Procedure 9019.  JA 1005:15-19.  Bankruptcy Judge Teel specifically explained:

> What's going through my mind is that Mr. Wolf[f] is not here . . . Mr. Zupnik's
> here, communicating his version of what happened and that it's not that Mr.
> Wolf[f] says, 'This isn't what we agreed to,' it's that Mr. Wolf[f] wants to come
> back and ask for different terms.
>
> Of course, if that's accurate then there's no harm in saying go ahead and notice up
> the settlement and, at least on this evidence, I find there was an agreement to file
> the settlement with the Court and notice it up to creditors for any possible
> objections.

JA 1008:20-1009:8.  In addition, Plan Committee counsel acknowledged that he was not sure

whether Mr. Wolff would sign the eventual settlement agreement, but that the Bankruptcy Court

could "approve the settlement and it's an enforceable settlement or not.  Whether or not Mr.

Wolf[f] signs it."  JA 1006:14-18.

At the end of the December 14, 2007 hearing, Bankruptcy Judge Teel instructed Plan

Committee counsel and Mr. Potter to:

_____

Prepare an order that says that the emergency motion to withdraw as attorney to the Plan Committee . . . was heard today.  The Court heard evidence establishing that a settlement was reached between the Plan Committee and [Pillsbury] and Mr. Potter that contained all of the necessary terms for an enforceable settlement, and there is no evidence that the Plan Committee has, by formal vote, reached a decision that the settlement ought [to] be receded or . . . to take the position that the papers evidencing the settlement do not accurately reflect the settlement.

The evidence is that the papers do accurately reflect the settlement.

There is, further, no evidence that the Plan Committee has formally decided to instruct the Plan Committee's law firm not to proceed with implementation of the settlement.

The evidence is, further, that a reasonable time has elapsed for the Plan Committee to communicate its views regarding the settlement papers and that [Plan Committee counsel] should be free to proceed to implement the settlement based on the expiration of that reasonable period of time.

Because the settlement, if approved, will resolve this controversy, and because there is no conflict between the Plan Committee and its law firm that has been established that would arise from approval of the settlement, there is no reason at this juncture to permit the law firm to withdraw from representing the Plan Committee.  In the event that the settlement agreement is not approved, the Court will address the emergency motion to withdraw at that juncture.

There being no evidence that the papers that the parties' attorneys have drafted regarding the proposed settlement [are] inconsistent with the settlement, either party is authorized to proceed to file the proposed settlement with the Court along with the motion contemplated by the terms of the settlement that would seek approval of the settlement by the Court.

JA 1010:12-10:12:1.

Finally, Bankruptcy Judge Teel agreed to schedule a hearing on the approval of the settlement for Friday, December 21, 2007, and fixed the deadline for filing objections at 5:00 p.m. on Wednesday, December 19, 2007, based on Mr. Potter's assertion that notice would be sent out "today," i.e., on Friday, December 14, 2007.  JA 1012:23-1013:1.

E.       *Notices Sent Between the December 14 and December 21, 2007 Hearings*

Following the December 14, 2007 hearing, Pillsbury electronically filed with the

Bankruptcy Court a Notice of Hearing and Objection Deadline for the December 21 hearing

(hereinafter "December 14 Notice").  JA 1033-34.  The December 14 Notice stated, *inter alia*:

(1) that the Bankruptcy Court conducted a hearing on Friday, December 14, 2007; (2) that

Pillsbury anticipated an order being entered regarding that hearing on December 17, 2007, which

would "include various findings and conclusions that the Plan Committee and [Pillsbury] have

agreed upon all the material terms necessary to reach a settlement of the [fee dispute];" (3) that a

hearing on the actual terms of the settlement would occur on Friday, December 21, 2007 at 10:30

a.m.; (4) that a motion and papers fully describing the details of the settlement terms would be

filed and served on Monday, December 17, 2007; (5) that "[c]reditors and parties in interest with

inquiries regarding the Settlement Terms may, at any time, contact [Pillsbury] in writing for a

general description of the Settlement;" and (6) that "<u>Objections, if any, to the Settlement Terms</u>

<u>shall be filed and received by [Pillsbury and Plan Committee counsel] no later than</u> **<u>5:00 p.m. on</u>**

**<u>Wednesday, December 19, 2007.</u>**  <u>Failure to comply may result in the Court entering an order</u>

<u>approving the Settlement Terms, with [or] without a hearing on December 21, 2007.</u>

<u>Furthermore, [Pillsbury] will request that the Court disregard and overrule the objections of any</u>

<u>objectors who fail to attend the December 21, 2007 hearing with testimony/evidence to support</u>

<u>their objections.</u>"  *Id.* (emphasis in original).  Advantage notes, correctly, that the December 14

Notice did not include the actual terms of the settlement.  Appellant's Br. at 9.

The December 14 Notice was automatically served on the approximately 50 individuals

and entities who had requested receipt of such notices via the Bankruptcy Court's ECF system.

JA 17.  In addition, at 6:40 p.m. on December 14, 2007, Pillsbury sent Mr. Wolff, as Advantage's corporate representative on the Plan Committee, a copy of the December 14 Notice via e-mail. JA 1032.

As planned, Plan Committee counsel prepared a proposed order reflecting Bankruptcy Judge Teel's instructions during the December 14, 2007 hearing, and filed that proposed order electronically on Sunday, December 16, 2007.  JA 1035-39.  Again, that proposed order was served via the Bankruptcy Court's ECF system on those individuals and entities that had requested such notice, JA 17, and the Plan Committee sent a copy of the proposed order, via e-mail, to Mr. Wolff as corporate representative of Advantage at 5:34 p.m. on December 16, 2007. JA 1035.  On Tuesday, December 18, 2007, the Bankruptcy Court entered the order (the "December 18 Order"), finding and determining that the evidence presented at the December 14, 2007 hearing established that "a settlement was reached among the Plan Committee [and Pillsbury], and that such settlement included all of the necessary terms for an enforceable settlement agreement."  JA 1068-71.  The December 18 Order also reiterated that a hearing would be held on the motion to approve the settlement pursuant to Federal Rule of Bankruptcy Procedure 9019 on December 21, 2007 at 10:30 a.m. and that objections to the approval of the settlement had to be filed by 5:00 p.m. on Wednesday, October 19, 2007.  JA 1071.

On Monday, December 17, 2007, the Plan Committee filed a consent motion seeking court approval of the fee dispute settlement between the Plan Committee and Pillsbury (the "Settlement Approval Motion").  JA 17-18, 1040-67.  As with the previous two filings, the Settlement Approval Motion and accompanying notice ("December 17 Notice") of the scheduled settlement approval hearing were served through the Bankruptcy Court's ECF system on those

entities and individuals who had requested such notice, JA 17-18, and Plan Committee counsel

sent an electronic copy, via e-mail, to Mr. Wolff as corporate representative of Advantage at 3:29

p.m. on December 17, 2007.  JA 1040.  In addition, Plan Committee counsel served copies of the

December 17 Notice on approximately 760 creditors of the Debtors by mail on December 17,

2007, and served copies of the December 17 Notice on another approximately 778 creditors of

the Debtors by mail on December 18, 2007.  Plan Comm. App. Br. at 12; JA 1084-1108Q.  The

December 17 Notice described in detail the history of the fee dispute litigation and the respective

positions of the Plan Committee and Pillsbury in that litigation, summarized the terms of the

settlement agreement, and advised parties in interest receiving the Notice that they could contact

Plan Committee counsel or Pillsbury to request copies of the full Settlement Approval Motion.

JA 1041-42.

The Settlement Approval Motion described the fee dispute litigation in great detail,

including the positions of the parties and the various motions heard and orders entered by the

Bankruptcy Court.  JA 1043-65.  The Settlement Approval Motion also quoted extensively from

the Settlement Agreement itself, setting forth its material terms, and explained the Plan

Committee's reasons for settlement.  JA 1043-65.  Specifically, the Settlement Approval Motion

recited that the Plan Committee considered that: (1) the Bankruptcy Court might not cut

Pillsbury's bills by more than what it would cost the Plan Committee to litigate the matter; (2)

the Bankruptcy Court could enter summary judgment in favor of Pillsbury or make other legal

rulings detrimental to the Plan Committee; (3) the Plan Committee would incur substantial

expenses in the form of attorney's fees and costs in preparing for and conducting the trial; (4) the

Bankruptcy Court could award to Pillsbury its fees incurred in the settlement dispute litigation;

and (5) the mutual releases included in the Settlement Agreement would allow the Plan

Committee to focus its efforts on generating assets and claims of value for the creditors.  JA

1054-55.  The Settlement Approval Motion also explained why the Plan Committee and

Pillsbury believed the settlement met the legal standards for court approval of a settlement.  JA

1053-55.   Finally, the Settlement Approval Motion included an unexecuted version of the

Settlement Agreement as Exhibit 1, and noted that the parties would file with the Court an

executed version of the Settlement Agreement, which they expected to be in substantially the

same form as the unexecuted agreement.  JA 1043 n.1.  As discussed below, Advantage

attempted to object to the settlement; however, no other creditor filed an objection, timely or

otherwise, to the Bankruptcy Court's approval of the settlement.  Plan Comm. App. Br. at 13;

Pillsbury App. Br. at 16.

> F.    *Advantage's Objection to Bankruptcy Court Approval of the Settlement and the*
>       *Striking Order*

At 11:41 p.m. on December 18, 2007, Mr. Wolff, on behalf of Advantage, served a copy

of Advantage's Objection via e-mail on Plan Committee counsel, Mr. Zupnik, and Pillsbury.  JA

1072.  Advantage's Objection was filed on the Bankruptcy Court docket on December 19, 2007.

JA 18.  Advantage's eight-page Objection described the history of the fee dispute and argued (a)

that Advantage never agreed to the settlement such that no one had been authorized to submit the

settlement offer to Pillsbury, JA 1077-79, and (b) that if the settlement was authorized by the

Plan Committee, the December 14 and December 17 Notices did not "make full and fair

disclosure" to creditors, JA 1079.  Advantage requested that the Bankruptcy Court: (1) continue

the December 21, 2007 hearing until at least January 17, 2008 "to give sufficient time for

consideration of the adequacy of the notice and time for informed decision making by the

Unsecured Creditors;" (2) hold a re-hearing after January 17, 2008 on the Bankruptcy Court's

December 18 Order finding that a settlement existed between Pillsbury and the Plan Committee;

(3) approve the withdrawal of Plan Committee counsel; and (4) not schedule the hearings

Advantage requested until after the Plan Committee had been able to retain new counsel.  JA

1080.  Advantage's Objection did not, however, describe any attempts on the part of Advantage

to hire an attorney or request that any matters be continued in order to allow Advantage to do so.

JA 1072-80.

 Advantage's Objection was signed by Mr. Wolff as President of Advantage.  JA 1080.

Mr. Wolff is not a licensed attorney authorized to practice before the United States Bankruptcy

Court for the District of Columbia.  JA 1111, 1116.  In fact, in his e-mail serving a copy of

Advantage's Objections on Plan Committee counsel, Mr. Zupnik, and Pillsbury, Mr. Wolff

specifically noted, "[h]aving prepared this filing myself without the assistance of counsel, I hope

that any and all procedural defects will be excused and that all the substantive material,

objections and requested action will be considered fully and fairly by the Bankruptcy Court."  JA

1072.  On December 20, 2007, Pillsbury filed a Response and Motion to Strike Advantage's

Objection, arguing that Advantage's Objection should be stricken because Advantage is a

corporation and, as such, only permitted to appear before the Bankruptcy Court through counsel.

JA 1110-14.  Pillsbury also opposed any delay in the Bankruptcy Court's consideration of the

approval of the settlement because a "critical element of the bargain is that closing occur and

[Pillsbury] be paid on or before December 31, 2007."  JA 1110.  While Advantage asserts that

"Pillsbury never served the Response and Motion to Strike on Advantage or Mr. Wolff,"

Appellant's Br. at 10, that statement is belied by the documentary evidence in Appellees' Joint

Appendix, which shows that Pillsbury e-mailed an electronic copy of its Response and Motion to

Strike to Mr. Wolff at 5:45 p.m. on Thursday, December 20, 2007, JA 1109, and received a

responsive e-mail from Mr. Wolff a minute later stating that he was unable to access e-mail until

he returned to his office on January 7, 2008, JA 1115.[5]

On the morning of December 21, 2007, the Bankruptcy Court entered the Striking Order,

denying Advantage's requests to reconsider the December 18 Order and to reschedule the

December 21, 2007 hearing, and striking Advantage's Objection "in its entirety because it was

not filed by a licensed attorney authorized to practice before the Court."  JA 1116.

    G.     *Bankruptcy Court Approval of the Settlement*

As scheduled (and noticed in the December 14 and December 17 Notices and December

18 Order), the Bankruptcy Court held a hearing on the Settlement Approval Motion at 10:30 a.m.

on December 21, 2007.  JA 1118-24.  Neither Mr. Wolff nor any other representative (attorney or

otherwise) of Advantage appeared at the hearing, which was attended by Plan Committee counsel

and Pillsbury.  *Id.*  During the hearing, Plan Committee counsel stated:

> As Your Honor knows, there was only one objection that was filed.  That has been
> stricken, so essentially there are no objections to that motion. [Plan Committee

---

[5] In its Reply briefs, Advantage argues that Pillsbury's service of its Response and Motion to Strike was nevertheless deficient because the Motion to Strike did not contain a certificate of service, as required by Federal Rule of Civil Procedure 5(b), incorporated in Federal Rule of Bankruptcy Procedure 9014(b).  Reply to Pillsbury Br. at 5-6; Reply to Plan Comm. Br. at 12. While Advantage is correct that Rule 5(b) provides for the filing of a certificate of service with all papers filed after a complaint, Pillsbury's failure to file a certificate of service does not demonstrate that Pillsbury did not, actually, serve Mr. Wolff with a copy of its Response and Motion to Strike via e-mail.  Instead, as discussed above, the documentary evidence is that Pillsbury did so, but that Mr. Wolff may not have seen the Response and Motion to Strike on December 20, 2007 because he was out of the country.

counsel] did receive several phone calls from creditors [and] explained to them what was going on and, having heard that explanation, none of them have filed any objections.[6]

JA 1120:9-14.  Plan Committee counsel also referred Bankruptcy Judge Teel to the Settlement

Approval Motion and its "extensive recitals as to both the Plan Committee's position and

[Pillsbury's] position and the reasons as to why this settlement is both reasonable, in the best

interests of creditors, and was entered into in good faith."  JA 1120:15-19.  In response,

Bankruptcy Judge Teel stated, "I'll approve the settlement agreement.  The evidence at the last

hearing satisfies the Court that this was negotiated in good faith and that it's in the best interests

of the creditors to approve the settlement.  The motion is granted."  JA 1120:25-1121:4.  Later

that day, the Bankruptcy Court entered an Order (the "Settlement Approval Order") approving

the settlement between the Plan Committee and Pillsbury.  JA 1125-26.  The Settlement

Approval Order specifically stated that it was entered upon (1) consideration of the Settlement

Approval Motion; (2) a finding that "due and sufficient notice of the Motion was provided and

that no further notice is necessary;" (3) the Bankruptcy Court's due deliberation; (4) the

Bankruptcy Court's finding that the terms of the Settlement Agreement (which the Bankruptcy

Court noted was attached to the Settlement Approval Motion) "were entered into in good faith,

are fair and equitable and are in the best interests of the estates, and the creditors;" and (5) the

Bankruptcy Court's finding "that there is sufficient cause for the relief requested by the Motion."

---

[6] In its Appellant Brief, Advantage asserts that creditors who "responded orally" to the December 17 Notice "were dissuaded from participating."  Appellant Br. 17.  Advantage offers absolutely no support for this pure speculation, and the Court therefore will not credit it.  Indeed, to the contrary, as the Court noted above, both the December 14 and December 17 Notices encouraged parties in interests with questions to contact Pillsbury and/or Plan Committee counsel for additional information.  JA 1034, 1041.

18

*Id.*

A copy of the executed Settlement Agreement was filed with the Bankruptcy Court on December 27, 2007.  JA 21.  Mr. Wolff's signature does not appear on the executed Settlement Agreement.  Bankruptcy Ct. Docket No. [3371].  Both Pillsbury and the Plan Committee assert that all aspects of the settlement between the Committee and Pillsbury have been consummated. Pillsbury App. Br. at 19; Plan Comm. App. Br. at 15.  Specifically, according to both parties, the Plan Committee has paid Pillsbury $130,000 (which Pillsbury asserts has been spent), and Pillsbury has turned over to the Plan Committee "all of the assets and records described in the settlement agreement."  Plan Comm. App. Br. at 15; Pillsbury App. Br. at 19.

H.    *Procedural History*

On December 31, 2007, Advantage filed its Notice of Appeal through counsel, identifying as the subjects of the appeal the Striking Order and Settlement Approval Order.  JA 1127-30.  On February 7, 2008, Pillsbury filed its Motion for Summary Affirmance of the Striking Order, which the Plan Committee joined on February 26, 2008.  Advantage filed its Opposition to that Motion on February 19, 2008, and Pillsbury filed its Reply on February 21, 2008.[7]  On February 21, 2008, Pillsbury filed its Motion to Strike Elliot Wolff as Appellant, which the Plan Committee joined on February 26, 2008.  Advantage filed its Opposition to that Motion on March 3, 2008, and both Appellees filed their Replies on March 10, 2008.

On March 11, 2008, as noted above, Pillsbury filed a motion to continue briefing on

---

[7] Pillsbury also filed two Supplements to its Reply; the first attached an exhibit relating to its Reply (which was also included in the Joint Appendix), and the second responded to an argument raised in Advantage's Appellant Brief regarding the appropriateness of the Striking Order.  No party has objected to these Supplements.

Advantage's appeal until the initial motions were resolved.  Advantage opposed that motion and

filed its Appellant Brief, as scheduled on March 13, 2008.  On April 17, 2008, Pillsbury and the

Plan Committee each filed an Appellee Brief, thus rendering moot Pillsbury's [22] motion to

continue briefing.[8]  Advantage filed a separate Reply Brief as to each Appellee Brief on May 8,

2008.  Accordingly, all of the initial motions, as well as the briefing on Advantage's appeal is

now ripe for review by this Court.[9]

## II.  LEGAL STANDARD

United States District Courts have jurisdiction over appeals of bankruptcy court

decisions.  28 U.S.C. § 158(a).  Orders in bankruptcy cases may be immediately appealed as final

orders if they dispose of discrete disputes within the larger case.  *In re St. Charles Preservation

Investors, Ltd.*, 112 B.R. 469, 471 (D.D.C. 1990).  On appeal from a bankruptcy court, a district

court "may affirm, modify, or reverse a bankruptcy judge's judgement, order, or decree, or

remand with instruction for further proceedings.  Findings of fact, whether based on oral or

documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be

given to the opportunity of the bankruptcy court to judge the credibility of witnesses."  Fed. R.

Bankr. P. 8013; *see also In re Ford Johnson* 236 B.R.510, 518 (D.D.C. 1999).  In contrast, a

---

[8] Accordingly, the Court shall DENY AS MOOT Pillsbury's [22] Motion to Continue Briefing in the Order accompanying this Memorandum Opinion.

[9] In addition, on May 12, 2008, Advantage filed a Motion for Oral Argument, which Pillsbury opposes.  All of the issues raised by Advantage's appeal are extensively addressed in the voluminous papers and exhibits filed by the parties.  As such, the Court finds that "the facts and legal arguments are [more than] adequately presented in the briefs and record and the decisional process would not be significantly aided by oral argument," Fed. R. Bankr. P. 8012, and shall accordingly DENY Advantage's [33] Motion for Oral Argument in the Order accompanying this Memorandum Opinion.

district court reviews questions of law *de novo* on appeal. *In re WPG, Inc.*, 282 B.R. 66, 68 (D.D.C. 2002) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990)).

The burden of proof is on the party that seeks to reverse the bankruptcy court's holding, and that "party must show that the court's holding was clearly erroneous as to the assessment of the facts . . . and not simply that another conclusion could have been reached." *Ford Johnson*, 236 B.R. at 218. An appellate court applying the "clearly erroneous" standard is not entitled to "reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty . . . if it undertakes to duplicate the role of the lower court." *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985). As such, a finding of fact is clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Ford Johnson*, 236 B.R. at 518 (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

### III.  DISCUSSION

As explained above, two initial motions remain pending in this case in addition to Advantage's appeal: Pillsbury's Motion for Summary Affirmance of the Striking Order and Pillsbury's Motion to Strike Elliot Wolff as Appellant, both of which are joined by the Plan Committee. The Court addresses each of these, ultimately granting them, before turning to the merits of Advantage's appeal.

### A.      *Motion for Summary Affirmance of the Striking Order*

"A party seeking summary disposition bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v.*

*Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987) (citing *Walker v. Washington*, 627 F.2d 541, 545

(D.C. Cir. 1980)).  To summarily affirm the Bankruptcy Court's Striking Order, "this court must

conclude that no benefit will be gained from further briefing and argument of the issues

presented." *Id.* (citing *Sills v. Bureau of Prisons*, 761 F.2d 792, 793-94 (D.C. Cir. 1985)).

Further, the Court must "view the record and inferences to be drawn therefrom 'in the light most

favorable to [Advantage].'" *Id.* (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)).

Nevertheless, the Court concludes that Appellees have met their "heavy burden" of establishing

that the lack of merit in Advantage's appeal of the Striking Order is "so clear as to make

summary affirmance proper."  *Walker*, 627 F.2d at 545.

 As noted above, Bankruptcy Court conclusions of law are reviewed *de novo* by the

District Court.  *WPG, Inc.*, 282 B.R. at 68.  Advantage admits as much in its Opposition to

Pillsbury's Motion for Summary Affirmance, *see* Advantage Mot. for Summ. Aff. Opp'n at 6,

but nevertheless raises a number of issues not related to the limited question of whether, as a

matter of law, Bankruptcy Judge Teel erred in striking a pleading filed for a corporation by an

individual who is not an attorney licensed to practice before the Bankruptcy Court, *see generally*

*id.*  Those issues are properly addressed, and actually addressed, below, in the context of

Advantage's appeal of the Settlement Approval Order, and the Court therefore does not consider

them in connection with Pillsbury's Motion for Summary Affirmance.

 As to that Motion, as the Supreme Court has explained, "[i]t has been the law for the

better part of two centuries . . . that a corporation may appear in the federal courts only through

licensed counsel." *Rowland v. Calif. Men's Colony*, 506 U.S. 194, 201-02 (1993) (citing, *inter*

*alia*, *Osborn v. Pres. of Bank of United States*, 9 Wheat. 738, 829, 6 L.Ed. 204 (1824)); *see also*

*Bristol Petroleum Corp. v. Harris*, 901 F.2d 165, 166 n.1 (D.C. Cir. 1990) ("As a corporation,

[defendant] could not appear *pro se*").  Further, a court may properly strike a pleading filed by a

corporation other than through licensed counsel.  *See Liberty Mut. Ins. Co. v. Hurricane*

*Logistics Co.*, 216 F.R.D. 14, 16 n.3 (D.D.C. 2003) (citing *Donovan v. Road Rangers Country*

*Junction, Inc.*, 736 F.2d 1004, 1005 (5th Cir. 1984)).  While Advantage claims that it was

inappropriate for Bankruptcy Judge Teel to strike Advantage's Objection "given the unusual

circumstances surrounding the settlement," Advantage Mot. for Summ. Aff. Opp'n at 7,

Advantage offers no case law supporting the proposition that there are any exceptions to the

uniform rule that corporations may only appear in federal court through counsel.

Advantage's correct assertion that the December 14 and December 17 Notices "did not

advise the creditors that corporate objections must be made through counsel," *id.*, cannot and

does not obviate the requirement that a corporation–in this case acting as an objecting

creditor–appear in federal court through counsel.  Indeed, while Federal Rule of Bankruptcy

Procedure 9010 provides that "[a] debtor, creditor, equity security holder, indenture trustee,

committee or other party may (1) appear in a case under the [Bankruptcy] Code and act either in

the entity's own behalf or by an attorney authorized to practice in the court, and (2) perform any

act not constituting the practice of law, by an authorized agent, attorney in fact, or proxy," Fed.

R. Bankr. P. 9010, the Advisory Committee Note accompanying that Rule specifically provides

that it "does not purport to change prior holdings prohibiting a corporation from appearing *pro*

*se*, *id.*, Advis. Comm. Note (citing *In re Las Colinas Development Corp.*, 585 F.2d 7 (1st Cir.

1978)).

Unable to argue that the Bankruptcy Court erred as a matter of law in striking

Advantage's Objection, Advantage's Opposition to Pillsbury's Motion for Summary Affirmance suggests that the Bankruptcy Court should have issued "[a]n order permitting [Advantage] to obtain counsel and resubmit the objection through counsel." Advantage Mot. for Summ. Aff. Opp'n at 8. This suggestion, however, completely ignores the fact that, despite Mr. Wolff's acknowledgment in his transmitting e-mail that Advantage's Objection was not prepared by counsel, the Objection never hints at any desire to obtain counsel to represent Advantage in filing an Objection, and certainly does not request a continuance in order to do so. JA 1072-80.[10] Advantage proffers no case law (nor is this Court aware of any) establishing that the Bankruptcy Court was required *sua sponte*, to advise Advantage of the requirement that it proceed through counsel in federal court, or to grant a continuance in order to allow Advantage to obtain counsel when Advantage itself never requested such relief. Indeed, the granting or denial of a continuance "is made in the discretion of the trial judge, the exercise of which will ordinarily not be reviewed." *Avery v. State of Alabama*, 308 U.S. 444, 446 (1940). This Court certainly cannot conclude that the Bankruptcy Court abused its discretion by failing to *sua sponte* grant Advantage a continuance that it never requested.

In short, Advantage offers no reason, and the Court is aware of none, to conclude that Bankruptcy Judge Teel erred, as a matter of law, in concluding that Advantage, as a corporation, could not file an Objection with the Bankruptcy Court other than through counsel, and in striking the legally deficient Advantage Objection as a result. Accordingly, this Court finds that summary

---

[10] Instead, Advantage's Objection requests that the Bankruptcy Court grant Plan Committee counsel's motion to withdraw and then grant a continuance in order to allow the *Plan Committee* to retain new counsel. JA 1080. The Objection is entirely silent with respect to the retention of counsel to represent *Advantage* in filing an Objection. JA 1072-80.

affirmance of the Striking Order is appropriate, and shall grant Pillsbury's Motion [5], which is

joined by the Plan Committee, *see* Docket No. [17].

> B. *Motion to Strike Elliot Wolff as Appellant*

Both Pillsbury and the Plan Committee have moved to strike Mr. Wolff as an appellant

on the grounds that he lacks standing either to appeal the Striking Order or the Settlement

Approval Order or to appear in this appeal at all.  Pillsbury Mot. to Strike at 2.  Having

summarily affirmed the Striking Order, the Court need only focus on Mr. Wolff's appellate

standing (or lack thereof) with respect to the Settlement Approval Order.  "Section 39(e) of the

Bankruptcy Act of 1898, 11 U.S.C. § 67(c) [], limited appellate standing in bankruptcy cases to

'person[s] aggrieved by an order of a referee.'" *Travelers Ins. Co. v. Porter*, 45 F.3d 737, 740 (3d

Cir. 1995).  Although the current version of the bankruptcy code no longer expressly includes

such a limit, "courts continue to so limit standing to appeal, recognizing that to do otherwise

might overwhelm bankruptcy courts with claims by the many parties indirectly affected by

bankruptcy court orders." *McGuirl v. White*, 86 F.3d 1232, 1235 (D.C. Cir. 1996) (citing

*Travelers Ins.*, 45 F.3d at 741; *In re Fondiller*, 707 F.2d 441, 443 (9th Cir. 1983)).

As such, appellate standing in bankruptcy matters remains limited to "persons aggrieved,'

i.e., to those "whose rights or interests are 'directly and adversely affected pecuniarily' by the

order or decree of the bankruptcy court." *McGuirl*, 86 F.3d at 1234 (quoting *In re El San Juan

Hotel*, 809 F.2d 151, 154 (1st Cir. 1987) (quoting *Fondiller*, 707 F.2d at 442)).  In addition,

"[l]itigants [may be] 'persons aggrieved' if the order diminishes their property, increases their

burdens, or impairs their rights." *In re Dykes*, 10 F.3d 814, 187 (3d Cir. 1993) (citing *Fondiller*,

707 F.2d at 442).  Nevertheless, "the standing requirement in bankruptcy appeals is more

restrictive than the 'case or controversy' standing requirement of Article III, which 'need not be financial and need only be 'fairly traceable' to the alleged illegal action.'" *Travelers Ins.*, 45 F.3d at 741 (quoting *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988)).

Pillsbury correctly points out in its Motion to Strike that Mr. Wolff "individually, was not a party to . . . the litigation/proceedings giving rise to the Settlement Order," "is not a creditor in the bankruptcy proceedings below," and "is not a member of the Plan Committee; rather Advantage is a member of the Plan Committee." Pillsbury Mot. to Strike at 2. Mr. Wolff nevertheless argues that he meets the "person aggrieved" standard and is therefore a proper appellant in this matter, *see* Advantage Mot. to Strike Opp'n at 3-5, but his argument is ultimately unavailing. First, Mr. Wolff suggests he is a "'person aggrieved' because the Bankruptcy Court's Orders place him personally in significant legal peril" because the unsecured creditors represented by the Plan Committee might bring claims against him for negligence. *Id.* at 4-5. As an initial matter, this argument is entirely speculative because Mr. Wolff offers no evidence that even a prospect of litigation against him, personally, has been raised. A negligence action against Mr. Wolff, personally, is also highly unlikely because it is Advantage–rather than Mr. Wolff personally–that is a member of the Plan Committee. Plan Comm. Mot. to Strike Reply at 3-4. Moreover, even if the possibility of litigation were more concrete, courts have repeatedly held "that standing is precluded if the only interest in the bankruptcy court's order that can be demonstrated is an interest as a potential defendant in [future litigation]." *Travelers Ins.*, 45 F.3d at 743 (citing *Fondiller*, 707 F.2d at 443); *see also El San Juan Hotel*, 809 F.2d at 155. As such, the Court rejects Mr. Wolff's argument that the specter of possible litigation makes him

a "person aggrieved" by the Settlement Approval Order.[11]

Mr. Wolff entirely fails to demonstrate either that his "rights or interests are 'directly and adversely affected pecuniarily' by the [Settlement Approval Order]" *McGuirl*, 86 F.3d at 1234, or that Order "diminishes [his] property, increases [his] burdens, or impairs [his] rights," *Dykes*, 10 F.3d at 187.  Instead, Pillsbury is undoubtedly correct that, because "corporations are distinct legal entities from the shareholders and officers," Mr. Wolff "does not obtain for himself Advantage's capacity, standing, and aggrieved-party status simply by virtue of being the president of Advantage."  Pillsbury Mot. to Strike Reply at 3.  To the contrary, courts have consistently held that officers and shareholders of creditor corporations may not appeal bankruptcy orders, in their own names, where the corporation is the party aggrieved by the orders because any injury to the officer or shareholder is indirect rather than direct.  *See In re EToys, Inc.*, 234 Fed. Appx. 24, 2007 WL 1433668 (3d Cir. 2007); *In re Anchorage Nautical Tours, Inc.*, 145 B.R. 637, 641-42 (9th Cir. BAP 1992); *In re DuPage Boiler Works, Inc.*, 965 F.2d 296, 298 (7th Cir. 1992); *In re Dein Host, Inc.*, 835 F.2d 402, 406 (1st Cir. 1987).  As such, the Court concludes that Mr. Wolff is not a "person aggrieved" by, and therefore lacks standing to appeal,

---

[11] Mr. Wolff also asserts that he is a "person aggrieved" by the Bankruptcy Court's Orders because "there has never been any doubt that Mr. Wolff has a right to object to the Bankruptcy Court's Orders," citing the various references to Mr. Wolff made during the December 14, 2007 hearing that resulted in Bankruptcy Judge Teel's finding that a settlement had been reached. Advantage Mot. to Strike Opp'n at 3-4.  That argument, however, goes to whether Mr. Wolff was somehow stripped of a legal right when Advantage's Objection was stricken, and is therefore irrelevant in light of the Court's summary affirmance of the Striking Order.  Furthermore, while Mr. Wolff is correct that his name was raised during the December 14, 2007, the Court's review of the transcript of that hearing reveals that the references to Mr. Wolff appear to be shorthand for Advantage, *see* JA 1009, and the Court agrees with Pillsbury that Mr. "Wolff (who it is undisputed is not a creditor or committee member) does not become a creditor of the debtor or creditors' committee member simply because someone refers to [Mr.] Wolff as shorthand for Advantage."  Pillsbury Mot. to Strike Reply at 2.

the Settlement Approval Order.

In an effort to avoid this conclusion, Mr. Wolff also argues that he is a "party in interest"

in the bankruptcy case pursuant to Section 1109(b) of the Bankruptcy Code, 11 U.S.C. § 1109(b),

and therefore entitled to appellate standing. Advantage Mot. to Strike Opp'n at 5-6. While

Pillsbury disputes Mr. Wolff's claim that he is a "party in interest" under § 1109(b), Pillsbury

Mot. to Strike Reply at 4, the Court need not determine the issue because "[c]ontrary to [Mr.

Wolff's] interpretation, § 1109(b) does not confer appellate standing." *In re Victory Markets,*

*Inc.*, 195 B.R. 9, 15 (N.D.N.Y. 1996). Because Section 1109(b) "expands the right to be heard

[in a Chapter 11 proceeding] to a wider class than those who qualify under the 'person aggrieved'

standard," *In re American Ready Mix, Inc.*, 14 F.3d 1497, 1502 (10th Cir. 1994) (quoting *Int'l*

*Trade Admin. v. Rensselaer Polytechnic Inst.*, 936 F.2d 744, 747 (2d Cir. 1991)), courts

considering the issue have concluded that "merely being a party in interest is insufficient to

confer appellate standing." *In re Salant Corp.*, 176 B.R. 131, 134 (S.D.N.Y. 1994).[12]

As the case law is thus clear that Mr. Wolff lacks appellate standing to challenge the

Settlement Approval Order, the Court shall grant Pillsbury's [13] Motion to Strike Elliot Wolff

as Appellant, which is joined by the Plan Committee, *see* Docket No. [16].

C.      *Advantage's Appeal of the Settlement Approval Order*

Having granted Appellees' preliminary motions, and thus limited the issues before the

Court on appeal to Advantage's challenge to the Settlement Approval Order, the Court turns to

---

[12] In addition, Mr. Wolff asserts that he "should be accorded standing to appeal in this
case" because the Settlement Approval Order "may have undermined the confidence of creditors
and the public in the bankruptcy process." Advantage Mot. to Strike Opp'n at 6. This assertion
lacks any factual support whatsoever, and is entirely specious in light of the Court's affirmance,
below, of the Settlement Approval Order.

the merits of Advantage's appeal.  The parties' appeal briefs raise a number of issues above and

beyond whether Bankruptcy Judge Teel properly approved the settlement between Pillsbury and

the Plan Committee.  In addressing these arguments, the Court first considers Pillsbury's initial

arguments regarding the propriety of Advantage's appeal and Advantage's arguments regarding

the Bankruptcy Court's treatment of and jurisdiction over the fee dispute.  The Court then turns

to Advantage's claims that the settlement approval process violated its due process rights, and

finally to Bankruptcy Judge Teel's actual decision to approve the fee dispute settlement.

       1.       *Pillsbury's Initial Arguments Regarding the Propriety of the Appeal*

First, the Court addresses Pillsbury's suggestion that the issues Advantage raises in its

appeal should be limited because Advantage has not appealed either the Bankruptcy Court's

November 15, 2007 Order Resolving Subject Matter Jurisdiction Objection of Respondent, in

which the Bankruptcy Court concluded that it had subject matter jurisdiction over the fee dispute

underlying the Settlement Agreement, or the Bankruptcy Court's December 18 Order finding that

a settlement had been reached between Pillsbury and the Plan Committee.  *See* Pillsbury App. Br.

at 4.  As Advantage correctly notes, however, those orders were not final orders and were

interlocutory in nature, such that Advantage was not required to appeal them.  Advantage Reply

to Pillsbury Br. at 1-2.  Further, with respect to Advantage's argument that the Bankruptcy Court

lacked subject matter jurisdiction to try the fee dispute underlying the Settlement Agreement,

Advantage is correct that challenges to a court's subject matter jurisdiction cannot be waived.

*See Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 143 (D.D.C. 2007); *see also* Pillsbury

App. Br. at 36 (admitting that "the jurisdictional basis for entering the Settlement Approval

Order likely may be challenged at any time on appeal.").  In short, the Court finds that

Advantage's failure to appeal the Bankruptcy Court's November 15 and December 18 Orders does not limit the arguments that it may raise in this appeal.

Pillsbury also argues that this Court should dismiss Advantage's appeal of the Settlement Approval Order based on the bankruptcy doctrine of equitable mootness because the settlement has been fully implemented and Advantage has made no effort to obtain a stay.  Pillsbury App. Br. at 19-20.  Not surprisingly, Advantage opposes this argument.  Adv. Reply to Pillsbury Br. at 2-5.  The doctrine of equitable mootness provides that a bankruptcy appeal may "be dismissed as moot when, [although not constitutionally moot and although] effective relief could conceivably be fashioned, implementation of that relief would be inequitable."  *In re Metromedia Fiber Network, Inc.*, 416 F.3d 136, 143 (2d Cir. 2005); *see also In re AOV Indus., Inc.*, 792 F.2d 1140, 1147-48 (D.C. Cir. 1986).  Courts applying the equitable mootness doctrine have considered "whether an unstayed order has resulted in a 'comprehensive change in circumstances,' and when a [settlement] is 'substantially consummated.'"  *In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007); *see also United States v. Segal*, 432 F.3d 767, 773-774 (7th Cir. 2005); *In re Am. HomePatient, Inc.*, 420 F.3d 559, 563-64 (6th Cir. 2005).

While Pillsbury is correct that Advantage's failure to seek a stay of the Settlement Agreement is relevant to the equitable mootness analysis, the D.C. Circuit has specifically explained that "the failure to secure a stay is not *per se* dispositive of *all* the issues . . . [because i]t has never been the case . . . that a party *must* secure a stay pending appeal."  *AOV Indus.*, 792 F.2d at 1147.  In addition to whether a stay was sought, courts consider whether it is still possible to grant effective relief, *id.*–which in turn relates to whether there has been a "comprehensive change in circumstances," *Delta Air Lines*, 374 B.R. at 522–and whether "the relief requested

would affect either the rights of parties not before the court or the success of the plan," *Am.*

*HomePatient*, 420 F.3d at 563. On these considerations, the Court finds that Advantage has the

better of the arguments. While Pillsbury stresses that "the Plan Committee and Pillsbury have

fully implemented the settlement," Pillsbury App. Br. at 20, by Pillsbury's own description, that

implementation only involved the Plan Committee paying Pillsbury $130,000 and Pillsbury

turning over documents and other assets to the Plan Committee, *id.* at 19. As such, the Court is

not convinced "that the settlement was so complex or that the changes after the settlement have

been so sweeping that it would be foolish" to attempt to "unwind" it. *Segal*, 432 F.3d at 774; *see*

*also AOV Indus.*, 792 F.2d at 1149 ("the pending challenge to the fees . . . [is] still capable of

resolution, regardless of the degree of consummation. . . one possible remedy would be to order

the law firm to make partial or total restitution of [the] payments").

Similarly, the instant case is not one in which these parties or third parties have

substantially relied upon the settlement, such that it would be inequitable to unwind it. *Cf. In re*

*Adelphia Commc'ns Corp.*, 222 Fed. Appx. 7, 8 (2d Cir. 2006) ("the government declined to

pursue massive civil fines and forbore mandatory forfeiture and even the criminal indictment of

parties and non-parties to this case, in order to obtain settlements that would facilitate the

creation of a victim restitution fund to compensate defrauded investors."); *see also AOV Indus.*,

792 F.2d at 1149. Accordingly, balancing the equities, the Court concludes, in its discretion, not

to treat Advantage's appeal as moot due to Advantage's failure to seek a stay, but rather to

address it on the merits.

     2.     *The Bankruptcy Court's Treatment of the Fee Dispute*

Advantage's appeal brief includes two arguments regarding the Bankruptcy Court's

treatment of the fee dispute itself, as opposed to the Bankruptcy Court's approval of the settlement that resolved the fee dispute.  These are: (1) that the Bankruptcy Court erred in allowing the fee dispute to proceed as a contested matter rather than an adversary proceeding; and (2) that the Bankruptcy Court lacked subject matter jurisdiction over the fee dispute.  The Court addresses each of these arguments in turn, ultimately rejecting both.

Federal Rule of Bankruptcy Procedure 7001 identifies ten classes of proceedings that are to be brought as adversary proceedings, as opposed to contested matters.  Fed. R. Bankr. P. 7001. These include "a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee [or other proceedings not applicable here]."  *Id.* Advantage argues that the Bankruptcy Court erred by allowing the fee dispute to proceed as a contested matter because it was a "proceeding to recover money."  Appellant's Br. at 21-22. Appellees do not meaningfully contest that the fee dispute could have been, and perhaps should have been, brought as an adversary proceeding; instead, they argue for various reasons that Advantage may not argue as much on appeal and that permitting the fee dispute to proceed as a contested matter was harmless error.  Pillsbury App. Br. at 34-35; Plan Comm. App. Br. at 34-37. The Court agrees that Advantage may not pursue its argument on appeal because, as Advantage itself admits, "the fee dispute was between the Plan Committee and Pillsbury," Reply to Plan Comm. Br. at 18, such that Advantage was not a party to the fee dispute.

Advantage's argument that the fee dispute should have proceeded as an adversary proceeding focuses on the fact that adversary proceedings under Part VII of the Federal Rules of Bankruptcy Procedure incorporate most of the procedural protections of the Federal Rules of Civil Procedure, while contested matters do not.  Appellant's Br. at 21-22.  According to

Advantage, "[m]ost significantly, a party who brings [an adversary proceeding] must file a

complaint with the bankruptcy court and serve the adverse party . . . [i]f that had occurred in this

matter, all parties would have received notice and would have had the opportunity to retain

counsel and to file an answer or other responsive pleading . . . ." *Id.* Advantage's arguments,

however, overlook the fact that the *Plan Committee*, and not Advantage itself, would have been

the responding party in any adversary proceeding. As such, any procedural protections attendant

to adversary proceedings would have run to the Plan Committee, rather that to Advantage, and

any arguments regarding the propriety of allowing the fee dispute to proceed as a contested

matter belong to the Plan Committee, not to Advantage. Advantage fails to proffer any evidence

or case law demonstrating that it, as a member of the Plan Committee, would have been a party

to an adversary proceeding regarding the fee dispute, and thus fails to establish that it was in any

way adversely impacted by the Bankruptcy Court allowing the fee dispute to proceed as a

contested matter.[13]

Advantage also argues that the Bankruptcy Court erred in determining that it had subject

---

[13] The Court does not determine whether the Bankruptcy Court erred by allowing the fee dispute to proceed as a contested matter, but nevertheless notes that it agrees with the Plan Committee that any such error would likely be harmless because the fee dispute in the bankruptcy case involved the same discovery and motions practice that would have occurred in an adversary proceeding, and Advantage does not show that the record of an adversary proceeding would have been materially different. *See In re Munoz*, 287 B.R. 546, 551 (9th Cir. BAP 2002) ("Such an error may nevertheless be harmless when the record of the procedurally incorrect 'contested matter' is developed to a sufficient degree that the record of an adversary proceeding likely would not have been materially different. In such circumstances, the error does not affect the substantial rights of the parties and is not inconsistent with substantial justice'") (citations omitted). The only hypothetical differences to which Advantage points to are the Plan Committee's ability to file an answer and right to a jury trial. Reply to Plan Comm. Br. at 20. As Advantage admits, however, any answer would have been filed by the Plan Committee, not Advantage, and the fee dispute in the bankruptcy case never proceeded to a trial. *See* Reply to Plan Comm. Br. at 20.

matter jurisdiction over the fee dispute, and in exercising that jurisdiction.  Appellant's Br. at 22-24.  As noted above, this issue was explicitly raised and decided before the Bankruptcy Court, which held multiple hearings on the jurisdictional question and issued an Order resolving it on November 15, 2007.  JA 323-64, 365.  Both Appellees argue that the Bankruptcy Court was correct in concluding that it had subject matter jurisdiction over the fee dispute.  Plan Comm. App. Br. at 25-34; Pillsbury App. Br. at 36-37.  In response, Advantage asserts that the Plan Committee should be judicially estopped from arguing that the Bankruptcy Court had jurisdiction over the fee dispute because the Plan Committee argued the opposite position in the proceedings before the Bankruptcy Court.  Reply at Plan Comm. Br. at 16-18.  Regardless of the Plan Committee's position, however, Advantage has raised the argument that the Bankruptcy Court lacked jurisdiction over the fee dispute and this Court must therefore resolve that issue by considering the relevant statutes, case law, and evidence in the record in this case.[14]

Federal courts derive their jurisdiction over bankruptcy cases and civil proceedings within bankruptcy cases from 28 U.S.C. § 1334, which broadly confers two types of jurisdiction: (1) "original and exclusive jurisdiction of all cases under title 11," 28 U.S.C. § 1334(a); and (2)

---

[14] Pillsbury argues that the Court need not address Advantage's jurisdictional challenge because "Advantage does not challenge the bankruptcy court's jurisdiction for entertaining and ruling upon the Settlement Approval Motion," which is at issue in the Order on appeal, but instead challenges the bankruptcy court's jurisdiction to try the fee dispute, which was never actually tried due to the settlement.  Pillsbury App. Br. at 36-37.  Pillsbury is correct that "it is clear, as a matter of law, that the bankruptcy court possesses" jurisdiction to approve the Settlement Agreement under Rule 9019.  *Id.* (citations omitted).  Pillsbury does not, however, establish that the filing of a motion for approval of a settlement under Rule 9019 obviates any inquiry into whether the bankruptcy court in fact had jurisdiction to try the dispute resolved through the settlement.  The answer to this question is not relevant, and the Court need not take Pillsbury's suggestion that it avoid reaching the jurisdictional question, because this Court easily concludes below that the Bankruptcy Court, in this instance, had subject matter jurisdiction to try the fee dispute.

"original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11," *id.* § 1334(b). "The first category [of jurisdiction] refers to the bankruptcy petition itself." *In re Premium Escrow Services, Inc.*, 342 B.R. 390, 396 (Bankr.D.D.C. 2006) (quoting *U.S. Brass Corp. v. Travelers Ins. Group*, 301 F.3d 296, 303-04 (5th Cir. 2002. As for § 1334(b), a claim "'arises under' title 11 if the claim is made pursuant to a provision of title 11," *id.* (internal citation omitted); claims "arising in" cases arising under title 11 "are limited to administrative matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceeding," *id.* (internal quotation and citation omitted); and the test for "related to" jurisdiction is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy," *id.* (internal quotation and citation omitted).

After the bankruptcy court's confirmation of a debtor's plan of reorganization, however, "the bankruptcy court's jurisdiction shrinks," and a party invoking the bankruptcy court's post-confirmation jurisdiction must satisfy two requirements. *Id.* at 396-97 (quoting *Penthouse Media Group v. Guccione*, 335 B.R. 66, 73 (Bankr.S.D.N.Y. 2005)). "First, the matter must have a close nexus to the bankruptcy court or proceeding, as when a matter affects the interpretation, implementation, consummation, execution[,] or administration of the confirmed plan[,] and second the plan must provide for the retention of jurisdiction over the dispute." *Id.* at 397 (quoting *Kassover v. Prism Venture Partners, LLC*, 336 B.R. 74, 79 (Bankr.S.D.N.Y. 2006)). The Court concludes that both requirements were satisfied in this case, and that the Bankruptcy Court thus properly concluded that it had jurisdiction to try the fee dispute.

As discussed above, the fee dispute in this case largely involved fees Pillsbury charged in

connection with the efforts it undertook, at the request of the Plan Committee, to advance the

Plan Committee's prospects of success in the PwC litigation by seeking and obtaining a

Bankruptcy Court Order clarifying the authority of the Plan Committee to pursue the PwC

complaint.  Plan Comm. App. Br. at 7; Pillsbury App. Br. at 9; JA 551-53.  As a result, this Court

finds that the Bankruptcy Court had "arising in" jurisdiction over the fee dispute because the fees

Pillsbury sought, while "not based on any right expressly created by Title 11, [] would have no

existence outside of the bankruptcy."  *Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d

831, 835 (4th Cir. 2007).  But for the bankruptcy, the Plan Committee would not have been

attempting to prosecute the PwC litigation, and there would have been no need for Pillsbury to

incur fees in obtaining Bankruptcy Court clarification of the Plan Committee's authority to do so.

Further, the Court finds that the Bankruptcy Court had "related to" jurisdiction over the

fee dispute because any fees paid to Pillsbury by the Plan Committee would directly diminish the

amount of money eventually available for distribution to creditors under the Plan.  The Court is

aware that in *In re Resorts International, Inc.*, 372 F.3d 154 (3d Cir. 2004), the Third Circuit

found that a bankruptcy court lacked "related to" jurisdiction over accounting malpractice claims

asserted by a litigation trust established under a confirmed plan against the accounting firm that

performed services for the litigation trust because the litigation trust's assets were not, *per se*,

assets of the estate and therefore the malpractice action did not have a close nexus to the

bankruptcy proceeding.  *See id.* at 169-70.  The Court, however, finds the instant case to be

closer to *In re A.H. Robbins Co.*, 86 F.3d 364 (4th Cir. 1996), in which the Fourth Circuit found

that the bankruptcy court had both arising in and related to jurisdiction over motions for attorneys

fees filed by counsel to tort claimants who had received payment from litigation trusts.  As the

Fourth Circuit explained in that case, "the proceeding [was] 'related to' a case in bankruptcy [because] the proceeding could have an effect on the estate being administered" and the "bankruptcy case remains open until all claims have been paid and the Trust dissolved under its terms." *Id.* at 372-73.  Here too, the fee dispute could have a direct result on the eventual distribution to creditors under the Plan, and thus "affect[s] an integral aspect of the bankruptcy proceeding," i.e., the liquidation.  *Premium Escrow Servs.*, 342 B.R. at 397.  Further, as Bankruptcy Judge Teel explained in concluding at his November 8, 2007 hearing that he had jurisdiction to try the fee dispute, as part of that dispute, the Plan Committee raised issues regarding the allocation of attorneys fees between various creditors, which involved the interpretation of the Plan.  *See* JA 362-63 (Tr. of 11/8/07 Hrg).

Advantage nevertheless asserts that the fee dispute lacked the requisite "close nexus" to the bankruptcy proceeding because the Plan provides that the "Plan Committee shall be authorized to retain counsel and such other professionals and agents as are reasonable and necessary for the administration of its duties[, and] may retain professionals in its sole discretion and may employ professionals without application and order under 11 U.S.C. § 327." Appellant's Br. at 23; JA 74-75.  The Plan is not so clear, however; as Appellees note, it continues to provide that

> Any professional retained pursuant to the Plan shall be entitled to reasonable compensation for services rendered at the prevailing rates in the community for similar services provided by such professional and reimbursement of reasonable out-of-pocket expenses reasonably incurred, such fees and expenses to be paid from the Wind-Down and Litigation fund, unless such fees and costs are subject to other forms of payment (such as contingency fees), as approved by the Bankruptcy Court.

JA 74-75.  During the hearing before the Bankruptcy Court on the jurisdictional issues, the

parties disputed the significance of the phrase "as approved by the Bankruptcy Court," JA 328:4-329:9, 340:19-341:21, thus creating revealing another instance in which trying the fee dispute would have required the interpretation of the Plan.  As noted above, courts have found that the requisite "close nexus to the bankruptcy court or proceeding" exists "when a matter affects the interpretation, implementation, consummation, execution[,] or administration of the confirmed plan." *Premium Escrow Servs.*, 342 B.R. at 397.  In light of the need for interpretation of the Plan, as well as the potential effect on the administration of the confirmed Plan, this Court finds that the fee dispute had a "close nexus" to the bankruptcy case.

The Court also finds that the second requirement for post-confirmation jurisdiction–that the Plan provide for the retention of jurisdiction over the fee dispute, *id.* at 397–is met in this instance.  Here, the Plan provides that "[t]o the maximum extent permitted by the Bankruptcy Code and other applicable law, the Bankruptcy Court shall have jurisdiction of all matters arising out of, and related to, the Reorganization Cases and the Plan," and continues to provide a non-exhaustive list of nineteen areas over which the Bankruptcy Court specifically retained jurisdiction.  JA 75-78.  "[N]either the parties nor the bankruptcy court can create [] jurisdiction by simply inserting a retention of jurisdiction provision in a plan of reorganization if jurisdiction otherwise is lacking." *Valley Historic*, 486 F.3d at 837.  However, the Court has already found above that the bankruptcy court had both arising in and related to jurisdiction over the fee dispute.  Further, the Plan in this case specifically retained the bankruptcy court's jurisdiction, post-confirmation, to:

> 6.  Enter such Orders as may be necessary or appropriate to interpret, implement, enforce or consummate the provisions of this Plan and all contracts . . . and other agreements . . . created in connection with or pursuant to this Plan . . . except as

otherwise provided herein;

7.  Resolve any . . . disputes that may arise in connection with the consummation, interpretation or enforcement of this Plan . . . or any entity's rights arising under or obligations incurred in connection with this Plan . . . ; and

9.  Enter such Orders as may be necessary or appropriate to enforce, implement, interpret or consummate the terms and conditions of this Plan and resolve any objections filed with respect to any actions proposed to be taken with or pursuant to the provisions of this Plan.

JA 76-77.  At the very least, these provisions (and perhaps others in the Plan) provide for the Bankruptcy Court's retention of the jurisdiction necessary to resolve the fee dispute.  As such, the Court finds that the second requirement for post-confirmation bankruptcy court jurisdiction is met, and that the Bankruptcy Court properly concluded that it had subject matter jurisdiction to try the fee dispute.

      3.     *Advantage's Due Process Arguments*

          a.     *Advantage Has Due Process Rights As a Creditor, But Lacks Third-Party Standing*

In challenging the Bankruptcy Court's approval of the settlement between Pillsbury and the Plan Committee, Advantage argues that both it "and the creditor body represented by the Plan Committee were deprived of their due process rights under the Fifth Amendment" as a result of alleged "procedural irregularities in the provision of notice, the hearings held, and the court approval of the settlement."  Appellant's Br. at 11.  Advantage is generally correct that "creditors' rights in bankruptcy cases are property interests protected by the Fifth Amendment [] that cannot be impaired without notice and an opportunity to be heard."  *In re Gen. Dev't Corp.*, 165 B.R. 685, 688 (S.D.Fla. 1994) (citing, *inter alia*, *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293 (1953)).  Pillsbury nevertheless "disputes that Advantage

possessed any due process rights in this matter," asserting that "Advantage does not possess any property rights in the assets that were transferred to and vested in the Plan Committee," and that "Advantage never requested service and notice in accordance with the notice and service limitation provision of the Confirmation Order." Pillsbury App. Br. at 26 n.11 (citing JA 1116-17). As Advantage points out, however, that same Confirmation Order provides that "notice shall be limited to . . . (c) any party affected by the relief sought." JA 1116-17. Further, Federal Rule of Bankruptcy Procedure 9019 expressly provides that "[n]otice shall be given to creditors" of settlements under that Rule. Pillsbury has not proffered any authority establishing that the Confirmation Order supplants the Federal Rules of Bankruptcy Procedure, and the Court therefore assumes that Advantage, as a creditor, had a due process right to notice and an opportunity to object to the Settlement Agreement before its approval.

The Court addresses, below, Advantage's arguments that its own due process rights were violated because it was not given notice and an opportunity to be heard in connection with the approval of the Settlement Agreement. First, however, the Court clarifies that Advantage's own due process rights do not give it standing to assert the due process rights of other creditors. As the Supreme Court has explained, "[i]n the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a clam to relief on the legal rights or interests of third parties." *Powers v. Ohio*, 499 U.S. 400, 410 (1999). "This is generally so even when the very same allegedly illegal act that affects the litigant also affects a third party." *U.S. Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990). Nevertheless, litigants may

> bring actions on behalf of third parties provided three important criteria are satisfied: The litigant must have suffered an 'injury in fact,' thus giving him or her a 'sufficiently concrete interest' in the outcome of the issue in dispute; the litigant

must have a close relation to the third party; and there must exist some hindrance
to the third party's ability to protect his or her own interest.

*Powers*, 499 U.S. at 411 (citations omitted).  Here, both Pillsbury and the Plan Committee

vigorously contest Advantage's ability to demonstrate the second and third criteria.

Appellees argue that "Advantage's status of being one of over 1,500 creditors in this case

does not create a 'close relationship' between Advantage and the 'creditor body,' nor does

creditor status result in anything but the loosest of relationships among creditors themselves."

Plan Comm. App. Br. at 16; Pillsbury App. Br. at 29 n.13.  In particular, the Plan Committee

argues that while it "may have a relationship with the creditors whose interests it represents, []

Advantage as a mere member of the Committee has no[] such relationship."  Plan Comm. App.

Br. at 16.  Advantage responds by asserting that it is a representative of the creditors on the Plan

Committee and thus "certainly has a close relationship with the Debtor's creditors."  Reply to

Plan Comm. Br. at 8.  Advantage does not, however, proffer any legal support for this *ipse dixit*,

or any evidence that Advantage itself, as opposed to the Plan Committee of which it is a member,

is somehow authorized to represent the other 1500 creditors in the bankruptcy case.

Further, Appellees are correct that no hindrance existed to other creditors protecting their

own interests by joining Advantage in this appeal if they, in fact, believed that their due process

rights were violated.  Advantage's argument regarding hindrance to creditors relates to its claim

that the creditor body received insufficient notice of the proposed settlement.  *See* Reply to Plan

Comm. Br. at 9.  The Court need not, and does not, reach that argument, however, because even

if Advantage is correct in that respect, any and all creditors that shared Advantage's view were

free to join it in this appeal.  Significantly, none have done so.  Finally, while Advantage argues

that it would be "unwieldy and untenable" to require each creditor to retain counsel to vindicate its due process rights, *id.*, the Court notes that the Supreme Court's test for third-party standing is not focused on efficiency but on the three prudential factors discussed above.  As the D.C. Circuit has explained in the context of a party attempting to challenge a statute on behalf of third parties, third party standing "is appropriate only when the third party's rights protect that party's relationship with the litigant.  Thus, a litigant may not be given third party standing to assert constitutional rights of third parties that do not protect a relationship, *such as procedural due process rights*."  *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 809 (D.C. Cir. 1987) (emphasis added).  Accordingly, the Court finds that Advantage has failed to demonstrate all three "important criteria" required to establish third-party standing, and therefore cannot assert due process claims on behalf of other creditors in this appeal.

> b. *Advantage Was Not Denied Due Process With Respect to the Finding of an Enforceable Settlement*

The Court turns, now, to Advantage's own due process claims.  As the Supreme Court has explained:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated, under all the circumstances*, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.  The notice must be of such a nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.  But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met the constitutional requirements are satisfied.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (citations omitted) (emphasis added).  Advantage claims that it was denied due process both because it was not given sufficient notice that the settlement between Pillsbury and the Plan Committee would be

discussed at the December 14, 2007 hearing, and because it was not given sufficient notice or opportunity to object regarding the eventual approval of the settlement.

With respect to the December 14, 2007 hearing, the Plan Committee correctly stresses that "nothing happened at the December 14 hearing that impaired [Advantage's] due process rights to object to court approval of the settlement" because Bankruptcy Judge Teel expressly declined to approve the settlement on that date.  Plan Comm. App. Br. at 18; JA 1005:15-19; 1008:20-1009:8.  As such, the sole issue is whether Advantage had sufficient notice that the settlement–which Bankruptcy Judge Teel found to be enforceable at the conclusion of the December 14 hearing–would be discussed during the hearing.  Advantage is correct that the official Notice of the hearing only referenced Plan Committee counsel's emergency motions to withdraw and continue the trial on the fee dispute.  *See* JA975.  Nevertheless, the Court finds that Mr. Wolff (and thus Advantage) should have been aware, in light of both the substance of those emergency motions and Mr. Wolff's personal involvement in the dispute giving rise to those motions, that the settlement itself was likely to be addressed at the hearing on the emergency motions.  As noted above, Plan Committee counsel's motion to withdraw explained that after a lengthy in-person meeting with Mr. Wolff and Mr. Zupnik on December 10, 2007, Plan Committee counsel contacted Mr. Potter and offered a settlement, and that a dispute subsequently arose that Plan Committee counsel felt necessitated its withdrawal.  JA 983.  As one of the parties to both the December 10 meeting and the subsequent dispute, it is simply unfounded for Advantage to assert that Mr. Wolff (and thus Advantage) lacked notice that the hearing on the emergency motions was likely to involve a discussion of the existence of a settlement.

Advantage also suggests that it was denied due process because the "Bankruptcy Court

43

never afforded Mr. Wolff the same opportunity to testify [regarding the existence of an enforceable settlement] that it accorded to Mr. Zupnik." Appellant's Br. at 14. This assertion is equally unavailing because there is absolutely no evidence that the Bankruptcy Court would not have allowed Mr. Wolff or another representative of Advantage to testify if such a request had been made. Instead, Mr. Wolff, on behalf of Advantage, erroneously (and somewhat inexplicably) assumed that the Plan Committee's emergency motions would be approved without any discussion of the dispute underlying the request to withdraw, and therefore opted not to attend the December 14 hearing at all. While Mr. Wolff himself was unable to attend the scheduled hearing and alerted the Bankruptcy Court to that fact, JA 989, he did not, as he might have, either ask to have the hearing postponed or send someone to the hearing in his stead. In short, the situation is not that Advantage was denied an opportunity to be heard regarding the existence of a settlement, but rather than Advantage either failed to see or squandered the opportunities it was given.

> c.      *Advantage Was Not Denied Due Process With Respect to the Approval of the Settlement*

Federal Rule of Bankruptcy Procedure 2002(a)(3) provides for twenty-day notice to creditors (among others) in connection with a hearing on approval of a settlement under Rule 9019. Fed. R. Bankr. P. 2002(a)(3). Advantage is indisputably correct that it did not receive twenty days notice of the December 21, 2007 hearing in the bankruptcy case; however, this fact is by no means dispositive of Advantage's due process argument because Rule 2002(a)(3) allows the Bankruptcy Court to dispense with notice altogether "for cause shown" and Rule 9006(c)(1) provides that "the bankruptcy court for cause shown may in its discretion with or without notice

order the period reduced." *Id.*; Fed. R. Bankr. P. 9006(c)(1).  Significantly, this Court may find

that the Bankruptcy Court had good cause to shorten the notice period even where the

Bankruptcy Court does not expressly make findings of good cause.  *In re Triple E Transport,*

*Inc.*, 169 B.R. 368, 373 (E.D.La. 1994) (citing *In re Patel*, 43 B.R. 500, 503 (N.D. Ill. 1984)).

Here, at the conclusion of the December 14 hearing, the Bankruptcy Court–with the

understanding that a notice would be sent on the evening of December 14, 2007–agreed to set a

hearing on the forthcoming motion to approve the settlement for December 21, 2007, i.e., seven

days later, and set the deadline for objecting to the settlement at 5:00 p.m. on December 19,

2007, i.e., five days later.  JA 1012:23-1013:1.  Contrary to Advantage's claim that "no cause

was asserted in this case other than the impatience of counsel to receive their fees," Appellant's

Br. at 13, this Court finds that there was good cause for the Bankruptcy Court to agree to such an

expedited schedule.  Specifically, during the December 14 hearing, the parties made clear to the

Bankruptcy Court that Mr. Potter had conditioned his acceptance of the settlement on its being

approved and consummated before the end of 2007.  *See* JA 996-99, 1008.  As Pillsbury

explains, such a requirement was reasonable because the trial on the fee dispute was scheduled to

being on January 8, 2008 and the parties had depositions, discovery, and briefing left to complete

before the trial began.  Pillsbury App. Br. at 21 n.8.  In light of these constraints, this Court finds

that the Bankruptcy Court had good cause to reduce the notice period.

Moreover, even if the Bankruptcy Court had lacked good cause to reduce the notice

period, the record before this Court makes clear that Advantage had actual notice of the

December 21 hearing, the deadline by which it was required to object to the proposed settlement,

and the specific terms of the Settlement Agreement.  As such, Advantage did not suffer a due

45

process violation because "[n]otice is adequate when although a party did not receive formal

notice, actual notice was received." *In re Azbill*, 385 B.R. 799, 2008 WL 647407, * 6 (6th Cir.

BAP 2008) (citing *Creditors Comm. of Park Nursing Ctr., Inc. v. Samuels*, 766 F.2d 261, 263

(6th Cir. 1985)).   Indeed, "[a] bankruptcy procedural rule requiring notice is adequately

complied with if a party not receiving formal notice receives actual notice and has an adequate

opportunity to raise his objections." *In re Glinz*, 66 B.R. 88, 91 (D.N.D. 1986); *see also Azbill*,

2008 WL 647407.   Here, Advantage received three forms of notice via e-mail to the account Mr.

Wolff used in connection with the bankruptcy case: (1) the December 14 Notice, which advised

recipients of the December 21 hearing and December 19 deadline for filing objections and

warned that objections might be ignored if parties failed to attend the December 21 hearing with

testimony or evidence to support their objections, JA 1032-34; (2) the December 16 proposed

order finding that a settlement had been reached, which again reiterated the December 19

deadline and December 21 hearing date, JA 1035-39; and (3) the December 17 Notice which

included a summary of the terms of the settlement agreement.   JA 1040-42.[15]  In addition,

Advantage received an electronic copy of the Settlement Approval Motion, which included a

complete unexecuted version of the Settlement Agreement.   JA 1043-65.

   Further, that Advantage received actual notice of the proposed settlement, the hearing,

and the deadline for objecting to the settlement cannot be disputed in light of Advantage's timely

filing of an Objection (albeit a legally defective one).   The length and detail of Advantage's

---

[15] Advantage also asserts that "[t]here was no full and fair disclosure to the creditor body in the December 17, 2007 notice."  Appellant's Br. at 20.  This assertion is irrelevant because the Court has concluded that Advantage may not assert due process claims on behalf of other creditors and the record is clear that Advantage itself was fully aware of the terms of the Settlement Agreement as well as the circumstances surrounding it.

Objection also establishes that the notice Advantage received was sufficient to allow it to meaningfully object to the settlement. "A creditor's due process rights are not violated where the creditor has suffered no prejudice," *Gen. Dev't Corp.*, 165 B.R. at 688, and Advantage's filing of a timely Objection conclusively establishes that it did not suffer prejudice by virtue of the notice it received. *See also Glinz*, 66 B.R. at 91 (finding no due process violation where "[t]here is no showing that the attorney could have made any arguments with 20 days notice by mail that he could not have made with the actual notice he received at the hearing.").

Finally, with respect to notice concerns, Advantage's Reply briefs suggest that the Bankruptcy Court erred in striking Advantage's Objection because Advantage did not receive notice of Pillsbury's motion to strike. *See* Reply to Pillsbury Br. at 5-6; Reply to Plan Comm. Br. at 12-13. As discussed above, however, while Pillsbury's Motion to Strike may not have been accompanied by a Certificate of Service in compliance with Federal Rule of Bankruptcy Procedure 9014(b) and Federal Rule of Civil Procedure 5(b), the record is clear that a copy of the Motion to Strike was sent to and received by Mr. Wolff's e-mail address. JA 1109-15. That Mr. Wolff may not have actually seen the Motion to Strike because he was out of the country does not mean that Advantage was not served with the Motion to Strike, and certainly does not mean that the Bankruptcy Court erred in granting it. To the contrary, despite Advantage's professed concern for doing "everything possible to represent the creditors' interests," Appellant's Br. at 15, it appears that after Advantage filed its Objection, Mr. Wolff promptly left the country without making any arrangements to ensure that Advantage's Objection was actually considered.

Having concluded that Advantage received sufficient actual notice, the Court turns to Advantage's claims that it was denied the opportunity to be heard with respect to the proposed

settlement.  In large part, Advantage's claims in this respect are an attempt to reargue the

propriety of the Bankruptcy Court's Striking Order.  *See* Appellant's Br. at 14-17.  The Court has

already summarily affirmed the Striking Order, however, and therefore does not address

Advantage's claims in that regard.  Simply put, the Court does not find that Advantage was

denied the opportunity to be heard in connection with the approval of the settlement.

Significantly, Advantage had seven days' notice of the December 21 hearing and five days'

notice of the December 19 deadline for filing objections.  Advantage certainly could have

retained counsel to appear on its behalf during that period of time and thus ensured that its

Objection would be considered.  Advantage did not do so and, as discussed above, never

suggested to the Bankruptcy Court that it had any intention of doing so or requested a

continuance in order to do so.  Advantage suggests that the Bankruptcy Court somehow erred in

setting the hearing on the settlement for December 21 when "everyone involved . . .w[as] aware

that [Mr.] Wolff was out of the country . . . and could not possibly attend the hearing," Reply to

Plan Comm. Br. at 13, but a letter is not a motion and, in any event, a review of Mr. Wolff's

December 13 letter reveals that it did not suggest any intent to retain counsel to represent

Advantage or request the opportunity to do so.  JA 989.

        As noted above, Advantage seems to have operated under the assumption that the mere

filing of its Objection would be sufficient to ensure that its interests were duly protected.  This

assumption was particularly dubious, however, because the December 14 Notice specifically

advised recipients that any objections might be disregarded if the objecting party failed to appear

at the December 21 hearing with testimony or evidence in support of its objection.  JA 1034.[16]

Despite this warning, Advantage appears to have filed its legally deficient Objection and then

made no attempt to follow up, either by requesting additional time to hire counsel once the

Objection was stricken or by sending an attorney to appear on Advantage's behalf at the hearing.

In short, Advantage had sufficient actual notice of the proposed settlement and hearing, and

nothing prevented Advantage from appearing at the hearing through counsel to press its

Objection.  Accordingly, the Court finds that Advantage was not denied the opportunity to object

to the settlement before it was approved, and rejects Advantage's claims that it was denied due

process in connection with the settlement approval.

> 4.    *The Bankruptcy Court Did Not Abuse Its Discretion In Approving the Settlement*

Finally, the Court turns to Advantage's challenge to the Bankruptcy Court's decision to

approve the settlement between the Plan Committee and Pillsbury.  A district court's review of a

bankruptcy court order approving a settlement under Federal Rule of Bankruptcy Procedure 9019

"is restricted to determining whether there was a clear abuse of discretion."  *Nellis v. Shugrue*,

165 B.R. 115, 123 (S.D.N.Y. 1994); *Myers v. Martin*, 91 F.2d 389, 391 (3d Cir. 1996) (same);

*Connecticut Gen. Life Ins. Co. v. United Companies Fin. Corp.*, 68 F.3d 913, 917 (5th Cir. 1995)

(same); *Reiss v. Hagman*, 881 F.2d 890, 891-92 (10th Cir. 1989) ("A bankruptcy court's

approval of a compromise may be disturbed only when it achieves an unjust result amounting to

---

[16] The December 14 Notice's warning is consistent with cases cited by Pillsbury in which bankruptcy courts have overruled objections based on an objector's failure to appear and prosecute the objection at the hearing.  *See In re Charge Trucking, Inc.*, 236 B.R. 620, 622 (Bankr.E.D.Tex. 1999); *In re Trans World Airlines, Inc.*, 185 B.R. 302, 311 (Bankr.E.D.Mo. 1995); *Lee Servicing Co. v. Wolf*, 162 B.R. 98, 104 (Bankr.D.N.J. 1993).

a clear abuse of discretion") (citation omitted).   "The experience and knowledge of the

bankruptcy court judge is of significance in assessing the propriety of the settlement." *Nellis*,

165 B.R. at 123 (citing *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir.

1992)).   Nevertheless, "an abuse of discretion occurs when the [bankruptcy] court relies on

clearly erroneous findings of fact, fails to consider a relevant factor, or applies the wrong legal

standard." *Pigford v. Johanns*, 416 F.3d 12, 23 (D.C. Cir. 2005).[17]

As Advantage correctly stresses, a "bankruptcy court's decision to approve [a] settlement

[] must be an informed one based upon an objective evaluation of developed facts.  *Reiss*, 881

F.2d 892.  Indeed, a "bankruptcy judge cannot 'accept the [proponent's] word that the settlement

is reasonable, nor may [the judge] merely 'rubber stamp' a [] proposal," *Nellis*, 165 B.R. at 122,

but must "apprise[] himself of all facts necessary for an intelligent and objective" "judgment as

to whether a proposed compromise is fair and equitable." *Protective Comm. for Indep.*

*Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 425 (1968) ("*TNT Trailer*

---

[17] In its Reply to the Plan Committee's Appellee Brief, Advantage argues that the Bankruptcy Court's decision to approve the settlement is subject to *de novo* review because "the Bankruptcy Court issued only one factual finding, which was that the parties had reached a settlement," which Advantage appeals.  Reply to Plan Comm. Br. at 3-4.  Advantage's argument in this respect is based upon *Gordon v. Gouline*, 1995 U.S. Dist. LEXIS 20852 (D.D.C. Apr. 20, 1995), in which the court noted that a bankruptcy court order approving a settlement "would generally be subject to an abuse of discretion standard of review," but applied a *de novo* standard because the "challenge to the approval order [wa]s solely derived from" a legal challenge to an order enforcing a settlement.  *Id.* at *9-10.  That case, however, is easily distinguished from this case because the facts regarding the settlement at issue in the bankruptcy court enforcement order were not in dispute.  *Id.* at *8-9.  Here, in contrast, the parties do dispute the facts surrounding Bankruptcy Judge Teel's finding that a settlement existed between Pillsbury and the Plan Committee.  The Court therefore continues to apply an abuse of discretion standard to Bankruptcy Judge Teel's decision to approve the settlement, which encompasses the clearly erroneous standard with respect to Bankruptcy Judge Teel's findings of fact and the *de novo* standard with respect to his legal conclusions.  *See Pigford*, 416 F.3d at 23.

*Ferry*").  Nevertheless, a bankruptcy judge "need not hold a mini-trial or write an extensive opinion every time he approves or disapproves a settlement."  *In re Fishell*, No. 94-1109, 1995 U.S. App. LEXIS 3127 (6th Cir. Feb. 16, 1995).  While neither the Bankruptcy Code nor Bankruptcy Rule 9019 offers guidance as to the criteria a bankruptcy court applies in evaluating a proposed settlement, the parties generally agree that, following the principles of *TMT Trailer Ferry*, the bankruptcy court should consider: (1) probability of success in the litigation; (2) difficulties, if any, with collection; (3) the complexity of the litigation, including the expense, inconvenience and delay attendant to the litigation; and (4) the interest of creditors.  *See* Appellant's Br. at 19-20; Plan Comm. App. Br. at 23-24; Pillsbury Br. at 31; *see also Southern Med. Arts Companies, Inc.*, 343 B.R. 250, 256 (10th Cir. BAP 2006); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007 (adding factors considered in the Second Circuit).  The Court finds that the Bankruptcy Court's approval of the settlement in the bankruptcy court comported with an evaluation of these factors.

Advantage initially argues that the Bankruptcy Court erred in finding, at the conclusion of the December 14, 2007 hearing, that a binding settlement existed between Pillsbury and the Plan Committee because the Bankruptcy Court could not make such a finding in the absence of the proposed Settlement Agreement "or any evidence of the terms and conditions of the proposed settlement."  Appellant's Br. at 18.  The record reveals, however, that during the December 14 hearing, Bankruptcy Judge Teel heard testimony from Plan Committee counsel, Mr. Zupnik, and Mr. Potter, all of whom agreed that a settlement had been reach that included all essential terms.  JA at 993-1001.  Significantly, no contrary evidence was presented during the hearing, and as a result the Bankruptcy Court had no reason to challenge the parties' assertions that a settlement on

all material terms had been reached.  As such, this Court will not set aside as clearly erroneous the Bankruptcy Court's December 14, 2007 finding (documented in its December 18 Order) that an enforceable settlement was reached by Pillsbury and the Plan Committee.[18]

Advantage also argues that the Bankruptcy Court failed to exercise its independent duty to review the merits of the proposed settlement pursuant to Rule 9019.  Appellant's Br. at 19-21. Advantage is undoubtedly correct that the Bankruptcy Court had such an obligation, but Advantage offers no evidence that the Bankruptcy Court failed to carry out its duty.  To the contrary, the record reveals that in approving the settlement, the Bankruptcy Court duly considered the very detailed Settlement Approval Motion, including the Settlement Agreement, JA 1125-26, the testimony at the December 14 hearing, JA 1120:25-11214, and the lack of objections to the settlement in the record, JA 1120:9-14.  In addition, the Court notes that Bankruptcy Judge Teel was well-positioned to evaluate the considerations relevant to approving a settlement, under *TMT Trailer Ferry*, because he had been intimately involved in the fee dispute litigation since its inception, had held a series of hearings in the litigation, and had resolved significant briefing over his jurisdiction to try the fee dispute.  Moreover, this Court's review of the Settlement Approval Motion, which includes a detailed discussion of the Plan Committee's reasons for settling the fee dispute litigation as well as a copy of the lengthy Settlement Agreement, JA 1043-67, supports the Bankruptcy Court's decision to approve the

---

[18] Advantage seems to suggest that the Bankruptcy Court should not have found that a settlement existed because Advantage's Objection demonstrated that Advantage did not believe as much.  Appellant's Br. at 18.  This suggestion is illogical because Advantage's Objection was filed on December 18, 2007 Objection and Bankruptcy Judge Teel found that an enforceable settlement existed at the conclusion of the December 14, 2007 hearing, which Advantage, through Mr. Wolff, chose not to attend.

settlement as fair and equitable and in the interest of the creditors.  In short, there is no reason for

this Court to conclude that the Bankruptcy Court abused its jurisdiction in approving the

settlement, and the Court will therefore affirm the Bankruptcy Court's December 21 Settlement

Approval Order.[19]

## IV.  CONCLUSION

For the reasons set forth above, the Court shall GRANT [6/16] Appellees' Motions to

Strike Elliot Wolff as Appellant, shall DENY AS MOOT Pillsbury's [22] Motion to Suspend

Briefing, and shall DENY [33] Advantage's Motion for Oral Argument.  Further, the Court shall

GRANT [5/17] Appellees' Motions for Summary Affirmance of the Striking Order, shall

AFFIRM the Striking Order, shall AFFIRM the Settlement Approval Order, and shall DISMISS

this appeal in its entirety.  An appropriate Order accompanies this Memorandum Opinion.

Date:   July 14, 2008

                                       /s/
                                 COLLEEN KOLLAR-KOTELLY
                                 United States District Judge

---

[19] Advantage also argues that the "Bankruptcy Court's errors will have an adverse impact on the bankruptcy process."  Appellant's Br. at 24-26.  As this Court has not found any errors on the part of the Bankruptcy Court, it need not address Advantage's argument, but nevertheless notes that it is entirely lacking in factual support because Advantage proffers no evidence that Mr. Potter or Pillsbury has (as Advantage claims) mislead the creditor body and, as discussed above, the record demonstrates that the parties and the Bankruptcy Court had reasons for expediting the approval of the fee dispute settlement other than "an attorney [] seeking a quick and inexpensive resolution in his favor, so that he can obtain his fees by year end."  *Id.* at 25-26.

For their part, Appellees request that this Court find Advantage's appeal to be frivolous so that they may seek damages in the form of fees and costs from Advantage.  Pillsbury App. Br. at 39-40; Plan Comm. App. Br. at 41; Fed. R. Bankr. P. 8020.  While this Court finds Advantage's appeal to be ultimately unsuccessful, the length of this opinion reveals that Advantage's arguments are not "so utterly lacking in merit as to render this appeal sanctionable as frivolous."  *In re Solomat Partners, L.P.*, 231 B.R. 149, 157 (2d Cir. BAP 1999).  As such, the Court, in an exercise of its discretion, finds that Advantage's appeal is not so frivolous as to be sanctionable.